08 CIV 5297

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CCM PATHFINDER POMPANO BAY, LLC, | 08 Civ. _____ |
| Plaintiff, | Removed from: Supreme Court of the State of New York County of New York |
| -against- | |
| COMPASS FINANCIAL PARTNERS LLC and COMPASS USA SPE LLC, | Index No. 601694-08 |
| Defendants. | Date Filed: 06/05/08 |

RECEIVED

U.S.D.C. S.D. N.Y. CASHIERS

## NOTICE OF REMOVAL TO U.S. DISTRICT COURT, PURSUANT TO 28 U.S.C. §§ 1334 AND 1452 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9027, OF CASE COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK ON JUNE 5, 2008

Defendants Compass Financial Partners LLC and Compass USA SPE LLC hereby remove to this United States District Court for the Southern District of New York the action filed against them, on June 5, 2008, by Plaintiff CCM Pathfinder Pompano Bay, LLC in the Supreme Court of the State of New York, County of New York, on the grounds that the removed action has a significant connection to a confirmed chapter 11 plan, asset sale and related pending litigation commenced in chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Nevada and that is now being adjudicated in the United States District Court for the District of Nevada. The removed action involves the same claims regarding the same property that is the subject of the litigation in the District Court in Nevada.

This Court has subject matter jurisdiction over the removed action pursuant to 28 U.S.C. § 1334(b), removal of the action is authorized under 28 U.S.C. § 1452, and, as will be explained

in Defendants' motion for transfer of venue, the interests of efficient judicial administration and avoidance of duplication and inconsistent results requires that venue of the removed action be transferred to United States District Court for the District of Nevada.

## Statement of Facts

1.      On April 13, 2006, USA Commercial Mortgage Company and four if its affiliates (collectively, the "Debtors") filed for chapter 11 relief in the U.S. Bankruptcy Court for the District of Nevada (the "Nevada Bankruptcy Court"), jointly administered case no. 06-10725 LBR (the "Nevada Bankruptcy Cases"). The Debtors were in the business of originating and servicing commercial real property loans, and raised funds by soliciting individuals and entities (together with their successors and assigns, the "Investors") to invest in fractional interests in the loans. At the time of the commencement of the Nevada Bankruptcy Cases, the Debtors were servicing 115 loans involving 3,600 Investors. Plaintiff CCM Pathfinder Pompano Bay, LLC ("Plaintiff") is one such Investor.

2.      Pursuant to an asset purchase agreement and a confirmed chapter 11 plan of reorganization in the Nevada Bankruptcy Cases (the "Chapter 11 Plan"), Defendants Compass Financial Partners LLC and Compass USA SPE LLC and certain of their affiliates (collectively "Compass") purchased the loan servicing rights and certain related assets from the Debtors in respect of 65 loans. Compass paid approximately $67 million (subject to certain purchase price adjustments that are the subject of pending litigation in the Nevada Bankruptcy Court). An order confirming the Chapter 11 Plan and approving the asset purchase agreement and sale to Compass was entered by the Nevada Bankruptcy Court on January 8, 2007. The sale was consummated on February 16, 2007.

3.      On May 21, 2007, certain of the Investors filed suit in the U.S. District Court for

the District of Nevada (the "Nevada District Court") against Compass alleging that Compass had

breached its contractual and fiduciary duties to the Investors under the loan servicing agreements

with respect to the loan servicing rights Compass acquired from the Debtors under the chapter 11

Plan and asset purchase agreement.  On May 25, 2007, Compass commenced litigation in the

Nevada Bankruptcy Court against certain of the Investors to enjoin them from interfering with

Compass' rights under the Chapter 11 Plan, the asset purchase agreement and the loan servicing

agreements; and the Nevada Bankruptcy Court enjoined those Investors from further

interference.  Thereafter, the litigation commenced by Compass in the Nevada Bankruptcy Court

was transferred (by withdrawal of the reference) to the Nevada District Court and consolidated

with the litigation commenced by certain of the Investors against Compass.  The consolidated

actions are being actively litigated in the Nevada District Court (there are presently over 500

entries in the docket of the consolidated litigation).

4.      On June 5, 2008, Plaintiff, one of the Investors, sued Compass entities Compass

Financial Partners LLC and Compass USA SPE LLC ("Defendants") for breach of the loan

servicing agreements and breach of fiduciary duty in the Supreme Court of the State of New

York, County of New York (the "New York State Case").  The very same loan in which Plaintiff

is a participant Investor, and that is the subject of the New York State Case, is also the subject of

the breach of loan servicing agreements and breach of fiduciary duty suit now pending in the

Nevada District Court that was brought by certain other Investors.  As a result, the claims and

causes of action contained in the New York State Case are already being litigated in the Nevada

District Court with respect to the same loan that Plaintiff is an Investor in.

5.    The Chapter 11 Plan that was confirmed by the Nevada Bankruptcy Court provides that the Nevada Bankruptcy Court (and hence the Nevada District Court) shall retain exclusive jurisdiction to determine all matters related to the loan servicing agreements (which is the subject matter of the New York State Case) and the asset purchase agreement, and the other rights acquired by Compass in respect of serviced loans under the Chapter 11 Plan. Both the Nevada Bankruptcy Court and the Nevada District Court have since entered orders determining that they have subject matter jurisdiction over litigation involving the interpretation and enforcement of the loan servicing agreements and other assets and rights that Compass purchased in the Nevada Bankruptcy Cases pursuant to the confirmed Chapter 11 Plan.

6.    Compass, in its capacity as servicer and pursuant to the Chapter 11 Plan, has continuing obligations to recover and turn over to the creditors trust that was created under the Chapter 11 Plan overpayments that were made by the Debtors to Investors prior to and during the Bankruptcy Cases. Hence, resolution of the litigation between Compass and the litigating Investors, including the claims brought in the New York State Case, will have a direct impact on the administration of the bankruptcy estates of the Debtors and the recovery of creditors.

## Subject Matter Jurisdiction and Removal

7.    Section 1452(a) of Title 28 of the U.S. Code grants a very broad right to parties to civil actions to remove "any claim or cause of action" to the district court (and by referral to the bankruptcy court) provided that bankruptcy jurisdiction exists under 28 U.S.C. § 1334. This United States District Court for the Southern District of New York has subject matter jurisdiction over the New York State Case because the New York State Case is a civil proceeding that arises in or is related to a case under title 11 -- the Nevada Bankruptcy Cases and the litigation pending in the Nevada District Court. The New York State Case has: (a) a close nexus to the Chapter 11

Plan and the interpretation, implementation, execution and administration of the Chapter 11 Plan;
and (b) a significant connection to the litigation regarding that Chapter 11 Plan, the asset
purchase agreement, injunctions that were entered against certain of the Investors, and the rights
of Compass as servicer that came out of the Nevada Bankruptcy Cases and that is now pending
in the Nevada District Court.

8.      Resolution of the New York State Case will require a court to interpret the
Chapter 11 Plan, the asset purchase agreement and the loan servicing agreements.  Resolution of
the New York State Claims in the Nevada District Court together with the other consolidated
litigation is the only way to avoid inconsistent results and inefficient use of judicial resources.
Accordingly, Defendants shortly will file a motion for transfer of venue to the Nevada District
Court.

9.      This removed action is a core proceedings under 28 U.S.C. § 157(b) in that it
(a) involves rights of the Defendants established under the Chapter 11 Plan, (b) implicates an
injunction entered by the Nevada Bankruptcy Court in favor of Compass and against certain of
the Investors, and (c) will have a direct impact on the administration of the Debtors' estates and
the recovery of creditors.

10.     If any of this removed action  is determined to be a non-core proceeding,
Defendants hereby consent to the entry of final orders or judgment by the bankruptcy judge with
respect to any and all claims and causes of action in the removed action.

11.     Attached hereto is a copy of the complaint filed by Plaintiffs in the New York
State Case.  No other pleadings have been filed in that case.

WHEREFORE, Defendants Compass Financial Partners LLC and Compass USA SPE
LLC respectfully request removal of this action from the Supreme Court of the State of New

York, County of New York, to the United States District Court for the Southern District of New

York.

Dated:  New York, New York
        June 10, 2008

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _____
    Linda Dakin-Grimm
    Daniel M. Perry
    Tyson M. Lomazow
    1 Chase Manhattan Plaza
    New York, NY  10005-1413
    (212) 530-5000
    *Attorneys for Defendants Compass Financial
    Partners LLC and Compass USA SPE LLC*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

**CCM PATHFINDER POMPANO BAY, LLC,**

                    Plaintiff,

          -against-

**COMPASS FINANCIAL PARTNERS LLC,**
and **COMPASS USA SPE LLC,**

                    Defendants.

------------------------------------------------------------x

Index No. _601694/08_

Date Filed: _6/5/08_

Plaintiff designates NEW YORK
COUNTY as the place of trial.

**SUMMONS**

Defendants' place of business is
333 Seventh Avenue, Third Floor
New York, New York 10001

To the above-named Defendants:

          YOU ARE HEREBY SUMMONED to answer the complaint in this action
and serve a copy of your answer, or, if the complaint is not served with this
summons, to serve a notice of appearance, on plaintiff's attorneys within twenty
(20) days after service of this summons, exclusive of the day of service (or within
thirty (30) days after the service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Dated: New York, New York
          June 4, 2008

                              DLA PIPER US LLP

                              By: _____
                                    Betty M. Shumener
                                    Todd B. Marcus
                                    Robert J. Odson

                              1251 Avenue of the Americas
                              New York, New York 10020
                              (212) 335-4500

                              *Attorneys for Plaintiff*
                              *CCM PATHFINDER POMPANO BAY, LLC*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
CCM PATHFINDER POMPANO BAY, LLC,                        Index No. 601644/08

                                Plaintiff,
                                                        COMPLAINT
            -against-

COMPASS FINANCIAL PARTNERS LLC, and
COMPASS USA SPE LLC,

                                Defendants.
-------------------------------------------------------------------x

        Plaintiff CCM Pathfinder Pompano Bay, LLC ("**CCM Pathfinder**"), by its attorneys

DLA Piper US LLP, for its Complaint against defendants Compass Financial Partners LLC and

Compass USA SPE LLC (together, "**Compass**"), alleges as follows.

## I.    Introduction

        1.      CCM Pathfinder brings this action against Compass, the loan servicer under a

$29,000,000 loan (the "**Loan**") secured by a first priority mortgage on a condominium

conversion project (the "**Property**"), for breach of contract, breach of the implied covenant of

good faith and fair dealing, and breach of fiduciary duty, and seeks millions of dollars in

compensatory damages and punitive damages, exclusive of interest, costs and attorney's fees.

CCM Pathfinder also seeks declaratory relief and an accounting.

        2.      Compass has been (a) demanding millions of dollars in late charges and default

interest which Compass was not entitled to demand under the Loan, and (b) compounding

monthly over one million dollars in default interest which Compass was not entitled to

compound under the Loan. In addition, Compass has been claiming that these late charges and

compounded default interest are payable to Compass before any payments are made to CCM

Pathfinder. By so doing, Compass is attempting to secure a windfall for itself at the expense of

WEST\21426753.3

CCM Pathfinder, whose interests Compass is obligated to protect. By these and other over-reaching maneuvers, Compass — as the loan servicer and acting attorney in fact — breached and repudiated the contractual and fiduciary duties owed by Compass to CCM Pathfinder. As a result, Compass has caused, and evidenced a clear intention to cause, CCM Pathfinder to suffer the loss of millions of dollars which Compass should be compelled to compensate to CCM Pathfinder. In addition, Compass should be assessed punitive damages by reason of its repeated violations of the trust, confidence and control that CCM Pathfinder reposed in Compass.

## II.    Parties, Jurisdiction and Venue

3.    CCM Pathfinder is a Delaware limited liability company with its principal place of business in Connecticut.

4.    Upon information and belief, Compass Financial Partners LLC is and, at all relevant times hereinafter mentioned, was a Delaware limited liability company with its principal place of business at 333 Seventh Avenue, Third Floor, New York, New York 10001.

5.    Upon information and belief, Compass USA SPE LLC is and, at all relevant times hereinafter mentioned, was a Delaware limited liability company with its principal place of business at 333 Seventh Avenue, Third Floor, New York, New York 10001.

6.    Venue and jurisdiction lie with this Court because defendants have their principal place of business in the State of New York, County of New York.

## III.    Background Facts

A.    The Loan Servicing Agreements

7.    Compass is the successor in interest to USA Commercial Mortgage Company ("USA"), as the loan servicer under certain Loan Servicing Agreements relating to the Loan. CCM Pathfinder is the successor lender under at least 80 of those Loan Servicing Agreements

(collectively, the **"Loan Servicing Agreements"**). A sample of the Loan Servicing Agreements is attached hereto as **Exhibit "A"** and incorporated by reference herein.

8.      Although there were 292 original lenders who owned interests in the Loan, CCM Pathfinder is informed and believes, and thereon alleges, that only two forms of the Loan Servicing Agreements were used with the more than 80 lenders from whom CCM Pathfinder acquired its interests in the Loan.

9.      As to the two forms of Loan Servicing Agreements pertaining to CCM Pathfinder's interests in the Loan, there appear to be only two substantive differences, as follow: (1) the vast majority of the Loan Servicing Agreements provide for a loan servicing fee of 1% of the outstanding principal of the Loan, whereas a few provide for a loan servicing fee of 3% of that outstanding principal, and (2) the servicer may receive late charges collected from the borrower under the Note, whereas some Loan Servicing Agreements provide that the servicer may receive late charges and default interest collected from the borrower.

B.      The Loan

10.      The Loan that is the subject of the Loan Servicing Agreements is evidenced by a Promissory Note Secured by Mortgage dated November 28, 2005 in the principal face amount of $29,000,000 (**"Note"**) executed by Palm Harbor One, LLC (the **"Borrower"**) for the benefit of the 292 lenders listed on a document attached to the Note on whose behalf Compass is servicing the Loan. A true and correct copy of the Note is attached hereto as **Exhibit "B"** and incorporated by reference herein.

11.      CCM Pathfinder is informed and believes, and thereon alleges, that USA was one of the lenders which funded $3,670,000 of the Loan, and that Compass became the successor in

interest to USA's interest in the Loan as a lender. Thus, Compass is both the servicer of the Loan and one of the lenders under the Loan.

12.     CCM Pathfinder acquired the interests of at least 80 lenders in the Loan (representing at least 27% of the Loan in the aggregate), and is the successor in interest and assignee of those lenders under the Loan Servicing Agreements at issue in this action. A true and correct copy of the list of lenders from whom CCM acquired its interests in the Loan as of October 2007 is attached hereto as **Exhibit "C"** and incorporated by reference herein.

13.     As security for the indebtedness evidenced by the Note, Borrower executed and delivered a Mortgage, Security Agreement and Assignment of Rents dated December 14, 2005 which was recorded in the official records of Pinellas County, Florida on December 16, 2005 as instrument number 2005502422 in Book 14813 Page 458 (**"Mortgage"**). A true and correct copy of the Mortgage is attached hereto as **Exhibit "D"** and incorporated by reference herein.

14.     CCM Pathfinder is informed and believes, and thereon alleges, that the Note matured on November 30, 2006, at which time all amounts outstanding under the Note became immediately due and payable.

15.     CCM Pathfinder is informed and believes, and thereon alleges, that on or about February 16, 2007, Compass acquired the servicing rights under the Loan Servicing Agreements. CCM Pathfinder is informed and believes, and thereon alleges, that on or about March 29, 2007, Compass sent a Notice of Default to Borrower.

16.     CCM Pathfinder is informed and believes, and thereon alleges, that although the Loan has been in default since at least December 2006, Compass failed to make reasonable efforts to protect CCM Pathfinder's rights under the Loan or to exercise any rights or remedies under the Note or Mortgage on behalf of CCM Pathfinder. Instead, and as explained in more

detail below, Compass allowed the Borrower to remain in default, and thereby allowed the Loan to accrue default interest and late charges, for more than one and one-half years, which Compass claims are payable to itself before CCM Pathfinder.

17.    Worse, CCM Pathfinder is informed and believes, and thereon alleges, that Compass allowed a significant number of condominium units at the Property securing the Loan to be sold without receiving the monies that CCM Pathfinder and the other lenders should have received from the sale of those condominium units. Despite CCM Pathfinder's requests for an explanation, Compass has failed to provide adequate information explaining or accounting for the sales. Accordingly, CCM Pathfinder is unable to determine (a) the party or parties responsible for such sales, (b) what was done with the sales proceeds derived from those sales, (c) who is responsible for withholding or failing to deliver those sales proceeds to CCM Pathfinder and the other lenders, and (d) what, if anything, is being done to remedy the wrongful sales of CCM Pathfinder's security.

18.    CCM Pathfinder is informed and believes, and thereon alleges, that on or about March 3, 2008, more than one and one-half years after Borrower defaulted under the Loan, Compass and Borrower entered into a settlement agreement pursuant to which Compass will either foreclose on the Property or have the Property sold via a "363 sale" conducted by the United States Bankruptcy Court presiding over the bankruptcy estate of the Borrower.

19.    CCM Pathfinder is considering whether to be a bidder at either the foreclosure sale or a "363 sale" and/or whether or not to approve a "363 sale". Having CCM Pathfinder as a bidder can only increase other bids and enhance the bidding process. Although CCM Pathfinder has repeatedly requested that it be kept fully informed of the status of the "363 sale" and foreclosure proceedings, Compass has failed to keep CCM Pathfinder fully informed and has

refused to provide CCM Pathfinder with a bid package or with any of the other information and documents regarding the Loan and the Property that CCM Pathfinder has requested.

20.    Paragraph 11 of the Loan Servicing Agreements (Exhibit A) provides, in pertinent part, as follows (emphasis added):

> 11.    **Limited Power of Attorney**.  With respect to each loan, Lender hereby agrees that [Compass] shall have full power and authority, and Lender hereby appoints [Compass] as its true and lawful attorney-in-fact to     **do all things and take all actions on behalf of Lender** which are necessary or convenient to effectuate this Agreement and its intent and **to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan** .

21.    Compass has, among other things, (a) failed to promptly commence foreclosure proceedings or otherwise exercise CCM Pathfinder's remedies under the Loan, (b) demanded late charges and default interest in amounts grossly in excess of the amounts to which it might otherwise have been entitled under the Note and Loan Servicing Agreements, (c) allowed condominium sales to occur without obtaining any of the sales proceeds, and (d) failed to provide information relating to the status of the "363 sale" and foreclosure proceedings, the Loan and the Property.  Thus, Compass failed **"to do all things and take all actions on behalf of Lender ... and to protect Lender's interest under any note, deed of trust ... or other document pertaining to any Loan,"** as required under paragraph 11 of the Loan Servicing Agreements, and breached the fiduciary and contractual duties that Compass owes to CCM Pathfinder under the Loan Servicing Agreements.

C.      Compass Wrongfully Demanded Late Charges
        and Default Interest that it Never Collected from the Borrower

        22.     Paragraph 5 of the Loan Servicing Agreements provides that Compass is entitled

to receive only those late charges and default interest that Compass collects from the Borrower.

Paragraph 5 of the Loan Servicing Agreements (Exhibit A) provides, in pertinent part, as follows

(emphasis added):

>               5.      Compensation to USA for Loan Servicing.  Lender
>       authorizes USA [Compass] to retain . . . (a) . . . (3%) per annum of
>       the maximum principal amount of each of the Loans, (b) **any late
>       charges collected from the Borrower** pursuant to the terms of the
>       Note, and (c) **any default interest collected from the Borrower**
>       pursuant to the terms of the Note.  Notwithstanding the foregoing,
>       it is agreed and acknowledged that USA [Compass] derives the
>       bulk of its revenues from charging loan fees ("points") to the
>       Borrower . . .

Thus, under the Loan Servicing Agreements, Compass is entitled to recover only "**late charges

collected from the Borrower**" and "**default interest collected from the Borrower.**"

        23.     As Compass has purportedly collected only $2,812 in late charges from the

Borrower under the Note and none of the default interest accrued under the Note, Compass is not

entitled to assess any late charges in excess of $2,812 or any default interest under the Loan

against CCM Pathfinder and the other lenders.  Nevertheless, according to an accounting of the

Loan that Compass filed on November 15, 2007 in the United States District Court, District of

Nevada, Compass is claiming, as of October 2, 2007, $1,385,049.10 in late charges that Compass

has not collected from the Borrower and $1,509,269.73 in default interest that Compass has not

collected from the Borrower.  A true and correct copy of Compass' accounting as it pertains to

the Loan at issue is attached hereto as **Exhibit "E"** and incorporated by reference herein.[1]

---

[1]      Compass' accounting pertains to many loans, most of which are not at issue in this action.
Accordingly, financial information regarding these other loans have been omitted from Exhibit E, such
that only information regarding the Loan is included in Exhibit E.

24.    In addition, under Nevada law (which governs the Note), a late charge imposed on the outstanding principal balance of the Loan, whether by reason of acceleration or maturity, is considered to be a claim for liquidated damages and unreasonable unless bearing a relationship to the costs actually incurred in the collection of the amounts outstanding.

25.    Paragraph 11 of the Note, however, provides, in pertinent part, that "Borrower agrees to pay all costs of collection. . ." (Exhibit B)

26.    Because the Borrower is separately obligated to pay the costs of collection, the late charge bears no relationship to the collection costs incurred and would be deemed an unreasonable penalty.  Nevertheless, Compass has assessed such late charges against the lenders.

27.    By such conduct, among others, Compass not only breached its fiduciary duties to CCM Pathfinder, but Compass also breached its express obligations under the Loan Servicing Agreements.

D.    Compass Wrongfully Compounded Default Interest Purportedly Payable to Compass.

28.    In addition to its egregious over-reaching with respect to the late charges and default interest due under the Note, Compass also computed incorrectly the default interest due under the Note without any authority to do so.  Although the Note provides that interest at the non-default rate (13%) is to be compounded monthly, the Note does not allow interest at the default rate (an additional 7%) to be compounded.  Paragraph 1 of the Note (Exhibit B) regarding non-default interest provides as follows (emphasis added):

> 1.    Interest Rate.  **Interest shall accrue on the outstanding portion of the Note Amount,** from the date of disbursement until the date the Note Amount is paid in full, **at the rate of thirteen percent (13%) per annum.**  Interest shall be calculated on the basis of a 360-day year and actual days elapsed.  **Accrued but unpaid interest shall be compounded monthly.**

29    By contrast, paragraph 9 of the Note (Exhibit B) regarding default interest does not provide for the compounding of default interest, as follows:

> 9.    Default Rate.  From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date that such default is cured, at the option of the Lender hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate").  Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

30    Although the Loan Servicing Agreements provide only for "default interest collected from the Borrower **pursuant to the terms of the Note**," the terms of the Note do not allow default interest to be compounded monthly.  Nevertheless, in violation of both the Note and the Loan Servicing Agreements, Compass demanded the payment of default interest in an amount computed with monthly compounding.  By so doing, Compass demanded far more default interest than was due and owing under the Note.

E.    Compass Wrongfully Asserts Priority.

31    In addition to Compass' wrongful demands for improper late charges and default interest, Compass also claimed a priority to these payments (in addition to a percentage of the principal) prior to making certain required payments of principal and interest to CCM Pathfinder and the other lenders.  By so doing, Compass wrongfully placed its interests ahead of the interests of CCM Pathfinder and the other lenders whom Compass is and was obligated to protect.

32    The Loan Servicing Agreements, which control the contractual relationship between Compass and CCM Pathfinder, do not permit Compass to receive loan servicing fees,

late charges or default interest ahead of the sums due and owing to CCM Pathfinder under the Loan. To the contrary, the Loan Servicing Agreements contemplate that any payments collected from Borrower will be paid first to principal, then to interest, then to late charges and then to other fees. Compass is obligated under paragraph 2(e)(i) of the Loan Servicing Agreements (Exhibit A), for example, to do the following:

> (e)   Until the total amount due under each note is paid in full:
>
>> (i)   Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

33.     Thus, according to the Loan Servicing Agreements, the parties contemplated that principal would be paid first (which is fair, on its face, given that Compass is also a lender who receives its pro rata share of all principal payments), then interest (pari passu as to compounded, non-default interest for the lenders and non-compounded, default interest for Compass), followed by late charges, insurance and other specified funds. Default interest and late charges are paid to Compass, however, only if actually collected from the Borrower; not otherwise.

34.     Indeed, paragraph 5 of the Loan Servicing Agreements acknowledges that the loan servicing fees, late charges and default interest are merely additional payments that Compass receives because Compass derives the "bulk of its revenues from charging loan fees ('points') to the Borrower" when the Loan is made. Thus, paragraph 5 of the Loan Servicing Agreements (Exhibit A) provides, in pertinent part, as follows (emphasis added):

> 5.     Compensation to USA for Loan Servicing. Lender authorizes USA [i.e., Compass] to retain . . . (a) . . . (3%) per annum of the maximum principal amount of each of the Loans, (b) any late charges collected from the Borrower pursuant to the terms of the Note, and (c) any default interest collected from the Borrower pursuant to the terms of the Note. **Notwithstanding the**

> foregoing, it is agreed and acknowledged that USA [Compass] derives the bulk of its revenues from charging loan fees ("points") to the Borrower....

35.     Compass is not entitled to any priority payment or to change the order or priority of the remittance of funds, particularly to benefit its own interests.   To permit Compass, unilaterally, to alter the priority of payments, while imposing unwarranted, excessive, and incorrectly calculated late charges and default interest, results in an inherent conflict of interest for Compass, creates inconsistent and conflicting provisions within the Loan Servicing Agreements and constitutes a breach of the fiduciary duties that Compass owes to CCM Pathfinder and the other lenders.

36.     Compass claims that it is entitled to have any amounts recovered under the Loan applied first to the payment of its late charges and default interest because the Note grants the lenders the option to do so.  Compass cites paragraph 4 of the Note (Exhibit B), which provides, in pertinent part, as follows (emphasis added):

> 4.     Application of Payments.   All payments on this Note shall, **at the option of the Lender hereof**, be applied first to the payment of accrued interest then payable.

37.     Compass overlooks the facts that CCM Pathfinder (and the other lenders) (a) is the owner and "holder" of the Note who owns the "option," not Compass as servicer, and (b) has the right to determine whether it wishes to exercise its "option."   CCM Pathfinder, as one of the holders of the Note, would not exercise any option which would allow Compass to impose excessive and unwarranted late charges and default interest at the expense of the due and proper repayment of the Loan.

38.     Indeed, the only provision that might have extended the right to Compass to act as CCM Pathfinder's attorney-in-fact is paragraph 11 of the Loan Servicing Agreements, the very

provision that requires Compass, as CCM Pathfinder's attorney-in-fact, "to do all things and take all actions on behalf of [CCM Pathfinder] ... to protect [CCM Pathfinder's] interest under the note." (Exhibit A). Thus, either the option is held by CCM Pathfinder, and CCM Pathfinder would not exercise its option to apply the funds received to late charges and default interest before principal and non-default interest, or Compass is bound by its obligation "to protect Lender's interest under the note" to refrain from exercising that option. In either event, Compass is not entitled to place its interests ahead of CCM Pathfinder under the Loan Servicing Agreements or under any of the documents evidencing or securing the Loan.

F.    Compass Is Negligent In Servicing The Loan.

39.    Although the Loan matured nearly two years ago, and has not been repaid -- leaving millions of dollars outstanding -- Compass still has not initiated any foreclosure proceedings to enforce the rights of CCM Pathfinder and the other lenders under the Loan.

40.    In addition, CCM Pathfinder is informed and believes, and thereon alleges, that a number of the condominium units of the Property have been sold, but that Compass did not obtain any of the sales proceeds that should have been derived from the sale of those condominium units. CCM Pathfinder is informed and believes, and thereon alleges, that millions of dollars in proceeds have not been recovered for CCM Pathfinder and the other lenders. CCM Pathfinder is informed and believes, and thereon alleges, that Compass has failed to take steps to protect the interests of CCM Pathfinder and the other lenders with regard thereto. At a minimum, Compass has failed to keep CCM Pathfinder adequately informed so that CCM Pathfinder could have an adequate understanding of the circumstances giving rise to such negligence and the measures taken, if any, to correct it.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

41.    CCM Pathfinder repeats and realleges, as if set forth here in full, the allegations contained in paragraphs 1 through 40 hereof.

42.    CCM Pathfinder and Compass are parties to the Loan Servicing Agreements.

43.    Under the Loan Servicing Agreements, Compass was required "to do all things and take all actions on behalf of Lender ... and to protect Lender's interest under any note, deed of trust ... or other document pertaining to the Loan."

44.    Compass breached and repudiated the Loan Servicing Agreements and the implied covenant of good faith and fair dealing thereunder by, among other things, (1) wrongfully claiming excessive late charges and default interest, (2) wrongfully compounding default interest, (3) repudiating its obligations by clearly stating its intention to pay itself late charges and default interest before paying CCM Pathfinder the principal and interest due under the Loan, (4) failing to diligently pursue the remedies available under the Loan or to adequately protect the interests of CCM Pathfinder thereunder, (5) failing to keep CCM Pathfinder informed or to adequately disclose information to CCM Pathfinder, despite repeated requests therefor, and (6) otherwise failing to do all things and take all actions necessary to protect CCM Pathfinder's interests in the Loan and the Property.

45.    Under the Loan Servicing Agreements, Compass is entitled to recover only "late charges collected from the Borrower pursuant to the terms of the Note" and only "default interest collected from the Borrower pursuant to the terms of the Note." Although Compass has admittedly collected only $2,812 in late charges from the Borrower under the Note, and none of the default interest accrued under the Note, Compass wrongfully claimed late charges of $1,385,049.10 and default interest of $1,509,269.73.

46.   Compass further breached and repudiated the Loan Servicing Agreements by wrongfully compounding default interest. The Note does not allow interest at the default rate to be compounded. The Note provides only that interest at the non-default rate of 13% is to be compounded monthly. Nevertheless, in violation of the Note and the Loan Servicing Agreements, Compass demanded default interest in an amount compounded monthly. By doing so, Compass demanded far more default interest than the amount it was entitled to demand under the Note from the Borrower.

47.   As a direct and proximate result of Compass' breaches and repudiation of the Loan Servicing Agreements by, among other things, (1) wrongfully claiming millions of dollars in late charges and default interest that were not collected from the Borrower, (2) wrongfully compounding default interest, (3) wrongfully claiming that, on any funds recovered, Compass intends to pay itself late charges and default interest before paying CCM Pathfinder its principal and interest due, and (4) otherwise failing to do all things and take all actions necessary to protect CCM Pathfinder's interests in the Loan, CCM Pathfinder has been damaged in an amount to be determined at or before the trial of this action.

48.   In addition to the breaches and repudiations referenced above, Compass failed to diligently pursue the remedies available under the Loan or to protect the collateral securing the Loan, and breached paragraph (2)(c)(i) of the Loan Servicing Agreements, which requires Compass to "collect all payments due under the terms of the note and promptly pay the proper parties...."

49.   As a result of Compass' repeated self-dealing and breaches of the Loan Servicing Agreements, CCM Pathfinder has received nothing from its investment in the Loan since the maturity date.

50.    All conditions precedent to bringing this action have occurred, been performed, or have otherwise been waived.

## SECOND CAUSE OF ACTION
### (Breach Of Fiduciary Duty)

51.    CCM Pathfinder repeats and realleges, as if set forth here in full, the allegations contained in paragraphs 1 through 50 hereof.

52.    At all relevant times, Compass as loan servicer and attorney-in-fact, owed to CCM Pathfinder a fiduciary duty and undivided loyalty.

53.    Compass had a duty, among other things, to act in CCM Pathfinder's best interest and to protect CCM Pathfinder's interest and position with respect to the Loan.

54.    Compass breached and repudiated its fiduciary duties to CCM Pathfinder by, among other things, (1) failing to provide information relating to the Loan, the Property, the status of the "363 sale" and foreclosure proceedings; (2) wrongfully charging excessive late charges and default interest, as well as compounded default interest, in an effort to benefit itself at the expense of CCM Pathfinder, knowing that doing so is prohibited by the Note and Loan Servicing Agreements; (3) contending that it is entitled to recover late charges and default interest before CCM Pathfinder recovers any of its principal and non-default interest under the Loan; (4) failing to adequately protect the collateral securing the Loan and to keep CCM Pathfinder apprised of same; and (5) failing to promptly initiate foreclosure proceedings and obtain the appointment of a receiver.

55.    As a direct and proximate result of Compass' breaches and repudiation of its fiduciary duties to CCM Pathfinder, CCM Pathfinder has been damaged in an amount to be determined at or before the trial of this action.

56.    In doing the acts alleged herein, Compass conspired to and did act with oppression, fraud and malice, entitling CCM Pathfinder to an award of punitive damages in an amount to be ascertained at the trial of this action.

### THIRD CAUSE OF ACTION
### (Declaratory Relief)

57.    CCM Pathfinder repeats and realleges, as if set forth here in full, the allegations contained in paragraphs 1 through 56 hereof.

58.    CCM Pathfinder has a present, practical need for a declaration of its rights under the Loan Servicing Agreements.

59.    Based on the facts set forth above, a question or controversy exists as to whether Compass may claim late charges and default interest that it has not collected from the Borrower, compound default interest, pay itself late charges and default interest before paying CCM Pathfinder principal and non-default interest, delay in enforcing the remedies available to CCM Pathfinder and the other lenders under the Loan, and fail to disclose information regarding the Loan to CCM Pathfinder (even after CCM Pathfinder repeatedly requested such information).

60.    CCM Pathfinder is directly and substantially harmed by Compass' failure to perform its duties as required by the Loan Servicing Agreements.  Compass has undertaken conduct in disregard of the Loan Servicing Agreements and Note and in disregard of the rights of CCM Pathfinder thereunder, at law and in equity.

61.    Without a declaration of their rights and obligations, the controversy will continue and the parties will remain uncertain as to their rights and obligations under the Loan Servicing Agreements and Loan.

## FOURTH CAUSE OF ACTION
### (Negligence)

62.     CCM Pathfinder repeats and realleges, as if set forth here in full, the allegations contained in paragraphs 1 through 61 hereof.

63.     Compass undertook to service the Loan, and in doing so, Compass had a duty to utilize due care in performing its services in a competent manner.

64.     Compass breached that duty by, among other things, (1) failing to promptly initiate foreclosure proceedings to enforce CCM Pathfinder's rights under the Loan, (2) failing to seek the appointment of a receiver to capture the rents and other income generated by the Property, (3) allowing the sale of condominium units encumbered by the Mortgage without collecting sales proceeds derived from the sale of such condominium units, failing to monitor and promptly seek redress against the parties responsible for same and/or failing to keep CCM Pathfinder adequately apprised of the status of same, and (4) failing to disclose material information regarding the Loan and the Property to CCM Pathfinder.

65.     As a direct and proximate result of Compass' negligent conduct in failing to take steps to preserve and protect CCM Pathfinder's collateral or to properly notify CCM Pathfinder of the status of same, Compass has jeopardized the security interests of CCM Pathfinder, and CCM Pathfinder has suffered damages in an amount to be determined at trial.

FIFTH CAUSE OF ACTION
(Accounting)

66   CCM Pathfinder repeats and realleges, as if set forth here in full, the allegations contained in paragraphs 1 through 65 hereof.

67   Pursuant to the Loan Servicing Agreements and based on the fiduciary obligations that Compass owes and owed to CCM Pathfinder, among other things, CCM Pathfinder is entitled to an accounting of all Loan payments, interest, late charges, penalties, and any other charges, receipts or disbursements related to Loan and/or the Property.

68   Notwithstanding Compass' obligations with respect thereto, and CCM Pathfinder's requests therefor, Compass has failed and refused to provide an accounting, copies of books and records or access to inspect and copy the books and records relating to the Loan and/or the Property.

WHEREFORE, CCM Pathfinder demands judgment as follows:

(a)   an award to CCM Pathfinder of damages, including punitive damages and prejudgment interest, to be determined at or before the trial of this action;

(b)   a declaration that Compass is (i) prohibited from claiming late charges and default interest that Compass has not collected from the Borrower, (ii) prohibited from demanding compounded default interest, (iii) prohibited from paying itself late charges and/or default interest that is unreasonable under applicable law, (iv) obligated to pay the principal and interest due CCM Pathfinder before paying itself late charges and default interest, (v) obligated to diligently protect the collateral securing the Loan, and (vi) obligated to diligently apprise CCM Pathfinder of the status of the Loan, the Property and any foreclosure or "363 sale" of the Property and the conduct of Compass with respect thereto;

(c)    judgment directing Compass to provide an accounting of the Loan and the

Property;

(d)    an award to CCM Pathfinder of its costs and expenses, including attorneys' fees

incurred herein; and

(e)    an award of such other and further relief to CCM Pathfinder as is just and proper.

Dated: New York, New York
        June 4, 2008

DLA PIPER US LLP

By:
        Betty M. Shumener
        Todd B. Marcus
        Robert J. Odson

1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Plaintiff*
*CCM Pathfinder Pompano Bay, LLC*