UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

CCM PATHFINDER POMPANO BAY, LLC,    :

        Plaintiff,    :

   -against-    :

COMPASS FINANCIAL PARTNERS LLC    :
and COMPASS USA SPE LLC,

        Defendant.    :

------------------------------------

AND RELATED ACTIONS    :

------------------------------------ X

INDEX NO. 08 CIV 5258
INDEX NO. 08 CIV 5297
INDEX NO. 08 CIV 5298

**DECLARATION OF JOHN D.
SPURLING IN SUPPORT OF
OPPOSITION OF PLAINTIFFS TO
DEFENDANTS' MOTION FOR ORDER
TRANSFERRING VENUE TO NEVADA**

I, John D. Spurling, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am an associate with DLA Piper US LLP, counsel of record for plaintiffs CCM Pathfinder Pompano Bay, LLC and CCM Pathfinder Gramercy, LLC ("Plaintiffs"). I have personal knowledge of the facts set forth herein and if called and sworn as a witness, I could and would testify competently thereto.

2.     Attached hereto as Exhibit "A", and incorporated by reference herein, is a true and correct copy of the Order Confirming The "Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization, As Modified Herein," entered by the Nevada Bankruptcy Court on January 8, 2007.

3.     Attached hereto as Exhibit "B", and incorporated by reference herein, is a true and correct copy of the Contempt Order Re Donna M. Congelosi, entered by the Nevada District Court on November 6, 2007.

4.     Attached hereto as Exhibit "C", and incorporated by reference herein, is a true and correct copy of an Agreed Stipulation, with attached exhibits, filed with the Nevada District

Court on January 22, 2008.

5.    Attached hereto as Exhibit "D", and incorporated by reference herein, is a true and correct copy of an Agreed Stipulation, entered by the Nevada District Court on January 28, 2008.

6.    Attached hereto as Exhibit "E", and incorporated by reference herein, is a true and correct copy of a Notice of Filing of Standstill Agreement, with attached exhibits, filed with the Nevada District Court on June 12, 2008.

7.    Attached hereto as Exhibit "F", and incorporated by reference herein, is a true and correct copy of the Transcript of Proceedings, dated June 2, 2008, before the Honorable Robert C. Jones of the Nevada District Court.

8.    Attached hereto as Exhibit "G", and incorporated by reference herein, is a true and correct copy of the Debtor's Third Amended Joint Chapter 11 Plan Of Reorganization (without exhibits) filed with the Nevada Bankruptcy Court on November 15, 2006.

9.    Attached hereto as Exhibit "H", and incorporated by reference herein, is a true and correct copy of Compass's Opposition to Request For Emergency Relief, filed in the Nevada District Court on December 2, 2007.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 10th day of July 2008 in Los Angeles, California.

_____
John D. Spurling

Exhibit   A

Entered on Docket
January 08, 2007

Hon. Linda B. Riegle
United States Bankruptcy Judge

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com

Lenard E. Schwartzer, NV Bar No. 0399
Jeanette E. McPherson, NV Bar No. 0399
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>                                        Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>                                        Debtor. | |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED<br>FUND, LLC,<br>                                        Debtor. | Chapter 11<br><br>Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>                                        Debtor. | **[PROPOSED] ORDER<br>CONFIRMING THE "DEBTORS'<br>THIRD AMENDED JOINT<br>CHAPTER 11 PLAN OF<br>REORGANIZATION," AS<br>MODIFIED HEREIN** |
| In re:<br>USA SECURITIES, LLC,<br>                                        Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | **Confirmation Hearing**<br>Date:  December 19, 2006<br>Time:  10:00 a.m. |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Page 1 of 29**

USA Capital_ Proposed Confirmation Order 010807

1    Commencing on December 19, 2006 at 10:00 a.m., the Court held a hearing (the

2   "Confirmation Hearing") on the confirmation of the "Debtors' Third Amended Joint Chapter 11

3   Plan of Reorganization" (the "Third Amended Plan") proposed by USA Commercial Mortgage

4   Company ("USACM"), USA Securities, LLC ("USA Securities"), USA Capital Realty Advisors,

5   LLC ("USA Realty"), USA Capital Diversified Trust Deed Fund, LLC ("DTDF") and USA

6   Capital First Trust Deed Fund, LLC ("FTDF"), debtors and debtors in possession in the above-

7   captioned chapter 11 cases (the "Debtors"). Appearances were made as indicated in the recorded

8   transcript of the Confirmation Hearing.

9    The Court, having entered the "Findings of Fact and Conclusions of Law in Support of

10  Order Confirming the 'Third Amended Joint Chapter 11 Plan of Reorganization, as Modified

11  Herein'" (the "Findings"), which are hereby incorporated into this Confirmation Order, and

12  good cause appearing,

13  **IT HEREBY IS ORDERED THAT:**

14    1.    The Third Amended Plan, as amended or modified by this Confirmation Order, (the

15  Third Amended Plan, as so modified, being referred to herein as the "Plan"[1]) is approved and

16  confirmed under Bankruptcy Code section 1129.

17    2.    All Objections to the confirmation of the Plan, including objections to the Asset

18  Sale Transaction, that have not been stricken from the record, withdrawn, waived, or settled, and

19  all reservations of rights pertaining to confirmation of the Plan or the consummation of the Asset

20  Sale Transaction included therein or otherwise made in any pleading, correspondence, written or

21  oral statement, or other communication to the Bankruptcy Court, the Debtors, the United States

22  Trustee, the Committees, or other parties in interest are overruled on the merits.

23    3.    The Cangelosi Declaration and Loob Declaration are hereby stricken from the

24  record.

25    4.    The Sierra Liquidity Objection and H&M Objection are overruled and stricken

26

27  _____
     [1]   Terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Page 2 of 29**

1  from the record.

2       5.    The arguments raised orally at the Confirmation Hearing by The Lender Protection

3  Group regarding the classification of Class A-5 were not timely raised and are not properly before

4  the Court and, notwithstanding the foregoing, are overruled.

5       6.    The failure to reference or discuss any particular provision of the Plan in this

6  Confirmation Order or the Findings shall have no effect on this Court's approval and authorization

7  of, or the validity, binding effect, and enforceability of, such provision; and each provision of the

8  Plan is authorized and approved and shall have the same validity, binding effect, and

9  enforceability as every other provision of the Plan, whether or not mentioned in this Confirmation

10  Order or the Findings.

11       7.    The amounts, priorities, secured status, and classifications of Claims and Equity

12  Interests for purposes of the distributions to be made under the Plan shall be governed solely by

13  the terms of the Plan.  The amounts, priorities, secured status, and classifications set forth on the

14  Ballots tendered to or returned by holders of Claims and Equity Interests in connection with voting

15  on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the

16  Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise

17  affect, the actual amount, priority, secured status, or classification of such Claims and Equity

18  Interests under the Plan for distribution purposes, and (c) shall not be binding on, or used as

19  evidence against the Debtors or the Post-Effective Date Entities for any purpose other than with

20  respect to voting on the Plan.

21  **Binding Effect**

22       8.    The provisions of the Plan and this Confirmation Order shall bind (a) the Debtors

23  and their respective Estates, (b) the Post-Effective Date Entities, (c) the USACM Trust

24  Committee,  USACM Trustee, the DTDF Administrator, and the DTDF Post-Effective Date

25  Committee (d) Compass Partners LLC, who is the Asset Purchaser under the Plan ("Compass"),

26  (e) all creditors of the Debtors; (f) all Direct Lenders; (g) all parties in interest; and (h) and any

27  holder of an Administrative Expense Claim or Claim against or Equity Interest in any of the

28  Debtors, including all federal, state, and local governmental entities and fiscal intermediaries

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

**Page 3 of 29**

1  thereof, whether or not (i) the Administrative Expense Claim, Claim, or Equity Interest of such

2  holder is impaired under the Plan, (ii) such holder or entity has voted to accept or reject the Plan,

3  and (iii) such holder or entity has filed or is deemed to have filed proof of Claim or Equity

4  Interest, made a demand for payment of an Administrative Expense Claim, or has made

5  appearance has been made in these Chapter 11 Cases.

6  **No Substantive Consolidation / Recharacterization**

7       9.    In consideration of the compromises set forth in the Plan, the DTDF Committee in

8  open court waived any right to seek substantive consolidation of the Debtors' Estates and waived

9  any right to seek recharacterization of (i) the notes and deeds of trust in which the Direct Lenders

10  hold interests as property of the Debtors' Estates or (ii) the Direct Lenders' interests in such notes

11  and deeds of trust as unsecured claims against the Debtors' Estates.

12       10.    On the Effective Date, all of the assets of each Debtor shall be sold, transferred,

13  distributed or retained by each of such Debtor's respective Estates, or the Post-Effective Date

14  Entities created for each such Debtor and its Estate under the Plan, with all proceeds of sold,

15  transferred, or liquidated assets of each Debtor being retained by the respective Debtor's Estate, or

16  the Post-Effective Date Entities created for each such Debtor and its Estate under the Plan. All

17  Claims against and Equity Interests in the Debtors and their respective Estates shall be retained by

18  the holders of Allowed Claims and Allowed Equity Interests against and in the respective Estates,

19  except as otherwise provided for under the Plan. The allowance, voting, treatment and

20  distributions on account of Allowed Claims and Allowed Equity Interests shall be as set forth in

21  the Plan on an individual Estate basis.

22       11.    Nothing in the Plan or this Confirmation Order shall be deemed to recharacterize

23  either (i) the notes and deeds of trust in which the Direct Lenders hold interests as property of the

24  Debtors' Estates or (ii) the Direct Lenders' interests in such notes and deeds of trust as unsecured

25  claims against the Debtors' Estates.

26  **Asset Sale Transaction**

27       12.    The Asset Purchase Agreement, dated and effective as of December 8, 2006

28  [Docket No. 2164] (the "Asset Purchase Agreement"), made by and between USACM and FTDF

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  (together with USACM, the "Sellers") and DTDF, USA Realty and USA Securities, as

2  acknowledging parties, and Compass is hereby approved.

3      13.    The Debtors and Compass, as may be mutually agreed by such parties, are hereby

4  authorized to consummate the Asset Purchase Agreement at any time following ten (10) days after

5  entry of this Confirmation Order, which may occur prior to the Effective Date of the Plan.

6      14.    Except as expressly permitted or otherwise specifically provided for in the Asset

7  Purchase Agreement or this Confirmation Order, pursuant to sections 105(a), 1123, and 363(f) of

8  the Bankruptcy Code, the Acquired Assets shall be transferred to the Asset Purchaser on the terms

9  and conditions set forth in the Asset Purchase Agreement, and upon Closing shall be, free and

10  clear of all liens, claims, interests, obligations and encumbrances whatsoever, including, but not

11  limited to, (A) all monetary and non-monetary defaults and rights that purport to give to any party

12  a right or option to effect any forfeiture, modification, right of first refusal, or termination of the

13  Sellers' or the Asset Purchaser's interest in, or rights in or under, the Acquired Assets, or any

14  similar rights, based in any way on any action taken (or failed to be taken) by any of the Debtors

15  or any other matter or occurrence relating to the period prior to the Closing (other than any right

16  that existed and was matured and exercisable, as of the Petition Date, to effect a substitution of

17  USACM as loan servicer under Section 3 of any Loan Servicing Agreement, as well as any

18  defenses of the loan servicer thereto (a "Surviving Section 3 Right")); (B) taxes arising under or

19  out of, in connection with, or in any way relating to the existence, ownership, management or

20  servicing of the Acquired Assets prior to the Closing; and (C) (i) all mortgages, deeds of trust,

21  security interests, conditional sale or other title retention agreements, pledges, liens, judgments,

22  demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including,

23  but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of

24  any attributes of ownership and (ii) all debts arising in any way in connection with any

25  agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or

26  affiliates; all claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, rights

27  of recoupment or setoff, demands, guaranties, options, rights, restrictions, interest and matters of

28  any kind and nature in any way relating to the existence, ownership, management or servicing of

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel. (702) 228-7590 • Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  the Acquired Assets prior to Closing, whether known or unknown, contingent or otherwise,

2  whether arising prior to or subsequent to the commencement of these cases pursuant to chapter 11

3  of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or

4  otherwise, including but not limited to claims otherwise arising under doctrines of successor

5  liability (collectively, "Interests"); provided, however, that, in connection with any attempted post-

6  Closing exercise of a Surviving Section 3 Right: (a) the Direct Lenders must provide Compass at

7  least thirty (30) days prior written notice of the intended exercise of such right in accordance with

8  section 8 of the Loan Servicing Agreement, (b) Compass shall have the right to challenge the

9  exercise of such Surviving Section 3 Right by filing a motion with this Court prior to the

10  expiration of such thirty (30) day period to determine whether such Surviving Section 3 Right has

11  been properly and validly exercised (the "Compass Motion") and the Court shall retain jurisdiction

12  to adjudicate any such disputes, (c) in the event Compass timely files such Compass Motion, the

13  effectiveness of the attempted exercise of such Surviving Section 3 Right shall be stayed pending

14  this Court's entry of an order in respect of the Compass Motion, and (d) the post-Closing survival

15  of such Surviving Section 3 Right shall not impair in any respect any rights or interests of

16  Compass under the Loan Servicing Agreements, including, without limitation, its rights under

17  Section 2(c)(iii) of the Loan Servicing Agreement.  In the event of a proper exercise of remedies

18  under Section 3 of the Loan Servicing Agreement, (i) neither the Direct Lenders nor any

19  replacement servicer selected by such Direct Lender shall have the right or ability to compromise,

20  subordinate, or impair, in any respect, any rights, claims or interests purchased by Compass from

21  the Estates for default interest, accrued servicing fees, late charges, success fees, or other amounts

22  under the Loan Servicing Agreement, and (ii) this Confirmation Order shall be binding upon such

23  replacement servicer regardless of whether such replacement servicer actually received such copy

24  of the Confirmation Order.

25       15.    Any and all such Interests whatsoever shall attach to the net proceeds of the Asset

26  Sale Transaction in the order of their priority, with the same validity, force and effect which they

27  now have as against the Acquired Assets, subject to any claims and defenses that the Sellers may

28  possess with respect thereto.

USA Capital_ Proposed Confirmation Order 010807

1    16.    Upon the Closing of the Asset Sale Transaction, the Sellers are hereby authorized

2    to pay SPCP, LLC the Break-Up Fee from the proceeds of the Asset Sale Transaction.

3    17.    The transfer of the Acquired Assets to the Asset Purchaser pursuant to the Asset

4    Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets, and

5    shall vest the Asset Purchaser with all right, title, and interest of the Sellers in and to the Acquired

6    Assets free and clear of all Claims and Interests of any kind or nature whatsoever.

7    18.    If any Person or entity that has filed financing statements, mortgages, mechanic's

8    liens, lis pendens, or other documents or agreements evidencing Interests in the Acquired Assets

9    shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed

10    by the appropriate parties, termination statements, instruments of satisfaction, releases of all

11    Interests which the Person or entity has with respect the Acquired Assets or otherwise, then (a) the

12    Sellers are authorized and directed to execute and file such statements, instruments, releases and

13    other documents on behalf of the Person or entity with respect to the Acquired Assets and (b) the

14    Asset Purchaser is authorized to file, register, or otherwise record a certified copy of this

15    Confirmation Order, which, once filed, registered or otherwise recorded, shall constitute

16    conclusive evidence of the release of all Interests in the Acquired Assets of any kind or nature

17    whatsoever.

18    19.    The consideration provided by the Asset Purchaser for the Acquired Assets under

19    the Asset Purchase Agreement is, and shall be deemed, to constitute reasonably equivalent value

20    and fair consideration under the Bankruptcy Code and under the laws of the United States, any

21    State (including Nevada), territory, possession, or the District of Columbia.

22    20.    This Confirmation Order (a) shall be effective as a determination that, on the

23    Closing, all Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to

24    the Closing have been unconditionally released, discharged and terminated (other than any

25    obligations expressly assumed by the Asset Purchaser under the Asset Purchase Agreement), and

26    that the conveyances described herein have been effected, and (b) shall be binding upon and shall

27    govern the acts of all entities including without limitation, all filing agents, filing officers, title

28    agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  administrative agencies, governmental departments, secretaries of state, federal, state, and local

2  officials, and all other persons and entities who may be required by operation of law, the duties of

3  their office, or contract, to accept, file, register or otherwise record or release any documents or

4  instruments, or who may be required to report or insure any title or state of title in or to any of the

5  Acquired Assets.

6       21.    Each and every federal, state, and local governmental agency or department is

7  directed to accept any and all documents and instruments necessary and appropriate to

8  consummate the transactions contemplated by the Asset Purchase Agreement.

9       22.    All entities who are presently, or on the Closing may be, in possession of any or all

10  of the Acquired Assets are directed to surrender possession of the Acquired Assets to the Asset

11  Purchaser on the Closing; provided, however, that, pursuant to the Asset Purchase Agreement,

12  only working copies of the relevant databases and servicing and reporting software, will be

13  delivered to the Asset Purchaser, with the originals being retained by USACM and transferred to

14  the USACM Trust.

15       23.    This Court retains jurisdiction as set forth in Section VIII.D. of the Plan, including

16  the jurisdiction to enforce and implement the terms and provisions of this Confirmation Order and

17  the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, in

18  all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the

19  Acquired Assets to the Asset Purchaser pursuant to the terms of this Confirmation Order and the

20  Asset Purchase Agreement; and (b) to protect the Asset Purchaser against any Interests against the

21  Sellers or the Acquired Assets.

22       24.    Except for any liabilities expressly assumed by the Asset Purchaser pursuant to the

23  Asset Purchase Agreement (the "Assumed Liabilities"), the sale of the Acquired Assets shall be

24  free and clear of, and the Asset Purchaser shall have no liability or responsibility for, any Interests

25  Without limiting the generality of the foregoing, and except as otherwise specifically provided in

26  the Asset Purchase Agreement and this Confirmation Order, to the extent allowed by law, the

27  Asset Purchaser shall not be liable for any Claims or Interests against the Sellers or any of their

28  predecessors or affiliates or the Acquired Assets, and the Asset Purchaser shall have no successor

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

1    or vicarious liabilities of any kind or character including, but not limited to, any such liability that

2    may be imposed by statute (e.g., under so-called "bulk sale" laws) or any theory of antitrust,

3    environmental, successor or transferee liability, labor law, de facto merger, or substantial

4    continuity, whether known or unknown as of the Closing, now existing or hereafter arising,

5    whether matured, unmatured, fixed or contingent, with respect to the Sellers or any obligations of

6    the Sellers or the Acquired Assets arising prior to the Closing, including, but not limited to,

7    liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with,

8    or in any way relating to the existence, ownership, management or servicing of the Acquired

9    Assets prior to the Closing.

10    　　　25.    Under no circumstances shall the Asset Purchaser be deemed a successor of or to

11    the Sellers for any Interest against or in the Sellers or the Acquired Assets of any kind or nature

12    whatsoever. The sale, transfer, assignment and delivery of the Acquired Assets shall not be

13    subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and

14    continue to be obligations of, the Sellers. All Persons holding Interests against or in the Sellers or

15    the Acquired Assets of any kind or nature whatsoever (including but not limited to, the Sellers

16    and/or their respective successors, including any trustee's thereof, creditors, lenders to any of the

17    Sellers, Direct Lenders, borrowers, employees, unions, former employees and shareholders,

18    administrative agencies, governmental units, secretaries of state, federal, state and local officials,

19    maintaining any authority relating to any environmental, health and safety laws, and their

20    respective successors or assigns) shall be, and are, forever barred, estopped, and permanently

21    enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature

22    whatsoever against the Asset Purchaser, its property, its successors and assigns, or the Acquired

23    Assets, as an alleged successor or otherwise, with respect to any Interest of any kind or nature

24    whatsoever such Person or entity had, has, or may have against or in the Sellers, their estates,

25    officers, directors, shareholders, or the Acquired Assets. Following the Closing, no holder of an

26    Interest in the Sellers shall interfere with the Asset Purchaser's title to or use and enjoyment of the

27    Acquired Assets based on or related to such Interest, or any actions that the Sellers may take in

28    their Chapter 11 Cases.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

26.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Asset Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Sale Transaction shall not affect the validity of the Asset Sale Transaction or any rights or protections accorded Asset Purchaser under the Asset Purchase Agreement or this Confirmation Order, unless such authorization is duly stayed pending such appeal. The Asset Purchaser is a purchaser in good faith of the Acquired Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

27.     The transfer of the Acquired Assets pursuant to the Asset Sale Transaction is a transfer pursuant to section 1146(c) of the Bankruptcy Code, and accordingly, the transfer of the Acquired Assets (including without limitation both real and personal property) to Asset Purchaser does not and will not subject the Sellers or Asset Purchaser, their affiliates or designees to any liability for any law imposing a mortgage or recording tax, transfer tax, stamp tax, sales tax, use or similar tax or any so-called "bulk-sale", to the fullest extent permitted by Section 1146(c) of the Bankruptcy Code. Each and every federal, state and local government agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of any of the Acquired Assets, all without imposition or payment of any stamp tax, transfer tax, or similar tax.

**Post-Effective Date Entities**

28.     Pursuant to Article IV, Section D.1. of the Plan, on the Effective Date, all assets of the USACM Estate not collected or disposed of on or prior to the Effective Date, including (a) Cash and noncash proceeds, (b) loans made to Placer Vineyards, Marquis Hotel, Colt Gateway LLC, and Colt Second TD and all related fees and default interest on the Placer Vineyards, Marquis Hotel, Colt Gateway LLC, and Colt Second TD loans, including the Loan Servicing Agreements related to the Placer Vineyards, Marquis Hotel, Colt Gateway LLC, and Colt Second TD loans, all other Notes Receivable (including the Investment Partners Note) and all Accounts Receivable, computers and software, (c) the Prepaid Interest (including Prepaid Interest collected by the Asset Purchaser post-Closing and including the DTDF Prepaid Interest, subject to the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    objection of the DTDF Committee, which shall be determined by the Court if not settled), (d) the

2    USACM Accounts (including USACM Estate's share of the IP $58 Million Promissory Note), (e)

3    all USACM Litigation Claims, including without limitation the Non-Debtor Insider Litigation,

4    belonging to or assertable by the USACM Estate, and (f) the FTDF Litigation Claims  transferred

5    to USACM pursuant to Article IV, Section E.2.j of the Plan (collectively, the "USACM Trust

6    Assets"), minus any Cash needed to make the payments required to be made on the Effective Date

7    pursuant to the Plan or needed to fund the reserves required to be established on the Effective

8    Date, shall vest in the USACM Trust, pursuant to the Plan and shall be transferred to the USACM

9    Trust as soon as practicable thereafter.

10        29.    As of the Effective Date and pursuant to Article IV, Section D.2. of the Plan, all

11   assets of the DTDF Estate not collected or disposed of prior to the Effective Date, including (a)

12   Cash and noncash proceeds, (b) the DTDF Loans (including but not limited to rights associated

13   with the former Epic and Sheraton Loans and the Loan Servicing Agreements for the Excluded

14   DTDF Loans), (c) the FTDF Transferred Assets, (d) all DTDF Litigation Claims, including

15   without limitation the Non-Debtor Insider Litigation, belonging to or assertable by the DTDF

16   Estate, and (e) the DTDF Estate's share of the IP $58 Million Promissory Note (collectively, the

17   "DTDF Assets") shall remain the property of DTDF after the Effective Date.  Post-Effective Date

18   DTDF shall also be funded with Pro Rata distributions from the USACM Trust on account of the

19   Allowed DTDF Unsecured Claim.

20        30.    The Liquidating Trust Agreement as filed with the Court is approved, and Geoffrey

21   L. Berman is approved as the USACM Trustee.  On and after the Effective Date, the USACM

22   Trust and the USACM Trustee shall have all powers and duties set forth in the Plan and in the

23   USACM Trust.

24        31.    The DTDF Amended Operating Agreement as filed with the Court is approved, and

25   Michael Tucker is approved as the DTDF Administrator.  On and after the Effective Date, the

26   Post-Effective Date DTDF and DTDF Administrator shall have all powers and duties set forth in

27   the Plan and in the DTDF Amended Operating Agreement.

28        32.    As of the Effective Date, the USACM Trust Committee shall have the rights,

1    powers, privileges, responsibilities, and authority as set forth in the Plan and in the USACM Trust.

2        33.    As of the Effective Date, the DTDF Post-Effective Date Trust Committee shall

3    have the rights, powers, privileges, responsibilities, and authority as set forth in the Plan and in the

4    DTDF Amended Operating Agreement.

5        34.    As of the Effective Date, USACM shall irrevocably assign, transfer and convey to

6    the USACM Trust, all right, title and interest in and to the USACM Trust Assets, including, but

7    not limited to, all USACM Litigation Claims and the FTDF Litigation Claims.  All USACM

8    Litigation Claims and the FTDF Litigation Claims accruing to USACM or FTDF, respectively, or

9    their respective Estates shall remain assets of and vest in the USACM Trust, whether or not

10   litigation relating thereto is pending on the Effective Date.  Neither USACM, FTDF, their

11   respective Estates nor the USACM Trust waives, relinquishes, or abandons any USACM

12   Litigation Claim or FTDF Litigation Claim which constitutes property of their respective Estates,

13   regardless of whether or not litigation relating thereto is pending on the Effective Date and

14   whether or not any such right or cause of action has been listed or referred to in the Plan, the

15   Disclosure Statement or any schedule, exhibit or other document filed in connection therewith.

16       35.    The USACM Trust shall have full power and authority to prosecute, compromise or

17   otherwise resolve any and all such USACM Litigation Claims and FTDF Litigation Claims, with

18   all recoveries derived therefrom to be distributed under the Plan.  The USACM Trust and the

19   Estates shall not be barred by res judicata, collateral estoppel, judicial estoppel, issue preclusion or

20   otherwise after Confirmation from prosecuting the USACM Litigation Claims or FTDF Litigation

21   Claims.  To the full extent permitted by law, USACM will be deemed to irrevocably transfer to the

22   USACM Trustee, as its legal successor, all rights of USACM and the USACM Estate (including

23   the USACM Estate after the Confirmation Date) to exercise or waive any attorney-client privilege,

24   accountant-client privilege, work-product privilege or other privilege or immunity attaching to any

25   documents or communications (whether written or oral) as set forth in the Liquidating Trust

26   Agreement, and USACM and the USACM Trustee are authorized to take all necessary actions to

27   effectuate the transfer of the Privileges.

28       36.    On and after the Effective Date, pursuant to the Asset Purchase Agreement and the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Plan, the USACM Trust shall have or, if it does not have, be granted access to all databases,

2   software, documents, records and original computers and related hardware currently owned by, or

3   currently in the possession or control of, any of the Debtors, which, in the discretion of the

4   USACM Trust, are deemed to be necessary.  The foregoing shall include, but not be limited to,

5   electronic copies (in a form that will enable the USACM Trust to use and manipulate the data), all

6   software and systems, all hardware, all documents, all records (including reconstructed Loan

7   ledgers and other documents created during the Chapter 11 Cases), and all original computers and

8   related hardware that are necessary for the USACM Trust to administer or service any Loans, to

9   object to Claims against and Equity Interests in USACM, to prosecute or defend any litigation to

10  which USACM, the USACM Estate or the USACM Trust is a party, to administer and/or manage

11  the USACM Trust, and to make distributions to the beneficiaries of the USACM Trust.

12  Notwithstanding anything to the contrary herein, as agreed in the Asset Purchase Agreement, the

13  USACM Trust shall retain the original relevant databases and servicing and reporting software.

14        37.    All DTDF Litigation Claims accruing to DTDF or its Estate shall remain assets of

15  the Post-Effective Date DTDF, whether or not litigation relating thereto is pending on the

16  Effective Date.  Neither DTDF, its Estate nor Post-Effective Date DTDF waives, relinquishes, or

17  abandons any DTDF Litigation Claim which constitutes property of its Estate, regardless of

18  whether or not litigation relating thereto is pending on the Effective Date and whether or not any

19  such right or cause of action has been listed or referred to in the Plan, the Disclosure Statement or

20  any schedule, exhibit or other document filed in connection therewith.

21        38.    Post-Effective Date DTDF shall have full power and authority to prosecute,

22  compromise or otherwise resolve any and all such DTDF Litigation Claims, with all recoveries

23  derived therefrom to be distributed under the Plan.  The Post-Effective Date DTDF and the DTDF

24  Estate shall not be barred by res judicata, collateral estoppel, judicial estoppel, issue preclusion or

25  otherwise after Confirmation from prosecuting the DTDF Litigation Claims.

26        39.    On and after the Effective Date, pursuant to the Asset Purchase Agreement and the

27  Plan, Post-Effective Date DTDF shall have or, if it does not have, be granted access to all

28  databases, software, documents, records and original computers and related hardware currently

USA Capital_ Proposed Confirmation Order 010807

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590    Fax: (702) 892-0122

1  owned by, or currently in the possession or control of, any of the Debtors, which, in the discretion

2  of Post-Effective Date DTDF, are deemed to be necessary. The foregoing shall include, but not be

3  limited to, electronic copies (in a form that will enable Post-Effective Date DTDF to use and

4  manipulate the data), all databases, all software and systems, all hardware, all documents and all

5  records (including the reconstructed Loan ledgers and other documents created during the Chapter

6  11 Cases), and all original computers and related hardware that are necessary for Post-Effective

7  Date DTDF to collect upon and otherwise administer its retained Loans, to object to Claims

8  against and Equity Interests in DTDF and Post-Effective Date DTDF, to prosecute or defend any

9  litigation to which DTDF, the DTDF Estate or the Post-Effective Date DTDF is a party, to

10  administer and/or manage Post-Effective Date DTDF, and to make distributions to the holders of

11  Allowed Claims against and Equity Interests in DTDF and Post-Effective Date DTDF.

12      40.    USACM Trust and Post-Effective Date DTDF shall retain their respective share of

13  the Non-Debtor Insider Litigation and may, without further order of this Court, enter into a joint

14  prosecution or sharing agreement with each other.

15      41.    The Debtors, the Debtors' officers, the USACM Trustee, and the DTDF

16  Administrator are authorized to take all actions necessary to implement the Plan and the

17  transactions contemplated therein in accordance with the terms of the Plan, and are authorized to

18  execute, deliver, file, or record such contracts, instruments, releases, and other agreements or

19  documents and to take such other actions as they may determine to be necessary or appropriate to

20  effectuate, implement, and further evidence the terms and conditions of the this Confirmation

21  Order, the Plan, the Plan Documents Supplement, the Direct Lender Supplement, or the exhibits

22  and schedules to any of the foregoing, <u>and any or all such documents shall be accepted by each of</u>

23  <u>the respective local or state filing offices and recorded in accordance with applicable state law and</u>

24  <u>shall become effective in accordance with their terms and the provisions of state law.</u>

25  **Intercompany Compromises.**

26      42.    As set forth in Article IV, Section E.1. of the Plan, the compromise between

27  USACM and the Direct Lenders is hereby approved.

28      43.    As set forth in Article IV, Section E.2. of Art. IV of the Plan, the compromise

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

1    between USACM and FTDF is hereby approved.

2        44.    As set forth in Article IV, Section E.3. of Art. IV of the Plan, the compromise

3    between FTDF and DTDF is hereby approved.

4        45.    As set forth in Article IV, Section E.4. of Art. IV of the Plan, the compromise

5    between FTDF and USA Realty is hereby approved.

6        46.    As set forth in Article IV, Section E.5. of Art. IV of the Plan, the compromise

7    between DTDF and USA Realty is hereby approved.

8    **Loan Distributions, Loan Servicing Agreements, Loans And Deeds of Trust**

9        47.    After the Effective Date, and except as otherwise provided in the Plan, the Direct

10   Lenders and Post-Effective Date DTDF shall be entitled to distributions from the Direct Lender

11   Loans in accordance with the related Loan Servicing Agreements, the applicable loan and security

12   documents, and applicable Nevada law, by the Asset Purchaser, as the third party servicer.  In

13   accordance with Article IV, Section E.1.d.ii of the Plan, Section 7.3 of the Asset Purchase

14   Agreement and any other orders of this Court, the Asset Purchaser is authorized and directed to

15   net Prepaid Interest sums due from Direct Lenders and collect Prepaid Interest from Borrowers,

16   and remit those amounts to USACM or the USACM Trust, as applicable.  After the Closing, the

17   Direct Lenders are obligated to comply with the terms of the applicable Loan Servicing

18   Agreements including the obligation to pay the fees at the rate expressed as a percentage specified

19   in Section 5 thereof, without regard to any inconsistent offering circular or other document;

20   provided, however, that solely as to the timely filed objections by (i) Erna D. Grundman and

21   Joanne M. Grundman, jointly, (ii) Joanne M. Grundman, and (iii) Gregory Walch and Shauna

22   Walch to the Loan Servicing Fee Schedule: (i) such objections concerning pre-Closing servicing

23   fees shall be resolved as between USACM and the objecting Direct Lenders under the Alternative

24   Dispute Resolution Agreement; and (ii) entry of the Confirmation Order shall not resolve such

25   objections concerning post-Closing servicing fees as between the Asset Purchaser and the

26   objecting Direct Lender.

27       48.    Nothing in the Plan or this Confirmation Order shall be deemed to modify, in any

28   respect, the Direct Lenders' notes or the deeds of trust securing such notes.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

**Preservation of Rights of Action and Defenses.**

1

2    49.    Except to the extent such rights, Claims, causes of action, defenses, and

3  counterclaims are expressly and specifically released in connection with the Plan or in any

4  settlement agreement approved during the Chapter 11 Cases, (1) any and all rights, Claims, causes

5  of action, defenses, and counterclaims accruing to or assertable by the Debtors or their Estates,

6  including without limitation any and all Litigation Claims, the Non-Debtor Insider Litigation,

7  Claims related to the Undistributed Cash and Claims for Prepaid Interest shall remain assets of

8  such Estates and be assertable by the Debtors or such Estates, and to the extent applicable, be

9  transferred to and assertable by any respective Post-Effective Date Entity, whether or not litigation

10  relating thereto is pending on the Effective Date, and whether or not any such rights, Claims,

11  causes of action, defenses, and counterclaims have been Scheduled or otherwise listed or referred

12  to in the Plan or Disclosure Statement, or any other document Filed with the Court, and (2) neither

13  the Debtors nor the Post-Effective Date Entities is hereby deemed to waive, relinquish, or abandon

14  (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, cause of

15  action, defense, or counterclaim that constitutes property of such Debtor's Estate or is assertable

16  by such Estate: (A) whether or not such right, Claim, cause of action, defense, or counterclaim has

17  been listed or referred to in the Schedules, the Plan, the Disclosure Statement, or any other

18  document Filed with the Court, (B) whether or not such right, Claim, cause of action, defense, or

19  counterclaim is currently known to the Debtors, and (C) whether or not a defendant in any

20  litigation relating to such right, Claim, cause of action, defense, or counterclaim filed a proof of

21  Claim in the Chapter 11 Cases, filed a notice of appearance or any other pleading or notice in the

22  Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under

23  the Plan.  Without in any manner limiting the scope of the foregoing, notwithstanding any

24  otherwise applicable principle of law or equity, including, without limitation, any principles of

25  judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the

26  failure to list, disclose, describe, identify, or refer to a right, Claim, cause of action, defense, or

27  counterclaim, or potential right, Claim, cause of action, defense, or counterclaim, in the Schedules,

28  the Plan, the Disclosure Statement, or any other document Filed with the Court shall in no manner

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

1    waive, eliminate, modify, release, or alter the Debtors or the Post-Effective Date Entities' rights to

2    commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action,

3    defenses, or counterclaims that any of the Debtors or the Estates has or may have as of the

4    Confirmation Date. The Debtors or the Post-Effective Date Entities may commence, prosecute,

5    defend against, recover on account of, and settle all rights, Claims, causes of action, defenses, and

6    counterclaims in their sole discretion in accordance with what is in the best interests, and for the

7    benefit, of the Debtors or the Post-Effective Date Entities.

8    **Nondischarge of Debtors and Injunction.**

9         50.    **Pursuant to Article IV, Section H. of the Plan and section 1141(d)(3) of the**

10   **Bankruptcy Code, the Confirmation Order shall not discharge Claims against or Equity**

11   **Interests in the Debtors. However, no holder of a Claim or Equity Interest may receive any**

12   **payment from or seek recourse against any assets that are distributed or to be distributed**

13   **under the Plan, except for those assets required to be distributed to such holder as expressly**

14   **provided for in the Plan. As of the Effective Date, all Entities are precluded from asserting**

15   **against any assets that are distributed or to be distributed under the Plan any Claims, rights,**

16   **causes of action, liabilities or interests based upon any act or omission, transaction or other**

17   **activity of any kind or nature that occurred prior to the Effective Date, other than as**

18   **expressly provided in the Plan or Confirmation Order, regardless of the filing, lack of filing,**

19   **allowance or disallowance of such a Claim or Equity Interest and regardless of whether such**

20   **an Entity has voted to accept the Plan.**

21        51.    **Except as otherwise provided in the Plan or this Confirmation Order, on and**

22   **after the Effective Date all Entities that have held, currently hold or may hold a debt, Claim,**

23   **other liability or Equity Interest against or in the Debtors that would be discharged upon**

24   **confirmation of the Plan on the Effective Date but for the provisions of section 1141(d)(3) of**

25   **the Bankruptcy Code shall be permanently enjoined from taking any of the following actions**

26   **on account of such debt, Claim, liability, Equity Interest or right: (A) commencing or**

27   **continuing in any manner any action or other proceeding on account of such debt, Claim,**

28   **liability, Equity Interest or right against assets or proceeds thereof that are to be distributed**

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

1    under the Plan, other than to enforce any right to a distribution with respect to such assets

2    or the proceeds thereof as provided under the Plan; (B) enforcing, attaching, collecting or

3    recovering in any manner any judgment, award, decree, or order against any assets to be

4    distributed to creditors under the Plan, other than as permitted under subparagraph (A)

5    above; and (C) creating, perfecting or enforcing any lien or encumbrance against any assets

6    to be distributed under the Plan, other than as permitted by the Plan, provided that nothing

7    contained herein shall limit the rights of any distributee under the Plan from taking any

8    actions in respect of property distributed or to be distributed to it under the Plan.

9    **Executory Contracts and Unexpired Leases**

10           52.    Pursuant to the Debtors' Revised Schedule of Executory Contracts And Unexpired

11    Leases In Connection With Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization,

12    filed on December 18, 2006 (docket no. 2162), all executory contracts and unexpired Leases of the

13    Debtors are hereby rejected, effective as of the Effective Date.

14           53.    Pursuant to Article V, Section B.3. of the Plan, if the rejection of an executory

15    contract or unexpired lease by any of the Debtors pursuant to Article V, Section B.1. of the Plan

16    results in damages to the other party or parties to such contract or lease, a request for payment of

17    any and all Claims allegedly arising from a Debtor's rejection of executory contracts or unexpired

18    leases, whether rejected under the Plan or by separate proceeding, must be Filed on or before the

19    first Business Day which is thirty (30) calendar days after the date of service of notice of entry of

20    the Confirmation Order.  Failure to File such a request for payment prior to the time set forth

21    herein shall be forever barred from asserting such Claims against the Debtors, the Estates, the

22    Post-Effective Date Entities and/or any other Entity or any of their respective property, and the

23    Debtors, the Estates, and the Post-Effective Date Entities, to the extent applicable, shall be

24    discharged of any obligation on such Claim or any other Claim related such Claim.

25    **Administrative Expense Claims and Objections to Claims**

26           54.    Pursuant to Article II, Section B.1.c.i. of the Plan, except as provided in Article II,

27    Sections B.1.c.ii. and  B.1.c.iii. of Art. II of the Plan, requests for payment of Administrative

28    Expense Claims must be Filed and served on the Debtors and the Post-Effective Date Entities, the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Committees (to the extent such Committees are not dissolved) and the U.S. Trustee by no later

2   than thirty (30) days after the Effective Date (the "Administrative Expense Claim Bar Date")  Any

3   holder of an Administrative Expense Claim who fails to File a request seeking to have its Claim

4   Allowed on or before the Administrative Expense Claim Bar Date shall be forever barred from

5   seeking the allowance of its Administrative Expense Claim, and the Debtors and their Estates,

6   including any Post-Effective Date Entities, if applicable, shall be discharged of any obligation on

7   such Claim or any other Claim related to the Administrative Expense Claim.

8        55.    Pursuant to Article II, Section B.1.c.ii. of the Plan,  all Professionals or other

9   Entities requesting compensation or reimbursement of expenses under sections 327, 328, 330, 331,

10  503(b) and/or 1103 of the Bankruptcy Code for services rendered before the Effective Date

11  (including any compensation requested by any professional or any other Entity for making a

12  substantial contribution in the Chapter 11 Cases under section 503(b)(3)(D) of the Bankruptcy

13  Code) shall File and serve on the Debtors, the Post-Effective Date Entities, the Committees (to the

14  extent such Committees are not yet dissolved) and the U.S. Trustee an application for final

15  allowance of compensation and reimbursement of expenses no later than forty-five (45) days after

16  the Effective Date (the "Professionals Administrative Expense Claim Bar Date").  Any objections

17  to such applications must be Filed and served in accordance with applicable law, including

18  Nevada District Court Local Rule 9014.  Any Professional who fails to File an application

19  requesting payment on or prior to the Professionals Administrative Expense Claim Bar Date shall

20  be forever barred from seeking the allowance of its Administrative Expense Claim or any other

21  Claim, and the Debtors, their Estates and any Post-Effective Date Entities, if applicable, shall be

22  discharged of any obligation on such Claim or any other Claim related to the Professional's Claim.

23       56.    Pursuant to Article II, Section B.1.c.iii. of the Plan,  holders of Ordinary Course

24  Administrative Expense Claims shall not be required to File any request for payment of such

25  Claims by the Administrative Expense Claim Bar Date. Each Ordinary Course Administrative

26  Expense Claim shall be assumed and paid by the obligated Estate under the terms and conditions

27  of the particular transaction giving rise to that Ordinary Course Administrative Expense Claim,

28  without any further action by the holder of such Ordinary Course Administrative Expense Claim

USA Capital_ Proposed Confirmation Order 010807

57.     Pursuant to Article II, Section B.1.c.iv. of the Plan, all holders of Administrative Expense Claims (including without limitation, Professionals requesting compensation or reimbursement of expenses), except holders of Ordinary Course Administrative Expense Claims, are required to File a request for payment of such Claims in accordance with the Plan.  Failure to File a request for payment of an Administrative Expense Claim prior to the Administrative Expense Claim Bar Date or the Professionals Administrative Expense Claim Bar Date, as applicable, shall forever bar the holder from asserting such Claims against the Debtors, the Estates, the Post-Effective Date Entities and any other Entity or any of their respective property, and the Debtors, the Estates and the Post-Effective Date Entities, to the extent applicable, shall be discharged of any obligation on such Claim or any other Claim related to the Administrative Expense Claim.

58.     The Post-Effective Date Entities, the FTDF Committee (to the extent it is still in existence) or FTDF (for the benefit of and on behalf of the FTDF Estate), USA Realty on behalf of the USA Realty Estate and USA Securities on behalf of the USA Securities Estate, shall be responsible for Filing objections to any and all Claims and Equity Interests that are Disputed Claims or Disputed Equity Interests asserted against its respective Estate.  The Post-Effective Date Entities, the FTDF Committee (to the extent it is still in existence) or FTDF (for the benefit of and on behalf of the FTDF Estate), USA Realty on behalf of the USA Realty Estate and USA Securities on behalf of the USA Securities Estate have the authority to settle and compromise any objection to a Disputed Claim or Disputed Equity Interest, if appropriate, without further order of the Court, and they may assert any and all Claims, rights of action, causes of action, counterclaims and defenses held by their respective Estates.  The Estates, including the Post-Effective Date Entities, may, but shall not be required to, set off or recoup against any Claim or Equity Interest and the distributions to be made pursuant to the Plan in respect of such Claim or Equity Interest, any counterclaims, setoffs, or recoupment of any nature whatsoever that the Estates may have against the holder of the Claim or Equity Interest, but neither the failure to do so nor the allowance of any Claim or Equity Interest shall constitute a waiver or release by the Estates or the Post-Effective Date Entities of any such Claim, cause of action, setoff or recoupment.

USA Capital_ Proposed Confirmation Order 010807

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   59. Unless otherwise extended by order of this Court, objections to the allowance of

2 Claims and Equity Interests shall be Filed and served upon the Entities asserting such Claims or

3 Equity Interests as follows: (A) for any and all Claims and Equity Interests to which the General

4 Bar Date applies, ninety (90) days after the Effective Date; (B) for any and all Claims to which the

5 Administrative Claims Bar Date or the Professionals Administrative Bar Date applies, thirty (30)

6 days after the expiration of the respective Bar Date; and (C) for any and all Claims to which the

7 Bar Date applicable under section B.3 of Art. V of the Plan applies, thirty (30) days after the

8 expiration of that Bar Date.

9 **Chief Restructuring Officer / Disbursing Agent**

10   60. After the Effective Date, Tom Allison shall remain Chief Restructuring Officer of

11 FTDF, USA Realty and USA Securities.

12   61. In the Chapter 11 Cases of FTDF, USA Securities and USA Realty, the Debtors

13 shall act as Disbursing Agents under the Plan for their respective Estates and shall make all

14 distributions required under the Plan. At any time after thirty (30) days following the Effective

15 Date, such Debtors may request that all future distributions of their respective Estates be handled

16 by a Disbursing Agent, which may be Development Specialists, Inc. ("DSI"), including through

17 Geoffrey L. Berman, acting in its own right and not as USACM Trustee, as Disbursing Agent. In

18 the Chapter 11 Case of FTDF, after FTDF has made all initial distributions required under the

19 Plan, DSI shall act as Disbursing Agent pursuant to a Disbursing Agent Agreement substantially

20 in the form filed with the Court by the Debtors, as such agreement may be modified by such

21 parties.

22   62. Pursuant to the Asset Purchase Agreement and the Plan, FTDF, USA Securities and

23 USA Realty shall have copies of or access to all databases, software, documents and records of, or

24 in the possession or control of, any of the Debtors, as may be necessary or appropriate in the wind

25 down and dissolution of FTDF, USA Securities and USA Realty, including as necessary or

26 appropriate, all databases, software, documents and records necessary to object to and make

27 distributions to Claims and Equity Interest, as Allowed, against FTDF, USA Securities and USA

28 Realty.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    63.    In the USACM Chapter 11 Case, the USACM Trustee shall act as Disbursing

2    Agent under the Plan for distributions to USACM Trust Beneficiaries, and DSI shall act as

3    Disbursing Agent under the Plan with respect to disbursements under the Plan after the Effective

4    Date to holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims,

5    Allowed Secured Tax Claims, Allowed Other Secured Claims, and Allowed Claims in Classes A-

6    1, A-2, and A-3 and Disputed Claims pursuant to a Disbursing Agent Agreement substantially in

7    the form filed by the Debtors. In the DTDF Chapter 11 Case, Post-Effective Date DTDF shall act

8    as Disbursing Agent under the Plan for the DTDF Estate, and shall make all distributions required

9    under the Plan, and may employ or contract with other Entities to assist in or perform any

10    distribution of property.

11    **Miscellaneous.**

12    64. .    As set forth in Article VIII, Section A. of the Plan, the limitation of liability and

13    release provisions shall be effective and binding upon all applicable Persons and entities to the

14    fullest extent provided in the Plan.

15    65.    The Debtors and Debtors in Possession, without any action by Equity Interests

16    whatsoever, are hereby authorized to execute such documents and take such other action as is

17    necessary to effectuate the transactions provided for in the Plan.

18    66.    As set forth in Article II, Section B.1.b. of the Plan, on or before the Effective Date,

19    Statutory Fees for each Estate shall be paid in Cash, in full when due.

20    67.    As soon as practicable after the occurrence of the Effective Date, but no later than

21    ten (10) days thereafter, the USACM Trustee shall File and serve on each holder of a Claim or

22    Equity Interest a written notice of the occurrence of Effective Date. Each Committee shall post

23    notice of the occurrence of the Effective Date on its respective website.

24    68.    In accordance with section 1146(c) of the Bankruptcy Code, the making delivery,

25    filing or recording of any mortgages, deeds of trust, leasehold mortgages, leases (whether recorded

26    or unrecorded) and/or the various instruments and documents of transfer as specified in or

27    contemplated by the Plan, including the documents related to the Asset Sale Transaction and/or

28    the exhibits thereto, are hereby exempt from taxation under any law imposing a mortgage or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

1  recording tax, stamp tax, sales tax, transfer tax, use tax or any similar tax. The appropriate federal,

2  state or local government officers are hereby directed to accept for filing or recording all

3  Instruments of Transfer or other documents of transfer to be filed and recorded in accordance with

4  the Plan and the exhibits thereto, without payment of any such tax or government assessment, and

5  without the presentation of any affidavits, instruments, or returns otherwise required for recording

6  other than the Confirmation Order. The Court retains jurisdiction to enforce the foregoing

7  direction by contempt proceedings or otherwise.

8          69.    USACM shall have authority to take actions on behalf of USACM and the USACM

9  Estate until and including the Effective Date, when the appointment of the USACM Trustee

10  becomes effective and the USACM Trust Assets are transferred to the USACM Trust and the

11  USACM Trust becomes effective in accordance with this Plan and the USACM Trust Agreement.

12  As soon as practicable thereafter, USACM shall be dissolved in accordance with the Confirmation

13  Order and applicable state law.

14          70.    DTDF shall have authority to take actions on behalf of DTDF and the DTDF Estate

15  until and including the Effective Date and, thereafter, the Post-Effective Date DTDF shall have the

16  exclusive authority to act on behalf of DTDF and the DTDF Estate. When the Plan has been fully

17  implemented by Post-Effective Date DTDF and all assets of the DTDF Estate and Post-Effective

18  Date DTDF have been fully liquidated and distributed and the DTDF Estate and Post-Effective

19  Date DTDF fully administered, DTDF shall be dissolved in accordance with the Confirmation

20  Order, the DTDF Amended Operating Agreement and applicable state law.

21          71.    FTDF, USA Realty, and USA Securities shall have the authority to effect

22  all transactions and take all actions, including, without limitation, filing applicable tax

23  returns, required by the Plan on and after the Effective Date. FTDF and the FTDF Committee

24  shall each have authority to prosecute (a) claim objections in the FTDF Estate, and (b) the non

25  assignable

26          FTDF Litigation Claims on behalf of FTDF subject to the compromise with DTDF set

27  forth herein. After the actions set forth in this paragraph are completed, FTDF, USA Realty, and

28  USA Securities shall be dissolved in accordance with the Confirmation Order and applicable state

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Page 23 of 29**

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    law, and FTDF, USA Realty, and USA Securities, or their respective appointed Disbursing Agent,

2    which may be DSI, shall file a final report and close their respective Chapter 11 Cases in

3    accordance with Bankruptcy Code section 350.

4         72.    The Post-Effective Date Entities may execute such other documents and take such

5    other actions as may be necessary or appropriate to effectuate the transactions contemplated under

6    this Plan.

7         73.    The reversal or modification of this Confirmation Order or Findings on appeal shall

8    not affect the validity of the Plan, or any agreement or action authorized by this Confirmation

9    Order or under the Plan, including the Asset Purchaser Agreement, with respect to any entity

10   acting in good faith, whether or not that entity knows of the appeal, unless this Confirmation

11   Order is stayed pending appeal.

12        74.    Within ninety (90) days of the Effective Date, the Debtors or a Post-Effective Date

13   Entity or the FTDF Committee, to the extent applicable, shall File a status report for each of the

14   respective Debtors setting forth what progress has been made toward the consummation of the

15   confirmed Plan.  The status report shall be served on the U.S. Trustee, the Debtors, prior to

16   dissolution or transition to the Post-Effective Date Entities, the Post-Effective Date Entities, and

17   any Entities who have Filed a request for such reports with the Court.  Unless otherwise ordered,

18   further status reports shall be Filed every ninety (90) days and served on the same Entities.  On or

19   after the Effective Date, no monthly operating reports need to be filed with the U.S. Trustee.

20        75.    Once each Estate has been fully administered, as referred to in Bankruptcy

21   Rule 3022, the Post-Effective Date Entities, the Debtors, or another party as the Court may

22   designate, shall File a final report and account of all receipts and disbursements, and serve that

23   report on the U.S. Trustee, and any other Entities entitled to service under any applicable law.

24   Any such final report shall include a request that the Court enter a Final Decree in the Chapter 11

25   Case of the applicable Debtor.

26        76.    Nothing in this Confirmation Order or the Plan shall be construed or interpreted to

27   release, discharge, enjoin or otherwise adversely impact any claim or claims of PBGC or any

28   pension plan, currently or formerly sponsored by the Debtors against any person arising under 29

USA Capital_ Proposed Confirmation Order 010807

1    U.S.C. Sections 1104-1109 with respect to the pension plans.

2        77.    Nothing in this Confirmation Order or the Plan, including without limitation the

3    injunction provided in Section IV.H. of the Plan: (i) shall alter, affect or supersede the Bankruptcy

4    Court's Order Approving Agreement With Investment Partners entered on July 24, 2006 (Docket

5    No. 946); or (ii) shall enjoin, prejudice, limit, preclude or otherwise impair the rights and remedies

6    that (a) the Debtors and their respective Estates, (b) the Post-Effective Date Entities, (c) the Direct

7    Lenders, or (d) creditors of the Debtors or parties in interest, including Liberty Bank, as or may

8    have against any non-debtor third parties, including without limitation HMA Sales, LLC ("HMA")

9    and USA Investment Partners, LLC ("USAIP"), under the Receivables Loan Agreement between

10    Liberty Bank and HMA dated as of November 15, 2004, as amended, and the loan documents

11    securing and/or relating thereto, including without limitation the Guaranty Agreement executed by

12    USAIP and the Subordination Agreement among USAIP, HMA and Liberty Bank, each dated as

13    of November 15, 2004.

14        78.    Nothing in this Confirmation Order or the Plan shall be construed or interpreted to

15    release, discharge, enjoin or otherwise adversely impact the assertion of any setoff, recoupment,

16    counterclaim or defense that Standard Property Development, LCC ("Standard"), Binford Medical

17    Developers, LLC ("Binford"), or Copper Sage Commerce Center, LLC ("Copper Sage") may

18    assert against any lender, other than FTDF, USACM, or Compass as the assignee or transferee of

19    the assets of FTDF and USACM, to the attempted enforcement, collection and/or foreclosure of

20    the applicable Loan(s) to such borrower; as for FTDF or USACM or Compass as the assignee or

21    transferee of the assets of FTDF and USACM, nothing in this Confirmation Order or the Plan shall

22    be construed or interpreted to preclude Standard, Binford, or Copper Sage from asserting any

23    defense (including the defense of recoupment) to the enforcement, collection and/or foreclosure

24    of FTDF's or USACM's undivided interest in the Standard, Binford, or Copper Sage Loan(s) to

25    such borrower.

26        79.    Each term and provision of the Plan is hereby deemed to be valid and enforceable

27    pursuant to its terms.

28        80.    If and to the extent that there is any direct conflict between the terms of the Plan,

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

the Findings and the terms of this Confirmation Order, this Confirmation Order shall control.

81.     Notwithstanding the fact that Joseph Milanowski, Thomas Hantges, Paul Hamilton, Victoria Loob, USA Investment Partners, LLC, USA Commercial Real Estate Group, Cynthia Milanowski, or Salvatore Reale, their insiders or affiliates may have acted or served in some capacity with the Debtors after the Petition Date or may have some other connection with the Debtors or the Debtors' Estates, and notwithstanding anything in the Plan to the contrary or which could be construed to the contrary, nothing in the Plan nor this Confirmation Order shall be construed as providing a release of any claims or causes of action against Joseph Milanowski, Thomas Hantges, Paul Hamilton, Victoria Loob, USA Investment Partners, LLC, USA Commercial Real Estate Group, Cynthia Milanowski, or Salvatore Reale, their insiders or affiliates (other than the Debtors themselves in accordance with the provisions of the Plan).

82.     Nothing contained in the Asset Purchase Agreement shall modify the obligations owed to the Lenders by Compass as the loan servicer or rights of the Lenders against Compass as the loan servicer (or the rights of Compass as the loan servicer against the Lenders) under the applicable Loan Servicing Agreements and otherwise applicable law.  Compass shall distribute any sums due to Lenders under any of the Loan Servicing Agreements in accordance with the Loan Servicing Agreements, as the same may be modified with consent of the applicable Lenders, and with otherwise applicable law.  Compass shall apply all payments and proceeds from Serviced Loans (as such term is defined in the Asset Purchase Agreement), however collected, whether through liquidation of collateral, payments from the Borrower or otherwise, in accordance with the provisions of the notes and/or loan agreements.  Further, notwithstanding the foregoing, to the extent the Bankruptcy Court has entered an order, including, but not limited to, this Confirmation Order, which interprets or enforces provisions of the Loan Servicing Agreements or directs the distribution of payments under the Loan Servicing Agreements or payments collected from Borrowers, Compass, the Lenders, and all other affected parties shall abide by the terms of such order(s).  If, as between the provisions of the Loan Servicing Agreements and the order(s) of the Bankruptcy Court, it is not clear to Compass how the sums collected shall be distributed, then Compass shall hold the sums payable to the Lender until Compass either receives direction from

USA Capital_ Proposed Confirmation Order 010807

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  the Lender and, as to items not constituting Commercial Mortgage Assets (as such term is defined

2  in the Asset Purchase Agreement), the Sellers (or their successor or assignee under the Plan)

3  regarding disbursement of interest, or is directed by an order from a court of competent

4  jurisdiction.  Nothing contained herein is intended to waive any defenses of the Lenders or, as to

5  items not constituting Commercial Mortgage Assets (as such term is defined in the Asset Purchase

6  Agreement), the Sellers (or their successors or assignees) under the Loan Servicing Agreements.

7  For the avoidance of doubt, under no circumstance shall any pre-Closing Date liability assertable

8  by any party attach to Compass, or to any asset acquired by Compass, pursuant to the Asset

9  Purchase Agreement.  Furthermore, for the avoidance of doubt, notwithstanding any other

10  provision in the Asset Purchase Agreement, this Confirmation Order, or any order which may in

11  the future be entered by the Bankruptcy Court, all servicing fees due pursuant to the terms stated

12  in the Loan Servicing Agreements, and all interest due on the First Trust Deed Fund Assets (as

13  such term is defined in the Asset Purchase Agreement), shall continue to be due and payable, and

14  Compass shall collect such servicing fees and interest for its sole benefit on and after the Closing

15  Date.

16  Submitted by:                                         Approved / Disapproved by:
    RAY QUINNEY & NEBEKER P.C.                             OFFICE OF THE U.S. TRUSTEE
17  and SCHWARTZER & MCPHERSON LAW
    FIRM
18

19  By: /s/ Lenard E. Schwartzer                          By: _____
    LENARD E. SCHWARTZER, ESQ.                                  August B. Landis
20  JEANETTE E. MCPHERSON, ESQ.
    ANNETTE W. JARVIS, ESQ.
21  STEVEN STRONG, ESQ.
    Counsel for Debtors
22

23  Approved/Disapproved by:                              Approved/Disapproved by:
    LEWIS AND ROCA, LLP                                   GORDON & SILVER, LTD.
24

25  By:  /s/  Rob Charles                                 By:  /s/  Gregory Garman
      SUSAN M. FREEMAN, ESQ.                                  GERALD M. GORDON, ESQ.
26    ROB CHARLES, ESQ.                                       GREGORY E. GARMAN, ESQ.
      Counsel for the Official Committee of                   Counsel for the Official Committee of
27    Unsecured Creditors of USA Commercial                   Holders of Executory Contract Rights of
      Mortgage Company                                        USA Commercial Mortgage Company
28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Page 27 of 29**

USA Capital_ Proposed Confirmation Order 010807

1    **[PROPOSED] ORDER CONFIRMING THE "DEBTORS' THIRD AMENDED JOINT**
     **CHAPTER 11 PLAN OF REORGANIZATION," AS MODIFIED HEREIN**
2

3
     **Approved**/Disapproved by:                    **Approved**/Disapproved by:
4    ORRICK, HERRINGTON & SUTCLIFFE LLP             STUTMAN TREISTER & GLATT, P.C. and
     and BECKLEY SINGLETON, CHTD.                    SHEA & CARLYON, LTD.
5

6    By:    /s/ Marc A. Levinson                     By:    /s/ Christine Pajak
           MARC A. LEVINSON, ESQ.                           FRANK A. MEROLA, ESQ.
7          JEFFERY HERMANN ESQ.                             EVE KARASIK, ESQ.
           BOB L. OLSON, ESQ.                               CHRISTINE PAJAK, ESQ.
8          ANNE M. LORADITCH, ESQ.                          CANDACE C. CARLYON, ESQ.
           *Counsel for the Official Committee of*          *Counsel for the Official Committee of*
9          *Equity Security Holders of USA Capital*         *Equity Security Holders of USA Capital*
           *Diversified Trust Deed Fund, LLC*               *First Trust Deed Fund LLC*
10

11   Approved/**Disapproved** by:                    Approved/**Disapproved** by:

12

13   By: /s/ Kevin Darby for                         By:   /s/ Dean Kirby
          ALAN SMITH, ESQ.                                  DEAN KIRBY, ESQ.
14        *Counsel for Lenders Protection Group*            *Counsel for Debt Acquisition*
                                                            *Company of America*
15

16   **Approved**/Disapproved by:                    Approved/**Disapproved** by:

17
     By:    /s/ Jim Eggeman                          By:    /s/ Robert LePome
18        ERIC FIELD, ESQ.                                  NANCY ALLF, ESQ.
          *Counsel for Pension Benefit Guarantee*           ROBERT LEPOME, ESQ.
19        *Corporation*                                     *Counsel for The Alexander Group*

20   Approved/Disapproved by:                        Approved/**Disapproved** by:

21

22   By:                                             By:   /s/ Janet Chubb
          MICHAEL SCHMAHL, ESQ.                             JANET CHUBB, ESQ.
23        *Counsel for Dr. Gary Kantor, Mrs. Kantor*        *Counsel for Jones Vargas Direct Lenders*
          *and Kantor Nephrology 401K plan*
24

25   **Approved**/Disapproved by:                    Approved/Disapproved by:

26
     By: /s/ George Davis                            By:
27        GEORGE DAVIS ESQ.                                 DAVID COHEN, ESQ.
          *Counsel for Compass Partners*                    *Counsel for Sierra Liquidity Fund*
28

USA Capital_ Proposed Confirmation Order 010807

*SCHWARTZER & McPHERSON LAW FIRM*
*2850 South Jones Boulevard, Suite 1*
*Las Vegas, Nevada 89146-5308*
*Tel: (702) 228-7590 · Fax: (702) 892-0122*

1 **[PROPOSED] ORDER CONFIRMING THE "DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION," AS MODIFIED HEREIN**

2

3 Approved/Disapproved by:                    Approved/Disapproved by:

4 By: _____              By: _____
      GREGORY J. WALCH ESQ.                        JEFFREY SYLVESTER, ESQ.
5     *Counsel for Gregory J. Walch and Shauna*    *Counsel for USA Commercial Real Estate*
   *M. Walch, Trustees of the Gregory J. and*   *Group*
6  *Shauna M. Walch Family Trust*

7 Approved/Disapproved by:                    Approved/Disapproved by:

8 By: _____              By: _____
9     RUSSELL WALKER, ESQ.                         SUSAN SCANN, ESQ.
      *Counsel for USA Investment Partners, LLC,*  *Counsel for Copper Sage Commercial*
10 *Joseph Milanowski and Thomas Hantges*       *Center and Binford Medical Developers, LLC*

11 **Approved**/Disapproved by:                Approved/Disapproved by:

12 By: _/s/ Andrew Brumby_____              By: _____
13    ANDREW BRUMBY, ESQ.                          WADE GOCHNOUR, ESQ.
      R. VAUGHN GOURLEY, ESQ.                      ARYN M. FITZWATER, ESQ.
14    *Counsel for Standard Property Development*  *Counsel for Liberty Bank*

15

16 In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

17 ___ The court has waived the requirement of approval under LR 9021.

18 ___ No parties appeared or filed written objections, and there is no trustee appointed in the case.

19  X  I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any
   unrepresented parties who appeared at the hearing, and any trustee appointed in this case, and each has
20 approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the
   party has approved, disapproved, or failed to respond to the document]:

21

22 **Failed to respond:**

23 WADE GOCHNOUR, ESQ.
   SUSAN SCANN, ESQ.
24 RUSSELL WALKER, ESQ.
   JEFFREY SYLVESTER, ESQ.
25 GREGORY J. WALCH ESQ.
   DAVID COHEN, ESQ.
26 MICHAEL SCHMAHL, ESQ.
   AUGUST B. LANDIS, ESQ.
27
                                                # # #
28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

USA Capital_ Proposed Confirmation Order 010807

**Exhibit   B**

1
2

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| 3 **In re:**<br>4 USA COMMERCIAL MORTGAGE<br>COMPANY,<br>5               Debtor. | **Case No. 2:07-CV-00892-RCJ-GWF**<br><br>Bankruptcy Case No. BK-S-06-10725 LBR<br>[Chapter 11] |

| | |
|---|---|
| Affects:<br>☐  All Debtors<br>☒  USA Commercial Mortgage Company<br>☐  USA Securities, LLC<br>☐  USA Capital Realty Advisors, LLC<br>☐  USA Capital Diversified Trust Deed Fund,<br>     LLC<br>☐  USA First Trust Deed Fund, LLC | **Contempt Order Re Donna M. Cangelosi**<br><br><br><br><br><br>**Hearing Date:  October 1, 2007**<br>**Hearing Time:  1:30 p.m.** |

On August 1, 2007, following hearings held on June 20, 2007 and July 27, 2007, the

United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") entered its

Supplemental Order Re: Emergency Motion for Order Pursuant to 11 U.S.C. §§ 105 and 1141

Enforcing Confirmation and Sale Order and for Civil Contempt Sanctions (the "Bankruptcy

Court Injunction Order") in the chapter 11 bankruptcy cases of USA Commercial Mortgage

Company ("USACM") and certain of its affiliates (collectively, the "Debtors"), jointly

administered under Case Number BK-S-06-10725-LBR (the "Bankruptcy Cases"), with respect

to the Emergency Motion of Compass Financial Partners LLC and Compass USA SPE LLC

(together, "Compass") for Order Pursuant to 11 U.S.C. §§ 105 and 1141 Enforcing

Confirmation and Sale Order and for Civil Contempt Sanctions (the "Sanctions Motion").  On

August 6, this United States District Court for the District of Nevada (the "Court") withdrew the

reference to the Bankruptcy Court with respect to the disputes set forth in the Sanctions Motion,

which had been designated an adversary proceeding by the Bankruptcy Court.

On August 27, 2007, the Court held a preliminary hearing on a Motion to Dissolve

Bankruptcy Court's Temporary Status Quo Order (the "Plaintiff Lenders Motion") filed by the

plaintiffs in Case No. 3:07-cv.00241: Donna M. Cangelosi ("Cangelosi"); fifty (50) Limited

Liability Company entities (each an "LLC," and collectively the "LLCs") purportedly holding

1  beneficial interests in the fifty (50) separate loans originated by USACM (each a "<u>Loan</u>," and

2  collectively the "<u>Loans</u>"); and an entity calling itself the "Lenders Protection Group" consisting

3  of individuals holding beneficial interests in certain of the loans originated by the Debtors (the

4  "<u>LPG</u>;" and together with Cangelosi and the LLCs, the "<u>Plaintiff Lenders</u>").  The Court ruled at

5  that hearing that the Bankruptcy Court Injunction Order should remain in full force and effect

6  pending a hearing on the Court's order to show cause why the Bankruptcy Court Injunction

7  Order should not be entered by the Court as a preliminary injunction pursuant to Fed. R. Civ. P.

8  65 (the "<u>Order to Show Cause</u>").  After hearing on the Order to Show Cause held on September

9  10, 2007, as supplemented by extensive evidentiary hearings with live testimony held on

10  October 1, 2007 and October 2, 2007 with respect to the Court's preliminary rulings regarding

11  the imposition of sanctions against Cangelosi, the Court entered its Preliminary Injunction and

12  Order Pursuant to 11 U.S.C. §§ 105 and 1141 and Fed. R. Civ. P. 65 Enforcing Confirmation

13  and Sale Order of even date herewith (the "<u>Enforcement Order</u>").

14         This Court, having heard oral argument of counsel and other interested persons whose

15  appearances were as noted on the record of the September 10, 2007, October 1, 2007 and

16  October 2, 2007 hearings, having read and considered all pleadings and papers filed in support

17  of and in opposition to the Order to Show Cause, having heard the live testimony of all

18  witnesses adduced at the October 1, 2007 and October 2, 2007 hearings, and having read and

19  considered the Sanctions Motion, the Plaintiff Lenders Motion, and all Declarations and other

20  pleadings and papers on file herein that are, in the opinion of the Court, relevant to the issues

21  before it; and it appearing that interim relief is required to address certain actions of direct

22  lender Donna M. Cangelosi, hereby makes the following findings of fact and conclusions of

23  law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

25         1.      On April 13, 2006, the Debtors filed voluntary chapter 11 bankruptcy petitions.

26  Cangelosi, a direct lender with respect to certain USACM loans, along with the LPG, actively

27  participated and were represented by counsel in the Bankruptcy Cases.

28

2.      On September 22, 2006, the Debtors filed a motion scheduling an auction of substantially all of USACM's assets.  On December 7, 2006, the Debtors conducted the auction. The only participants at the auction were Compass, SPCP Group, LLC and Desert Capital. Cangelosi contemplated bidding at the auction, but, ultimately, neither Cangelosi nor any entity associated with her or the LPG or any group of lenders chose to submit a bid for USACM's assets.

3.      Compass was the prevailing party in the auction.  The auction sale was confirmed in an Asset Purchase Agreement, dated December 8, 2006 (the "APA").  The APA sets forth the terms of Compass's acquisition of the assets of USACM for cash consideration of approximately $67 million, subject to certain purchase price adjustments (the "Sale").

4.      On January 8, 2007, with Compass's $67 million commitment, the Court entered the "Order Confirming the 'Debtors' Third Amended Joint plan of Reorganization,' As Modified Herein" (the "Confirmation and Sale Order"), which confirmed the Plan and approved certain documents filed in conjunction with the Plan, including the APA.  On February 16, 2007, the Sale closed and Compass took over as the servicing agent for the loans at issue in this litigation.

5.      Among other things, Compass purchased the right to act as the loan servicer with respect to a portfolio of 65 loans.  The assignment to Compass of USACM's rights as servicer under the governing loan servicing agreements (the "Loan Servicing Agreements" or "LSAs") was an essential element of the acquisition, given the non-performing nature of the majority of the Loans.

6.      The loan servicing rights themselves were a valuable asset, since the respective LSAs that USACM had negotiated with each of the lenders in the Loans entitled the loan servicer to collect as its compensation (with certain limited exceptions) Default Rate Interest, Accrued Servicing Fees, Late Charges, Success Fees, other fees and sums (as each such term is defined in the APA).

7.      The Confirmation and Sale Order explicitly preserved Compass's rights to those fees, providing that neither the Direct Lenders nor any replacement servicer would have the

right to "compromise, subordinate, or impair" any of the interests purchased by Compass for "default interest, accrued interest . . . or other amounts purchased under the Loan Servicing Agreement." (Confirmation and Sale Order ¶ 14.)

8.    The Confirmation and Sale Order further protected Compass from interference with its rights from parties that participated in the Bankruptcy Cases, such as Cangelosi and the members of the LPG, by providing that "[a]fter the Closing, the Direct Lenders are obligated to comply with the terms of the applicable Loan Servicing Agreements . . . ." (Confirmation and Sale Order ¶ 47.)

9.    Protection of Compass's bargained-for contractual rights is evidenced elsewhere in the Confirmation and Sale Order, Paragraph 25 provides "[f]ollowing the Closing, no holder of an Interest in the Sellers shall interfere with the Asset Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Interest" and in the same paragraph expressly enjoins them from doing so. (*Id.* ¶ 25.) The parties holding an "Interest in the Sellers" include "Direct Lenders . . . and their respective successors or assigns." (*Id.*)

10.    The Confirmation and Sale Order, with which Cangelosi was obligated to comply, contained specific and definite protection of Compass's contractual rights.

11.    Prior to the closing of the Sale on February 16, 2007, and before Compass assumed the role of loan servicer, Cangelosi and the LPG began looking for ways to terminate Compass and to retain a loan servicer willing to waive the fees conveyed to Compass pursuant to the APA.

12.    In late-March 2007 (approximately one month after Compass took over as loan servicer), Cangelosi and the LPG began to solicit proxies to terminate Compass's loan servicing rights and install a loan servicing entity chosen at her sole discretion.

13.    By letters dated May 18, 2007, Cangelosi advised each and every borrower in approximately fifty (50) of the Loans that "Compass is not authorized to act on behalf of the lenders of the Loan for any purpose whatsoever" and warned the borrowers that, notwithstanding their payment obligations under the Loans, "All payments made to Compass shall be at your own peril." The letters directed borrowers under the Loans to make all future

1  payments to Lender 2 Lender, LLC ("L2L"), a Nevada limited liability company established and
2  controlled by Cangelosi and to contact L2L for all information regarding the Loans.

3      14.    Contemporaneously with sending the letters to borrowers, Cangelosi sent to
4  Compass letters advising Compass of the purported termination of its rights to service the
5  applicable Loans.

6      15.    In anticipation of sending the May 18 letters to borrowers and Compass,
7  Cangelosi and the LPG caused to be formed approximately fifty (50) limited liability companies
8  organized under Nevada law (collectively, the "Direct Lender LLCs"). The Direct Lender LLCs
9  were intended as vehicles for Direct Lenders in each Loan to contribute their loan participation
10 interests in exchange for LLC membership, which LLC would then manage the Direct Lenders'
11 collective loan participation interests. Cangelosi serves as the "manager" of all of the Direct
12 Lender LLCs.

13     16.    Direct Lenders were induced into becoming members of the Direct Lender LLCs
14 based on the promise of sharing in the default interest and late charges collected from the
15 applicable borrowers. As Cangelosi well understood at the time she solicited participation in the
16 Direct Lender LLCs, Compass had purchased rights to such default interest and late charges in
17 the Bankruptcy, and the Confirmation and Sale Order prohibited Cangelosi from taking steps to
18 subordinate or otherwise impair those rights.

19     17.    Cangelosi sent written communications and conducted at least eight "road
20 shows" in several different states where she solicited direct lenders to join the Direct Lender
21 LLCs. In one such communication, Cangelosi explained how the subordination of Compass's
22 rights (which was prohibited by the Confirmation and Sale Order) would benefit Direct Lender
23 LLC members. She explained "The Loan LLCs may also recover addition (sic) money, based
24 on collection of default and late fees. This is money they fought to keep Compass from
25 claiming. As a result, to the extent it can be collected, it is passed back to them in part for their
26 role as financiers." (Compass Hearing Ex. 55 at 3.)

27     18.    In addition, when soliciting members to join the Direct Lender LLCs, Cangelosi
28 asked potential members to sign Loan Management Agreements installing her affiliates, FDH

Management Company LLC ("FDH") and L2L, as the servicers on the loans. The solicitation materials did not disclose that Cangelosi alone controlled FDH and L2L or that Cangelosi (who had no prior experience in the loan servicing business) might serve as the loan servicer.

19.    The Loan Management Agreements outlined the fees that FDH and L2L proposed to charge for their services. In her solicitation materials, Cangelosi promised that a 1% contribution of capital for a "legal fund" will be "dedicated only to litigating Compass, Silar and others related to the Bankruptcy." Cangelosi failed to inform potential LLC members that the funds could be used at Cangelosi's sole discretion and that FDH could keep for itself the 1% capital contribution should L2L be terminated as loan servicer. (*See, e.g.,* Compass Hearing Exs. 55 at 3; 113 at §§ 2.2(b), 3.4.)

20.    Cangelosi made material misrepresentations and omissions in her solicitation of Direct Lenders to join the Direct Lender LLCs. At a minimum, the misrepresentations and omissions include: (1) misrepresenting Cangelosi's ability to usurp for the benefit of herself, her affiliates and the Direct Lender LLCs the rights conveyed to Compass in the Confirmation and Sale Order and (2) omitting to disclose that, upon joining an LLC, a direct lender would have irrevocably transferred one percent of his or her investment to FDH to be used at Cangelosi's sole discretion.

21.    In view of the confusion caused by Cangelosi's May 18 letter, Compass filed an emergency enforcement Motion (the "Enforcement Motion") for Order Pursuant to 11 U.S.C. §§ 105 and 1141 Enforcing Confirmation and Sale Order and for Civil Contempt Sanctions in the Bankruptcy Court on May 25, 2007. The Enforcement Motion was heard on May 31, 2007. In response to the Enforcement Motion, Cangelosi and the LPG argued that the Bankruptcy Court lacked jurisdiction to hear it, but Judge Riegle issued an Order maintaining the *status quo* such that Compass would remain the loan servicer until the issue of jurisdiction could be resolved. A further hearing on the Enforcement Motion was scheduled and held before the Bankruptcy Court on June 20, 2007.

22.    Judge Riegle made certain rulings at the June 20, 2007 hearing that were to be reflected in a written order. Cangelosi was also ordered to immediately mail correspondence (a

"Rescission Letter") to each Borrower advising them that her May 18, 2007 correspondence was "void and of no effect," that Compass remains the exclusive entity authorized to act on behalf of Lenders on the Loans, and that all payments on the Loans should continue to be made directly to Compass. (June 20, 2007 Hearing Tr. at 167:2-6.)

23.    Judge Riegle's Order that Cangelosi immediately send a Recission Letter was specific and definite. Cangelosi was obligated to comply with it.

24.    Cangelosi failed to mail immediately any Rescission Letter to Borrowers, notwithstanding the Bankruptcy Court's June 20, 2007 order. Counsel for Compass sent a letter on July 20, 2007 advising Cangelosi that the Rescission Letter must be sent immediately.

25.    Cangelosi failed to respond to Compass's July 20 letter. On July 24, 2007, Compass thus filed in the Bankruptcy Court a *Motion of Compass Financial Partners LLC For Order Pursuant to 11 U.S.C. § 105 Compelling Compliance With June 20, 2007 Ruling of the Bankruptcy Court* (the "Second Enforcement Motion").

26.    Immediately thereafter, on July 26, 2007, Cangelosi sent a letter to Borrowers in response to the June 20, 2007 ruling. This letter, however, stated that the Bankruptcy Court "entered an order temporarily staying and enjoining the Direct Lenders termination of Compass" and that Cangelosi was "confident [the] termination of Compass was proper and expect the District Court to assume jurisdiction within days."

27.    A hearing was held on July 27, 2007 in the Bankruptcy Court with respect to Cangelosi's failure to send out an appropriate Rescission Letter. At the hearing, Judge Riegle found Cangelosi's July 26 letter "totally inappropriate in a letter that is meant to ensure that borrowers still pay Compass." Judge Riegle thus ordered Cangelosi to send out a second letter to Borrowers and all Direct Lenders affiliated with Cangelosi.

28.    Internal L2L communications sent immediately after that hearing and produced during discovery revealed that the Recission Letter was not sent according to Judge Riegle's instructions because L2L was "anticipating a favorable ruling on the 6th [from this Court], which could render the letters completely unnecessary if the Judge orders that Lender 2 Lender

1    may resume control of the servicing, per the lawful termination of Compass on May 18th." (Ex.

2    105.)

3         29.    Judge Riegle ordered that the second Rescission Letter include explicit language

4    advising that the purported termination in the May 18 letter was "ineffectual" and that Compass

5    remains the servicer until further order of the Court. Judge Riegle ordered that the letter

6    explicitly state that "Compass remains the exclusive entity authorized to act on behalf of all

7    direct lenders in the Loan." Judge Riegle also ordered that a copy of the Bankruptcy Court's

8    Order (entered thereafter on August 1, 2007) be attached to each letter. The second Recission

9    Letter was sent on August 6, 2007.

10        30.    In addition, the Order entered August 1, 2007 captured Judge Riegle's oral ruling

11   of June 20, 2007, that "no Direct Lender shall initiate contact with the borrower in any Loan

12   which (i) undermines Compass's exclusive authority to act on behalf of the Direct Lenders as

13   loan servicer, or (ii) purports that an entity other than Compass is authorized to negotiate with

14   the borrower on behalf of the Direct Lenders in such Loan." Compass has alleged that

15   Cangelosi violated the provision of this Order by engaging in communications with borrowers

16   prohibited by the Order. The Court has not heard evidence on these allegations and will not,

17   therefore, rule on that issue at this time.

18              *              *              *

19        Based upon the foregoing factual findings and conclusions of law and for good cause

20   otherwise appearing:

21        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

22        31.    Cangelosi's Contempt – Bankruptcy Court Orders. Cangelosi is in contempt of

23   the provisions of the Bankruptcy Court's Confirmation and Sale Order cited above, and the

24   Bankruptcy Court Order of June 20, 2007, by: (a) attempting unlawfully to usurp the rights of

25   Compass as the successor to USACM as servicer under the Loan Servicing Agreements between

26   USACM and Direct Lenders under the Loans, the rights of USACM which were purchased by

27   and assigned to Compass pursuant to the Confirmation and Sale Order, and (b) unlawfully

28   interfering with Compass's efforts as servicer under the LSAs by failing to promptly advise

– 8 –

1  borrowers, as ordered by the Bankruptcy Court on June 20, 2007, that the May 18, 2007

2  correspondence was "void and of no effect," that Compass remains the exclusive entity

3  authorized to act on behalf of Lenders on the Loans, and that all payments on the Loans should

4  continue to be made directly to Compass.

5      32.    Sanctions Against Cangelosi.  The Court finds that Cangelosi has unclean hands

6  by reason of her actions as set forth in paragraph 31 above, and the Court sanctions Cangelosi

7  by determining that any and all efforts to terminate Compass as servicer of the Loans heretofore

8  taken by Cangelosi, FDH, L2L or the LLCs were void and without effect, including, but not

9  limited to, the purported termination of Compass as servicer of the Loans pursuant to letters

10  executed by Cangelosi on behalf of FDH as purported Manager of the LLCs dated May 18,

11  2007.

12      33.    Damages.  The issue of monetary damages to Compass, if any, in respect of the

13  Court's finding of contempt is reserved for trial.

14

15  **IT IS SO ORDERED.**

16  Dated:  November 6, 2007

17

18  **HONORABLE ROBERT C. JONES**
    UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25

26

27

28

# Exhibit   C

1   WALTER A. HERRING, ESQ.
    Texas State Bar No. 09535300
2   Admitted Pro Hac Vice
    NORLYNN B. PRICE, ESQ.
3   Texas State Bar No. 02499050
    Admitted Pro Hac Vice
4   MICHAEL W. ANGLIN
    Texas State Bar No. 01260800
5   Admitted Pro Hac Vice
    Fulbright & Jaworski L.L.P.
6   2200 Ross Avenue, Suite 2800
    Dallas, Texas 75201
7   Telephone:  (214) 855-8000
    Facsimile:  (214) 855-8200
8   Email:  wherring@fulbright.com
            nprice@fulbright.com
9           manglin@fulbright.com

10  Stanley W. Parry, Esq.
    Nevada Bar No. 1417
11  Ballard Spahr Andrews & Ingersoll, LLP
    300 South Fourth Street
12  Suite 1201
    Las Vegas, Nevada  89101
13  Telephone: (702) 471-7000
    Facsimile: (702) 471-7070
14  Email:  ParryS@ballardspahr.com

15  *Attorneys for all Plaintiff LLCs [with the exception*
    *of Hesperia Lenders, LLC]*
16

17  Linda Dakin-Grimm (admitted *pro hac vice*)
    Robert J. Moore (admitted *pro hac vice*)
18  Daniel M. Perry (admitted *pro hac vice*)
    MILBANK, TWEED, HADLEY & McCLOY, LLP
19  601 S. Figueroa Street, 30th Floor
    Los Angeles, CA 90035
20  Telephone No.:  (213) 892-4000
    Facsimile No.:  (213) 629-5063
21  Email:  ldakin@milbank.com

22  Peter C. Bernhard (Nevada Bar No. 0734)
    Georganne W. Bradley (Nevada Bar No. 1105)
23  Joseph P. Hardy (Nevada Bar No. 7370)
    BULLIVANT HOUSER BAILEY PC
24  3883 Howard Hughes Pkwy., Ste. 550
    Las Vegas, NV 89169
25  Facsimile No.:  (702) 650-2995
    E-Mail:  peter.bernhard@bullivant.com;
26           georganne.bradley@bullivant.com

27  *Counsel for Compass Financial Partners LLC and*
    *Compass USA SPE LLC*
28

1  Janet L. Chubb, Esq. (Nevada Bar No. 176)
   Louis M. Bubala III (Nevada Bar No. 8974)
2  JONES VARGAS
   100 W. Liberty St., 12th Floor
3  P. O. Box 281
   Reno, NV  89504-0281
4  Telephone:  (775) 786-5000
   Facsimile:  (775) 786-1177
5
   *Counsel for Baltes Company; Robert A. Kehl and Tinal*
6  *M. Kehl; and Patrick J. Anglin (collectively, the "JV*
   *Non-LSA Lenders") and Charles B. Anderson Trust;*
7  *Rita P. Anderson, as trustee of the Rita P. Anderson*
   *Trust; Robert J. Kehl; Ruth Ann Kehl; Robert A. Kehl;*
8  *Christina "Tina" M. Kehl, Krystina L. Kehl; Daniel J.*
   *Kehl, Kevin A. Kehl, individually and on behalf of*
9  *Susan L. Kehl and Andrew R. Kehl; Christina M. Kehl;*
   *Cynthia A. Winter; Kehl Development Corporation;*
10 *Judy A. Bonnet; Kevin A. McKee; Pamela J. McKee;*
   *Warren Hoffman Family Investments, LP; and Mojave*
11 *Canyon, Inc. (collectively the "JV LSA Lenders")*

12

13

14
                    UNITED STATES DISTRICT COURT
15                        DISTRICT OF NEVADA

16

17

| 3685 SAN FERNANDO LENDERS, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COMPASS USA SPE LLC, et al.,<br><br>Defendants. | CASE NO.: 3:07-cv-00241-RCJ-VPC<br>Case No.: 2:07-CV-00892-RCJ-GWF<br><br><br>**AGREED STIPULATION** |

22

23                      **AGREED STIPULATION**

24

25        COME NOW Plaintiffs and Defendants Compass Financial Partners LLC and

26  Compass USA SPE LLC, David Blatt and Boris Piskun (collectively the "Standstill Parties") and

27  file this Agreed Stipulation and would show the following:

28

LAI:#6371301                        -2-

1         The Standstill Parties have agreed to a brief abatement of proceedings for the

2 purpose of entering into a mediation as outlined in the Letter Agreement attached hereto as

3 Exhibit A.

4         WHEREFORE, premises considered, the Standstill Parties request the Court

5 continue all matters between the Standstill Parties until on or after March 3, 2008, as outlined in

6 the Letter Agreement.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED this 22nd day of January, 2008.

FULBRIGHT & JAWORSKI L.L.P.

By: _____
    Walter A. Herring, Esq.
    Norlynn B. Price, Esq.
    Michael W. Anglin, Esq..
    Attorneys for all Plaintiff LLCs [with the
    exception of Hesperia Lenders, LLC]

BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
    STANLEY W. PARRY, ESQ.
Attorneys for all Plaintiff LLCs [with the
exception of Hesperia Lenders, LLC]

JONES VARGAS

By: _____
    Janet L. Chubb
    Louis M. Bubala
Counsel for Baltes Company; Robert A. Kehl and
Tinal M. Kehl; and Patrick J. Anglin
(collectively, the "JV Non-LSA Lenders") and
Charles B. Anderson Trust; Rita P. Anderson, as
trustee of the Rita P. Anderson Trust; Robert J.
Kehl; Ruth Ann Kehl; Robert A. Kehl; Christina
"Tina" M. Kehl, Krystina L. Kehl; Daniel J.
Kehl, Kevin A. Kehl, individually and on behalf
of Susan L. Kehl and Andrew R. Kehl; Christina
M. Kehl; Cynthia A. Winter; Kehl Development
Corporation; Judy A. Bonnet; Kevin A. McKee;
Pamela J. McKee; Warren Hoffman Family
Investments, LP; and Mojave Canyon, Inc.
(collectively the "JV LSA Lenders")

MILBANK, TWEED, HADLEY & McCLOY
LLP

By: _____
    Linda Dakin-Grimm (admitted *pro hac vice*)
    Robert Jay Moore (admitted *pro hac vice*)
    Daniel M. Perry (admitted *pro hac vice*)

BULLIVANT HOUSER BAILEY PC
    Peter C. Bernhard (Nevada #0734)
    Georganne W. Bradley (Nevada Bar #1105)
    Joseph P. Hardy (Nevada Bar #7370)
Counsel for Compass Financial Partners LLC and
Compass USA SPE LLC

1    DATED this 22nd day of January, 2008    FULBRIGHT & JAWORSKI L.L.P.

2    By:_____
          Walter A. Herring, Esq.
3          Norlynn B. Price, Esq.
          Michael W. Anglin, Esq..
4          Attorneys for all Plaintiff LLCs [with the
          exception of Hesperia Lenders, LLC]
5
     BALLARD SPAHR ANDREWS &
6    INGERSOLL, LLP
          STANLEY W. PARRY, ESQ.
7    Attorneys for all Plaintiff LLCs [with the
     exception of Hesperia Lenders, LLC]
8

9    JONES VARGAS

10
     By:_____
11          Janet L. Chubb
          Louis M. Bubala
12    Counsel for Baltes Company; Robert A. Kehl
     and Tinal M. Kehl; and Patrick J. Anglin
13    (collectively, the "JV Non-LSA Lenders") and
     Charles B. Anderson Trust; Rita P. Anderson,
14    as trustee of the Rita P. Anderson Trust; Robert
     J. Kehl; Ruth Ann Kehl; Robert A. Kehl;
15    Christina "Tina" M. Kehl, Krystina L. Kehl;
     Daniel J. Kehl, Kevin A. Kehl, individually
16    and on behalf of Susan L. Kehl and Andrew R.
     Kehl; Christina M. Kehl; Cynthia A. Winter;
17    Kehl Development Corporation; Judy A.
     Bonnet; Kevin A. McKee; Pamela J. McKee;
18    Warren Hoffman Family Investments, LP; and
     Mojave Canyon, Inc. (collectively the "JV LSA
19    Lenders")

20
     MILBANK, TWEED, HADLEY & MCCLOY
21    LLP

22    By: _____
          Linda Dakin-Grimm (admitted *pro hac*
23    *vice*)
          Robert Jay Moore (admitted *pro hac vice*)
24          Daniel M. Perry (admitted *pro hac vice*)

25    BULLIVANT HOUSER BAILEY PC
          Peter C. Bernhard (Nevada #0734)
26          Georganne W. Bradley (Nevada Bar #1105)
          Joseph P. Hardy (Nevada Bar #7370)
27    Counsel for Compass Financial Partners LLC
     and Compass USA SPE LLC

28

LA1:#6371301                          -4-

1

## CERTIFICATE OF SERVICE

2      This certifies that, pursuant to Rule 5 of the FEDERAL RULES OF CIVIL

3   PROCEDURE, on the 22nd day of January 2008, a true and correct copy of the foregoing Agreed

4   Stipulation was served on all counsel of record via the Court's CM/ECF System and to the

5   following attorneys of record by regular mail:

6

| | |
|---|---|
| Christine M. Pajak<br>Stutman Treister & Glatt<br>1901 Avenue of the Stars, 12th Floor<br>Los Angeles, CA 90067<br>Email: cpajak@stutman.com | Cynthia J. Larsen<br>Orrick, Herrington & Sutcliffe, LLP<br>400 Capitol Mall, Suite 300<br>Sacramento, CA 95814<br>Email: clarsen@orrick.com |

7

8

9

10

11

12
        By:  /s/ Walter A. Herring

13          Walter A. Herring, Esq.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA1:#6371301                              -5-

# Exhibit A

# Exhibit A

# FULBRIGHT & JAWORSKI L.L.P.

### A REGISTERED LIMITED LIABILITY PARTNERSHIP
2200 ROSS AVENUE, SUITE 2800
DALLAS, TEXAS 75201-2784
WWW.FULBRIGHT.COM

WHERRING@FULBRIGHT.COM
DIRECT DIAL: (214) 855-8004

TELEPHONE:    (214) 855-8000
FACSIMILE:    (214) 855-8200

January 18, 2008

Robert J. Moore, Esq.
Milbank, Tweed, Hadley & McCloy LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017

Janet L. Chubb, Esq.
Louis M. Bubala, Esq.
Jones Vargas
100 West Liberty Street, 12th Floor
Rena, Nevada  89504-0281

Re:    Case No. 2:07-CV-00892-RCJ-GWF; *In re: USA Commercial Mortgage
Company*; Case No. 3:07-CV-00241; *3685 San Fernando Lenders, LLC, et al. v.
Compass USA SPE LLC, et al*

Dear Counsel:

Pursuant to our discussions, I have outlined below the terms of our Standstill Agreement:

## STANDSTILL AGREEMENT

1.    <u>Standstill.</u>  All Plaintiffs in the Amended Complaint ("Plaintiffs"), all Defendants
in the Amended Complaint other than Silar ("Defendants"), and all Defendants in the Compass
Counterclaims ("Counter-Defendants and Cross-Defendants," and collectively with the Plaintiffs
and the Defendants, the "Standstill Parties") shall enter into a standstill (the "Standstill") in the
pending District Court case (the "Litigation") for a period commencing as of the date of this
letter agreement and ending on March 3, 2008 (the "Standstill Period"), during which Standstill
Period:

•    The Standstill Parties shall not file any pleadings in the District Court case or any
related Bankruptcy Court arising out of the USACM bankruptcy other than:
pleadings intended to implement the Standstill; pleadings responding to matters
asserted by a party other than a Standstill Party; pleadings in response to orders or
directives of the District Court or the Bankruptcy Court, and pleadings relating to
the mediation or the approval or consummation of a settlement or other resolution
of one or more of the Loans, specifically including but not limited to pleadings

70202446.2

Robert Moore
January 18, 2008
Page 2

related to the Binford Loan, the Castaic Loans, the BarUSA Loan, the Gardens Loans, the San Fernando Loan, and the SVRB Loans

- To the extent that a pending matter subject to the Standstill is scheduled for hearing upon a date within the Standstill Period, the affected Standstill Parties shall request that such hearing be continued to a date after the expiration of the Standstill Period

- To the extent that a Standstill Party otherwise would be required during the Standstill Period to file and/or serve a pleading in a pending matter subject to the Standstill (including any Answer to be filed by any Counter-Defendant and Cross-Defendant), the date for such filing and/or service shall be extended to a mutually acceptable date after the expiration of the Standstill Period

- Plaintiffs shall be permitted to file the form of agreed order on the Silar Motion to Dismiss Causes of Action 8, 9, and 11 in the Amended Complaint by January 21, 2008, and any amended complaint as required by such Order.

2.    Mediation.  Representatives of the Standstill Parties shall engage in an in-person mediation in Las Vegas before the Honorable Mike Nakagawa to commence on a date no later than 2 business days prior to the end of the Standstill Period. Plaintiffs and Counter-Defendants and Cross-Defendants on the one hand, and Defendants on the other, shall exchange at least three days prior to the commencement of the mediation comprehensive written global settlement proposals authorized, in the case of the Plaintiffs and Counter-Defendants and Cross-Defendants, by each of them subject only to such further actions, if any, as may be required by members of the LLCs under operative organizational documents to bind such LLCs, and in the case of the Defendants, by each of them, that, at a minimum, shall provide for dismissals with prejudice of all causes of action set forth in the Amended Complaint and the Compass Counterclaims against all parties, other than causes of action setting forth contractual-based claims seeking a determination of the priority and extent of Compass's entitlement to recover default interest, late fees, and extension, success or related fees out of recoveries under the Loans.

3.    Communication.  During the Standstill Period, all communications regarding the mediation amongst the Plaintiffs and Counter-Defendants and Cross-Defendants shall be subject to such laws regarding privileged or inadmissible communications as may be applicable.

4.    San Fernando Loan.  The Plaintiffs and Defendants shall submit an agreed order to the Court regarding the San Fernando loan payoff providing for the following:  (a) any loan payoff proceeds, net of payments and reserves otherwise provided for under the Preliminary Injunction Order, shall be forwarded to the appropriate direct lenders in accordance with Nevada law along with an accounting detailing how that direct lender's payoff payment was calculated; provided, however, that Compass shall retain from any such payment an amount equal to one percent (1%) of the principal amount of any payment to a member of the San Fernando Lenders, LLC; (b) the Court shall set a hearing date by which any member of the San Fernando Lenders

70202446.2

Robert Moore
January 18, 2008
Page 3

LLC can object to the withholding of the 1%; (c) San Fernando Lenders LLC shall notify its members of the hearing date such notice to be in the form attached as Exhibit "A"; and (d) Compass shall forward the withheld one percent (1%) to the San Fernando Lenders LLC for any such member who does not file an objection on or before the hearing date.

     5.    <u>Notice of Standstill</u>. The Plaintiff LLCs shall send notice to the LLC members that "this standstill is in place and any action brought by individuals during the standstill period in the Nevada Mortgage Lending Division ~~or otherwise~~ may negatively affect the parties ability to affect a resolution to the lawsuit and therefore we encourage you to refrain from doing so."

If the above comports with your understanding, please execute this correspondence in the space provided below and return it to me.

Very truly yours,

Walter A. Herring

WAH/pc

**AGREED AS TO FORM AND CONTENT:**

Robert J. Moore

**AGREED AS TO FORM AND CONTENT:**

Janet L. Chubb
Louis M. Bubala

70202446.2

Robert Moore
January 18, 2008
Page 3

LLC can object to the withholding of the 1%; (c) San Fernando Lenders LLC shall notify its
members of the hearing date such notice to be in the form attached as Exhibit "A"; and (d)
Compass shall forward the withheld one percent (1%) to the San Fernando Lenders LLC for any
such member who does not file an objection on or before the hearing date.

1/22/08 Struck per agreement w/
W Herring
+
R Moore.
LMB

5.    <u>Notice of Standstill</u>.  The Plaintiff LLCs shall send notice to the LLC members
that "this standstill is in place and any action brought by individuals during the standstill period
in the Nevada Mortgage Lending Division or otherwise may negatively affect the parties ability
to affect a resolution to the lawsuit and therefore we encourage you to refrain from doing so."

If the above comports with your understanding, please execute this correspondence in the
space provided below and return it to me.

Very truly yours,

Walter A. Herring

WAH/pc

**AGREED AS TO FORM AND CONTENT:**

_____
Robert J. Moore

**AGREED AS TO FORM AND CONTENT:**

_____  1/22/08

Janet L. Chubb
Louis M. Bubala

70202446.2

## EXHIBIT "A"

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
2200 ROSS AVENUE, SUITE 2800
DALLAS, TEXAS 75201-2784
WWW.FULBRIGHT.COM

WHERRING@FULBRIGHT.COM
DIRECT DIAL: (214) 855-8004

TELEPHONE:    (214) 855-8000
FACSIMILE:    (214) 855-8200

_____, 2008

Re:    Case No. 2:07-CV-00892-RCJ-GWF; *In re: USA Commercial Mortgage Company;* Case No. 3:07-CV-00241, *3685 San Fernando Lenders, LLC, et al. v. Compass USA SPE, LLC, et al.*

Dear _____ Members:

Please be advised that the Court has set a hearing on_____, 2008 at _____ a.m. to determine the final disposition of the 1% fund (the "legal fund") withheld from your _____ payoff.  If you object to the disbursement of your 1% to_____, LLC, you need to notify Walt Herring at Fulbright (at the above address) of your objection on or before the hearing date, and you should send a copy of your objection to Robert Moore (counsel for Compass) at Milbank, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017-5735. If you do not object, the Court will order that your 1% be forwarded to _____, LLC.

Very truly yours,

Walter A. Herring

WAH/pc

70202446.2

HOUSTON • NEW YORK • WASHINGTON DC • AUSTIN • DALLAS • DENVER • LOS ANGELES • MINNEAPOLIS • SAN ANTONIO • ST. LOUIS
BEIJING • DUBAI • HONG KONG • LONDON • MUNICH • RIYADH

# MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

601 S. Figueroa Street, 30th Floor, Los Angeles, CA  90017

TEL:  213-892-4000
FAX:  213-629-5063

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**NEW YORK**
Midtown Office
212-530-5800
FAX: 212-530-0158

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-171-448-3000
FAX: 44-171-448-3029

**MOSCOW**
7-501-258-5015
FAX: 7-501-258-5014

**TOKYO**
81-3-3504-1050
FAX: 81-3-3595-2790

**HONG KONG**
852-2-971-4888
FAX: 852-2-840-0792

**SINGAPORE**
65-428-2400
FAX: 65-428-2500

## FACSIMILE TRANSMISSION

TO: _Walter Herring_     FAX No.: _214.855.8200_

DATE: _1/18/08_     Phone No.: _____

Number of Pages (including this cover page): _5_

FROM:    Robert Jay Moore     FAX No.:    213/892-4701
                                          Phone No.:    213/892-4501

MESSAGE:    _Executed letter agreement._

_Bob_

File No.: _____     Employee No.: 08305

### CONFIDENTIALITY NOTICE:

The information contained in this facsimile message is intended only for the use of the individual or entity named above and may be legally privileged or confidential.  If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized dissemination, distribution, or copy of this communication is strictly prohibited.  If you have received this communication in error, we would appreciate your notifying us at 213 892-4467.  Thank you.

LA1:#6142783v1

**Exhibit   D**

WALTER A. HERRING, ESQ.
Texas State Bar No. 09535300
Admitted Pro Hac Vice
NORLYNN B. PRICE, ESQ.
Texas State Bar No. 02499050
Admitted Pro Hac Vice
MICHAEL W. ANGLIN
Texas State Bar No. 01260800
Admitted Pro Hac Vice
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200
Email:  wherring@fulbright.com
        nprice@fulbright.com
        manglin@fulbright.com

Stanley W. Parry, Esq.
Nevada Bar No. 1417
Ballard Spahr Andrews & Ingersoll, LLP
300 South Fourth Street
Suite 1201
Las Vegas, Nevada  89101
Telephone: (702) 471-7000
Facsimile: (702) 471-7070
Email: ParryS@ballardspahr.com

*Attorneys for all Plaintiff LLCs [with the exception
of Hesperia Lenders, LLC]*


Linda Dakin-Grimm (admitted *pro hac vice*)
Robert J. Moore (admitted *pro hac vice*)
Daniel M. Perry (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & McCLOY, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90035
Telephone No.:  (213) 892-4000
Facsimile No.:  (213) 629-5063
Email: ldakin@milbank.com

Peter C. Bernhard (Nevada Bar No. 0734)
Georganne W. Bradley (Nevada Bar No. 1105)
Joseph P. Hardy (Nevada Bar No. 7370)
BULLIVANT HOUSER BAILEY PC
3883 Howard Hughes Pkwy., Ste. 550
Las Vegas, NV 89169
Facsimile No.:  (702) 650-2995
E-Mail:  peter.bernhard@bullivant.com;
         georganne.bradley@bullivant.com

*Counsel for Compass Financial Partners LLC and
Compass USA SPE LLC*

1  Janet L. Chubb, Esq. (Nevada Bar No. 176)
   Louis M. Bubala III (Nevada Bar No. 8974)
2  JONES VARGAS
   100 W. Liberty St., 12th Floor
3  P. O. Box 281
   Reno, NV 89504-0281
4  Telephone: (775) 786-5000
   Facsimile: (775) 786-1177
5
   *Counsel for Baltes Company; Robert A. Kehl and Tinal*
6  *M. Kehl; and Patrick J. Anglin (collectively, the "JV*
   *Non-LSA Lenders") and Charles B. Anderson Trust;*
7  *Rita P. Anderson, as trustee of the Rita P. Anderson*
   *Trust; Robert J. Kehl; Ruth Ann Kehl; Robert A. Kehl;*
8  *Christina "Tina" M. Kehl, Krystina L. Kehl; Daniel J.*
   *Kehl, Kevin A. Kehl, individually and on behalf of*
9  *Susan L. Kehl and Andrew R. Kehl; Christina M. Kehl;*
   *Cynthia A. Winter; Kehl Development Corporation;*
10 *Judy A. Bonnet; Kevin A. McKee; Pamela J. McKee;*
   *Warren Hoffman Family Investments, LP; and Mojave*
11 *Canyon, Inc. (collectively the "JV LSA Lenders")*
12
13
14
                    UNITED STATES DISTRICT COURT
15                      DISTRICT OF NEVADA
16
17 | 3685 SAN FERNANDO LENDERS, LLC, | CASE NO.: 3:07-cv-00241-RCJ-VPC |
   | et al., | Case No.: 2:07-CV-00892-RCJ-GWF |
18 | Plaintiffs, | |
19 | | |
   | v. | |
20 | | **AGREED STIPULATION** |
   | COMPASS USA SPE LLC, | |
21 | et al., | |
   | Defendants. | |
22
23                    <u>**AGREED STIPULATION**</u>
24
25        COME NOW Plaintiffs and Defendants Compass Financial Partners LLC and
26 Compass USA SPE LLC, David Blatt and Boris Piskun (collectively the "Standstill Parties") and
27 file this Agreed Stipulation and would show the following:
28

LA1:#6371301                        -2-

1    The Standstill Parties have agreed to a brief abatement of proceedings for the

2    purpose of entering into a mediation as outlined in the Letter Agreement attached hereto as

3    Exhibit A.

4    WHEREFORE, premises considered, the Standstill Parties request the Court

5    continue all matters between the Standstill Parties until on or after March 3, 2008, as outlined in

6    the Letter Agreement.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    DATED this 22nd day of January, 2008.    FULBRIGHT & JAWORSKI L.L.P.

2                                             By: _____
                                              Walter A. Herring, Esq.
3                                             Norlynn B. Price, Esq.
                                              Michael W. Anglin, Esq..
4                                             Attorneys for all Plaintiff LLCs [with the
                                              exception of Hesperia Lenders, LLC]
5
                                              BALLARD SPAHR ANDREWS &
6                                             INGERSOLL, LLP
                                              STANLEY W. PARRY, ESQ.
7                                             Attorneys for all Plaintiff LLCs [with the
                                              exception of Hesperia Lenders, LLC]
8

9                                             JONES VARGAS

10
                                              By: _____
11                                            Janet L. Chubb
                                              Louis M. Bubala
12                                            Counsel for Baltes Company; Robert A. Kehl and
                                              Tinal M. Kehl; and Patrick J. Anglin
13                                            (collectively, the "JV Non-LSA Lenders") and
                                              Charles B. Anderson Trust; Rita P. Anderson, as
14                                            trustee of the Rita P. Anderson Trust; Robert J.
                                              Kehl; Ruth Ann Kehl; Robert A. Kehl; Christina
15                                            "Tina" M. Kehl, Krystina L. Kehl; Daniel J.
                                              Kehl, Kevin A. Kehl, individually and on behalf
16                                            of Susan L. Kehl and Andrew R. Kehl; Christina
                                              M. Kehl; Cynthia A. Winter; Kehl Development
17                                            Corporation; Judy A. Bonnet; Kevin A. McKee;
                                              Pamela J. McKee; Warren Hoffman Family
18                                            Investments, LP; and Mojave Canyon, Inc.
                                              (collectively the "JV LSA Lenders")
19

20                                            MILBANK, TWEED, HADLEY & McCLOY
                                              LLP
21
                                              By: _____
22                                            Linda Dakin-Grimm (admitted *pro hac vice*)
                                              Robert Jay Moore (admitted *pro hac vice*)
23                                            Daniel M. Perry (admitted *pro hac vice*)

24                                            BULLIVANT HOUSER BAILEY PC
                                              Peter C. Bernhard (Nevada #0734)
25                                            Georganne W. Bradley (Nevada Bar #1105)
                                              Joseph P. Hardy (Nevada Bar #7370)
26                                            Counsel for Compass Financial Partners LLC and
                                              Compass USA SPE LLC
27

28

                                        - 3 -

1    DATED this 22nd day of January, 2008    FULBRIGHT & JAWORSKI L.L.P.

2                                            By:_____

3                                                Walter A. Herring, Esq.
                                                 Norlynn B. Price, Esq.
                                                 Michael W. Anglin, Esq..
4                                                Attorneys for all Plaintiff LLCs [with the
                                                 exception of Hesperia Lenders, LLC]
5
                                             BALLARD SPAHR ANDREWS &
6                                            INGERSOLL, LLP
                                                 STANLEY W. PARRY, ESQ.
7                                            Attorneys for all Plaintiff LLCs [with the
                                             exception of Hesperia Lenders, LLC]
8

9                                            JONES VARGAS

10
                                             By:_____
11                                               Janet L. Chubb
                                                 Louis M. Bubala
12                                           Counsel for Baltes Company; Robert A. Kehl
                                             and Tinal M. Kehl; and Patrick J. Anglin
13                                           (collectively, the "JV Non-LSA Lenders") and
                                             Charles B. Anderson Trust; Rita P. Anderson,
14                                           as trustee of the Rita P. Anderson Trust; Robert
                                             J. Kehl; Ruth Ann Kehl; Robert A. Kehl;
15                                           Christina "Tina" M. Kehl, Krystina L. Kehl;
                                             Daniel J. Kehl, Kevin A. Kehl, individually
16                                           and on behalf of Susan L. Kehl and Andrew R.
                                             Kehl; Christina M. Kehl; Cynthia A. Winter;
17                                           Kehl Development Corporation; Judy A.
                                             Bonnet; Kevin A. McKee; Pamela J. McKee;
18                                           Warren Hoffman Family Investments, LP; and
                                             Mojave Canyon, Inc. (collectively the "JV LSA
19                                           Lenders")

20
                                             MILBANK, TWEED, HADLEY & MCCLOY
21                                           LLP

22                                           By:    Robert Jay Moore
                                                 Linda Dakin-Grimm (admitted *pro hac
23                                               vice*)
                                                 Robert Jay Moore (admitted *pro hac vice*)
24                                               Daniel M. Perry (admitted *pro hac vice*)

25                                           BULLIVANT HOUSER BAILEY PC
                                                 Peter C. Bernhard (Nevada #0734)
26                                               Georganne W. Bradley (Nevada Bar #1105)
                                                 Joseph P. Hardy (Nevada Bar #7370)
27                                           Counsel for Compass Financial Partners LLC
                                             and Compass USA SPE LLC
28

LA1:#6371301                    -4-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

This certifies that, pursuant to Rule 5 of the FEDERAL RULES OF CIVIL

PROCEDURE, on the 22nd day of January 2008, a true and correct copy of the foregoing Agreed

Stipulation was served on all counsel of record via the Court's CM/ECF System and to the

following attorneys of record by regular mail:

| Christine M. Pajak<br>Stutman Treister & Glatt<br>1901 Avenue of the Stars, 12th Floor<br>Los Angeles, CA 90067<br>Email: cpajak@stutman.com | Cynthia J. Larsen<br>Orrick, Herrington & Sutcliffe, LLP<br>400 Capitol Mall, Suite 300<br>Sacramento, CA 95814<br>Email: clarsen@orrick.com |
| --- | --- |

By: /s/ Walter A. Herring

Walter A. Herring, Esq.

IT IS SO ORDERED this 28th day of January, 2008.

ROBERT C. JONES
UNITED STATES DISTRICT COURT CLERK

**Exhibit  E**

1    Linda Dakin-Grimm (admitted *pro hac vice*)
     Daniel M. Perry (admitted *pro hac vice*)
2    MILBANK, TWEED, HADLEY & McCLOY, LLP
     601 S. Figueroa Street, 30th Floor
3    Los Angeles, CA 90035
     Telephone No.:  (213) 892-4000
4    Facsimile No.:  (213) 629-5063

5    Peter C. Bernhard (Nevada Bar No. 0734)
     Georganne W. Bradley (Nevada Bar No. 1105)
6    Joseph P. Hardy (Nevada Bar No. 7370)
     BULLIVANT HOUSER BAILEY PC
7    3883 Howard Hughes Pkwy., Ste. 550
     Las Vegas, NV 89169
8    Facsimile No.:  (702) 650-2995
     E-Mail:  peter.bernhard@bullivant.com;
9              georganne.bradley@bullivant.com

10   **Counsel for Compass Financial Partners LLC**
     **and Compass USA SPE LLC**
11

12                   UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
13

| | |
|---|---|
| 14  3685 SAN FERNANDO LENDERS, LLC, et al. | Case No. 3:07-CV-00241-RCJ-VPC |
| 15                          Plaintiffs | Case No. 2:07-CV-00892-RCJ-GWF |
| | Case No. 2:07-CV-00894-RCJ-GWF |
| 16  v. | Bankruptcy Case No. BK-S-06-10725 LBR |
| 17  COMPASS USA SPE LLC, et al. | [Chapter 11] |
|                          Defendants | |
| 18 | **NOTICE OF FILING OF** |
| | **STANDSTILL AGREEMENT** |
| 19 | |

20              **NOTICE OF FILING OF STANDSTILL AGREEMENT**

21              PLEASE TAKE NOTICE that Compass Financial Partners LLC and Compass

22   USA SPE LLC (together "Compass") hereby files the Standstill Agreement between the parties,

23   attached hereto as Exhibit A.  Through this Standstill Agreement, the parties agree to an

24   abatement period through and including June 25, 2008.

25

26

27

28

LA1 #6382003

1

Dated:  June 12, 2008

2

3

_____/s/ Paul M. Torres_____

4

Linda Dakin-Grimm (admitted pro hac vice)
Daniel M. Perry (admitted pro hac vice)

5

MILBANK, TWEED, HADLEY & McCLOY, LLP
601 S. Figueroa Street, 30th Floor

6

Los Angeles, CA 90035
Telephone No.:  (213) 892-4000

7

Facsimile No.:  (213) 629-5063

8

--and--

9

Peter Bernhard (State Bar No. 734)
Georganne W. Bradley (State Bar No. 1105)

10

Bullivant Houser Bailey PC
3883 Howard Hughes Pkwy., Ste. 550

11

Las Vegas, NV 89169
peter.bernhard@bullivant.com

12

Telephone No.: (702) 650-6565
Facsimile No.:  (702) 650-2995

13

14

*Counsel for Compass Financial Partners LLC and
Compass USA SPE LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA1:#6382003                              -2-

1

## **CERTIFICATE OF SERVICE**

2        This certifies that, pursuant to Rule 5 of the FEDERAL RULES OF CIVIL PROCEDURE, on the

3    12th day of June 2008, a true and correct copy of the foregoing *Notice of Filing of Standstill*

4    *Agreement* was served on all counsel via the Court's CM/ECF System.

5

6

7                                    By:    ___/s/ Paul Torres_____

8                                           Paul Torres

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA1 #6382003

-3-

# Exhibit A

# Exhibit A

June 3, 2008

**VIA FACSIMILE AND ELECTRONIC MAIL**

Norlynn B. Price, Esq.                        Terry A. Coffing, Esq.
Fulbright & Jaworski L.L.P.                    Marquis & Aurbach
2200 Ross Avenue                              10001 Park Run Drive
Suite 2800                                    Las Vegas, NV 89145
Dallas, TX 75201-2784


Janet L. Chubb, Esq.                          Robert P. Cummins, Esq.
Jones Vargas                                  Cummins & Cronin, LLC
100 West Liberty Street, 12th Floor           Chicago, IL
Reno, NV  89504-02

Re:    Case No. 2:07-CV-00892-RCJ-GWF; *In re*: USA Commercial
       Mortgage Company *et al*; Case No. 3:07-CV-00241; 3685 San
       Fernando Lenders, LLC, *et al*. v. Compass USA SPE LLC, *et al*.

Dear Counsel:

        The letter agreement among Walter Herring, Esq., Janet Chubb, Esq., and myself,
dated January 18, 2008 (the "Standstill Agreement"), set forth the terms of an agreement
among all Plaintiffs[1] and Defendants in the Second Amended Complaint and with respect
to all Counter-Defendants and Cross-Defendants in the Compass Counterclaims.  The
Standstill Agreement was so ordered by the U.S. District Court for the District of Nevada
(the "District Court") on January 28, 2008, in the above-referenced cases.  The Standstill
Agreement was amended by a subsequent letter agreement, dated March 3, 2008, and by
an agreement reached at the conclusion of a mediation of this litigation conducted before
Hon. Mike Nakagawa on March 13, 2008.  At a hearing conducted on April 28, 2008, the
District Court extended the Standstill Period through and including a further hearing set
for June 2, 2008, at which hearing the District Court ordered the appointment of Tom R.
Grimmett as Receiver for the Plaintiff LLCs (the "Receiver").  By oral agreement
reached among counsel for the Plaintiffs and the Defendants at the conclusion of the June
2, 2008 hearing, the Standstill Period was extended to June 9, 2008, in order to
accommodate a continued mediation before Judge Nakagawa held on June 6, 2008.

        This letter agreement among Norlynn Price, Esq., Janet Chubb, Esq., Terry
Coffing, Esq. as counsel for the Receiver, Robert Cummins, Esq. as counsel for Cross-
Defendants Mlles. Knoles and Kesler and Messrs. Kriss, Newman and Maradan (the
"Cummins Cross-Defendants"), Louis Curcio, Esq., counsel to Silar Advisors, LP and
Silar Special Opportunities Fund, LP (the "Silar Dedendants"), and myself, confirms the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the
Standstill Agreement.

agreement among the Plaintiffs, the Defendants, the Silar Defendants, the Cummins Cross-Defendants, and the Receiver (collectively, the "Standstill Parties") that the Standstill Period shall be further extended through and including June 25, 2008, subject to the following additional provisions, to enable the Standstill Parties to participate in additional mediation sessions before Judge Nakagawa scheduled for June 23 and 24, 2008:

- To the extent that any Plaintiff, Defendant, Silar Defendant, or Counter-Defendant or Cross-Defendant would have been required to file and/or serve a responsive paper, submission, pleading or motion during the Standstill Period as extended by this letter agreement, the deadline for such filing and/or service shall be twenty (20) days after the conclusion of such extended Standstill Period.

- This Standstill Agreement does not prohibit the Standstill Parties' from complying with the obligations imposed by the District Court in connection with the termination hearing, scheduled to commence on August 12, 2008. This includes the parties' obligations immediately to comply with the initial disclosure requirements of the Federal Rules of Civil Procedure, to produce initial witness lists and reply witness lists, to provide the District Court with a schedule for discovery and pre-trial procedures, and to respond to any discovery concerning termination issues pursuant to the [Proposed] Stipulation and Order re Pre-Hearing Deadlines filed with the Court on June 9, 2008.

- Compass will mail this fully executed letter agreement to all Counter-Defendants and Cross-Defendants, which shall constitute service upon each Counter-Defendant and Cross-Defendant.

Unless modified herein, all other terms and conditions of the Standstill Agreement shall remain in full force and effect through and including June 25, 2008.

All of the foregoing reflects our agreement as confirmed by my signature below. If the above comports with your understanding, please execute this letter agreement in the space provided below and return the executed agreement to me by facsimile. We will circulate a fully executed copy and file the executed letter agreement with the District Court.

Sincerely,

Robert Jay Moore

**AGREED AS TO FORM AND CONTENT:**

_____
Norlynn B. Price, Esq.

**AGREED AS TO FORM AND CONTENT:**

_____
Janet L. Chubb, Esq.

**AGREED AS TO FORM AND CONTENT:**

_____
Terry A. Coffing, Esq
Counsel for the Receiver

**AGREED AS TO FORM AND CONTENT:**

_____
Robert P. Cummins, Esq
Counsel for the Cummins Cross-Defendants

**AGREED AS TO FORM AND CONTENT:**

_____
Louis Curcio, Esq
Counsel for the Silar Defendants

LA1 #6381960

**AGREED AS TO FORM AND CONTENT:**


_____
Norlynn B. Price, Esq.


**AGREED AS TO FORM AND CONTENT:**


_____
Janet L. Chubb, Esq.


**AGREED AS TO FORM AND CONTENT:**


_____
Terry A. Coffing, Esq
Counsel for the Receiver


**AGREED AS TO FORM AND CONTENT:**


_____
Robert P. Cummins, Esq
Counsel for the Cummins Cross-Defendants


**AGREED AS TO FORM AND CONTENT:**

_____
Louis Curcio, Esq
Counsel for the Silar Defendants

**AGREED AS TO FORM AND CONTENT:**

_____
Norlynn B. Price, Esq.


**AGREED AS TO FORM AND CONTENT:**

_____
Janet L. Chubb, Esq.


**AGREED AS TO FORM AND CONTENT:**

_____
Terry A. Coffing, Esq
Counsel for the Receiver


**AGREED AS TO FORM AND CONTENT:**

_____
Robert P. Cummins, Esq
Counsel for the Cummins Cross-Defendants


**AGREED AS TO FORM AND CONTENT:**

_____
Louis Curcio, Esq
Counsel for the Silar Defendants

**AGREED AS TO FORM AND CONTENT:**

_Norlynn B. Price_      *by Robert Menchel*
_____
Norlynn B. Price, Esq.

**AGREED AS TO FORM AND CONTENT:**

_____
Janet L. Chubb, Esq.

**AGREED AS TO FORM AND CONTENT:**

_____
Terry A. Coffing, Esq
Counsel for the Receiver

**AGREED AS TO FORM AND CONTENT:**

_____
Robert P. Cummins, Esq
Counsel for the Cummins Cross-Defendants

**AGREED AS TO FORM AND CONTENT:**

_____
Louis Curcio, Esq
Counsel for the Silar Defendants

LA1:#6381960

**Cannom, Hannah**

| | |
|---|---|
| **From:** | Mainland, Richard [rmainland@fulbright.com] |
| **Sent:** | Thursday, June 12, 2008 2:49 PM |
| **To:** | Cannom, Hannah |
| **Cc:** | Moore, Robert; Price, Norlynn |
| **Subject:** | Standstill Amendment |

**Attachments:**     Scan001.PDF



Scan001.PDF (180
KB)

      Hannah:  Attached is the Standstill amendment, which I have signed.  The
Receiver has approved the amendment and has authorized us to sign it, but doesn't believe
a separate signature by the Receiver's personal counsel is necessary.

Richard Mainland

**Exhibit   F**

1

1     UNITED STATES DISTRICT COURT
       DISTRICT OF NEVADA
2       LAS VEGAS, NEVADA

3 In re:  USA COMMERCIAL MORTGAGE )
  COMPANY.          )
4            ) Case No.
             ) 2:07-CV-892-RCJ-GWF
5 _____)

      TRANSCRIPT OF PROCEEDINGS
6         OF
   ORDER TO SHOW CAUSE RE: CIVIL CONTEMPT
7        AND
   PLAINTIFFS' STANDING TO PURSUE CLAIMS
8    ON BEHALF OF DIRECT LENDERS
    IN STANDARD PROPERTY LOAN
9 AND FOR ORDER AUTHORIZING LIMITED DISCOVERY OF PARTIES
  INVOLVED IN THE FORMATION OF STANDARD PROPERTY
10       AND
    SILAR'S MOTION FOR SANCTIONS
11       AND
  SILAR'S MOTION TO STRIKE SECOND AMENDED COMPLAINT
12   OR, IN THE ALTERNATIVE, DISMISS
       AND
13  MOTION FOR ORDER OF CONTEMPT AGAINST:
   AIMEE KEARNS, EDWARD SCHOONOVER,
14   ARNOLD ALVES, AND DONNA CANGELOSI
 AND AMENDED MOTION FOR ORDER OF CONTEMPT
15       AND
    MOTION FOR RECONSIDERATION
16       AND
 MOTION TO WITHDRAW AS COUNSEL FOR CERTAIN PLAINTIFF LLCs
17       AND
   MOTION FOR APPOINTMENT OF RECEIVER
18       AND
 HEARING RE: OBJECTIONS, IF ANY, RE BAY POMPANO LOAN PAYOFF
19       AND
 HEARING RE: OBJECTIONS, IF ANY, RE SHAMROCK LOAN PAYOFF
20       AND
 HEARING RE: OBJECTIONS, IF ANY, RE BARUSA LOAN PAYOFF
21      VOLUME 1
  BEFORE THE HONORABLE ROBERT C. JONES
22   UNITED STATES DISTRICT JUDGE

23     Monday, June 2, 2008

24 Court Recorder:  Araceli Catu
 Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

1    to waive on their behalf any right to default interest.

2              DR. ADDES:  Okay.  But it seems that if this

3    waterfall agreement that we talk about -- if it goes the way

4    they want it, it's like the majority of the lenders' principal

5    and interest --

6              THE COURT:  It's not going to.

7              DR. ADDES:  It's not going to.

8              THE COURT:  Yeah.

9              DR. ADDES:  Okay.  And when might we be able to

10   expect a ruling on the waterfall?

11             THE COURT:  You'll get a ruling -- on a waterfall?

12             DR. ADDES:  Yeah.  When --

13             THE COURT:  You're going to get a ruling --

14             DR. ADDES:  When will the waterfall --

15             THE COURT:  -- on the termination --

16             DR. ADDES:  -- be --

17             THE COURT:  -- within 60 days.  On the waterfall,

18   I'll await the parties' request in an appropriately-pled motion

19   for summary judgment.

20             DR. ADDES:  Okay.  And, also, I just have to say that

21   we as lenders so much appreciated Donna Cangelosi to rise when

22   we needed a leader.  We -- we were -- we were divided.  We felt

23   helpless.  She rose.

24        She gave up two years of her life at no payment from any

25   of us to try to help us recoup our resources here, and we have

1        I certify that the foregoing is a correct transcript from

2    the electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5

6    /s/ Michele Phelps                          06/03/08

7    Michele Phelps, Transcriptionist              Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Exhibit  G**

**1 of 2**

Annette W. Jarvis, Utah Bar No. 1649
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400    **E-FILED ON NOVEMBER 15, 2006**
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: ajarvis@rqn.com
    and
Lenard E. Schwartzer, Nevada Bar No. 0399
Jeanette E. McPherson, Nevada Bar No. 5423
SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com

Attorneys for Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>USA COMMERCIAL MORTGAGE COMPANY,<br>Debtor. | Case No. BK-S-06-10725 LBR<br>Case No. BK-S-06-10726 LBR<br>Case No. BK-S-06-10727 LBR<br>Case No. BK-S-06-10728 LBR<br>Case No. BK-S-06-10729 LBR |
| In re:<br>USA CAPITAL REALTY ADVISORS, LLC,<br>Debtor. | Chapter 11 |
| In re:<br>USA CAPITAL DIVERSIFIED TRUST DEED FUND, LLC,<br>Debtor. | Jointly Administered Under<br>Case No. BK-S-06-10725 LBR |
| In re:<br>USA CAPITAL FIRST TRUST DEED FUND, LLC,<br>Debtor. | **DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION** |
| In re:<br>USA SECURITIES, LLC,<br>Debtor. | |
| Affects:<br>☒ All Debtors<br>☐ USA Commercial Mortgage Company<br>☐ USA Securities, LLC<br>☐ USA Capital Realty Advisors, LLC<br>☐ USA Capital Diversified Trust Deed Fund, LLC<br>☐ USA First Trust Deed Fund, LLC | Confirmation Hearing<br>December 19, 2006<br>10:00 a.m. |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

i

# **TABLE OF CONTENTS**

I. DEFINITIONS AND RULES OF CONSTRUCTION ............................................................2
    A.   DEFINED TERMS. ....................................................................................................2
    B.   OTHER TERMS. ....................................................................................................21
    C.   PLAN DOCUMENTS SUPPLEMENT. ........................................................................21
    D.   SCHEDULE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ......................22
    E.   DIRECT LENDER SUPPLEMENT. ............................................................................22
    F.   EXHIBITS. ...........................................................................................................23

II. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ...........23
    A.   SUMMARY. ..........................................................................................................23
    B.   UNCLASSIFIED CLAIMS. ......................................................................................29
        1.   Administrative Expense Claims For Each Debtor. ..................................29
        2.   Priority Tax Claims. ...............................................................................31
    C.   CLASSIFIED CLAIMS AND EQUITY INTERESTS. ....................................................32
        1.   USACM – (Classes A-1 Through A-8). ..................................................32
        2.   FTDF – (Classes B-1 Through B-5). ......................................................35
        3.   DTDF – (Classes C-1 Through C-5). .....................................................37
        4.   USA Realty – (Classes D-1 Through D-5). .............................................39
        5.   USA Securities – (Classes E-1 Through E-5). .........................................41

III. ACCEPTANCE OR REJECTION OF THE PLAN ........................................................43
    A.   VOTING CLASSES. ...............................................................................................43
    B.   VOTING RIGHTS OF HOLDERS OF DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS. .43
    C.   ACCEPTANCE BY IMPAIRED CLASSES. .................................................................43
    D.   NONCONSENSUAL CONFIRMATION. .....................................................................44

IV. IMPLEMENTATION OF THE PLAN ........................................................................45
    A.   GENERAL MEANS OF IMPLEMENTATION. .............................................................45
    B.   NO SUBSTANTIVE CONSOLIDATION OR RECHARACTERIZATION OF LOANS. ...........46
    C.   ASSET SALE TRANSACTION. ...............................................................................46
    D.   POST-EFFECTIVE DATE ENTITIES. .......................................................................47
        1.   The USACM Trust. ................................................................................47
        2.   Post-Effective Date DTDF. ....................................................................50
    E.   INTERCOMPANY COMPROMISES. .........................................................................51
        1.   The USACM/Direct Lender Compromise. ..............................................51
        2.   The USACM/FTDF Compromise. ..........................................................53
        3.   The FTDF/DTDF Compromise. ..............................................................56
        4.   The FTDF/USA Realty Compromise. ......................................................56
        5.   The DTDF/USA Realty Compromise. ......................................................57
    F.   LOAN DISTRIBUTIONS AND LOAN SERVICING AGREEMENTS. ...............................57
    G.   PRESERVATION OF RIGHTS OF ACTION AND DEFENSES. .......................................58
    H.   NONDISCHARGE OF DEBTORS AND INJUNCTION. ..................................................59

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

ii

V. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.................................................60
    A.   ASSUMPTION.....................................................................................60
    B.   REJECTION.......................................................................................62
        1.   General.......................................................................................62
        2.   USACM Management And/Or Operating Agreements....................62
        3.   Claims Bar Date..........................................................................63

VI. CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE .................63
    A.   CONDITIONS TO CONFIRMATION........................................................63
    B.   CONDITIONS TO EFFECTIVE DATE.....................................................64
    C.   WAIVER OF CONDITIONS...................................................................64
    D.   FAILURE TO SATISFY CONDITIONS.....................................................64

VII. DISTRIBUTION OF CONSIDERATION.................................................................65
    A.   OBJECTIONS TO CLAIMS...................................................................65
        1.   Deadlines....................................................................................65
        2.   Authority.....................................................................................65
    B.   DISPUTED CLAIMS AND EQUITY INTERESTS—CASH RESERVES.............66
        1.   General.......................................................................................66
        2.   Establishment Of Cash Reserves...................................................66
        3.   Estimation..................................................................................67
        4.   Distribution Upon Allowance........................................................67
        5.   Release Of Cash Reserves............................................................67
    C.   UNDELIVERABLE OR RETURNED DISTRIBUTIONS..................................68
    D.   DE MINIMIS DISTRIBUTIONS..............................................................68
    E.   DISBURSING AGENT.........................................................................69
        1.   Disbursing Agent For FTDF, USA Realty And USA Securities Estates. ....69
        2.   Disbursing Agent USACM And DTDF Estates. .................................69
        3.   Bond..........................................................................................70
        4.   Compensation.............................................................................70
    F.   MANNER OF PAYMENT UNDER THE PLAN.............................................70
    G.   DELIVERY OF DISTRIBUTIONS.............................................................70
    H.   COMPLIANCE WITH TAX REQUIREMENTS..............................................71
    I.   OLD INSTRUMENTS AND SECURITIES; LIENS.......................................71
        1.   Rights Of Persons Holding Instruments And Securities.....................71
        2.   Cancellation Of Liens...................................................................71
    J.   DATES OF DISTRIBUTION...................................................................71

VIII. MISCELLANEOUS PROVISIONS.......................................................................72
    A.   LIMITATION OF LIABILITY AND RELEASES............................................72
        1.   Limitation Of Liability..................................................................72
        2.   DTDF/FTDF Releases...................................................................72
        3.   FTDF/USACM Releases.................................................................74
        4.   Debtor Releasors/Direct Lenders Releases......................................75
        5.   FTDF/USA Realty Releases............................................................76
    C.   NOTICE OF EFFECTIVE DATE..............................................................78
    D.   RETENTION OF JURISDICTION.............................................................78

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

iii

| | | |
|---|---|---|
| E. | BINDING EFFECT. | 81 |
| F. | AMENDMENT, MODIFICATION AND SEVERABILITY. | 81 |
| G. | EXHIBITS. | 81 |
| H. | NO ADMISSION. | 82 |
| I. | 1146(C) EXEMPTION. | 82 |
| J. | GENERAL AUTHORITY. | 82 |
| K. | DISSOLUTION OF COMMITTEES. | 82 |
| | 1.   USACM. | 83 |
| | 2.   DTDF. | 83 |
| | 3.   FTDF, USA REALTY AND USA SECURITIES. | 83 |
| M. | BINDING EFFECT. | 83 |
| N. | GOVERNING LAW. | 84 |
| O. | PAYMENT DATES. | 84 |
| P. | HEADINGS. | 84 |
| Q. | NO WAIVER. | 84 |
| R. | OTHER DOCUMENTS AND ACTIONS. | 84 |
| S. | SEVERABILITY OF PLAN PROVISIONS. | 84 |
| T. | POST-CONFIRMATION STATUS REPORT. | 85 |
| U. | FINAL DECREE. | 85 |
| V. | REVOCATION, WITHDRAWAL, CRAM-DOWN OR NON-CONSUMMATION. | 85 |
| W. | NOTICE TO CERTAIN PARTIES. | 86 |

IX. REQUEST FOR CONFIRMATION ........................................................................ 88

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

iv

## DEBTORS' THIRD AMENDED JOINT
## CHAPTER 11 PLAN OF REORGANIZATION

USA Commercial Mortgage Company, USA Securities, LLC, USA Capital Realty Advisors, LLC, USA Capital Diversified Trust Deed Fund, LLC, and USA Capital First Trust Deed Fund, LLC, the Debtors and Debtors in Possession in these jointly administered Chapter 11 Cases, propose the following joint chapter 11 Plan of reorganization pursuant to section 1121(a) of title 11 of the United States Code.

On April 13, 2006, the Debtors commenced their Chapter 11 Cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code. Sent to you in the same envelope as this document is the Disclosure Statement that has been approved by the Court and that is provided to help you understand the Plan. All Direct Lenders and holders of Allowed Claims and Equity Interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. The Disclosure Statement for the Plan contains a summary of the Plan and discusses the Debtors' history, businesses, and assets. Reading the summary of the Plan contained in the Disclosure Statement, however, is not a substitute for reading the Plan. As the provisions of the Plan control, all Direct Lenders and holders of Allowed Claims and Equity Interests are encouraged to carefully read the Plan. No solicitation materials, other than the Disclosure Statement, the Exhibits attached hereto or thereto or referenced herein or therein, and the related materials transmitted herewith and therewith, have been approved by the Court for use in soliciting acceptances or rejections of the Plan.

1

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**I.**

**DEFINITIONS AND RULES OF CONSTRUCTION**

A.    **Defined Terms.**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined):

1.    **"2% Holdback"** means sums withheld under Paragraph 1.2 of the Modified Order Authorizing Distributions and Holdbacks entered on October 2, 2006 [Docket No. 1424].

2.    **"Acquired Assets"** means the FTDF Assets and the USACM Assets, described as "Assets" in the Asset Purchase Agreement.

3.    **"Adjusted FTDF Base Recovery Percentage"** means the percent recovery that DTDF or the Post-Effective Date DTDF must reach after the adjustment for an annual increase, made on each anniversary of the Effective Date, of an additional $5 million to DTDF's Investment in order to obtain the FTDF Base Recovery Percentage.

4.    **"Administrative Expense Claim"** means any Claim against a Debtor constituting a cost of expense of administration of and in these Chapter 11 Cases incurred on or after the Petition Date of the kind described in section 503(b) of the Bankruptcy Code, including, without limitation, (A) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of a Chapter 11 Case; (B) Taxes described in section 503(b)(1)(B) of the Bankruptcy Code; (C) any fees or expenses of Debtors' Professionals or Committee Professionals allowable under sections 330(a) or 331 of the Bankruptcy Code; (D) all Statutory Fees; and (E) Cure Payments.

5.    **"Administrative Expense Claim Bar Date"** means the date(s) as set forth in section B.1.c.i of Art. II of the Plan.

6.  **"Affiliate"** has the meaning ascribed to that term in section 101(2) of the Bankruptcy Code.

7.  **"Allocated Net Sale Proceeds"** means the net sale proceeds generated from the Asset Sale Transaction as allocated between USACM and FTDF in accordance with the Asset Purchase Agreement as may be modified or supplemented by the provisions of section E.2.i of Art. IV of the Plan.

8.  **"Allowed Administrative Expense Claim"** means all or that portion of an Administrative Expense Claim which has been Allowed pursuant to a Final Order.

9.  **"Allowed Claim"** or **"Allowed . . . Claim"** means any Claim against a Debtor (A) as listed in the Schedules Filed in such Debtor's Chapter 11 Case, provided that the Claim is not listed therein as disputed, contingent or unliquidated; (B) as stated in a proof of Claim which is Filed before the Bar Date applicable to such Claim and as to which no objection to the allowance thereof or a motion to estimate Claim pursuant to section 502(c) of the Bankruptcy Code has been interposed on or before the dates set forth in section A of Art. VII of the Plan; or (C) as allowed by Final Order.  An "Allowed . . . Claim"(i) is the total amount of the Claim less any distribution or payments made by a Debtor to the Holder of the Allowed . . . Claim after the Petition Date pursuant to any order of the Court, including without limitation, the Interim Distribution Orders, and (ii) unless otherwise specified herein or by Final Order of the Court, an Allowed . . . Claim shall not include interest on such Claim accruing after the Petition Date; provided, however, that holders of Allowed Class B-4 General Unsecured Claims and Allowed Class C-4 General Unsecured Claims shall receive Postpetition Interest on such Allowed Claims as provided in Art. II of the Plan.

10.  **"Allowed Equity Interest"** means an Equity Interest in a Debtor (A) as designated in List of Equity Security Holders Filed in such Debtor's Chapter 11 Case, including the Lists designated in the "Stipulated Order re Proofs of Interest" entered by the Court in the First Trust Case and the Diversified Case on September 15, 2006 [Docket No. 1293], provided that such Equity Interest is not listed as disputed or contingent; (B) as stated in a proof of Equity Interest which is Filed before the expiration of the General Bar Date and to which no objection to the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3

allowance thereof has been interposed on or before the date set forth in section A of Art. VII of the Plan. An "Allowed Equity Interest" is the total amount of the Equity Interest less any distribution or payments made by a Debtor to the holder of the Allowed Equity Interest after the Petition Date, pursuant to any order of the Court, including without limitation, the Interim Distribution Orders.

11.    **"Allowed Class . . . Claim" or "Allowed Class . . . Equity Interest"** means an Allowed Claim or Allowed Equity Interest, respectively, classified in the specified Class.

12.    **"Alternative Dispute Resolution Agreement"** means the joint agreement by the Direct Lender Committee and the USACM Committee, which shall set forth the process by which objections to Direct Lender Unsecured Claims may be resolved. This agreement will be Filed as part of the Direct Lender Supplement and served on all Direct Lenders as set forth in section D of Art. I of the Plan.

13.    **"Asset Purchaser"** means SPCP Group, Inc., or a Third Party Bidder who is selected as the successful bidder as a result of the Auction and who acquires the Acquired Assets pursuant to the Bid Procedures Order and the Plan.

14.    **"Asset Purchase Agreement"** means (A) the Revised First Amended And Restated Asset Purchase Agreement between USACM and FTDF, as sellers, DTDF, USA Securities and USA Realty, as acknowledging parties, and SPCP Group, LLC, as purchaser, Filed on November 7, 2006 [Docket No. 1750], and attached hereto as <u>Exhibit A</u>, as the same may be further amended pursuant to the terms of the Agreement, or (B) any substantially similar agreement executed with a Third Party Bidder, if a Third Party Bidder is the Asset Purchaser.

15.    **"Asset Sale Transaction"** means the sale of the Acquired Assets to the Asset Purchaser as set forth in the Asset Purchase Agreement.

16.    **"Auction"** means the auction that will be held pursuant to the Bid Procedures Order and conducted on December 7, 2006, as the same may be continued or rescheduled by the Court, in connection with the Asset Sale Transaction.

17.    **"Avoidance Actions"** means all of the Debtors' and the Estates' rights and Claims under Bankruptcy Code sections 541 through 558, inclusive, whether or not an action is initiated on, before or after the Effective Date.

4

18. **"Bankruptcy Code"** means title 11, United States Code (11 U.S.C. § 101 *et seq.*), as in effect on the Petition Date and as amended and effective after the Petition Date and during the Chapter 11 Cases.

19. **"Bankruptcy Rules"** means, collectively, (A) the Federal Rules of Bankruptcy Procedure, as amended from time to time, and (B) the Local Bankruptcy Rules applicable to cases pending before the Court, as now in effect or hereafter amended.

20. **"Bar Date"** means (A) with respect to Administrative Expense Claims, other than Ordinary Course Administrative Expense Claims, the dates set forth in section B.1.c. of Art. II of the Plan; (B) with respect to Claims for damages resulting from the rejection of an executory contract or unexpired lease pursuant to section B of Art. V of the Plan, the date stated in section B.3 of Art. V of the Plan; and (C) with respect to all other Claims against and Equity Interests in a Debtor, the General Bar Date.

21. **"Bid Procedures Order"** means the "Order (A) Scheduling an Auction for the Sale of Certain Assets; (B) Approving SPCP Group, LLC as Lead Bidder; and (C) Approving Bid Procedures and Protections," entered by the Court on November 8, 2006 [Docket No. 1761].

22. **"Borrower"** means the Borrower under any applicable Loan.

23. **"Business Day"** means any day which is not a Saturday, a Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

24. **"Bysynergy Loan"** means FTDF's interest in the Loan, dated as of February 3, 2006, made and delivered by BySynergy, LLC, a Delaware limited liability company.

25. **"Cash"** means legal tender of the United States of America, or cash equivalents, including currency and checks or wire transfers of immediately available funds.

26. **"Chapter 11 Cases"** means the above-captioned cases under chapter 11 of the Bankruptcy Code, commenced by the Debtors on the Petition Date, and jointly administered under Case No. 06-10725.

27. **"Claim"** has the meaning ascribed to it in section 101 of the Bankruptcy Code.

28. **"Class"** means a group of Claims or Equity Interests classified together in a class designated in Art. II of the Plan.

5

29.    **"Closing"** means the closing of the Asset Sale Transaction as provided in the Asset
Purchase Agreement.

30.    **"Closing Date"** means the Effective Date.

31.    **"Committees"** means collectively the USACM Committee, the DTDF Committee,
the FTDF Committee, and the Direct Lender Committee, as appointed by the U.S. Trustee
pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

32.    **"Committee Professionals"** means all Professionals employed by the Committees
in these Chapter 11 Cases.

33.    **"Confirmation"** means entry of a Confirmation Order by the Court in accordance
with section 1129 of the Bankruptcy Code.

34.    **"Confirmation Date"** means the date on which the Clerk of the Court enters the
Confirmation Order on the Court's docket.

35.    **"Confirmation Hearing"** means the hearing before the Court to consider the
confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code.

36.    **"Confirmation Order"** means the order entered by the Court confirming the Plan
in accordance with the Bankruptcy Code.

37.    **"Court"** means the United States District Court for the District of Nevada, having
jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to
section 157 of title 28 of the United States Code, the unit of such District Court pursuant to
section 151 of title 28 of the United States Code; or, in the event such court ceases to exercise
jurisdiction over the Chapter 11 Cases, such court or unit thereof that exercises jurisdiction over
the Chapter 11 Cases in lieu thereof.

38.    **"Cure Payment"** means the amount, if any, that the Debtors must tender on the
Effective Date in order to provide compensation in accordance with sections 365(b)(1)(A) and (B)
of the Bankruptcy Code to assume an unexpired lease or an executory contract as described in
further detail in section A of Art. V of the Plan.

39.    **"Debtors"** means, collectively, USACM, USA Securities, USA Realty, DTDF,
and FTDF.

6

40.    **"Debtors in Possession"** means any or all of the Debtors when acting in the capacity of representatives of their respective Estates in the Chapter 11 Cases.

41.    **"Debtors' Professionals"** means all Professionals employed by the Debtors in these Chapter 11 Cases, including those professionals employed as ordinary course professionals.

42.    **"Direct Lender"** means each Entity who is a beneficiary under a Loan, excluding USACM and the Funds to the extent of their beneficial interests in a Loan.

43.    **"Direct Lender Committee"** means the Official Committee of Holders of Executory Contract Rights through USA Commercial Mortgage Company as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

44.    **"Direct Lender Loans"** means Loans in which the Direct Lenders have an ownership interest.

45.    **"Direct Lender Supplement"** means the Loan Servicing Fee Schedule and the Alternative Dispute Resolution Agreement, referred to in section E of Art. I of the Plan, as amended from time to time, and which shall be Filed and served as soon as practicable after Court approval of the Disclosure Statement.

46.    **"Direct Lender Unremitted Principal Claims"** means all General Unsecured Claims or other Claims of Direct Lenders against USACM for Loan payments received prior to the Petition Date by USACM but not paid over to the Direct Lenders in the applicable Loan.

47.    **"Direct Lender Unsecured Claims"** means all General Unsecured Claims (whether under contract, tort or other legal theory against USACM) of Direct Lenders against USACM, excluding Direct Lender Unremitted Principal Claims.

48.    **"Disbursing Agent"** means the Entity or Entities appointed pursuant to section E of Art. VII of the Plan to act in making distributions authorized under the Plan for each of the respective Estates on and after the Effective Date.

49.    **"Disclosure Statement"** means the Disclosure Statement, including any Exhibits attached thereto, Filed by the Debtors in the Chapter 11 Cases on September 15, 2006, as the same is amended, supplemented, or otherwise modified from time to time by any duly authorized amendment or modification.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1       50.    **"Disputed ... Claim"** means any Claim against a Debtor which is not an Allowed

2    Claim, including, without limitation, any Claim (A) designated as disputed, contingent,

3    unliquidated or unknown in the Schedules Filed in such Debtor's Chapter 11 Case, (B) to which

4    an objection to the allowance thereof or motion to estimate Claim under section 502(c) of the

5    Bankruptcy Code has been interposed on or before the date set forth in section A of Art. VII of the

6    Plan; (C) which is the subject of one or more causes of action pending against the holder of such

7    Claim; or (D) which is disallowed pursuant to section 502(d) of the Bankruptcy Code or by Final

8    Order.

9       51.    **"Disputed Equity Interest"** means any Equity Interest in a Debtor which is not an

10   Allowed Equity Interest, including, without limitation, any Equity Interest (A) designated as

11   disputed or contingent in the List of Equity Security Holders Filed in a Debtor's Chapter 11 Case,

12   including the Lists designated in the "Stipulated Order Re Proofs of Interest" entered by the Court

13   in the First Trust Case and the Diversified Case on September 15, 2006 [Docket No. 1293]; (B) to

14   which an objection to allowance thereof has been interposed on or before the date set forth in

15   section A of Art. VII of the Plan; or (C) which is disallowed by Final Order.

16      52.    **"DTDF"** means USA Capital Diversified Trust Deed Fund, LLC.

17      53.    **"DTDF 85% Recovery"** means a recovery from all sources for DTDF and Post-

18   Effective Date DTDF for all Allowed Class C-5 Equity Interests equal to 85% of the DTDF

19   Investment, net of expenses.

20      54.    **"DTDF Administrator"** means the chief executive officer of Post-Effective Date

21   DTDF, which has the powers and responsibilities set forth in the Plan and the DTDF Amended

22   Operating Agreement, or any successor officer appointed pursuant to the DTDF Amended

23   Operating Agreement.

24      55.    **"DTDF Amended Operating Agreement"** means the DTDF Operating

25   Agreement, as amended, to provide for the wind down, liquidation and dissolution of

26   DTDF pursuant to the implementation of the Plan that will be Filed as part of the Plan Documents

27   Supplement.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

56.    **"DTDF Chapter 11 Case"** means the Chapter 11 Case of DTDF, Case No. BK-S-06-10727 LBR.

57.    **"DTDF Committee"** means the Official Committee of Equity Security Holders of USA Capital Diversified Trust Deed Fund, LLC, as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

58.    **"DTDF Investment"** means the amount that represents the equity investment in DTDF as may be agreed to by the USACM Committee and the DTDF Committee by the date of the Confirmation Hearing, or if no agreement is reached by such date, the amount determined by the Court after an evidentiary hearing between such Committees; provided however, that the USACM Committee and DTDF Committee or, after the Effective Date, the Post-Effective Date Entities, may agree at any time as to the amount that represents the equity investment in DTDF without further Court order by Filing a notice of such agreement with the Court; and provided further, however, that prior to the Effective Date, the USACM Committee and the DTDF Committee shall consult with the FTDF Committee and the Direct Lender Committee regarding the amount that represents the equity investment in DTDF.

59.    **"DTDF Loans"** means Loans in which DTDF has an ownership interest.

60.    **"DTDF Operating Agreement"** means the "Operating Agreement of USA Capital Diversified Trust Deed Fund, LLC" made and entered into effective as of February 10, 2000.

61.    **"DTDF Post-Effective Date Committee"** means the oversight committee for Post-Effective Date DTDF.

62.    **"DTDF Unremitted Principal Claim"** means the General Unsecured Claim or other Claims of DTDF against USACM for Loan payments received by USACM but not paid to DTDF prior to the Petition Date.

63.    **"DTDF Unsecured Claim"** means the General Unsecured Claim of DTDF against USACM, excluding the DTDF Unremitted Principal Claim, allowed in the amount as may be agreed to by the USACM Committee and the DTDF Committee by the date of the commencement of the Confirmation Hearing, or if no agreement is reached by such date, the amount determined by the Court after an evidentiary hearing between such Committees; provided, however, that the

9

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  USACM Committee and the DTDF Committee or, after the Effective Date, the Post-Effective

2  Date Entities, may agree at any time as to the amount that represents the DTDF Unsecured Claim

3  without further Court order by filing a notice of such agreement with the Court; and provided

4  further, however, that prior to the Effective Date, the USACM Committee and the DTDF

5  Committee shall consult with the FTDF Committee and the Direct Lender Committee regarding

6  the issue.

7        64.    **"Effective Date"** means the first Business Day (A) on which no stay of the

8  Confirmation Order is and remains in effect, and (B) that is at least one (1) Business Day after the

9  date on which the conditions specified in section B of Art. VI of the Plan have been satisfied or

10  waived.

11        65.    **"Entity"** has the meaning ascribed to this term in section 101(15) of the

12  Bankruptcy Code.

13        66.    **"Equity Interest"** means the rights of owners of the issued and outstanding shares

14  of any class of stock, membership or other ownership interest in any of the Debtors.

15        67.    **"Estate"** or **"Estates"** means the bankruptcy estate created for each Debtor in

16  these Chapter 11 Cases pursuant to Bankruptcy Code section 541, or, collectively, the bankruptcy

17  estates created for each of the Debtors, in these Chapter 11 Cases pursuant to Bankruptcy Code

18  section 541.

19        68.    **"Excluded DTDF Loans"** means DTDF Loans whose Loan Servicing Agreements

20  are not being transferred to the Asset Purchaser as part of the Asset Sale Transaction.

21        69.    **"File," "Filed," "Files,"** or **"Filing"** means properly and timely filed with the

22  Court in the Chapter 11 Cases, as reflected on the official docket of the Court for the Chapter 11

23  Cases, and served on Entities, as such filing and service are required pursuant to the Bankruptcy

24  Code, Bankruptcy Rules and/or order of the Court.

25        70.    **"Final Decree"** means a Final Order of the Court closing the Chapter 11 Cases;

26  provided, however, if a Final Decree is separately entered in one or more of the Debtors' Chapter

27  11 Cases, the "Final Decree" means a Final Order of the Court closing a particular Chapter 11

28  Case.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

71.  **"Final Order"** means an order or judgment of the Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors and the Committees or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

72.  **"FTDF"** means USA Capital First Trust Deed Fund, LLC.

73.  **"FTDF Base Recovery Percentage"** means the Pro Rata recovery by holders of Allowed Equity Interests in FTDF based on the ratio of (x) the net recovery to FTDF as calculated by adding (i) all post-Petition Date collections that FTDF received on account of the FTDF Loans prior to the Closing to (ii) the sale proceeds that FTDF receives from the Asset Sale Transaction (including amounts received for any overbid) minus all payments made on account of (i) all Allowed classified and unclassified Claims against the FTDF Estate, (ii) all Allowed Administrative Expense Claims allocated to FTDF, (iii) all post-Effective Date costs and expenses incurred on behalf of either (a) FTDF or (b) the holders of Allowed Equity Interests in FTDF, (iv) any expense reimbursement or break-up fee paid pursuant to the Bid Procedures Order (unless reimbursed pursuant to the overbid process), and (v) the FTDF Payment to DTDF to (y) the FTDF Investment.

74.  **"FTDF Chapter 11 Case"** means the Chapter 11 Case of FTDF, Case No. BK-S-06-10728 LBR.

75.  **"FTDF Committee"** means the Official Committee of Equity Security Holders of USA Capital First Trust Deed Fund, LLC, as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

76.  **"FTDF Investment"** means the amount of $65,179,522.

11

77.    **"FTDF Litigation Claims"** means the Litigation Claims in which FTDF has an interest, including without limitation all Non-Debtor Insider Litigation in which FTDF has an interest.

78.    **"FTDF Loans"** means Loans in which FTDF has an ownership interest.

79.    **"FTDF Payment"** means the payment made by FTDF to DTDF on the Effective Date in the amount of (A) $500,000, and (B) an additional amount of up to $500,000 from 50% of any overbid increment actually paid and allocated to FTDF as part of the Closing of the Asset Sale Transaction, after taking into consideration any break-up fee (including any expense reimbursement) paid by FTDF.

80.    **"FTDF Transferred Assets"** means the assets transferred by FTDF to DTDF consisting of the FTDF Payment, the Bysynergy Loan, the FTDF Unremitted Principal Claim, and the proceeds of any non-assignable FTDF Litigation Claims.

81.    **"FTDF Unremitted Principal Claim"** means the General Unsecured Claim or other Claims of FTDF against USACM for Loan payments received by USACM but not paid over to FTDF prior to the Petition Date.

82.    **"FTDF Unsecured Claim"** means the General Unsecured Claim of FTDF against USACM, excluding the FTDF Unremitted Principal Claim, in the amount as may be agreed to by the FTDF Committee and the USACM Committee by the date of the commencement of the Confirmation Hearing, or if no agreement is reached by such date, the amount determined by the Court after an evidentiary hearing between such Committees; provided however that the USACM Committee and the FTDF Committee or, after the Effective Date, the USACM Trust and FTDF may agree at any time as to the amount that represents the FTDF Unsecured Claim without further Court order by Filing a notice of such agreement with the Court; and provided further, however, that prior to the Effective Date, the USACM Committee and the FTDF Committee shall consult with the DTDF Committee and the Direct Lender Committee regarding the issue.

83.    **"FTDF's Debtors' Professionals' Fee/Cost Allocation"** means the allocation to FTDF for the professional fees and costs incurred by the Debtors' Professionals in the Chapter 11

12

Cases of $125,000 per month commencing on the Petition Date and ending on the earlier of: (A) the Effective Date, or (B) January 31, 2007.

84.    **"Funds"** means FTDF and DTDF.

85.    **"General Bar Date"** means, except as to the Claims of Direct Lenders and Intercompany Claims, November 13, 2006, which is the date established by the "Order Setting Deadline to File Proofs of Claim and Proofs of Interest" entered by the Court in the Chapter 11 Cases on September 14, 2006 [Docket No. 1280]. With respect to the Claims of Direct Lenders, "General Bar Date" means January 13, 2007, which is the date established by the "Stipulation and Order to Extend Proof of Claim Bar Date for Direct Lenders Only" entered by the Court in the Chapter 11 Cases on November 6, 2006 [Docket No.1729]. With respect to Intercompany Claims no bar date has been set as the Court has granted the "Debtors' Motion to Exclude Intercompany Claims from the General Bar Date" [Docket No. 1469].

86.    **"General Unsecured Claim"** means a Claim against a Debtor arising on or before the Petition Date that is not an Administrative Expense Claim, Priority Tax Claim, Priority Unsecured Claim, Secured Claim, Secured Tax Claim or Subordinated Claim.

87.    **"Higher and Better Offer"** means a bona fide offer made in accordance with the Bid Procedures Order.

88.    **"Insider"** has the meaning ascribed to this term in section 101(31) of the Bankruptcy Code. For purposes of this definition, the term "affiliate" in section 101(31)(E) has the meaning ascribed to that term in the Plan, and to the extent not included in the definition of "Affiliate" under the Plan, shall include any and all Persons whose business is owned or controlled by the Debtors or any of Insiders of the Debtors (as defined herein), or in which the Debtors or Insiders of the Debtors (as defined herein) have any ownership, participation, profit sharing or any other kind of interest whatsoever.

89.    **"Instruments of Transfer"** means any mortgages, deeds of trust, leasehold mortgages, leases (whether recorded or unrecorded) and/or the various instruments and documents of transfer as specified in or contemplated by the Plan including the documents related to the Asset Sale Transaction.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

90.    **"Interim Distribution Orders"** mean (A) "Order (a) Granting (i) Debtors' Motion to Distribute Funds; (ii) Debtors' Hold Funds Motion and (iii) the Compel Motion, and (b) Denying (i) the Lift Stay Motion and (ii) McKnight Motion" entered by the Court on August 24, 2006 [Docket No. 1184]; and (B) "Modified Order Authorizing Interim Distribution and Holdbacks" entered by the Court on October 2, 2006 [Docket No. 1424].

91.    **"IP"** means USA Investment Partners, LLC.

92.    **"IP Parties"** means Joseph Milanowski, Thomas Hantges, Paul Hamilton and IP.

93.    **"IP $58 Million Promissory Note"** means that certain promissory note dated as of May 31, 2006, in the original principal amount of $58,374,918.81 made by IP in favor of USACM (as modified by the "Order Approving Agreement with Investment Partners" entered by the Court on July 24, 2006 [Docket No. 946]).

94.    **"Lenders"** means Direct Lenders, USACM and the Funds.

95.    **"Litigation Claims"** means any and all rights, causes of action, Claims, obligations, suits, debts, promises, agreements, judgments and demands of whatever kind or nature, whether known or unknown, suspected or unsuspected, whether at law or in equity, including, without limitation all Avoidance Actions, Non-Debtor Insider Litigation, and causes of action listed in the Schedules and the Statements of Financial Affairs Filed in each of the Debtor's Chapter 11 Cases, recoupment, set off and equitable subordination, whether or not brought as of the Effective Date, which are the property of or may be asserted by any of the Debtors and their respective Estates, or the Post-Effective Date Entities, and which have not been settled or otherwise resolved by Final Order as of the Effective Date.

96.    **"Loans"** means the loans originated by and serviced by USACM on behalf of the Lenders. This definition of "Loans" is applicable solely to the Plan and does not apply to, nor supersede the definition of "Loans" in the Asset Purchase Agreement, which contains a different definition for "Loans."

97.    **"Loan Servicing Agreement"** means agreements entered into by USACM with Lenders relating to USACM's servicing of the Loans in effect at any time during the Chapter 11 Cases.

14

98.    **"Loan Servicing Fee Schedule"** means a schedule setting forth the amount of the servicing fees payable under each of the Loan Servicing Agreements, which will be transferred to the Asset Purchaser at Closing as part of the Asset Sale Transaction.

99.    **"Non-Debtor Insider"** means an Insider that is not a Debtor, expressly including, without limitation, the IP Parties, any Affiliate of the Debtors and the IP Parties, Insiders of the IP Parties, professionals of such Insiders or of the Debtors, and/or any Entity which has conspired with or aided and abetted an Insider that is not a Debtor.

100.    **"Non-Debtor Insider Litigation"** means all Litigation Claims against Non-Debtor Insiders and recoveries therefrom.  Solely to the extent necessary to pursue this Non-Debtor Insider Litigation, this definition shall also include Litigation Claims by Debtors against Debtors who are Insiders, which Litigation Claims by Debtors against Debtors, notwithstanding anything to the contrary in this Plan and solely to the extent necessary to pursue Litigation Claims against Non-Debtor Insiders, shall survive the Confirmation of the Plan and the Effective Date and shall not be extinguished; provided that to the extent there are inter-Debtor releases in this Plan, the prior sentence shall have no operative effect on such releases, which releases will bar any recoveries by applicable Debtors against Debtors as provided for therein.

101.    **"Ordinary Course Administrative Expense Claim"** means an Administrative Expense Claim incurred in the ordinary course of the Debtors' businesses prior to the Effective Date; provided, however, Ordinary Course Administrative Expense Claims expressly do not include: (A) any postpetition obligations of a Debtor which are past due; (B) Cure Payments; (C) any fees or expenses, compensation or reimbursement for which is requested pursuant to subsections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code; (D) any Taxes (including without limitation, income, sales, use, property or other Taxes); and (E) any Claims against a Debtor for breach of contract, tort, or other actionable conduct.

102.    **"Other Secured Claim"** means any Secured Claim other than a Secured Tax Claim.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

15

103. **"Overbid Allocation"** means the allocation agreed to between USACM and FTDF for the overbid, breakup fee, and expense reimbursement (as those terms are used in the Bid Procedures Order) as described in section E.2. of Art. IV of the Plan.

104. **"Penalty Claim"** means a Claim against a Debtor for a fine, penalty, forfeiture, or for multiple, exemplary or punitive damages, arising before or after the Petition Date, to the extent that such fine, penalty, forfeiture or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim or is asserted by a governmental unit.

105. **"Pending Litigation"** means all actions Filed against USACM as of the Effective Date, including *USA Commercial Mortg. Co. v. Standard Property Dev., LLC* [Adversary Proceeding No. 06-1179]; *USA Commercial Mortg. Co. v. Robert J. Kehl, et. al* [Adv. Pro. No. 06-1167]; *USA Commercial Mortg. Co. v. Gateway Stone Assocs., LLC* [Adv. Pro. No. 06-1201], and any other actions Filed against USACM prior to the Effective Date.

106. **"Person"** has the meaning ascribed to this term in section 101(41) of the Bankruptcy Code. To the extent not provided for in section 101(41), the term "Person" as used herein includes limited partnerships, limited liability companies, associations, joint stock companies, joint ventures, and the Committees.

107. **"Petition Date"** means April 13, 2006, the date on which the Debtors Filed their voluntary petitions commencing the Chapter 11 Cases.

108. **"Plan"** means this Third Amended Joint Chapter 11 Plan of Reorganization, including any and all Exhibits annexed hereto, any and all documents incorporated herein by reference, and any and all documents incorporated by reference to the Plan Documents Supplement, or the Direct Lender Supplement either in their present form or as they may be altered, amended, or modified at any time prior to or as part of the Confirmation Hearing.

109. **"Plan Documents Supplement"** means the compilation of the forms of certain documents as specified in and required to be Filed in accordance with section C of Art. I of the Plan.

110. **"Post-Effective Date DTDF"** means DTDF after the Effective Date.

16

1    111.    **"Post-Effective Date Entities"** means the USACM Trust and Post-Effective Date

2    DTDF, and prior to dissolution, FTDF, USA Realty and USA Securities.

3    112.    **"Postpetition Interest"** means all contractual or statutory interest to which holders

4    of Allowed Class B-4 General Unsecured Claims and Allowed Class C-4 General Unsecured

5    Claims have a legal right enforceable outside of the Chapter 11 Cases. In the absence of any legal

6    right to interest on any particular Allowed Claim in Class B-4 or Class C-4, "Postpetition Interest"

7    shall mean 4.85%, the federal judgment rate in effect as of the Petition Date.

8    113.    **"Prepaid Interest"** means (a) all causes of action to recover principal or interest

9    payments USACM paid in advance to the applicable Lender(s) before the Petition Date; (b) all

10   principal and interest payments USACM has collected (will continue to collect) postpetition from

11   Borrowers for such advanced principal or interest payments; and (c) all payments USACM has

12   collected (and will continue to collect) postpetition on any Loan that would otherwise be payable

13   to a Lender that received an advanced principal or interest payment from USACM prior to the

14   Petition Date, but only to the extent of such advanced principal or interest payments.

15   114.    **"Priority Tax Claim"** means a Claim against a Debtor entitled to priority under

16   section 507(a)(8) of the Bankruptcy Code.

17   115.    **"Priority Unsecured Claim"** means a Claim against a Debtor that is entitled to

18   priority under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims,

19   Administrative Expense Claims, and Ordinary Course Administrative Expense Claims.

20   116.    **"Professionals"** means those Entities or firms who have been employed by the

21   Debtors or the Committees pursuant to Bankruptcy Code sections 327, 1103, and/or 1106.

22   117.    **"Professionals Administrative Expense Claim Bar Date"** has the meaning

23   ascribed to this term in section B.1.c.ii of Art. II of the Plan.

24   118.    **"Pro Rata," "Pro Rata Share,"** and **"Pro Rata Basis"** mean proportionately so

25   that the ratio of (A) the amount of consideration (such as Cash) distributed on account of a

26   particular Allowed Claim or Allowed Equity Interest, as applicable, to (B) the amount of such

27   Allowed Claim or Allowed Equity Interest, as applicable, is the same as the ratio of (x) the amount

28   of consideration distributed on account of all Allowed Claims or Allowed Equity Interests, as

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

17

applicable, of the Class or group of Classes in which the Allowed Claim or Allowed Equity

Interest is classified to (y) the amount of all Allowed Claims or Allowed Equity Interests, as

applicable, of that Class or group of Classes.

The Pro Rata ratio or formula is illustrated as follows:

| (a) | Amount of consideration distributed to holder of Allowed Claim or Allowed Equity Interest, as applicable | = | (x) | Total consideration available for distribution to holders of Allowed Claims or Allowed Equity Interests, as applicable, of that Class or group of Classes |
|-----|-----|-----|-----|-----|
| (b) | Amount of such Allowed Claim or Allowed Equity Interest, as applicable | | (y) | Amount of all Allowed Claims of Allowed Equity Interest, as applicable, in that Class or group of Classes |

For purposes of the application of this definition, the amount of any Disputed Claim shall be the

stated "face amount" of such Claim, unless such Claim is estimated by Final Order, in which case,

the amount of such Disputed Claim shall be the estimated amount.

119.    **"Schedule of Executory Contracts and Unexpired Leases"** means the schedule

which is defined in section D of Art. I of the Plan and referred to under Article V of the Plan.

120.    **"Schedules"** means the Schedules Filed by each of the Debtors pursuant to

Bankruptcy Code section 521(a)(1)(B)(i), Bankruptcy Rules 1007(a)(3) and (b)(1), and Official

Bankruptcy Form No. 6, as amended from time to time.

121.    **"Secured Claim"** means a Claim against the Debtors to the extent of the value of

any interest in property of the Estates securing such Claim, as determined by the Court pursuant to

Bankruptcy Code sections 506(a) and 1111(b).

122.    **"Secured Tax Claim"** means a Claim of a governmental unit against the Debtors

to the extent of the value of any interest in property of the Estates securing such Claim, as

determined by the Court pursuant to Bankruptcy Code section 506(a).

123.    **"Servicer Advances"** means advances by the servicing agent for legal fees,

foreclosure costs and other expenses that may be recovered from a Lender under Paragraph 4 or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   any other similar Paragraph of the applicable Loan Servicing Agreement in the event that such

2   amounts are not paid by the applicable Borrower.

3         124.   **"SPCP Group, LLC"** means the Entity described as the "Purchaser" in the Asset

4   Purchase Agreement.

5         125.   **"Statutory Fees"** means those fees payable in the Chapter 11 Cases under 28

6   U.S.C. § 1930.

7         126.   **"Subordinated Claim"** means any and all Claims of Non-Debtor Insiders against

8   USACM.

9         127.   **"Taxes"** means all taxes, charges, fees, imposts, levies or other assessments,

10   including, without limitation, all net income, gross receipts, sales, use, ad valorem, value added,

11   transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment,

12   social security, unemployment, excise, severance, stamp, occupation, and property taxes, customs

13   duties, fees, assessments and charges of any kind whatsoever, together with any interest and

14   penalties, additions to tax or additional amounts imposed by any taxing authority (domestic or

15   foreign) and any interest and penalties imposed with respect to the filing, obligation to file or

16   failure to file any tax return, and shall include any transferee liability in respect to Taxes.

17         128.   **"Third Party Bidder"** means an Entity, other than SPCP Group, LLC, who makes

18   a Higher and Better Offer for the Acquired Assets pursuant to and in accordance with the terms of

19   the Bid Procedures Order.

20         129.   **"Undistributed Cash"** means $2.6 million in Cash that had been collected prior to

21   the Petition Date but had not been distributed on or since the Petition Date.

22         130.   **"Unremitted Principal Claims"** means General Unsecured Claims against

23   USACM for Loan payments received by USACM, but not paid over to applicable Lenders prior to

24   the Petition Date, including without limitation, the FTDF Unremitted Principal Claim, the Direct

25   Lender Unremitted Principal Claims, and the DTDF Unremitted Principal Claim.

26         131.   **"Unremitted Principal Direct Lenders"** means Direct Lenders holding

27   Unremitted Principal Claims.

28         132.   **"USA Realty"** means USA Capital Realty Advisors, LLC.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

133.   **"USA Securities"** means USA Securities, LLC.

134.   **"USACM"** means USA Commercial Mortgage Company.

135.   **"USACM Accounts"** means all accounts, notes or receivables of USACM, including USACM's share of the IP $58 Million Promissory Note.

136.   **"USACM Committee"** means the Official Unsecured Creditors' Committee for USA Commercial Mortgage Company, as appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 to serve in these Chapter 11 Cases.

137.   **"USACM Loans"** mean the Loans in which USACM has an ownership interest.

138.   **"USACM Trust"** means the trust created under the Plan and pursuant to the USACM Trust Agreement for the benefit of holders of Allowed USACM Unsecured Claims.

139.   **"USACM Trust Agreement"** means the trust agreement that will establish (along with the Plan) and govern the USACM Trust which will be Filed as part of the Plan Documents Supplement.

140.   **"USACM Trust Assets"** means those assets to be transferred or assigned to the USACM Trust, respectively, on the Effective Date of the Plan, free and clear of any liens or Claims that might otherwise have existed in favor of any party minus any Cash needed to make the payments required to be made on the Effective Date pursuant to the Plan or needed to fund the reserves required to be established on the Effective Date.

141.   **"USACM Trust Committee"** means the oversight committee for the USACM Trust established pursuant to the Plan and the USACM Trust Agreement.

142.   **"USACM Trustee"** means the trustee of the USACM Trust, which has the powers and responsibilities set forth in the Plan and the USACM Trust Agreement, or any successor trustee appointed pursuant to the USACM Trust Agreement.

143.   **"USACM Unsecured Claims"** means all Allowed General Unsecured Claims against USACM, including Unremitted Principal Claims, the DTDF Unsecured Claim, the FTDF Unsecured Claim, and the Direct Lender Unsecured Claims.

144.   **"U.S. Trustee"** means the Office of the United States Trustee for the District of Nevada.

20

**B.    Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder.

**C.    Plan Documents Supplement.**

The forms of the following documents are or will be contained in a separate Plan Documents Supplement that will be Filed as provided herein and incorporated in the Plan by reference:

1.    the USACM Trust Agreement; and

2.    the DTDF Amended Operating Agreement.

In the event of a conflict between the terms of any of the documents contained in the Plan Documents Supplement and the Plan, the terms of the Plan shall govern.

The USACM Trust Agreement will be Filed by the USACM Committee and served on counsel for the Debtors and the other Committees and the U.S. Trustee, at least ten (10) days prior to the commencement of the Confirmation Hearing. The USACM Trust Agreement will identify the identity and affiliations of the USACM Trustee and the USACM Trust Committee as required by section 1129(a)(5) of the Bankruptcy Code and will include all other information required to comply with section 1129(a)(4) of the Bankruptcy Code.

The DTDF Amended Operating Agreement will be Filed by the DTDF Committee and served on counsel for the Debtors and the other Committees and the U.S. Trustee, at least ten (10) days prior to the commencement of the Confirmation Hearing. The DTDF Amended Operating Agreement will identify the identity and affiliations of the DTDF Administrator and the DTDF Post-Effective Date Committee as required by section 1129(a)(5) of the Bankruptcy Code and will include all other information required to comply with section 1129(a)(4) of the Bankruptcy Code.

Once Filed, the Plan Documents Supplement may be inspected in the Office of the Clerk of the Court during normal court hours. The holders of Claims or Equity Interests may obtain a

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

21

1　copy of the Plan Documents Supplement, or excerpts therefrom, by accessing the BMC Group

2　website for the Debtors at http://www.bmccorp.net; contacting the BMC Group by phone at 888-

3　909-0100; or by accessing the Debtors' website at www.usacapitalcorp.com.

**D.　　Schedule of Executory Contracts and Unexpired Leases.**

5　　　　The Debtors will File a Schedule of Executory Contracts and Unexpired Leases that

6　conforms to section A of Art. V of the Plan, and serve it on the Committees, the U.S. Trustee, all

7　non-Debtor Entities who are parties to any executory contracts or unexpired leases listed thereon

8　and the limited service list as soon as practicable after the Court approves the Disclosure

9　Statement, but in no event later than twenty (20) days prior to the commencement of the

10　Confirmation Hearing.

11　　　　Once Filed, the Schedule of Executory Contracts and Unexpired Leases may be inspected

12　in the Office of the Clerk of the Court during normal court hours. The holders of Claims or Equity

13　Interests may obtain a copy of the Schedule of Executory Contracts and Unexpired Leases, or

14　excerpts therefrom, by accessing the BMC Group website for the Debtors at

15　http://www.bmccorp.net; contacting the BMC Group by phone at 888-909-0100; or by accessing

16　the Debtors' website at www.usacapitalcorp.com.

**E.　　Direct Lender Supplement.**

18　　　　The forms of the following documents are or will be contained in a separate Direct Lender

19　Supplement that will be Filed as provided herein and incorporated in the Plan by reference:

20　　　　1.　　the Loan Servicing Fee Schedule; and

21　　　　2.　　the Alternative Dispute Resolution Agreement.

22　　　　The Direct Lender Supplement will be Filed and served on the Committees, the U.S.

23　Trustee and all Direct Lenders as soon as practicable after the Court approves the Disclosure

24　Statement, but in no event later than twenty (20) days prior to the commencement of the

25　Confirmation Hearing.

26　　　　Once Filed, the Direct Lender Supplement may be inspected in the Office of the Clerk of

27　the Court during normal court hours. The holders of Claims or Equity Interests may obtain a copy

28　of the Direct Lender Supplement, or excerpts therefrom, by accessing the BMC Group website for

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590　Fax: (702) 892-0122

1   the Debtors at http://www.bmccorp.net; contacting the BMC Group by phone at 888-909-0100; or

2   by accessing the Debtors' website at www.usacapitalcorp.com.

3   **F.      Exhibits.**

4          All Exhibits to the Plan and all documents contained in the Plan Documents Supplement

5   and the Direct Lender Supplement are incorporated into and are a part of the Plan as if set forth in

6   full herein.

7

8                                              **II.**

9        **CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

10

11  **A.      Summary.**

12         As discussed in section B of Art. IV of the Plan below, the Estates will not be substantively

13  consolidated.  Accordingly, holders of Allowed Claims or Allowed Equity Interests against a

14  particular Estate shall have their Claims or Equity Interests allowed and treated in such respective

15  Estate.  Further, within an Estate, an Allowed Claim or Allowed Equity Interest is placed in a

16  particular Class only to the extent that the Claim or Equity Interest falls within the description of

17  that Class.  However, an Allowed Claim or Allowed Equity Interest may be apportioned and

18  classified in more than one Class to the extent that portions of the Claim or Equity Interest fall

19  within the description of several different Classes.  An Allowed Claim or Allowed Equity Interest

20  is classified in a particular Class only to the extent that it has not already been paid, released or

21  otherwise satisfied before the Effective Date.  The following is a chart summarizing the

22  classification and treatment of unclassified Claims, classified Claims and Equity Interests in each

23  Estate:

| Claims | Treatment |
|---|---|
| **USACM** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax | Holders of Allowed Priority Tax Claims shall be paid in full on the |

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

23

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|--------|-----------|
| Claims | Effective Date, unless the holder of the Claim agrees otherwise. |
| | **Classified Claims** |
| A-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| A-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of USACM: **Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:** USACM shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USACM shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| A-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| A-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims, including the Unremitted Principal Claims, Allowed FTDF Unsecured Claims, the Allowed Direct Lender Unsecured Claims and the Allowed DTDF Unsecured Claim, shall receive a beneficial interest in the USACM Trust, and on account of their Allowed Claim may receive a Pro Rata Share of the assets of the USACM Trust after satisfaction of all Allowed unclassified Claims, Allowed Class A-1, A-2 and A-3 Claims, and all post-Effective Date fees, costs, and expenses of implementation of the USACM Plan for USACM and the USACM Trust. |
| A-5: Direct Lender Compromise Claims | The Direct Lenders will be released by USACM, FTDF, USA Realty and USA Securities from all Claims including but not limited to surcharge, recharacterization of Direct Lender Loans, and the collection of prepetition accrued but unpaid as of the Effective Date annual loan servicing fees due under Loan Servicing Agreements, but excluding causes of action to recover principal or interest payments USACM paid in advance to the applicable Lender(s) before the Petition Date.  In |

| Claims | Treatment |
|---|---|
| | exchange (and as a compromise), Direct Lenders acknowledge and agree that the Prepaid Interest constitutes an asset of the USACM Estate or to transfer their ownership rights, if any, in Prepaid Interest to the USACM Estate, that USACM retains the maximum amount for servicing fees allowed and that $605,000 of the 2% Holdback can and will be used to reimburse USACM for the Allowed Administrative Expense Claims attributed to the fees and costs of the Professionals of the Direct Lender Committee. If the Plan is confirmed, the Direct Lenders will be bound to the Class A-5 treatment regardless of whether they vote to accept or reject the Plan, or Class A-5 votes to accept or reject the Plan; all such objections must be made by objecting to Plan confirmation. |
| A-6: Allowed Penalty Claims | Holders of Allowed Penalty Claims shall be subordinated in payment to the payment in full of all Allowed General Unsecured Claims, plus interest, and shall receive no distribution under the Plan. |
| A-7: Allowed Subordinated Claims | Holders of Subordinated Claims shall be subordinated in payment to the payment in full of all Allowed Penalty Claims, plus interest, and shall receive no distribution under the Plan. |
| A-8: Equity Interests | All Equity Interests in USACM, regardless of form, shall be cancelled and the holders of Equity Interests in USACM shall receive no distribution under the Plan. |
| **FTDF** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** | |
| B-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| B-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of FTDF: **Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:** FTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

25

| Claims | Treatment |
|---|---|
| | reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, FTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| B-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| B-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid in full on the Effective Date, plus Postpetition Interest. |
| B-5: Equity Interests | After the FTDF Payment has been made, holders of Allowed Equity Interests shall retain all distributions received after the Petition Date and receive the remaining Allocated Net Sale Proceeds after satisfaction of all Allowed unclassified Claims, Allowed Class B-1, B-2, B-3 and B-4 Claims, and post-Effective Date fees, costs, and expenses of implementation of the Plan for FTDF. Allowed Equity Interests shall receive a Pro Rata Share of the USACM Trust recoveries on account of the Allowed FTDF Unsecured Claim. |
| **DTDF** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** | |
| C-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| C-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of Post-Effective Date DTDF:<br><br>**Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

26

| Claims | Treatment |
|---|---|
| | **Option B:** Post-Effective Date DTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, Post-Effective Date DTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| C-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| C-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid in full on the Effective Date, plus Postpetition Interest. |
| C-5: Equity Interests | Holders of Allowed Equity Interests shall retain their Equity Interests in DTDF and distributions received from the Petition Date, and after satisfaction of all Allowed unclassified Claims, Allowed Class C-1, C-2, C-3 and C-4 Claims, and all post-Effective Date fees, costs and expenses of implementation of Plan for DTDF, shall receive shall receive a Pro Rata Share of the assets of Post-Effective Date DTDF and the USACM Trust recoveries on account of the Allowed DTDF Unsecured Claim. |
| **USA Realty** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** | |
| D-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| D-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of USA Realty: **Option A:** Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

27

| Claims | Treatment |
|--------|-----------|
| | fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:**  USA Realty shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA Realty shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| D-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| D-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid a Pro Rata Share of assets of the Estate available after payment in full of Allowed unclassified Claims and Allowed Class D-1, D-2 and D-3 Claims. |
| D-5: Equity Interests | All Equity Interests in USA Realty, regardless of form, shall be cancelled and the holders of Equity Interests in USA Realty shall receive no distribution under the Plan. |
| **USA Securities** | |
| **Unclassified Claims** | |
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| **Classified Claims** | |
| E-1: Secured Tax Claims | Holders of Allowed Secured Tax Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. |
| E-2: Other Secured Claims | Holders of Allowed Other Secured Claims are to be treated pursuant to Option A or Option B below, at the discretion of USA Securities: **Option A:**  Allowed Other Secured Claims shall be paid in full on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or **Option B:** USA Securities shall surrender the property securing the Allowed Other USA Securities Claim to the holder of such Claim by |

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| Claims | Treatment |
|---|---|
|  | making the property reasonably available to such holder on or before the later of (i) sixty (60) days after the Effective Date, or (ii) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA Securities shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B. |
| E-3: Priority Unsecured Claims | Holders of Allowed Priority Unsecured Claims shall be paid in full on the Effective Date, unless the holder of the Claim agrees otherwise. |
| E-4: General Unsecured Claims | Holders of Allowed General Unsecured Claims shall be paid a Pro Rata Share of assets of the Estate available after payment in full of Allowed unclassified Claims and Allowed Class E-1, E-2 and E-3 Claims. |
| E-5: Equity Interests | All Equity Interests in USA Securities, regardless of form, shall be cancelled and the holders of Equity Interests in USA Securities shall receive no distribution under the Plan. |

**B.    Unclassified Claims.**

Certain types of Claims are not placed into Classes that are entitled to vote to accept or reject this Plan; instead, such Claims are unclassified. Such Claims do not vote on the Plan because they are entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have <u>not</u> placed the following Claims in a Class. The respective treatments for these Claims are provided below.

**1.    Administrative Expense Claims For Each Debtor.**

**a.    General.**

Each holder of an Allowed Administrative Expense Claim in a particular Estate shall be paid in full, in Cash of such Estate, on the later of: (i) the Effective Date, or (ii) the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in either case, as soon thereafter as is practicable, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment. The fees and costs of the counsel to the Direct Lender Committee, to the extent Allowed, will be treated as an Administrative Expense

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Claim against USACM, except to the extent covered by a surcharge on Direct Lenders authorized

2   by the Court and collected by USACM prior to the Effective Date.

3              **b.    Payment of Statutory Fees.**

4              On or before the Effective Date, Statutory Fees for each Estate shall be paid in Cash, in full

5   when due.  To the extent there is any dispute as to the amount or payment of these Statutory Fees,

6   such dispute will be resolved by the Court at the Confirmation Hearing.

7              **c.    Bar Dates Applicable to Administrative Expense Claims.**

8                   **i.    General Administrative Expense Claims.**

9              Except as provided in subsections ii and iii below, requests for payment of Administrative

10  Expense Claims must be Filed and served on the Debtors and the Post-Effective Date Entities, the

11  Committees (to the extent such Committees are not dissolved) and the U.S. Trustee by no later

12  than thirty (30) days after the Effective Date, which shall be the "Administrative Expense Claim

13  Bar Date." Any holder of an Administrative Expense Claim who fails to File a request seeking to

14  have its Claim Allowed on or before the Administrative Expense Claim Bar Date shall be forever

15  barred from seeking the allowance of its Administrative Expense Claim, and the Debtors and their

16  Estates, including any Post-Effective Date Entities, if applicable, shall be discharged of any

17  obligation on such Claim or any other Claim related to the Administrative Expense Claim.

18                  **ii.    Professionals.**

19             All Professionals or other Entities requesting compensation or reimbursement of expenses

20  under sections 327, 328, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code for services

21  rendered before the Effective Date (including any compensation requested by any professional or

22  any other Entity for making a substantial contribution in the Chapter 11 Cases under section

23  503(b)(3)(D) of the Bankruptcy Code) shall File and serve on the Debtors, the Post-Effective Date

24  Entities, the Committees (to the extent such Committees are not yet dissolved) and the U.S.

25  Trustee an application for final allowance of compensation and reimbursement of expenses no

26  later than forty-five (45) days after the Effective Date, which shall be the "Professionals

27  Administrative Expense Claim Bar Date." Any objections to such applications must be Filed and

28  served in accordance with applicable law, including Nevada District Court Local Rule 9014.  Any

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   Professional who fails to File an application requesting payment on or prior to the Professionals

2   Administrative Expense Claim Bar Date shall be forever barred from seeking the allowance of its

3   Administrative Expense Claim or any other Claim, and the Debtors, their Estates and any Post-

4   Effective Date Entities, if applicable, shall be discharged of any obligation on such Claim or any

5   other Claim related to the Professional's Claim.

6           **iii.    Ordinary Course Administrative Expense Claims.**

7        Holders of Ordinary Course Administrative Expense Claims shall not be required to File

8   any request for payment of such Claims by the Administrative Expense Claim Bar Date.  Each

9   Ordinary Course Administrative Expense Claim shall be assumed and paid by the obligated Estate

10  under the terms and conditions of the particular transaction giving rise to that Ordinary Course

11  Administrative Expense Claim, without any further action by the holder of such Ordinary Course

12  Administrative Expense Claim.

13          **iv.    Effect of Claim Bar Dates.**

14       All holders of Administrative Expense Claims (including without limitation, Professionals

15  requesting compensation or reimbursement of expenses), except holders of Ordinary Course

16  Administrative Expense Claims, are required to File a request for payment of such Claims in

17  accordance with the Plan.  Failure to File a request for payment of an Administrative Expense

18  Claim prior to the Administrative Expense Claim Bar Date or the Professionals Administrative

19  Expense Claim Bar Date, as applicable, shall  forever bar the holder from asserting such Claims

20  against the Debtors, the Estates, the Post-Effective Date Entities and any other Entity or any of

21  their respective property, and the Debtors, the Estates and the Post-Effective Date Entities, to the

22  extent applicable, shall be discharged of any obligation on such Claim or any other Claim related

23  to the Administrative Expense Claim.

24          **2.    Priority Tax Claims.**

25       Each holder of an Allowed Priority Tax Claim in a particular Estate shall be paid in full, in

26  Cash from such Estate, on the later of: (A) the Effective Date, or (B) the date such Priority Tax

27  Claim becomes an Allowed Priority Tax Claim, or, in either case as applicable, as soon thereafter

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

31

1  as is practicable, except to the extent that the holder of an Allowed Priority Tax Claim agrees to a

2  different treatment.

3  **C.    Classified Claims And Equity Interests.**

4      **1.    USACM – (Classes A-1 Through A-8).**

5          **a.    Class A-1: Secured Tax Claims.**

6              i.    *Classification*:  Class A-1 consists of all Allowed Secured Tax

7  Claims against USACM.

8              ii.    *Treatment*:  Each holder of an Allowed Secured Tax Claim shall be

9  paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15)

10  Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class A-1 is

11  unimpaired, and the holders of Allowed Class A-1 Claims are presumed to vote in favor of the

12  Plan.

13          **b.    Class A-2: Other Secured Claims.**

14              i.    *Classification*:  Class A-2 consists of all Allowed Other Secured

15  Claims against USACM.

16              ii.    *Treatment*:  Each holder of an Allowed Other Secured Claim shall

17  be treated pursuant to Option A or Option B below, at the discretion of USACM.

18          **Option A:**  Holders of Allowed Other Secured Claims shall be paid in full on or

19  before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days

20  after the date the Other Secured Claim becomes an Allowed Claim; or

21          **Option B:**  USACM shall surrender the property securing the Allowed Other

22  Secured Claim to the holder of such Claim by making the property reasonably available to such

23  holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business

24  Days after the date the Other Secured Claim becomes an Allowed Claim; provided, however, that

25  if the property securing an Allowed Other Secured Claim has been lost or destroyed, USACM

26  shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of

27  which notice shall constitute "surrender" of the property securing the Allowed Other Secured

28  Claim for purposes of this Option B.

32

1        Class A-2 is unimpaired, and the holders of Allowed Class A-2 Claims are

2    presumed to vote in favor of the Plan.

3        **c.**  **Class A-3: Priority Unsecured Claims.**

4            i.  *Classification*:  Class A-3 consists of all Allowed Priority Unsecured

5    Claims against USACM.

6            ii.  *Treatment*:  Each holder of an Allowed Priority Unsecured Claim

7    shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class A-3 is

8    unimpaired, and the holders of Allowed Class A-3 Claims are presumed to vote in favor of the

9    Plan.

10        **d.**  **Class A-4: General Unsecured Claims.**

11            i.  *Classification*:  Class A-4 consists of all Allowed General

12    Unsecured Claims against USACM, including the Allowed Unremitted Principal Claims, the

13    Allowed Direct Lender Unsecured Claims, the Allowed FTDF Unsecured Claims, and the

14    Allowed DTDF Unsecured Claims.

15            ii.  *Treatment*:  Each holder of an Allowed General Unsecured Claim

16    shall receive a beneficial interest in the USACM Trust, and on account of the Allowed Claim may

17    receive a Pro Rata Share of the assets of the USACM Trust after satisfaction of all Allowed

18    unclassified Claims, Allowed Class A-1, A-2 and A-3 Claims, and all post-Effective Date fees,

19    costs, and expenses of implementation of the USACM Plan and USACM Trust.  Class A-4 is

20    impaired, and the holders of Allowed Class A-4 Claims are entitled to vote to accept or reject the

21    Plan.

22        **e.**  **Class A-5: Direct Lender Compromise Claims.**

23            i.  *Classification*:  Class A-5 Consists of all Direct Lenders.

24            ii.  *Treatment*:  In exchange (and as a compromise) for the release by

25    USACM, FTDF, USA Realty, USA Securities of Claims against the Direct Lenders under the

26    Plan, including Claims relating to surcharge, recharacterization of Direct Lender Loans, and the

27    collection of prepetition accrued as of the Effective Date but unpaid annual loan servicing fees due

28    under Loan Servicing Agreements, but excluding all other causes of action to recover principal or

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

33

interest payments USACM paid in advance to applicable Direct Lenders before the Petition Date,
the Direct Lenders (a) acknowledge that the Prepaid Interest constitutes an asset of the USACM
Estate (or will otherwise transfer their ownership rights, if any, in the Prepaid Interest to the
USACM Estate); (b) agree that up to $605,000 of the 2% Holdback (on a Pro Rata basis based on
unpaid principal Loan balances of those Direct Lenders with funds in the 2% Holdback) will be
used to reimburse USACM for the Allowed Administrative Expense Claims of Professionals
employed by the Direct Lender Committee; and (c) agree that, with respect to servicing fees paid
prior to the Effective Date, USACM will retain its contractual servicing fee due under the Loan
Servicing Agreements and, with respect to Loan Servicing Agreements which provide that
USACM may collect "up to" a maximum amount for such servicing fees, USACM will retain the
maximum amount for such servicing fees as provided under the Loan Servicing Agreement.  Class
A-5 is impaired, and the holders of Allowed Class A-5 Claims are entitled to vote to accept or
reject the Plan. If the Plan is confirmed, the Direct Lenders will be bound to the Class A-5
treatment regardless of whether they vote to accept or reject the Plan, or Class A-5 votes to accept
or reject the Plan; all such objections must be made by objecting to Plan confirmation.

   **f.**   **Class A-6: Allowed Penalty Claims.**

       i.  *Classification:*  Class A-6 consists of all Allowed Penalty Claims
against USACM.

       ii.  *Treatment:*  Payment to holders of Allowed Penalty Claims shall be
subordinated to the payment in full, plus interest, of all Allowed General Unsecured Claims.  It is
anticipated that holders of Allowed Penalty Claims shall receive no distribution under the Plan.  In
the unlikely event that Cash exists after all Allowed General Unsecured Claims are paid in full,
plus interest, the Plan shall be deemed to be amended to provide that such Cash be distributed Pro
Rata to the holders of Allowed Penalty Claims, plus interest. Class A-6 is impaired, and the
holders of Class A-6 Claims are deemed to reject the Plan.

   **g.**   **Class A-7: Subordinated Claims.**

       i.  *Classification*: Class A-7 consists of all Subordinated Claims
against USACM.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

34

1              ii.   *Treatment:* Payment to holders of Allowed Subordinated Claims

2   shall be subordinated to the payment in full, plus interest, of all Allowed Penalty Claims. It is

3   anticipated that holders Allowed Subordinated Claims shall receive no distribution under the Plan.

4   In the unlikely event that Cash exists after all Allowed Penalty Claims are paid in full, plus

5   interest, the Plan shall be deemed to be amended to provide that such Cash be distributed Pro Rata

6   to the holders of Allowed Subordinated Claims, plus interest. Class A-7 is impaired, and the

7   holders of Class A-7 Claims are deemed to reject the Plan

8         **h.**   **Class A-8: Equity Interests.**

9              i.   *Classification:* Class A-8 consists of all Equity Interests in

10   USACM.

11              ii.   *Treatment:* Any and all Equity Interests in USACM, regardless of

12   form, are cancelled as of the Effective Date, and the holders of such Equity Interests will receive

13   no distribution under the Plan. Class A-87 is impaired, and the holders of Class A-8 Equity

14   Interests are deemed to reject the Plan.

15        **2.**   **FTDF – (Classes B-1 Through B-5).**

16         **a.**   **Class B-1: Secured Tax Claims.**

17              i.   *Classification:* Class B-1 consists of all Allowed Secured Tax

18   Claims against FTDF.

19              ii.   *Treatment:* Each holder of an Allowed Secured Tax Claim shall be

20   paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15)

21   Business Days after the date the Secured Tax Claim becomes an Allowed Claim. Class B-1 is

22   unimpaired, and the holders of Allowed Class B-1 Claims are presumed to vote in favor of the

23   Plan.

24         **b.**   **Class B-2: Other Secured Claims.**

25              i.   *Classification:* Class B-2 consists of all Allowed Other Secured

26   Claims against FTDF.

27              ii.   *Treatment:* Each holder of an Allowed Other Secured Claim shall

28   be treated pursuant to Option A or Option B below, at the discretion of FTDF.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    **Option A:**  Holders of Allowed Other Secured Claims shall be paid in full on or

2    before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days

3    after the date the Other Secured Claim becomes an Allowed Claim; or

4    **Option B:**  FTDF shall surrender the property securing the Allowed Other Secured

5    Claim to the holder of such Claim by making the property reasonably available to such holder

6    before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days

7    after the date the Other Secured Claim becomes an Allowed Claim; provided, however, that if the

8    property securing an Allowed Other Secured Claim has been lost or destroyed, FTDF shall

9    provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of

10    which notice shall constitute "surrender" of the property securing the Allowed Other Secured

11    Claim for purposes of this Option B.

12    Class B-2 is unimpaired, and the holders of Allowed Class B-2 Claims are

13    presumed to vote in favor of the Plan.

14    c.    **Class B-3: Priority Unsecured Claims.**

15    i.    *Classification*:  Class B-3 consists of all Allowed Priority Unsecured

16    Claims against FTDF.

17    ii.    *Treatment*:  Each holder of an Allowed Priority Unsecured Claim

18    shall be paid in full on the Effective Date, unless such holder agrees otherwise.  Class B-3 is

19    unimpaired, and the holders of Allowed Class B-3 Claims are presumed to vote in favor of the

20    Plan.

21    d.    **Class B-4: General Unsecured Claims.**

22    i.    *Classification*:  Class B-4 consists of all Allowed General

23    Unsecured Claims against FTDF.

24    ii.    *Treatment*:  Each holder of an Allowed General Unsecured Claim

25    shall be paid in full on the Effective Date, plus Postpetition Interest.  Class B-4 is unimpaired, and

26    the holders of Allowed Class B-4 Claims are presumed to vote in favor of the Plan.

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

e.    **Class B-5: Equity Interests.**

i.    *Classification*: Class B-5 consists of all Allowed Equity Interests in FTDF.

ii.    *Treatment*: All holders of Allowed Equity Interests in FTDF shall (a) retain their Pro Rata Share of all distributions received after the Petition Date and, after payment of the FTDF Payment, (b) receive a Pro Rata Share of Allocated Net Sale Proceeds after satisfaction of all Allowed unclassified Claims, all Allowed Class B-1, B-2, B-3 and B-4 Claims, and any and all post-Effective Date fees, costs and expenses of implementation of the Plan for FTDF, and (c) receive a Pro Rata Share of the USACM Trust recoveries (subject to the compromise with DTDF) on account of the Allowed FTDF Unsecured Claim.  Class B-5 is impaired, and the holders of Allowed Class B-5 Equity Interests are entitled to vote to accept or reject the Plan.

3.    **DTDF – (Classes C-1 Through C-5).**

a.    **Class C-1: Secured Tax Claims.**

i.    *Classification*: Class C-1 consists of all Allowed Secured Tax Claims against DTDF.

ii.    *Treatment*: Each holder of an Allowed Secured Tax Claim shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim.  Class C-1 is unimpaired, and the holders of Allowed Class C-1 Claims are presumed to vote in favor of the Plan.

b.    **Class C-2: Other Secured Claims.**

i.    *Classification*: Class C-2 consists of all Allowed Other Secured Claims against DTDF.

ii.    *Treatment*: Each holder of an Allowed Other Secured Claim against DTDF shall be treated pursuant to Option A or Option B below, at the discretion of Post-Effective Date DTDF.

**Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or

**Option B:** Post-Effective Date DTDF shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; provided, however, that if the property securing an Allowed Other Secured Claim has been lost or destroyed, Post-Effective Date DTDF shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B.

Class C-2 is unimpaired, and the holders of Allowed Class C-2 Claims are presumed to vote in favor of the Plan.

c.    **Class C-3: Priority Unsecured Claims.**

i.    *Classification*: Class C-3 consists of all Allowed Priority Unsecured Claims against DTDF.

ii.    *Treatment*: Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise. Class C-3 is unimpaired, and the holders of Allowed Class C-3 Claims are presumed to vote in favor of the Plan.

d.    **Class C-4: General Unsecured Claims.**

i.    *Classification*: Class C-4 consists of all Allowed General Unsecured Claims against DTDF.

ii.    *Treatment*: Each holder of an Allowed General Unsecured Claim shall be paid in full on the Effective Date, plus Postpetition Interest. Class C-4 is unimpaired, and the holders of Allowed Class C-4 Claims are presumed to vote in favor of the Plan.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

     **e.**     **Class C-5: Equity Interests.**

     i.     *Classification*: Class C-5 consists of all Allowed Equity Interests in DTDF.

     ii.     *Treatment*: All holders of Allowed Equity Interests shall (a) retain their interests in DTDF and any distributions received from the Petition Date, and, after satisfaction of all Allowed unclassified Claims, Allowed Class C-1, C-2, C-3 C-4 Claims and the post-Effective Date costs, fees and expenses for implementation of the Plan for DTDF, including without limitation costs, fees, and expenses incurred by Post-Effective Date DTDF under the DTDF Amended Operating Agreement, (b) receive a Pro Rata Share of the assets of Post-Effective Date DTDF, and (c) receive a Pro Rata Share in the USACM Trust recoveries on account of the Allowed DTDF Unsecured Claim. Class C-5 is impaired, and the holders of Allowed Class C-5 Equity Interests are entitled to vote to accept or reject the Plan.

**4.**     **USA Realty – (Classes D-1 Through D-5).**

     **a.**     **Class D-1: Secured Tax Claims.**

     i.     *Classification*: Class D-1 consists of all Allowed Secured Tax Claims against USA Realty.

     ii.     *Treatment*: Each holder of an Allowed Secured Tax Claim shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Secured Tax Claim becomes an Allowed Claim. Class D-1 is unimpaired, and the holders of Allowed Class D-1 Claims are presumed to vote in favor of the Plan.

     **b.**     **Class D-2: Other Secured Claims.**

     i.     *Classification*: Class D-2 consists of all Allowed Other Secured Claims against USA Realty.

     ii.     *Treatment*: Each holder of an Allowed Other Secured Claim against USA Realty shall be treated pursuant to Option A or Option B below, at the discretion of USA Realty.

39

**Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; or

**Option B:** USA Realty shall surrender the property securing the Allowed Other Secured Claim to the holder of such Claim by making the property reasonably available to such holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days after the date the Other Secured Claim becomes an Allowed Claim; provided, however, that if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA Realty shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the delivery of which notice shall constitute "surrender" of the property securing the Allowed Other Secured Claim for purposes of this Option B.

Class D-2 is unimpaired, and the holders of Allowed Class D-2 Claims are presumed to vote in favor of the Plan.

    **c.**      **Class D-3: Priority Unsecured Claims.**

         i.      *Classification*: Class D-3 consists of all Allowed Priority Unsecured Claims against USA Realty.

         ii.      *Treatment*: Each holder of an Allowed Priority Unsecured Claim shall be paid in full on the Effective Date, unless such holder agrees otherwise. Class D-3 is unimpaired, and the holders of Allowed Class D-3 Claims are presumed to vote in favor of the Plan.

    **d.**      **Class D-4: General Unsecured Claims.**

         i.      *Classification*: Class D-4 consists of all Allowed General Unsecured Claims against USA Realty.

         ii.      *Treatment*: Each holder of an Allowed General Unsecured Claim against USA Realty shall receive a Pro Rata Share of assets of the Estate of USA Realty after payment in full of all Allowed unclassified Claims, and all Allowed Class D-1, D-2 and D-3 Claims. Class D-4 is impaired, and the holders of Allowed Class D-4 Claims are entitled to vote to accept or reject the Plan.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1          **e.     Class D-5: Equity Interests.**

2                        i.     *Classification*: Class D-5 consists of all Allowed Equity Interests in

3     USA Realty.

4                        ii.    *Treatment*: Any and all Equity Interests in USA Realty, regardless

5     of form, are cancelled as of the Effective Date, and the holders of such Equity Interests will

6     receive no distribution under the Plan. Class D-5 is impaired, and the holders of Allowed Class D-

7     5 Equity Interests are deemed to reject the Plan.

8          **5.     USA Securities – (Classes E-1 Through E-5).**

9          **a.     Class E-1: Secured Tax Claims.**

10                       i.     *Classification*: Class E-1 consists of all Allowed Secured Tax

11    Claims against USA Securities.

12                       ii.    *Treatment*: Each holder of an Allowed Secured Tax Claim shall be

13    paid in full on or before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15)

14    Business Days after the date the Secured Tax Claim becomes an Allowed Claim. Class E-1 is

15    unimpaired, and the holders of Allowed Class E-1 Claims are presumed to vote in favor of the

16    Plan.

17         **b.     Class E-2: Other Secured Claims.**

18                       i.     *Classification*: Class E-2 consists of all Allowed Other Secured

19    Claims against USA Securities.

20                       ii.    *Treatment*: Each holder of an Allowed Other Secured Claim against

21    USA Securities shall be treated pursuant to Option A or Option B below, at the discretion of USA

22    Securities.

23         **Option A:** Holders of Allowed Other Secured Claims shall be paid in full on or

24    before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business Days

25    after the date the Other Secured Claim becomes an Allowed Claim; or

26         **Option B:** USA Securities shall surrender the property securing the Allowed Other

27    Secured Claim to the holder of such Claim by making the property reasonably available to such

28    holder before the later of (a) sixty (60) days after the Effective Date, or (b) fifteen (15) Business

41

1    Days after the date the Other Secured Claim becomes an Allowed Claim; provided, however, that

2    if the property securing an Allowed Other Secured Claim has been lost or destroyed, USA

3    Securities shall provide notice of such fact to the holder of the Allowed Other Secured Claim, the

4    delivery of which notice shall constitute "surrender" of the property securing the Allowed Other

5    Secured Claim for purposes of this Option B.

6        Class E-2 is unimpaired, and the holders of Allowed Class E-2 Claims are

7    presumed to vote in favor of the Plan.

8        **c.    Class E-3: Priority Unsecured Claims.**

9            i.    *Classification*: Class E-3 consists of all Allowed Priority Unsecured

10    Claims against USA Securities.

11            ii.    *Treatment*: Each holder of an Allowed Priority Unsecured Claim

12    shall be paid in full on the Effective Date, unless such holder agrees otherwise. Class E-3 is

13    unimpaired, and the holders of Allowed Class E-3 Claims are presumed to vote in favor of the

14    Plan.

15        **d.    Class E-4: General Unsecured Claims.**

16            i.    *Classification*: Class E-4 consists of all Allowed General Unsecured

17    Claims against USA Securities.

18            ii.    *Treatment*: Each holder of an Allowed General Unsecured Claim

19    against USA Securities shall receive a Pro Rata Share of the assets of the Estate of USA Securities

20    after payment in full of all Allowed unclassified Claims, and all Allowed Class E-1, E-2 and E-3

21    Claims. Class E-4 is impaired, and the holders of Allowed Class E-4 Claims are entitled to vote to

22    accept or reject the Plan.

23        **e.    Class E-5: Equity Interests.**

24            i.    *Classification*: Class E-5 consists of all Allowed Equity Interests in

25    USA Securities.

26            ii.    *Treatment:* Any and all Equity Interests in USA Securities,

27    regardless of form, are cancelled as of the Effective Date, and the holders of such Equity Interests

28

SCHWARZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Exhibit  G

2 of 2

1  will receive no distribution under the Plan.  Class E-5 is impaired, and the holders of Allowed

2  Class E-5 Equity Interests are deemed to reject the Plan.

3

4                                          **III.**

5                    **ACCEPTANCE OR REJECTION OF THE PLAN**

6

7  **A.      Voting Classes.**

8          Holders of Allowed Class A-4, A-5,  D-4 and E-4 Claims are entitled to vote to accept or

9  reject the Plan.  Holders of Allowed Class B-5 and C-5 Equity Interests are entitled to vote to

10  accept or reject the Plan.  Holders of Allowed Class A-1, A-2, A-3, B-1, B-2, B-3, B-4, C-1, C-2,

11  C-3, C-4, D-1, D-2, D-3, E-1, E-2, E-3 Claims are deemed to accept the Plan.  Holders of Allowed

12  Class A-6, A-7, A-8, D-5 and E-5 Equity Interests are deemed to have rejected the Plan.  An

13  Entity holding an Allowed Claim or Equity Interest in more than one Class is entitled to vote in

14  each Class.

15  **B.      Voting Rights Of Holders Of Disputed Claims And Disputed Equity Interests.**

16          Pursuant to Bankruptcy Rule 3018(a), a Disputed Claim or Disputed Equity Interest will

17  not be counted for purposes of voting on the Plan to the extent it is Disputed, unless the Court

18  enters an order temporarily allowing the Disputed Claim or Disputed Equity Interest for voting

19  purposes under Bankruptcy Rule 3018(a).  Such disallowance for voting purposes is without

20  prejudice to the holder of the Disputed Claim or Disputed Equity Interest's right to seek to have its

21  Disputed Claim or Disputed Equity Interest, as the case may be, Allowed for purposes of

22  distribution under the Plan.

23  **C.      Acceptance By Impaired Classes.**

24          An impaired Class of Claims shall have accepted the Plan if (1) the holders (other than any

25  holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in dollar amount

26  of the Allowed Claims actually voting in such class have voted to accept the Plan, and (2) more

27  than one-half in number of the holders (other than any holder designated under Bankruptcy Code

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   section 1126(e)) of such Allowed Claims actually voting in such Class have voted to accept the

2   Plan.

3       An impaired Class of Equity Interests shall have accepted the Plan if the holders (other

4   than any holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in

5   amount of the Allowed Equity Interests actually voting in such Class, or subclass, have voted to

6   accept the Plan.

7   **D.    Nonconsensual Confirmation.**

8       In the event that the Classes entitled to vote to accept or reject this Plan fail to accept the

9   Plan in accordance with Bankruptcy Code section 1129(a)(8), the Debtors, with the agreement of

10  the Committees, reserve the right to (i) request that the Court confirm the Plan in accordance with

11  Bankruptcy Code section 1129(b) and/or (ii) modify the Plan in accordance with Bankruptcy Code

12  section 1127(a) and request confirmation of the modified Plan.  Further, as the Plan contains a

13  Plan for each of the five separate Debtors, the Debtors, with the agreement of the Committees,

14  reserve the right to request confirmation of the Plan for one or more, but less than all Debtors

15  under section 1129(b) of the Bankruptcy Code.  In accordance with section 1127 of the

16  Bankruptcy Code, the Debtors, with the agreement of the Committees, reserve the right to alter,

17  amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule, including documents

18  in the Plan Documents Supplement and the Direct Lender Supplement, for one or more or all of

19  the Debtors, including to amend or modify the Plan to satisfy the requirements of section 1129(b)

20  of the Bankruptcy Code for one or more of the Debtors covered by the Plan.  In the event the

21  Debtors, with the agreement of all of the Committees, modify the Plan by withdrawing the Plan

22  for less than all of the Debtors, the Plan, as modified, will remain intact and unchanged for all

23  non-withdrawing Debtors.

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

IV.

**IMPLEMENTATION OF THE PLAN**

A.    **General Means Of Implementation.**

The Plan will be implemented and consummated through the means contemplated by sections 1123(a)(5)(A), (B) and (D), 1123(b)(2), 1123(b)(3)(A) and (B), and 1123(b)(4) of the Bankruptcy Code, including by:

1.    the transfer of certain Loan Servicing Agreements pursuant to the Asset Purchase Agreement;

2.    the sale of the Acquired Assets as set forth in section C of Art. IV of the Plan and disbursement of the Allocated Net Sale Proceeds and certain other Cash of the Estates in accordance with the Plan;

3.    the transfer of certain assets of USACM to the USACM Trust pursuant to section D.1 of Art. IV of the Plan, the liquidation of those assets by the USACM Trust, the disbursement of Cash to holders of Allowed USACM Unsecured Claims as USACM Trust beneficiaries in accordance with the Plan and the USACM Trust Agreement, and the dissolution of USACM;

4.    the transfer of the FTDF Transferred Claims and the making of the FTDF Payment;

5    the retention by Post-Effective Date DTDF of assets of DTDF pursuant to section D.2 of Art. IV of the Plan, the liquidation of those assets by the Post-Effective Date DTDF, the disbursement of Cash to holders of Allowed Equity Interests in DTDF in accordance with the Plan, and the dissolution of DTDF;

6.    the distribution of FTDF's share of the Allocated Net Sale Proceeds in accordance with the Plan, and the dissolution of FTDF; and

7.    the liquidation of any assets of the USA Realty Estate and the USA Securities Estate, distribution of Cash to holders of Allowed Claims against USA Realty and USA Securities, respectively, in accordance with the Plan, and the dissolution of USA Realty and USA Securities.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

45

B.    **No Substantive Consolidation Or Recharacterization Of Loans.**

On the Effective Date, all of the assets of each Debtor shall be sold, transferred, distributed or retained by each of such Debtor's respective Estates, or the Post-Effective Date Entities created for each such Debtor and its Estate under the Plan, with all proceeds of sold, transferred, or liquidated assets of each Debtor being retained by the respective Debtor's Estate, or the Post-Effective Date Entities created for each such Debtor and its Estate under the Plan. All Claims against and Equity Interests in the Debtors and their respective Estates shall be retained by the holders of Allowed Claims and Allowed Equity Interests against and in the respective Estates, except as otherwise provided for under the Plan. The allowance, voting, treatment and distributions on account of Allowed Claims and Allowed Equity Interests shall be as set forth in the Plan on an individual Estate basis. Notwithstanding any inference to the contrary in this section, Equity Interests in USACM, USA Realty and USA Securities shall be retained only until the Effective Date, at which date, those Equity Interests shall be cancelled on an individual Estate basis under the Plan.

Notwithstanding any provision of this Plan, nothing in this Plan shall constitute or effect a recharacterization of any Loan or any interest in a Loan as giving rise to a Claim against or Equity Interest in any of the Debtors. If any Entity believes that all or a portion of the Loans should be so recharacterized, it must expressly raise this issue by Filing an objection to the Confirmation of the Plan on this basis. Any Entity who fails to File such an objection to Confirmation of the Plan shall be forever barred and estopped from arguing, asserting or claiming in any way that its Loan or its interest in a Loan should be recharacterized as an Allowed Claim against or Allowed Equity Interest in a Debtor.

C.    **Asset Sale Transaction.**

The Plan will be implemented in part by the Asset Sale Transaction. In implementation of the Asset Sale Transaction, USACM and FTDF, as sellers, DTDF, USA Securities and USA Realty, as acknowledging parties, and SPCP Group, LLC, as purchaser, have entered into the Asset Purchase Agreement. The Asset Purchase Agreement and the Bid Procedures Order provide that the Acquired Assets are sold to SPCP Group, LLC or, as part of the Auction, to a Third Party

46

1   Bidder making a Higher and Better Offer.  Pursuant to the Asset Sale Transaction, the Asset

2   Purchaser (either SPCP Group, LLC or a Third Party Bidder as determined by the Auction) will

3   purchase the following Acquired Assets:

4       1.      FTDF's proportional interest in 44 different Loans for Cash consideration of $46

5   million, subject to certain adjustments; and

6       2.      USACM's post-Closing rights to service Loans pursuant to the Loan Servicing

7   Agreements for the Loans and related personal property for Cash consideration based on the future

8   (A) collection of servicing fees, (B) collection of default rate interest, and (C) other payments and

9   obligations set forth in the Asset Purchase Agreement.

10      Except as expressly agreed to otherwise by the Debtors and the Asset Purchaser, the

11  Acquired Assets will be sold free and clear of all liens, Claims, encumbrances, rights of third

12  parties and interests.  The Confirmation Order shall constitute an Order pursuant to section 363(b)

13  and (f) of the Bankruptcy Code authorizing the sale of the Estates' interests in the Acquired Assets

14  to the Asset Purchaser.  The Confirmation Order shall provide that the Asset Purchaser is a good

15  faith purchaser of assets within the meaning of section 363(m) of the Bankruptcy Code and has

16  paid fair consideration and reasonable equivalent value of the Acquired Assets that are purchased.

17  Except as set forth in the Asset Purchase Agreement and the Plan, the Asset Purchaser shall have

18  no liability for Claims or Equity Interests against the Debtors (whether or not currently known)

19  based on its purchase of Acquired Assets.

20      After the Auction, the Asset Sale Transaction shall be approved in connection with

21  Confirmation of the Plan.  The Allocated Net Sale Proceeds from the Asset Sale Transaction shall

22  be distributed to FTDF and USACM Trust, respectively, on the Effective Date of the Plan.

23  **D.      Post-Effective Date Entities.**

24      **1.      The USACM Trust.**

25      The USACM Trust shall be governed and created pursuant to the Plan and the USACM

26  Trust Agreement.  A copy of the proposed USACM Trust Agreement shall be included in the Plan

27  Documents Supplement.  The USACM Trust shall have the discretion, subject to review by the

28  USACM Trust Committee appointed in accordance with the USACM Trust Agreement, to retain

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

47

1    and compensate professionals, compensate the USACM Trustee, compensate the Debtors'

2    Professionals for any assistance of information requested of them by the USACM Trust, employ

3    staff or agents, object to Claims, realize assets, whether by suit, compromise, release or otherwise,

4    and take all actions reasonable to maximize the recovery to beneficiaries of the USACM Trust.

5    The USACM Trust Agreement shall provide for all expense reserves necessary for the USACM

6    Trust.

7         The USACM Committee will propose the Person to serve as the USACM Trustee, after

8    soliciting advice from and obtaining the consent of USACM and the other Committees, and will

9    provide all disclosures required respecting the Person pursuant to sections 1129(a)(4) and (a)(5) of

10   the Bankruptcy Code, not less than ten (10) days before the Confirmation Hearing. The USACM

11   Trustee shall be approved by the Court at the Confirmation Hearing.

12         The USACM Trust shall be funded with all assets of the USACM Estate not collected or

13   disposed of prior to the Effective Date, including Cash and noncash proceeds. Assets of the

14   USACM Estate shall include the USACM Loans, the Prepaid Interest (including Prepaid Interest

15   collected by the Asset Purchaser post-Effective Date and including the DTDF Prepaid Interest,

16   subject to the objection of the DTDF Committee, which shall be determined by the Court if not

17   settled), the USACM Accounts (including USACM Estate's share of the IP $58 Million

18   Promissory Note), all USACM Litigation Claims, including without limitation the Non-Debtor

19   Insider Litigation, belonging to or assertable by the USACM Estate, the FTDF Litigation Claims

20   transferred to USACM pursuant to section E.2.j of Art. IV of the Plan, and all servicing and

21   related fees to be retained by USACM as set forth in the Asset Purchase Agreement and which

22   will be included in the Asset Sale Transaction to the Asset Purchaser. The USACM Trust shall

23   receive its share of the Non-Debtor Insider Litigation of the USACM Estate and may, without

24   further order of the Court, enter into a joint prosecution or sharing agreement with Post-Effective

25   Date DTDF. Pending Litigation shall be prosecuted or defended by the Asset Purchaser, as

26   appropriate, if the Asset Acquirer, in its sole discretion, agrees to do so in writing within ten (10)

27   Business Days of the Effective Date of the Plan. If Asset Purchaser does not agree to prosecute or

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  defend the Pending Litigation, the Pending Litigation shall automatically transfer to the USACM

2  Trust, and USACM may, in its discretion, prosecute or defend the Pending Litigation.

3      On and after the Effective Date, pursuant to the Asset Purchase Agreement and the Plan,

4  the USACM Trust shall have or, if it does not have, be granted access to all databases, software,

5  documents, records and office equipment currently owned by, or currently in the possession or

6  control of, any of the Debtors, which, in the discretion of the USACM Trust, are deemed to be

7  necessary. The foregoing shall include, but not be limited to, electronic copies (in a form that will

8  enable the USACM Trust to use and manipulate the data), all software and systems, all hardware,

9  all documents, all records (including reconstructed Loan ledgers and other documents created

10 during the Chapter 11 Cases), and all office equipment and all computers that are necessary or

11 make it convenient for the USACM Trust to administer or service any Loans, to object to Claims

12 against and Equity Interests in USACM, to prosecute or defend any litigation to which USACM,

13 the USACM Estate or the USACM Trust is a party, to administer and/or manage the USACM

14 Trust, and to make distributions to the beneficiaries of the USACM Trust.  Notwithstanding the

15 foregoing, as agreed in the Asset Purchase Agreement, the USACM Trust shall retain the original

16 relevant databases and servicing and reporting software.

17     The beneficiaries of the USACM Trust will be the holders of Allowed USACM Unsecured

18 Claims, including the Allowed Unremitted Principal Claims, the DTDF Unsecured Claim, the

19 Direct Lender Unsecured Claims, and the FTDF Unsecured Claim. Distributions from the

20 USACM Trust shall be made directly to the holders of Allowed USACM Unsecured Claims,

21 including holders of Unremitted Principal Claims, holders of Allowed Direct Lender Unsecured

22 Claims and holders of Allowed Equity Interests in FTDF, except that distributions on account of

23 the Allowed DTDF Unsecured Claim shall be made to the Post-Effective Date DTDF, Pro Rata

24 based upon the Allowed amount of such Claims; provided, however, that distributions on account

25 of the Allowed FTDF Unsecured Claim shall be transferred to Post-Effective Date DTDF until

26 Post-Effective Date DTDF obtains the DTDF 85% Recovery and thereafter, distributions on

27 account of the FTDF Unsecured Claim shall be made directly to holders of Allowed Equity

28 Interests in FTDF.  There shall be no separate trusts or Post-Effective Date Entities for FTDF or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

1   the holders of Allowed Direct Lender General Unsecured Claims. All costs of distribution

2   allocable to a particular group of beneficiaries shall be paid from such respective distributions in

3   accordance with the USACM Trust Agreement.

4       **2.    Post-Effective Date DTDF.**

5       Post-Effective Date DTDF shall be governed pursuant to the Plan and the DTDF Amended

6   Operating Agreement. A copy of the DTDF Amended Operating Agreement shall be included in

7   the Plan Documents Supplement. Allowed Equity Interests in DTDF shall survive the Effective

8   Date, and be the sole beneficiaries of Post-Effective Date DTDF.

9       The DTDF Amended Operating Agreement will modify the DTDF Operating Agreement

10   to include, but not be limited to, the elimination of the management provisions and fees relating to

11   USA Realty. The DTDF Amended Operating Agreement will also include all disclosures required

12   under sections 1129(a)(4) and (a)(5) of the Bankruptcy Code. Post-Effective Date DTDF, through

13   the DTDF Administrator, shall have the discretion, subject to review by the DTDF Post-Effective

14   Date Committee in accordance with the DTDF Amended Operating Agreement, to realize assets,

15   whether by suit, compromise, release or otherwise. The DTDF Amended Operating Agreement

16   shall provide for all expense reserves necessary for Post-Effective Date DTDF.

17       The DTDF Committee will propose the Person to serve as the DTDF Administrator, after

18   advice and consent of DTDF, and will provide all disclosures required respecting the Person

19   pursuant to sections 1129(a)(4) and (a)(5) of the Bankruptcy Code, not less than ten (10) days

20   before the Confirmation Hearing. The DTDF Administrator shall be appointed by the Court at the

21   Confirmation Hearing.

22       Post-Effective Date DTDF shall retain the DTDF Estate and shall be funded by and consist

23   of all assets of the DTDF Estate not collected or disposed of prior to the Effective Date, including

24   all Cash and noncash proceeds. The assets of the DTDF Estate retained by Post-Effective Date

25   DTDF include the DTDF Loans (including but not limited to rights associated with the former

26   Epic and Sheraton Loans and the Loan Servicing Agreements for the Excluded DTDF Loans), the

27   FTDF Transferred Assets, all DTDF Litigation Claims, including without limitation the Non-

28   Debtor Insider Litigation, belonging to or assertable by the DTDF Estate, and the DTDF Estate's

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel. (702) 228-7590   Fax. (702) 892-0122

50

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

1  share of the IP $58 Million Promissory Note. Post-Effective Date DTDF shall retain its share of

2  the Non-Debtor Insider Litigation and may, without further order of the Court, enter into a joint

3  prosecution or sharing agreement with the USACM Trust. Post-Effective Date DTDF shall also

4  be funded with Pro Rata distributions from the USACM Trust on account of the Allowed DTDF

5  Unsecured Claim.

6         On and after the Effective Date, pursuant to the Asset Purchase Agreement and the Plan,

7  Post-Effective Date DTDF shall have or, if it does not have, be granted access to all databases,

8  software, documents, records and office equipment currently owned by, or currently in the

9  possession or control of, any of the Debtors, which, in the discretion of Post-Effective Date

10  DTDF, are deemed to be necessary. The foregoing shall include, but not be limited to, electronic

11  copies (in a form that will enable Post-Effective Date DTDF to use and manipulate the data), all

12  databases, all software and systems, all hardware, all documents and all records (including the

13  reconstructed Loan ledgers and other documents created during the Chapter 11 Cases), and all

14  office equipment and all computers that are necessary or make it convenient for Post-Effective

15  Date DTDF to collect upon and otherwise administer its retained Loans, to object to Claims

16  against and Equity Interests in DTDF and Post-Effective Date DTDF, to prosecute or defend any

17  litigation to which DTDF, the DTDF Estate or the Post-Effective Date DTDF is a party, to

18  administer and/or manage Post-Effective Date DTDF, and to make distributions to the holders of

19  Allowed Claims against and Equity Interests in DTDF and Post-Effective Date DTDF.

20  E.    **Intercompany Compromises.**

21         The Plan will effect the following intercompany compromises:

22         1.    **The USACM/Direct Lender Compromise.**

23              If the Plan is confirmed, all Direct Lenders will be bound to the compromise

24  provisions set forth herein, regardless of whether they vote to accept or reject the Plan, or Class A-

25  5 votes to accept or reject the Plan; all such objections must be made by objecting to Plan

26  confirmation.

27              a.    *Release*: USACM releases all Claims against Direct Lenders, including but

28  not limited to surcharge, recharacterization of Direct Lender Loans, and the collection of

51

1  prepetition accrued annual loan servicing fees due under the Loan Servicing Agreements but

2  unpaid as of the Effective Date, but excluding all causes of action to recover principal or interest

3  payments USACM paid in advance to the applicable Direct Lender(s) before the Petition Date.

4      **b.**    ***Loan Servicing Agreements***: All rights of USACM as servicer under the

5  Loan Servicing Agreements transferred without modification pursuant to the Plan and the Asset

6  Purchase Agreement shall be free and clear of all liens, Claims, interests, obligations and

7  encumbrances whatsoever under sections 363 and 1123 of the Bankruptcy Code and any other

8  applicable sections of the Bankruptcy Code.

9      **c.**    ***Tax Reporting***: USACM shall prepare and timely transmit all required

10  Forms 1098 and 1099 for calendar year 2006 in respect of the Acquired Assets.

11      **d.**    ***Prepaid Interest***: Claims for Prepaid Interest, offsets, or holdbacks from

12  Direct Lenders under the Plan (whether collected from the Borrowers or the Direct Lenders) shall

13  be property of the USACM Estate free and clear of all liens, Claims and interests, except as

14  otherwise provided in the Plan.

15          i.      <u>Pre-Effective Date Prepaid Interest</u> – Claims for Prepaid Interest,

16      offsets, or holdbacks from Direct Lenders collected through the Effective Date are

17      retained by USACM, and will be used to satisfy Allowed unclassified Claims and

18      Allowed Class A-1, A-2 and A-3 Claims in accordance with the Plan, with any

19      excess being contributed to the USACM Trust.

20          ii.     <u>Post-Effective Date Prepaid Interest</u> – The Prepaid Interest shall be

21      collected post-Effective Date through an assignment of Prepaid Interest to the

22      USACM Trust, which shall survive the Effective Date, so that the Asset Purchaser

23      or any substitute or subsequent servicer will continue to net Prepaid Interest sums

24      due from Direct Lenders in accordance with the Plan and will collect Prepaid

25      Interest from Borrowers, and remit those amounts to the USACM Trust, except as

26      otherwise provided herein.

27          iii.    <u>Post-Effective Date Causes of Action</u> – The statute of limitations for

28      recovery of the Prepaid Interest as a fraudulent transfer shall be tolled for two (2)

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    years.  Recovery of Prepaid Interest by USACM or the USACM Trust as a result of

2    the payment of Prepaid Interest under the Plan via a pre-Effective Date or post-

3    Effective Date netting shall be a complete defense to all Claims for recovery of

4    Prepaid Interest, and such Claims may be brought in enforcement of the Plan

5    settlement agreement, binding all Direct Lenders upon Plan Confirmation.

6          **e.**    *2% Holdback*:  From the 2% Holdback, Direct Lenders shall reimburse

7    USACM (on a Pro Rata basis based upon unpaid principal Loan balance of those Direct Lenders

8    with funds in the 2% Holdback) for Allowed Administrative Expense Claims of Professionals

9    employed by the Direct Lenders Committee up to a maximum amount cap of $605,000.  In

10    addition to the foregoing, USACM will also retain its contractual servicing fees due under the

11    Loan Servicing Agreements.

12          **f.**    *Post-Effective Date Offsets*:  The Direct Lenders may not offset sums due

13    post-Effective Date to the servicing agent, *i.e.,* the Asset Purchaser, for Claims of Direct Lenders

14    against USACM.

15          **g.**    *Pre-Effective Date Offsets*:  The Direct Lenders may not offset pre-

16    Effective Date accrued and unpaid servicing fees and sums under Paragraph 4 of the Loan

17    Servicing Agreements (or any comparable paragraph that may be differently numbered) due to

18    USACM against the Direct Lenders' Claims against USACM.

19          **h.**    *Alternative Dispute Resolution*:  There will be an Alternative Dispute

20    Resolution option for objections to Direct Lender Unsecured Claims, objections to the Loan

21    Servicing Fee Schedule, and any other litigation between Post-Effective Date DTDF and the

22    USACM Trust.  The Alternative Dispute Resolution Agreement shall be Filed as part of the Direct

23    Lender Supplement pursuant to section E of Art. I of the Plan.

24          **2.**    **The USACM/FTDF Compromise.**

25          **a.**    *FTDF Unremitted Principal Claim*:  The FTDF Unremitted Principal

26    Claim shall be an Allowed General Unsecured Claim against USACM in the amount of $347,775

27    plus prepetition interest, if any.

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1         **b**     ***FTDF Unsecured Claim***: The FTDF Unsecured Claim against USACM is

2 the General Unsecured Claim of FTDF against USACM, excluding the FTDF Unremitted

3 Principal Claim, in the amount as may be agreed to by the FTDF Committee and the USACM

4 Committee by no later than the date of the Confirmation Hearing, or if no agreement is reached by

5 such date, the amount determined by the Court after an evidentiary hearing between such

6 Committees; provided, however, that the USACM Committee and the FTDF Committee or, after

7 the Effective Date, the USACM Trust and the FTDF Committee, may agree at any time as to the

8 amount that represents the FTDF Unsecured Claim without further Court order by filing a notice

9 of such agreement with the Court; and provided further, however, that prior to the Effective Date,

10 the USACM Committee and the FTDF Committee shall consult with the DTDF Committee and

11 the Direct Lender Committee regarding the issue.

12         **c.**     ***FTDF Prepaid Interest***: The FTDF Prepaid Interest is $2,557,307 and has

13 been netted against the post-Petition Date FTDF collections. The FTDF Prepaid Interest is being

14 held in the USACM collection account and, upon the Effective Date of the Plan, USACM shall be

15 permitted to retain the FTDF Prepaid Interest as an unencumbered asset of the USACM Estate.

16         **d.**     ***FTDF Management Fee***: The FTDF management fee payable to USA

17 Realty, and then payable to USACM, of approximately $78,000 per month shall be waived in full

18 for both prepetition and postpetition periods, through the earlier of January 31, 2007, or the

19 Effective Date. Any management fees paid by FTDF to USA Realty or USACM since the Petition

20 Date shall be applied to reduce any obligations of FTDF to USACM under the Plan, and any

21 remaining management fees shall be repaid by USACM to FTDF on the Effective Date.

22 Management fees from July 2006 until the Effective Date shall be deposited in the USA Realty

23 account and transferred to FTDF on the Effective Date.

24         **e.**     ***FTDF Servicing Fee***: The FTDF Loan Servicing Agreement provides for

25 an "up to 3%" annual servicing fee. FTDF shall be charged a 1% annual servicing fee for the

26 period of the Petition Date through June 30, 2006. Commencing on July 1, 2006 and ending on

27 the earlier of (i) the Effective Date or (ii) January 31, 2007, FTDF shall be charged a 2.5% annual

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    loan servicing fee.  To the extent any prepetition servicing fees are outstanding, such prepetition

2    servicing fees are waived in full by USACM.

3         **f.    *FTDF's Servicer Advances*:**  FTDF shall pay its proportionate share of all

4    Servicer Advances incurred by USACM prior to the Closing of the Asset Sale Transaction;

5    provided, however, that if FTDF pays the FTDF Debtors' Professionals' Fee/Cost Allocation,

6    FTDF shall not be responsible for reimbursing Servicer Advances incurred by the Debtors'

7    Professionals, except, solely for Servicer Advances incurred by firms other than Ray Quinney &

8    Nebeker P.C., Mesirow Interim Financial Management, LLC or Schwartzer & McPherson.  If

9    USACM receives payment from any source for Servicer Advances that have been previously paid

10   by FTDF (including proceeds from the sale of the respective secured real property), then USACM

11   shall reimburse FTDF for such Servicer Advances paid by FTDF pursuant to this subsection.

12        **g.    *FTDF's Debtors' Professionals' Fee/Cost Allocation*:**  FTDF's obligation

13   for the Allowed Administrative Expense Claims of the Debtors' Professionals shall be limited to

14   the FTDF's Debtors' Professionals' Fee/Cost Allocation through the earlier of (i) the Effective

15   Date or (ii) January 31, 2007.

16        **h.    *January 31, 2007*:**  In the event the Effective Date does not occur by

17   January 31, 2007, the parties' settlement regarding FTDF's payment of servicing fees, Servicer

18   Advances, the FTDF Management Fee, or the FTDF's Debtors' Professionals' Fees/Cost

19   Allocation, as set forth in this Plan, shall no longer be enforceable as of February 1, 2007, and

20   USACM and FTDF shall have reserved all of their rights with respect thereto for all periods after

21   January 31, 2007, including the right of USACM to seek a Court order to compel FTDF's payment

22   of such fees for all time periods after January 31, 2007.

23        **i.    *Overbid/Break-up Fee/Expense Reimbursement Allocation*:**  The Overbid

24   Allocation shall be 85% to FTDF and 15% to USACM for any overbid consideration, and any

25   incurred break-up fee or expense reimbursement obligation (as those terms are used in the Asset

26   Purchase Agreement) shall be allocated in the same percentages, except as otherwise provided in

27   the Stipulation memorializing the agreement between USACM and FTDF on the Overbid

28   Allocation filed by the USACM Committee and the FTDF Committee with the Court, under seal,

55

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590  Fax: (702) 892-0122

1  and served on the Debtors as confidential information, no later than ten (10) days prior to the

2  Auction.

3          **j.**    **Claims Transfer:** On the Effective Date, FTDF will transfer all of the

4  FTDF Litigation Claims, except the non-assignable FTDF Litigation Claims, to the USACM

5  Trust. The USACM Trust (and not FTDF) shall bear the costs of pursuing a recovery on FTDF

6  Litigation Claims transferred to the USACM Trust pursuant to this provision.

7        **3.**    **The FTDF/DTDF Compromise.**

8          **a.**    **FTDF Payment:** On the Effective Date, FTDF shall pay the FTDF Payment

9  to DTDF.

10         **b.**    **DTDF Repayment of FTDF Payment:** Upon achieving the FTDF Base

11 Recovery Percentage (not as adjusted below), Post-Effective Date DTDF shall repay $500,000 of

12 the FTDF Payment. On each anniversary of the Effective Date, a further calculation shall be

13 performed by increasing the dollar amount of the recovery that Post-Effective Date DTDF must

14 obtain in order for Post-Effective Date DTDF to achieve the Adjusted FTDF Base Recovery

15 Percentage. Only upon achieving the Adjusted FTDF Base Recovery Percentage shall Post-

16 Effective Date DTDF repay the balance of the FTDF Payment.

17         **c.**    **Asset and Claims Transfer:** On the Effective Date, FTDF will transfer the

18 FTDF Transferred Assets to Post-Effective Date DTDF. Post-Effective Date DTDF (and not

19 FTDF) shall bear the costs of pursuing a recovery on FTDF Transferred Assets.

20         **d.**    **FTDF Unsecured Claim Subordination:** FTDF will transfer its Pro Rata

21 Share of the USACM Trust on account of the FTDF Unsecured Claim to DTDF until the Allowed

22 Equity Interests in DTDF receive the DTDF 85% Recovery. After the DTDF 85% Recovery is

23 obtained, FTDF will retain its Pro Rata Share of the USACM Trust on account of the FTDF

24 Unsecured Claim.

25       **4.**    **The FTDF/USA Realty Compromise.**

26         **a.**    **Management Fee:** USA Realty releases FTDF from all management fees

27 accrued, but unpaid, as of the Petition Date and agrees (i) to the waiver of postpetition

28 management fees paid by FTDF to USA Realty and/or USACM, and (ii) to the repayment or

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  release of those waived postpetition management fees paid by FTDF, or held back from

2  distributions to FTDF by USACM, for all periods after the Petition Date.

3      **b.    *Subordinated Claim:*** FTDF shall subordinate its Claim against USA

4  Realty to the payment of all other Allowed Claims against USA Realty, except for the

5  subordinated part of the Allowed Claim of DTDF, which shall be paid pari passu with the

6  Subordinated Claim of FTDF.

7      **5.    The DTDF/USA Realty Compromise.**

8      **a.    *Subordinated Claim:*** DTDF shall subordinate any Allowed Claim it has

9  against USA Realty to the payment of all other Allowed Claims against USA Realty except the

10  subordinated Claim of FTDF against USA Realty to the extent that, and in the amount that, the

11  Allowed Claim of DTDF against USA Realty exceeds $50 million. Such Subordinated Claim of

12  DTDF against USA Realty shall be paid pari passu with the Subordinated Claim of FTDF against

13  the USA Realty Estate.

14      **b.    *Litigation Claims:*** In exchange for the partial subordination of the DTDF

15  Claim, Litigation Claims held by USA Realty, including without limitation, the Avoidance

16  Actions and the Non-Debtor Litigation, shall be preserved and transferred to Post-Effective Date

17  DTDF, which may be pursued at the discretion of, and at the sole cost of, the Post-Effective Date

18  DTDF.

19      **c.    *Management Fees:*** USA Realty releases DTDF from all management fees

20  accrued, but unpaid, as of the Petition Date. With respect to management fees paid postpetition to

21  USACM through USA Realty, or collected and held by USACM postpetition, the payment,

22  waiver, refund or other treatment of those management fees shall be as mutually agreed upon by

23  the USACM Committee and the DTDF Committee or, in the absence of agreement, will be

24  determined by the Court after evidence submitted by both Committees.

25  **F.    Loan Distributions And Loan Servicing Agreements.**

26      After the Effective Date, the Direct Lenders and Post-Effective Date DTDF shall be

27  entitled to distributions from the Direct Lender Loans in accordance with the related Loan

28  Servicing Agreements and applicable Nevada law, by the Asset Purchaser, as the third party

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

57

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  servicer. After the Effective Date, the Direct Lenders are obligated to comply with the terms of

2  the applicable Loan Servicing Agreements including the payment of fees as set forth on the Loan

3  Servicing Fee Schedule included in the Direct Lender Supplement subject to the resolution of any

4  disputes regarding the same under the Alternative Dispute Resolution option.

5  **G.      Preservation Of Rights Of Action And Defenses.**

6        Except to the extent such rights, Claims, causes of action, defenses, and counterclaims are

7  expressly and specifically released in connection with the Plan or in any settlement agreement

8  approved during the Chapter 11 Cases, (1) any and all rights, Claims, causes of action, defenses,

9  and counterclaims accruing to or assertable by the Debtors or their Estates, including without

10  limitation any and all Litigation Claims, the Non-Debtor Insider Litigation, Claims related to the

11  Undistributed Cash and Claims for Prepaid Interest shall remain assets of such Estates and be

12  assertable by the Debtors or such Estates, and to the extent applicable, be transferred to and

13  assertable by any respective Post-Effective Date Entity, whether or not litigation relating thereto is

14  pending on the Effective Date, and whether or not any such rights, Claims, causes of action,

15  defenses, and counterclaims have been Scheduled or otherwise listed or referred to in the Plan or

16  Disclosure Statement, or any other document Filed with the Court, and (2) neither the Debtors nor

17  the Post-Effective Date Entities waive, relinquish, or abandon (nor shall they be estopped or

18  otherwise precluded from asserting) any right, Claim, cause of action, defense, or counterclaim

19  that constitutes property of such Debtor's Estate or is assertable by such Estate: (A) whether or not

20  such right, Claim, cause of action, defense, or counterclaim has been listed or referred to in the

21  Schedules, the Plan, the Disclosure Statement, or any other document Filed with the Court,

22  (B) whether or not such right, Claim, cause of action, defense, or counterclaim is currently known

23  to the Debtors, and (C) whether or not a defendant in any litigation relating to such right, Claim,

24  cause of action, defense, or counterclaim filed a proof of Claim in the Chapter 11 Cases, filed a

25  notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against

26  the Plan, or received or retained any consideration under the Plan. Without in any manner limiting

27  the scope of the foregoing, notwithstanding any otherwise applicable principle of law or equity,

28  including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel,

1    issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a

2    right, Claim, cause of action, defense, or counterclaim, or potential right, Claim, cause of action,

3    defense, or counterclaim, in the Schedules, the Plan, the Disclosure Statement, or any other

4    document Filed with the Court shall in no manner waive, eliminate, modify, release, or alter the

5    Debtors or the Post-Effective Date Entities' rights to commence, prosecute, defend against, settle,

6    and realize upon any rights, Claims, causes of action, defenses, or counterclaims that any of the

7    Debtors or the Estates has or may have as of the Confirmation Date. The Debtors or the Post-

8    Effective Date Entities may commence, prosecute, defend against, recover on account of, and

9    settle all rights, Claims, causes of action, defenses, and counterclaims in their sole discretion in

10   accordance with what is in the best interests, and for the benefit, of the Debtors or the Post-

11   Effective Date Entities.

12   **H.    Nondischarge Of Debtors And Injunction.**

13   **This Plan provides for an injunction of certain actions against the Debtors. Holders**

14   **of Claims against and Equity Interest in the Debtors may not pursue (1) property of the**

15   **Estates other than through the Claims and Equity Interests allowance process; or (2) the**

16   **Debtors or their agents.**

17   **Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall**

18   **not discharge Claims against or Equity Interests in the Debtors. However, no holder of a**

19   **Claim or Equity Interest may receive any payment from or seek recourse against any assets**

20   **that are distributed or to be distributed under the Plan, except for those assets required to**

21   **be distributed to such holder as expressly provided for in the Plan. As of the Effective Date,**

22   **all Entities are precluded from asserting against any assets that are distributed or to be**

23   **distributed under the Plan any Claims, rights, causes of action, liabilities or interests based**

24   **upon any act or omission, transaction or other activity of any kind or nature that occurred**

25   **prior to the Effective Date, other than as expressly provided in the Plan or Confirmation**

26   **Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or**

27   **Equity Interest and regardless of whether such an Entity has voted to accept the Plan.**

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

1       Except as otherwise provided in the Plan or the Confirmation Order, on and after the

2  Effective Date all Entities that have held, currently hold or may hold a debt, Claim, other

3  liability or Equity Interest against or in the Debtors that would be discharged upon

4  confirmation of the Plan on the Effective Date but for the provisions of section 1141(d)(3) of

5  the Bankruptcy Code shall be permanently enjoined from taking any of the following actions

6  on account of such debt, Claim, liability, Equity Interest or right: (A) commencing or

7  continuing in any manner any action or other proceeding on account of such debt, Claim,

8  liability, Equity Interest or right against assets or proceeds thereof that are to be distributed

9  under the Plan, other than to enforce any right to a distribution with respect to such assets

10  or the proceeds thereof as provided under the Plan; (B) enforcing, attaching, collecting or

11  recovering in any manner any judgment, award, decree, or order against any assets to be

12  distributed to creditors under the Plan, other than as permitted under subparagraph (A)

13  above; and (C) creating, perfecting or enforcing any lien or encumbrance against any assets

14  to be distributed under the Plan, other than as permitted by the Plan, provided that nothing

15  contained herein shall limit the rights of any distributee under the Plan from taking any

16  actions in respect of property distributed or to be distributed to it under the Plan.

17

18                         **V.**

19          **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

20

21  **A.    Assumption.**

22       In the Schedule of Executory Contracts and Unexpired Leases Filed and served in

23  accordance with section D of Art. 1 of the Plan, the Debtors that shall set forth the executory

24  contracts and unexpired leases that are to be assumed or assumed and assigned effective upon the

25  Effective Date, and shall specify the Cure Payment, if any, that the Debtors believe must be

26  tendered on the Effective Date, in order to provide compensation in accordance with section

27  365(b)(1)(A) and (B) of the Bankruptcy Code.

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Objections to the assumption or the assumption and assignment of any executory contracts

2  or unexpired leases listed in the Schedule of Executory Contracts and Unexpired Leases or to any

3  proposed Cure Payment amounts set forth in that Schedule must be Filed and served on the

4  Debtors and the Committees on or before the date for filing objections to the Plan, and no other

5  objections to the assumption and/or assumption and assignment of such executory contracts or

6  unexpired leases or to such Cure Payment amounts shall be timely. All objections Filed and

7  served in accordance with this provision must be supported by a declaration specifying the

8  objection to the assumption and/or assignment and/or to the amounts allegedly owing under

9  sections 365(b)(1)(A) and (B) of the Bankruptcy Code. Failure to File and serve an objection in

10  accordance with this subsection shall result in the determination that the assumption or assumption

11  and assignment is proper and that the tender of the Cure Payment, as specified in the Schedule of

12  Executory Contracts and Unexpired Leases shall provide, on the Effective Date, cure and

13  compensation for any and all defaults and unpaid obligations under such assumed executory

14  contracts or unexpired leases. The Debtors reserve the right to respond to and contest any

15  objection filed by any party to an executory contract or unexpired lease and, as part of the

16  Confirmation Hearing, to request a determination from the Court as to the right of the Debtors to

17  assume or assume and assign such executory contract or unexpired lease and/or the amount of the

18  Cure Payment. If a party to any executory contract or unexpired lease establishes that the Cure

19  Payment is greater than the amount listed on the Schedule of Executory Contracts and Unexpired

20  Leases, the Debtors reserve the right under section 365(b) of the Bankruptcy Code to reject such

21  executory contract or unexpired lease, or to assume such executory contract or unexpired lease, at

22  the Debtors' option.

23    Up to and until one (1) day prior to the Confirmation Hearing, Entry of the Confirmation

24  Order shall constitute approval of the Debtors may delete any executory contract or unexpired

25  lease from the Schedule of Executory Contracts and Unexpired Leases by Filing an amended

26  Schedule of Executory Contracts and Unexpired Leases and serving that amended Schedule on the

27  affected non-Debtor party to the executory contract or unexpired lease.

28

61

1    Entry of the Confirmation Order by the Court any assumptions and/or any assumptions and

2    assignments made hereunder pursuant to sections 365(a) and 365(f) of the Bankruptcy Code.  All

3    Cure Payments which may be required by Bankruptcy Code section 365(b)(1) shall be made on

4    the Effective Date, or as soon thereafter as is practicable, or as may otherwise be agreed by the

5    parties to any particular executory contract or unexpired lease.

6    **B.    Rejection.**

7        **1.    General.**

8        Effective upon the Effective Date, the Debtors hereby reject all executory contracts and

9    unexpired leases that exist between the Debtors and any other Entities which have not previously

10    been rejected, except the Debtors do not reject those executory contracts and unexpired leases

11    (a) which are listed in the Schedule of Executory Contracts and Unexpired Leases referred to in

12    section A above and assumed or assumed and assigned on the Effective Date, or (b) which are or

13    have been specifically assumed, or assumed and assigned, by the Debtors with the approval of the

14    Court by separate proceeding in the Chapter 11 Cases.

15        All Allowed Claims arising from the rejection of executory contracts or unexpired leases,

16    whether under the Plan or by separate proceeding, shall be treated as General Unsecured Claims in

17    Class A-4 (USACM), Class B-4 (FTDF), Class C-4 (DTDF), Class D-4 (USA Realty) and

18    Class E-4 (USA Securities), respectively.

19        **2.    USACM Management And/Or Operating Agreements.**

20        USACM is a party to various management and/or operating agreements with non-Debtor

21    Entities.  Except as to the management and/or operating agreements with FTDF and DTDF which

22    are dealt with separately under this Plan, as part of the Schedule of Executory Contracts and

23    Unexpired Leases referred to in section A above, USACM shall designate all such management

24    and/or operating agreements that are to be rejected, assumed or assumed and assigned under the

25    Plan.  Notwithstanding the rejection of any such management and/or operating agreement,

26    USACM reserves the right to claim all fees or other amounts owing USACM from the period prior

27    to the date of the rejection.  All Allowed Claims arising from USACM's rejection of such

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

62

1    executory contracts are General Unsecured Claims of USACM, and shall be treated under

2    Class A-4 of the Plan.

3       **3.**    **Claims Bar Date.**

4       All holders of Claims arising from the rejection of executory contracts or unexpired leases,

5    whether rejected under the Plan or by separate proceeding, must File a request for payment in

6    accordance with the Plan to have their Claims treated as Allowed Claims hereunder. A request for

7    payment of any and all Claims allegedly arising from a Debtor's rejection of executory contracts

8    or unexpired leases, whether rejected under the Plan or by separate proceeding, must be Filed on

9    or before such date as the Court has fixed or may fix by express order; provided, however, that if

10    the Court has not entered an order fixing such a date prior to the Confirmation Hearing, all such

11    requests for payment must be made on or before the first Business Day which is thirty (30)

12    calendar days after the date of service of notice of entry of the Confirmation Order.  Failure to File

13    such a request for payment prior to the time set forth herein shall be forever barred from asserting

14    such Claims against the Debtors, the Estates, the Post-Effective Date Entities and/or any other

15    Entity or any of their respective property, and the Debtors, the Estates, and the Post-Effective Date

16    Entities, to the extent applicable, shall be discharged of any obligation on such Claim or any other

17    Claim related such Claim.

18

19                        **VI.**

20      **CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE**

21

22    **A.**      **Conditions To Confirmation.**

23       Confirmation of the Plan shall not occur unless and until each of the conditions set forth

24    below has been satisfied or duly waived by the Debtors.

25       1.      The USACM Trust Agreement and DTDF Amended Operating Agreement have

26    been Filed in form and substance acceptable to the Court, USACM and DTDF, respectively.

27

28

1        2.    The Plan is consistent with the terms of the Asset Purchase Agreement, except as

2    may be otherwise agreed to by the Asset Purchaser.

3        3.    The Confirmation Order is in a form and substance acceptable to the Debtors and

4    the Asset Purchaser.

5        4.    The Court shall have entered the Confirmation Order.

6    **B.    Conditions To Effective Date.**

7        The Effective Date of the Plan shall not occur unless and until each of the conditions set

8    forth below has been satisfied or duly waived by the Debtors.

9        1.    The Confirmation Order has been entered by the Court in a form and substance

10   reasonably satisfactory to the Debtors, and the same is a Final Order.

11       2.    All conditions precedent to the Closing of the Asset Sale Transaction have been

12   satisfied or waived by the appropriate party and Asset Purchaser is prepared to, and does, close the

13   Asset Sale Transaction on the Effective Date.

14       3.    The USACM Trust Agreement and the DTDF Amended Operating Agreement

15   have been executed and approved by the Court, and there is sufficient Cash available to fund the

16   Post-Effective Date Entities in accordance with the Plan in the amount necessary to pay all Claims

17   that must be paid on the Effective Date.

18   **C.    Waiver Of Conditions.**

19       Except to the extent that a waiver would constitute a breach under the Asset Purchase

20   Agreement or any substantially similar agreement with the Asset Purchaser, the Debtors may

21   waive any of the above conditions to the Effective Date, in whole or in part and in their sole and

22   absolute discretion, by Filing a written waiver. The failure to satisfy or waive any condition may

23   be asserted by the Debtors regardless of the circumstances giving rise thereto. The failure of the

24   Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights,

25   and each such right shall be deemed an ongoing right that may be asserted at any time.

26   **D.    Failure To Satisfy Conditions.**

27       The Effective Date must occur on or before the later of: (1) February 16, 2007, or (2) such

28   other date as may be agreed to between the Asset Purchaser and the Debtors or which is

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

64

1  established by the Debtors, with the approval of the Court, after notice and a hearing.  If the

2  Effective Date does not timely occur, the Confirmation Order shall automatically be vacated.  If

3  the Confirmation Order is vacated, the Plan and the Confirmation Order shall be deemed null and

4  void, of no force or effect and shall not be used by any party for any purpose and nothing in the

5  Plan or the Confirmation Order shall prejudice or constitute a waiver or release of any right, Claim

6  or remedy by or against the Debtors or any other party.

7

8                                    **VII.**

9                     **DISTRIBUTION OF CONSIDERATION**

10

11  A.      **Objections To Claims.**

12          1.      **Deadlines.**

13          Unless otherwise extended by the Court, objections to the allowance of Claims and Equity

14  Interests shall be Filed and served upon the Entities asserting such Claims or Equity Interests as

15  follows: (A) for any and all Claims and Equity Interests to which the General Bar Date applies,

16  ninety (90) days after the Effective Date; (B) for any and all Claims to which the Administrative

17  Claims Bar Date or the Professionals Administrative Bar Date applies, thirty (30) days after the

18  expiration of the respective Bar Date; and (C) for any and all Claims to which the Bar Date

19  applicable under section B.3 of Art. V of the Plan applies, thirty (30) days after the expiration of

20  that Bar Date.

21          2.      **Authority.**

22          The Post-Effective Date Entities, (or, if there are no Post-Effective Date Entities for the

23  USACM and DTDF Estates, USACM and DTDF)the FTDF Committee (to the extent it is still in

24  existence) or FTDF (for the benefit of and on behalf of the FTDF Estate), USA Realty on behalf of

25  the USA Realty Estate and USA Securities on behalf of the USA Securities Estate,  shall be

26  responsible for Filing objections to any and all Claims and Equity Interests that are Disputed

27  Claims or Disputed Equity Interests asserted against its Estate.  The Post-Effective Date Entities

28

1  (of, if there are not Post-Effective Date Entities for the USACM and DTDF Estates, USACM and

2  DTDF), the FTDF Committee (to the extent it is still in existence) or FTDF (for the benefit of and

3  on behalf of the FTDF Estate), USA Realty on behalf of the USA Realty Estate and USA

4  Securities on behalf of the USA Securities Estate have the authority to settle and compromise any

5  objection to a Disputed Claim or Disputed Equity Interest, if appropriate, without further order of

6  the Court, and they may assert any and all Claims, rights of action, causes of action, counterclaims

7  and defenses held by their respective Estates.  The Estates, including the Post-Effective Date

8  Entities, may, but shall not be required to, set off or recoup against any Claim or Equity Interest

9  and the distributions to made pursuant to the Plan in respect of such Claim or Equity Interest, any

10  counterclaims, setoffs, or recoupment of any nature whatsoever that the Estates may have against

11  the holder of the Claim or Equity Interest, but neither the failure to do so nor the allowance of any

12  Claim or Equity Interest shall constitute a waiver or release by the Estates or the Post-Effective

13  Date Entities of any such Claim, cause of action, setoff or recoupment.

**B.**    **Disputed Claims And Equity Interests—Cash Reserves.**

**1.**    **General.**

16    On the Effective Date, no distributions shall be made unless a Claim or Equity Interest is

17  an Allowed Claim or Allowed Equity Interest on the Effective Date. Except as may otherwise be

18  agreed with respect to any Disputed Claim or Disputed Equity Interest, no payment or distribution

19  will thereafter be made with respect to all or any portion of a Disputed Claim or Equity Interest

20  until such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest.  Payments

21  and distributions to each holder of a Disputed Claim or Equity Interest (to the extent that such

22  Claim or Equity Interest, or any portion thereof, ultimately becomes an Allowed Claim or

23  Allowed Equity Interest) must be made in accordance with the Plan.

**2.**    **Establishment Of Cash Reserves.**

25    Prior to making any distribution on Allowed Claims and Equity Interests, the Post-

26  Effective Date Entities (or, if there are no Post-Effective Date Entities for the USACM and DTDF

27  Estates, USACM and DTDF), the FTDF Committee (to the extent it is still in existence) or FTDF

28  (for the benefit of and on behalf of the FTDF Estate), USA Realty on behalf of the USA Realty

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Estate and USA Securities on behalf of the USA Securities Estate shall establish a Cash reserve

2  for each Disputed Claim and Equity Interest, including unclassified Claims.  Except as provided

3  below, the Cash reserve for a Disputed Claim or Equity Interest shall be equal the amount set forth

4  in the proof of Claim or Equity Interest, or if no proof of Claim or Equity Interest has been Filed,

5  the amount set forth for the Claim or Equity Interest on the Schedules.

6       The Debtors (to the extent applicable), the Post-Effective Date Entities, and the FTDF

7  Committee (to the extent not dissolved) are authorized to File a motion seeking an Order setting a

8  Cash reserve in an amount different than as provided in a proof of Claim or Equity Interest, or in

9  the Schedules.  So long as such motion is Filed prior to the making of a distribution, no Cash

10 reserve need be made for the Claims or Equity Interests that are the subject of such motion, until

11 the movant receives a Final Order on the motion, unless otherwise ordered by the Court.

12       **3.      Estimation.**

13       As to any Disputed Claim, the Post-Effective Date Entities, or the Debtors, to the extent

14 applicable, may request in their sole discretion that the Court estimate such Claim  pursuant to

15 section 502(c) of the Bankruptcy Code, and set a Cash reserve based on that estimation.

16       **4.      Distribution Upon Allowance.**

17       Within five (5) Business Days of a Disputed Claim or Disputed Equity Interest becoming

18 an Allowed Claim or Equity Interest, the holder of such Claim or Interest shall be paid in

19 accordance with the Plan from the Cash reserve.  The amount of Cash released from Cash reserve

20 to make such a distribution shall be calculated on a Pro Rata basis, so that the holder of the newly

21 Allowed Claim or Equity Interest receives a distribution equal to the total percentage distributions

22 made prior to the date that its Claim or Equity Interest was Allowed to the holders of other

23 Allowed Claims or Allowed Equity Interests in the same Class.

24       **5.      Release Of Cash Reserves.**

25       If a Disputed Claim or Disputed Equity Interest, or any portion thereof, is disallowed, the

26 Cash reserve shall be released for distribution to holders of Allowed Claims and Allowed Equity

27 Interests in accordance with the Plan.  If a Disputed Claim or Disputed Equity Interest, or any

28 portion thereof becomes an Allowed Claim or an Allowed Equity Interest in an amount that is less

1  than the Cash reserve for such Claim or Equity Interest, the excess Cash reserve related to such

2  Claim or Equity Interest shall be released for distribution to holders of Allowed Claims and

3  Allowed Equity Interests in accordance with the Plan.

4  **C.    Undeliverable Or Returned Distributions.**

5      If (1) the Post-Effective Date Entities shall be unable, at the time that a distribution to

6  holders of Allowed Claims or Allowed Equity Interests is to be made under this Plan, to deliver

7  the portion of such distribution due a holder of an Allowed Claim or Allowed Equity Interest, (2)

8  any amount paid to the holder of an Allowed Claim or Allowed Equity Interest is returned as

9  undeliverable and the Post-Effective Date Entity is unable, with reasonable effort, to ascertain a

10  correct address for the holder entitled thereto within six (6) months of its return, or (3) any check

11  distributed in payment of an Allowed Claim or Allowed Equity Interest is neither returned nor

12  negotiated within six (6) months of the date distributed, then, in every such case, the Allowed

13  Claim or Allowed Equity Interest shall be deemed reduced to zero in amount and the holder

14  thereof shall have no further right to payment against or distribution from the Debtors, the Estates

15  or any Post-Effective Date Entities.  The Cash that, but for this section, would have been payable

16  to the holders of such Allowed Claims or Allowed Equity Interests shall, to the extent applicable,

17  revert to the Post-Effective Date Entities, and will be available for application or distribution in

18  accordance with the terms of the Plan.

19      For purposes of this subsection, any undeliverable or returned distributions made by

20  FTDF, USA Realty and USA Securities, which Estates will have no Post-Effective Date Entities

21  to act on their behalf, shall be handled on behalf of those Debtors and their respective Estates by

22  the USACM Trust.

23  **D.    De Minimis Distributions.**

24      No Cash payment of less than five (5) dollars shall be made by the Disbursing Agent for

25  each Estate.  Any Cash payment of less than five (5) dollars shall be held by the Disbursing Agent

26  of the relevant Estate, until a subsequent distribution, if any, results in an aggregate Cash payment

27  of over five (5) dollars.  To the extent that a final distribution would require a distribution of less

28  than five (5) dollars to a holder of an Allowed Claim against or Allowed Equity Interest in a

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

1   Debtor, such amount shall be deemed forfeited, and shall be redistributed to holders of Allowed

2   Claims against or Allowed Equity Interests in the Debtor who are to receive a final distribution in

3   excess of five (5) dollars on account of their Allowed Claim or Allowed Equity Interest.  If, in the

4   sole discretion of the Disbursing Agent, excess Cash exists at the time of a final distribution that is

5   so de minimis in amount that cannot be reasonably redistributed to the holders of Allowed Claims

6   and Allowed Equity Interests, the Disbursing Agent deposit such Cash in the unclaimed funds

7   account of the Court.

8   **E.    Disbursing Agent.**

9        **1.    Disbursing Agent For FTDF, USA Realty And USA Securities Estates.**

10        In the Chapter 11 Cases of FTDF, USA Securities and USA Realty, the Debtors shall act

11  as Disbursing Agents under the Plan for their respective Estates and shall make all distributions

12  required under the Plan.  At any time after thirty (30) days following the Effective Date, such

13  Debtors may request, upon agreement between the Debtors and the USACM Trust, that all future

14  distributions of their respective Estates be handled by the Disbursing Agent for the USACM Trust.

15        **2.    Disbursing Agent USACM And DTDF Estates.**

16        In the case of USACM and DTDF, the Asset Purchase Agreement and this Plan, FTDF,

17  USA Securities and USA Realty shall have copies of or access to all databases, software,

18  documents and records of, or in the possession or control of, any of the Debtors, as may be

19  necessary or appropriate in the wind down and dissolution of FTDF, USA Securities and USA

20  Realty, including as necessary or appropriate, all databases, software, documents and records

21  necessary to object to and make distributions to Claims and Equity Interest, as Allowed, against

22  FTDF, USA Securities and USA Realty.  The Post-Effective Date Entities shall act as Disbursing

23  Agents under the Plan for the Estates of USACM and DTDF, and shall make all distributions

24  required under the Plan.  Any Disbursing Agent may employ or contract with other Entities to

25  assist in or perform any distribution of property.

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

69

**3.    Bond.**

Each Disbursing Agent shall serve without the posting of a bond, unless otherwise required by the Court, or determined by FTDF, USA Securities, USA Realty or the Post-Effective Date Entities to be necessary.

**4.    Compensation.**

Whether the Disbursing Agents make distributions under the Plan themselves or they employ a third-party Entity to act on their behalf, the Disbursing Agents shall receive, without the need for Court approval, reasonable compensation for services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the relevant Estate or Post-Effective Date Entities on terms agreed to with the Post-Effective Date Entities (or, if there are no Post-Effective Date Entities for the USACM and DTDF Estates, USACM and DTDF), the FTDF Committee (to the extent it is still in existence) or FTDF (for the benefit of and on behalf of the FTDF Estate), USA Realty on behalf of the USA Realty Estate and USA Securities on behalf of the USA Securities Estate.

**F.    Manner Of Payment Under The Plan.**

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the applicable Disbursing Agent or by wire transfer from a domestic bank, at the option of such Disbursing Agent.

**G.    Delivery Of Distributions.**

Except as provided in section C above for holders of unclaimed distributions, distributions to holders of Allowed Claims and Allowed Equity Interests shall be made by mail as follows:  (1) at the addresses set forth on the respective proofs of Claim or Equity Interest by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim or Equity Interest; or (3) at the address reflected on the Schedules if no proof of Claim or Equity Interest is Filed and the Disbursing Agent has not received a written notice of a change of address.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

70

**H.    Compliance With Tax Requirements.**

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

**I.    Old Instruments And Securities; Liens.**

**1.    Rights Of Persons Holding Instruments And Securities.**

Except as otherwise provided herein, as of the Effective Date, and whether or not surrendered by the holder thereof, all existing instruments and securities evidencing any Claims against or Equity Interests in the Debtors shall be deemed automatically cancelled and deemed void and of no further force or effect, without any further action on the part of any Person, and any Claims or Equity Interests under or evidenced by any instruments or securities shall be deemed discharged. Notwithstanding the foregoing, the Equity Interests in DTDF shall survive the Effective Date and shall not be cancelled or discharged until the completion of the dissolution of DTDF as provided for in the Plan and the DTDF Amended Operating Agreement.

**2.    Cancellation Of Liens.**

Except as otherwise provided in the Plan or as necessary to evidence or secure the Loans, any lien securing any Secured Claim, shall be deemed released and discharged, and the Person holding such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors held by such Person and to take such actions as may be requested by the Debtors or the Post-Effective Date Entities to evidence the release of such lien, including, without limitation, the execution, delivery and filing or recording of such releases as may be requested by the respective Debtors or Post-Effective Date Entities at the sole expense of such Post-Effective Date Entities or Estates.

**J.    Dates Of Distribution.**

Any distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after the Effective Date and, in any event, within thirty (30) days after the Effective Date. Unless otherwise agreed by the applicable parties, any distribution required to be made upon a Disputed Claim or Disputed Equity Interest that becomes an Allowed Claim or

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  Allowed Equity Interest shall be deemed timely made if made within five (5) Business Days of the

2  Disputed Claim or Disputed Equity Interest or any portion thereof becoming an Allowed Claim or

3  Allowed Equity Interest.

4

5                                        VIII.

6                         MISCELLANEOUS PROVISIONS

7

8  A.      Limitation Of Liability And Releases.

9          1.      Limitation Of Liability.

10         Except as otherwise expressly provided in the Plan, on and after the Effective Date, none

11  of the Debtors, the Debtors in Possession, the Committees, the members of the Committees, nor

12  any of their employees, officers, directors, agents, or representatives, nor any Professionals

13  employed by any of them, shall have or incur any liability to any Entity for any authorized act

14  taken or authorized omission made in good faith in connection with or related to the Chapter 11

15  Cases or the Estates, including objections to or estimations of Claims, disposition of assets, or

16  formulating, determining not to solicit acceptances or rejections to, or confirming the Plan, or any

17  contract, instrument, release, or other agreement or document created in connection with the Plan.

18         Consistent with section 1125(e) of the Bankruptcy Code, the Entities that have solicited

19  acceptances or rejections of the Plan and/or that have participated in the offer, issuance, sale, or

20  purchase of securities offered or sold under the Plan, in good faith and in compliance with the

21  applicable provisions of the Bankruptcy Code, are not liable, on account of such solicitation or

22  participation, for violation of any applicable law, rule, or regulation governing the solicitation of

23  acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

24         2.      DTDF/FTDF Releases.

25         As of the Effective Date, in consideration for the obligations, subordination, modifications

26  of rights and accommodations of FTDF, and the FTDF Estate, and except as otherwise expressly

27  provided under the Plan, DTDF, the DTDF Estate and Post-Effective Date DTDF, on their own

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

72

1    behalf, shall be deemed to forever release, waive and discharge any and all Claims, demands,

2    debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings,

3    covenants, contracts, controversies, agreements, promises and rights whatsoever, whenever

4    arising, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or

5    unliquidated, matured or unmatured, in law, equity, bankruptcy or otherwise, based upon, arising

6    out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission,

7    transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including,

8    without limitation, in any way relating to FTDF, the FTDF Estate, the FTDF Chapter 11 Case,

9    including any recharacterization, or substantive consolidation causes of action, or any other matter

10    which DTDF, the DTDF Estate, or Post-Effective Date DTDF or any Person or Entity claiming

11    by, from, through, or under any of DTDF, the DTDF Estate, or Post-Effective Date DTDF ever

12    had, now has, or hereafter can, shall, or may have against FTDF or the FTDF Estate.

13            As of the Effective Date, in consideration for the obligations, subordination, modifications

14    of rights and accommodations of DTDF and the DTDF Estate, and except as otherwise expressly

15    provided under the Plan, FTDF and the FTDF Estate, on their own behalf, shall be deemed to

16    forever release, waive and discharge any and all Claims, demands, debts, liabilities, obligations,

17    actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts,

18    controversies, agreements, promises and rights whatsoever, whenever arising, whether known or

19    unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or

20    unmatured, in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by

21    reason of, or in connection with, in whole or in part, any act or omission, transaction, occurrence,

22    fact or matter from the beginning of time to the Effective Date, including, without limitation, in

23    any way relating to DTDF, the DTDF Estate, the DTDF Chapter 11 Case, including any

24    recharacterization, or substantive consolidation causes of action, or any other matter which FTDF,

25    the FTDF Estate, or any Person or Entity claiming by, from, through, or under any of FTDF or the

26    FTDF Estate ever had, now has, or hereafter can, shall, or may have against DTDF or the DTDF

27    Estate.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

73

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3.    **FTDF/USACM Releases.**

As of the Effective Date, in consideration for the obligations, modifications of rights and accommodations of FTDF and the FTDF Estate, and except as otherwise provided under the Plan and, in particular the compromise between the FTDF and the FTDF Estate, on the one hand, and USACM, USACM Estate and the USACM Trust, on the other hand, USACM, the USACM Estate, and the USACM Trust, on their own behalf, shall be deemed to forever release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights whatsoever, whenever arising, whether known or unknown, suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to the Effective Date, including, without limitation, in any way relating to FTDF, the FTDF Estate, the FTDF Chapter 11 Case, or any other matter which USACM, the USACM Estate, or the USACM Trust or any Person or Entity claiming by, from, through, or under any of USACM, the USACM Estate, or the USACM Trust ever had, now has, or hereafter can, shall, or may have against FTDF or the FTDF Estate.

As of the Effective Date, in consideration for the obligations, modifications of rights and accommodations of USACM and the USACM Estate and except as otherwise expressly provided in the Plan, in particular the compromise between USACM, the USACM Estate and the USACM Trust, on the one hand, and FTDF and the FTDF Estate, on the other hand, FTDF and the FTDF Estate, on their own behalf, shall be deemed to forever release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights

74

whatsoever, whenever arising, whether known or unknown, suspected or unsuspected, contingent

or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or

otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or

in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to

the Effective Date, including, without limitation, in any way relating to USACM, the USACM

Estate, the USACM Chapter 11 Case, or any other matter which FTDF, the FTDF Estate, or any

Person or Entity claiming by, from, through, or under any of FTDF or the FTDF Estate ever had,

now has, or hereafter can, shall, or may have against USACM or the USACM Estate.

        4.    **Debtor Releasors/Direct Lenders Releases.**

        As of the Effective Date, except for the objections to the allowance of the Direct Lender

Unsecured Claims and as otherwise expressly provided in the Plan, in consideration for the

obligations, subordination, modifications of rights and accommodations of the Direct Lenders

pursuant to the settlements embodied in the Plan, USACM, FTDF, their Estates and the USACM

Trust, on their own behalf (collectively, the "Debtor Releasors"), shall be deemed to forever

release, waive and discharge any and all Claims, demands, debts, liabilities, obligations, actions,

causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, controversies,

agreements, promises and rights whatsoever, whenever arising, whether known or unknown,

suspected or unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured,

in law, equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in

connection with, in whole or in part, any act or omission, transaction, occurrence, fact or matter

from the beginning of time to the Effective Date, including, without limitation, in any way relating

to the Direct Lenders, including any surcharge, recharacterization, or substantive consolidation

causes of action, or any other matter which any of the Debtor Releasors or any Person or Entity

claiming by, from, through, or under any of the Debtor Releasors ever had, now has, or hereafter

can, shall, or may have against the Direct Lenders.  Notwithstanding the foregoing, nothing herein

75

1  shall constitute a release of any obligations under any Loan Servicing Agreement as to which

2  USACM's servicing rights are being transferred to the Asset Purchaser.

3         As of the Effective Date, in consideration for the obligations, subordination, modifications

4  of rights and accommodations of the Debtor Releasors and except as otherwise expressly provided

5  under the Plan, the Direct Lenders, pursuant to the settlements embodied in the Plan, on their own

6  behalf (the "Direct Lender Releasors"), shall be deemed to forever release, waive and discharge

7  any and all Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of

8  money, accounts, reckonings, covenants, contracts, controversies, agreements, promises and rights

9  whatsoever, whenever arising, whether known or unknown, suspected or unsuspected, contingent

10  or fixed, liquidated or unliquidated, matured or unmatured, in law, equity, bankruptcy or

11  otherwise, based upon, arising out of, relating to, by reason of, or in connection with, in whole or

12  in part, any act or omission, transaction, occurrence, fact or matter from the beginning of time to

13  the Effective Date, including, without limitation, in any way relating to the Debtor Releasors, the

14  Debtor Releasors' Estates, the USACM and FTDF Chapter 11 Cases, including any causes of

15  action, or any other matter which any of the Direct Lender Releasors or any Person or Entity

16  claiming by, from, through, or under any of the Direct Lender Releasors ever had, now has, or

17  hereafter can, shall, or may have against the Debtor Releasors.

18         5.      **FTDF/USA Realty Releases.**

19         Except as otherwise expressly provided in the Plan, as of the Effective Date, in

20  consideration for the obligations, subordination, modifications of rights and

21  accommodations of FTDF and the FTDF Estate, USA Realty and the USA Realty Estate,

22  on their own behalf, shall be deemed to forever release, waive and discharge any and all

23  Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of

24  money, accounts, reckonings, covenants, contracts, controversies, agreements, promises

25  and rights whatsoever, whenever arising, whether known or unknown, suspected or

26  unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law,

27  equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in

28

76

1    connection with, in whole or in part, any act or omission, transaction, occurrence, fact or

2    matter from the beginning of time to the Effective Date, including, without limitation, in

3    any way relating to FTDF, the FTDF Estate, the FTDF Chapter 11 Case, including all

4    management fees accrued, but unpaid, as of the Petition Date, all postpetition management

5    fees, or any other matter which USA Realty, the USA Realty Estate, or any Person or

6    Entity claiming by, from, through, or under any of USA Realty or USA Realty Estate ever

7    had, now has, or hereafter can, shall, or may have against FTDF or the FTDF Estate.

8        Except as otherwise expressly provided in the Plan, as of the Effective Date, in

9    consideration for the obligations, subordination, modifications of rights and

10    accommodations of USA Realty and the USA Realty Estate, FTDF and the FTDF Estate

11    on their own behalf, shall be deemed to forever release, waive and discharge any and all

12    Claims, demands, debts, liabilities, obligations, actions, causes of action, suits, sums of

13    money, accounts, reckonings, covenants, contracts, controversies, agreements, promises

14    and rights whatsoever, whenever arising, whether known or unknown, suspected or

15    unsuspected, contingent or fixed, liquidated or unliquidated, matured or unmatured, in law,

16    equity, bankruptcy or otherwise, based upon, arising out of, relating to, by reason of, or in

17    connection with, in whole or in part, any act or omission, transaction, occurrence, fact or

18    matter from the beginning of time to the Effective Date, including, without limitation, in

19    any way relating to USA Realty, the USA Realty Estate, the USA Realty Chapter 11 Case,

20    including any other matter which FTDF, the FTDF Estate, or any Person or Entity

21    claiming by, from, through, or under any of FTDF or the FTDF Estate ever had, now has,

22    or hereafter can, shall, or may have against USA Realty or the USA Realty Estate;

23    provided, however, that nothing in this paragraph shall be deemed to release any Claims that

24    FTDF has against Non-Debtor Insiders.

25

26

27

28

77

B.    **Execution Of Documents And Corporate Action.**

The Debtors and Debtors in Possession, without any action by Equity Interests whatsoever, shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

C.    **Notice Of Effective Date.**

As soon as practicable after the occurrence of the Effective Date, but no later than ten (10) days thereafter, the USACM Trustee shall File and serve on each holder of a Claim or Equity Interest a written notice of the occurrence of Effective Date.

D.    **Retention Of Jurisdiction.**

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Cases, the assets and liabilities of the Estates and the Trust Estates, and the Plan to the fullest extent permitted by law, including, but not limited to:

1.    Allowing, disallowing, determining, liquidating, classifying, estimating or establishing the priority or secured or unsecured status of any Claim or Equity Interest not otherwise allowed under the Plan, including resolving any request for payment of any Administrative Expense Claim and resolving any objections to the allowance or priority of Claims or Equity Interests;

2.    Hearing and determining any and all Claims, Causes of Action or rights that may be asserted or commenced by the Debtors or a post-Effective Date Entity against Persons, Entities or governmental units;

3.    Hearing and determining all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the Post-Effective Date Entities shall be made in the ordinary course of business and shall not be subject to approval of the Bankruptcy Court;

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1        4.    Hearing and determining the reasonableness and allowability of any principal

2    Claim, attorney fee Claim, interest Claim or the charges asserted by a Secured Creditor against the

3    Debtors, the Estates, or the Post-Effective Date Entities;

4        5.    Hearing and determining all matters related to any executory contracts and

5    unexpired leases to which a Debtor is a party or with respect to which a Debtor may be liable;

6        6.    Hearing and determining all matters related to the transfer of the Acquired Assets

7    to the Asset Purchaser;

8        7.    Hearing and determining all matters related to Loan Servicing Agreements;

9        8.    Effectuating performance of and payments under the provisions of the Plan;

10       9.    Hearing and determining any and all adversary proceedings, motions, applications,

11   requests for disgorgement and contested or litigated matters arising out of, arising under or related

12   to the Chapter 11 Cases, including with out limitation the Litigation Claims and the Non-Debtor

13   Insider Litigation;

14       10.    Entering such Orders as may be necessary or appropriate to execute, implement, or

15   consummate the provisions of the Plan and all contracts, instruments, releases, and other

16   agreements or documents created in connection with the Plan, the Disclosure Statement or the

17   Confirmation Order, including USACM Trust Agreement and the DTDF Amended Operating

18   Agreement;

19       11.    Hearing and determining disputes arising in connection with the interpretation,

20   implementation, consummation, or enforcement of the Plan, including disputes arising under

21   agreements, documents or instruments executed in connection with the Plan, such as the USACM

22   Trust Agreement, the DTDF Amended Operating Agreement, and the Asset Purchase Agreement;

23       12.    Modifying the Plan, the USACM Trust Agreement or the DTDF Amended

24   Operating Agreement at the request of the Debtors, the USACM Trustee or the DTDF

25   Administrator and as provided by applicable law, including to cure any defect or omission, or to

26   reconcile any inconsistencies in any order of the Court and the Plan, the USACM Trust

27   Agreement or the DTDF Amended Operating Agreement;

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    13. Issuing injunctions, entering and implementing other orders, or taking such other

2 actions as may be necessary or appropriate to restrain interference by any Entity with

3 implementation, consummation, or enforcement of the Plan, the Asset Purchase Agreement, or the

4 Confirmation Order;

5    14. Entering and implementing such Orders as may be necessary or appropriate if the

6 Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

7    15. Hearing and determining any matters arising in connection with or relating to the

8 Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or

9 other agreement or document created in connection with the Plan, the Disclosure Statement or the

10 Confirmation Order, including the USACM Trust Agreement, the DTDF Amended Operating

11 Agreement, the Asset Purchase Agreement or any other asset purchase agreement entered into by

12 the Debtors and a Third-Party Bidder;

13    16. Enforcing all orders, judgments, injunctions, releases, exculpations,

14 indemnifications and rulings entered in connection with the Chapter 11 Cases;

15    17. Except as otherwise limited herein, recovering all assets of the Debtors and

16 property of the Estates wherever located;

17    18. Hearing and determining matters concerning state, local, and federal Taxes in

18 accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

19    19. Hearing and determining all questions and disputes regarding title to the assets to

20 be administered pursuant to the Plan, and the validity and/or priority of any liens or Secured

21 Claims against those assets;

22    20. Hearing and determining all questions and disputes as to whether the payment of

23 any Claim under the Plan should be subordinated to the payment of other Claims;

24    21. Approving compromises and settlements under Rule 9019 of the Bankruptcy Rules

25 to the extent required under or included in the Plan;

26    22. Hearing and determining such other matters as may be provided in the

27 Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the

28 Bankruptcy Code;

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

80

1        23.    Hearing and determining any matter relating the administration of the Estates by

2    the Post-Effective Date Entities; and

3        24.    Entering Final Decrees closing each of the Chapter 11 Cases.

4    **E.**    **Binding Effect.**

5        The rights, benefits and obligations of any Entity or Person named or referred to in the

6    Plan are binding on, and will inure to the benefit of, any permitted heirs, executors, administrators,

7    successors or assigns of such Entity or Person.

8    **F.**    **Amendment, Modification And Severability.**

9        1.    The Plan may be amended or modified before the Effective Date by the Debtors,

10   with consent of the Committees, to the extent provided by section 1127 of the Bankruptcy Code.

11       2.    The Debtors reserve the right to modify or amend the Plan upon a determination by

12   the Court that the Plan, as it is currently drafted, is not confirmable pursuant to section 1129 of the

13   Bankruptcy Code.  To the extent such a modification or amendment is permissible under section

14   1127 of the Bankruptcy Code, the Debtors reserve the right to sever any provisions of the Plan that

15   the Court finds objectionable.

16       3.    Any modification of the USACM Trust by the beneficiaries thereof in accordance

17   with the provisions of the USACM Trust Agreement shall not constitute a modification of the Plan

18   under section 1127 of the Bankruptcy Code.

19       4.    Any modification to the Estate of the Post-Effective Date DTDF in accordance

20   with the DTDF Amended Operating Agreement shall not constitute a modification of the Plan

21   under section 1127 of the Bankruptcy Code.

22   **G.**    **Exhibits.**

23       Any Exhibits to the Plan not Filed herewith will be Filed no later than ten (10) days prior

24   to the commencement of the Confirmation Hearing.  The Exhibits will not be served with the Plan,

25   but rather copies of all such Exhibits will be available upon written request to the Debtors'

26   counsel.

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590   Fax: (702) 892-0122

**H.    No Admission.**

Except as specifically provided in the Plan, nothing contained in the Plan shall be deemed or construed in any way as an admission by the Debtors or the Estates with respect to any matter set forth in the Plan, including the amount or allowability of any Claim, or the value of any property of the Estates.

**I.    1146(c) Exemption.**

In accordance with section 1146(c) of the Bankruptcy Code, the making delivery, filing or recording of any mortgages, deeds of trust, leasehold mortgages, leases (whether recorded or unrecorded) and/or the various instruments and documents of transfer as specified in or contemplated by the Plan, including the documents related to the Asset Sale Transaction and/or the exhibits thereto, are hereby exempt from taxation under any law imposing a recording tax, stamp tax, transfer tax, or any similar tax. The appropriate state or local government officers are hereby directed to accept for filing or recording all Instruments of Transfer or other documents of transfer to be filed and recorded in accordance with the Plan and the exhibits thereto, without payment of any such tax or government assessment, and without the presentation of any affidavits, instruments, or returns otherwise required for recording other than the Confirmation Order. The Court retains jurisdiction to enforce the foregoing direction by contempt proceedings or otherwise.

**J.    General Authority.**

The Debtors, the Committees, and the Post-Effective Date Entities shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in the Plan.

**K.    Dissolution Of Committees.**

On the Effective Date, except as provided below, the Committees shall be disbanded and their members shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases. The USACM Committee and the DTDF Committee will not dissolve unless and until the USACM Trustee and the DTDF Administrator are appointed and are authorized to act. The FTDF Committee will dissolve on the Effective Date, unless the FTDF Committee is charged with prosecuting objections to Claims or any of the non-assignable FTDF

82

1  Litigation Claims on behalf of the FTDF Estate as provided pursuant to the compromise between

2  DTDF and FTDF.

3  **L.    Post-Effective Date Debtors.**

4      **1.    USACM.**

5      USACM shall have authority to take actions on behalf of USACM and the USACM Estate

6  on and after the Effective Date until the date that the USACM Trustee is appointed for the

7  USACM Trust. After the USACM Trust Assets are transferred to the USACM Trust and the

8  USACM Trust becomes effective in accordance with this Plan and the USACM Trust Agreement,

9  USACM shall be dissolved in accordance with the Confirmation Order and applicable state law.

10      **2.    DTDF.**

11      On the Effective Date, Post-Effective Date DTDF shall have the exclusive authority to act

12  on behalf of DTDF and the DTDF Estate. When the Plan has been fully implemented by Post-

13  Effective Date DTDF and all assets of the DTDF Estate and Post-Effective Date DTDF have been

14  fully liquidated and distributed and the DTDF Estate and Post-Effective Date DTDF fully

15  administered, DTDF shall be dissolved in accordance with the Confirmation Order, the DTDF

16  Amended Operating Agreement and applicable state law.

17      **3.    FTDF, USA Realty And USA Securities.**

18      FTDF, USA Realty, and USA Securities shall have the authority to effect all transactions

19  and take all actions required by the Plan on and after the Effective Date. FTDF and the FTDF

20  Committee shall each have authority to prosecute (a) claim objections in the FTDF Estate, and (b)

21  the non assignable FTDF Litigation Claims on behalf of FTDF subject to the compromise with

22  DTDF set forth herein. After the actions set forth in this paragraph are completed, FTDF, USA

23  Realty, and USA Securities shall be dissolved in accordance with the Confirmation Order and

24  applicable state law.

25  **M.    Binding Effect.**

26      The Plan and all rights, duties and obligations thereunder shall be binding upon and inure

27  to the benefit of the Debtors, the Committees, the Post-Effective Date Entities, Direct Lenders,

28  holders of Claims, holders of Equity Interests, and their respective successors and assigns.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**N.    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or by an express choice of law provision in any agreement, contract, document, or instrument provided for or executed in connection with the Plan, the rights and obligations arising under the Plan and any agreement, contract, document, or instrument provided for or executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada, without giving effect to the principles of conflict of laws thereof.

**O.    Payment Dates.**

Whenever any action, including any payment, distribution, or Filing of any objection, motion, or proof of Claim or Equity Interest is required to be made under the Plan on a day other than a Business Day, such payment, distribution, or filing shall instead be made, without interest, on the immediately following Business Day.

**P.    Headings.**

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**Q.    No Waiver.**

The failure of the Debtors or any other Entity to object to any Claim or Equity Interest for purposes of voting shall not be deemed a waiver of the Debtors' or the Post-Effective Date Entities' right to object to or examine such Claim or Equity Interest, in whole or in part.

**R.    Other Documents And Actions.**

The Post-Effective Date Entities may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**S.    Severability Of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of this Plan is held by the Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of this Plan, the Court shall, with the consent of the Debtors and the

1  Committees, have the power to interpret, modify or delete such term or provision (or portions

2  thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the

3  original purpose of the term or provision held to be invalid, void or unenforceable, and such term

4  or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such

5  interpretation, modification or deletion, the remainder of the terms and provisions of this Plan

6  shall in no way be affected, impaired or invalidated by such interpretation, modification or

7  deletion.

8  **T.    Post-Confirmation Status Report.**

9      Within ninety (90) days of the Effective Date, the Debtors or a post-Effective Date Entity

10  or the FTDF Committee, to the extent applicable, shall File a status report for each of the relevant

11  Debtors setting forth what progress has been made toward the consummation of the confirmed

12  Plan.  The status report shall be served on the U.S. Trustee, the Debtors, prior to dissolution or

13  transition to the Post-Effective Date Entities, the Post-Effective Date Entities, and any Entities

14  who have Filed a request for such reports with the Court.  Unless otherwise ordered, further status

15  reports shall be Filed every ninety (90) days and served on the same Entities.  On or after the

16  Effective Date, no monthly operating reports need to be filed with the U.S. Trustee.

17  **U.    Final Decree.**

18      Once each Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

19  Post-Effective Date Entities, the Debtors, or another party, as the Court shall designate in the

20  Confirmation Order, shall File a final report and account of all receipts and disbursements, and

21  serve that report on the U.S. Trustee, and any other Entities entitled to service under any

22  applicable law.  Any such final report shall include a request that the Court enter a Final Decree in

23  the Chapter 11 Case of the applicable Debtor.

24  **V.    Revocation, Withdrawal, Cram-Down Or Non-Consummation.**

25      The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the

26  Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or

27  withdraw the Plan, or if Confirmation or consummation does not occur, then (1) the Plan shall be

28  null and void in all respects, (2) any settlement or compromise embodied in the Plan (including the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity

2    Interests), rejection or assumption of any executory contracts or unexpired leases affected by the

3    Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void,

4    and (3) nothing contained in the Plan, and no acts taken in preparation for consummation of the

5    Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or

6    against, or any Equity Interests in, any Debtor or any other Entity, (B) prejudice in any manner the

7    rights of the Debtors or any Entity in any further proceedings involving the Debtors, or (C)

8    constitute an admission of any sort by the Debtors or any other Entity.

9        The Debtors reserve any and all rights they may have under section 1129(b) of the

10    Bankruptcy Code, notwithstanding any rejection of the Plan by any Class of Claims or Equity

11    Interests.  Additionally, the Debtors reserve their right to seek Confirmation of the Plan in fewer

12    than all of these Chapter 11 Cases.  In other words, if the Bankruptcy Court determines that a

13    cram-down of the Plan pursuant to section 1129(b) of the Bankruptcy Code is legally

14    impermissible in regard to a particular Debtor and its Estate, then the Debtors will withdraw the

15    Plan in regard to that particular Debtor, its Estate and its Chapter 11 Case and the Debtors may

16    then proceed to seek Confirmation of the Plan in those Chapter 11 Cases herein in which the cram-

17    down provisions of section 1129(b) of the Bankruptcy Code may validly be exercised.

18    **W.    Notice To Certain Parties.**

19        All notices and documents to be effective for the following parties shall be in writing

20    (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be

21    deemed to have been duly given or made when actually delivered or, in the case of notice by

22    facsimile transmission, when received and telephonically confirmed, addressed as follows:

23        1.    The Debtors:
            Annette W. Jarvis, Esq.
24            Steven C. Strong, Esq.
            Ray Quinney & Nebeker P.C.
25            36 South State Street, Suite 1400
            P.O. Box 45385
26            Salt Lake City, Utah  84145-0385
            Facsimile: (801) 532-7543
27            Email: ajarvis@rqn.com
28

86

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Email: sstrong@rqn.com
and
Lenard E. Schwartzer, Esq.
Jeanette E. McPherson, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Facsimile:  (702) 892-0122
E-Mail:  bkfilings@s-mlaw.com

2.    SPCP Group, LLC
Michael Gatto
Silver Point Capital
Two Greenwich Plaza, 1st Floor
Greenwich, CT  06830
Facsimile: (203) 542-4100
and
James C. McCarroll, Esq.
Reed Smith, LLP
New York, NY 10022
Facsimile: (212) 521-5450

3.    Direct Lender Committee
Gerald M. Gordon, Esq.
Gregory E. Garman, Esq.
Gordon & Silver, Ltd.
3960 Howard Hughes Pkwy., Ninth Floor
Las Vegas, NV 89169
Facsimile: (702) 369-2666
Email: gmg@gordonsilver.com
Email: geg@gordonsilver.com

4.    DTDF Committee
Marc A. Levinson, Esq.
Orrick Herrington & Sutcliffe LLP
400 Capital Mall, Suite 3000
Sacramento, CA  95814-4497
Facsimile: (916) 329-4900
Email: malevinson@orrick.com

5.    FTDF Committee
Frank A. Merola, Esq.
Eve H. Karasik, Esq.
Stutman, Treister & Glatt, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Facsimile:  (310) 228-5788
Email: fmerola@stutman.com

87

1

Email: ekarasik@stutman.com

2     6.    USACM Committee

3         Rob Charles, Esq.
         Lewis and Roca, LLP

4         3993 Howard Hughes Pkwy., Suite 600
         Las Vegas, NV 89169

5         Facsimile: (702) 949-8321
         Email: rcharles@lrlaw.com

6

7                **IX.**

8          **REQUEST FOR CONFIRMATION**

9     The Debtors hereby request that the Court confirm the Plan pursuant to Bankruptcy Code

10   section 1129(a), or, if necessary, pursuant to Bankruptcy Code section 1129(b).

11                   Dated: November 15, 2006.

12                   **THE DEBTORS:**
                   USA Commercial Mortgage Company

13                 USA Securities, LLC

14                 USA Capital Realty Advisors, LLC
                 USA Capital Diversified Trust Deed Fund, LLC

15                 USA First Trust Deed Fund, LLC

16

17                 By: _____
                     Thomas J. Allison

18                     Chief Restructuring Officer

19   Respectfully submitted this 15th day of November, 2006.

20

21                 */s/  Jeanette E. McPherson*
                 Lenard E. Schwartzer, Nevada Bar No. 0399

22                 Jeanette E. McPherson, Nevada Bar No. 5423
                 SCHWARTZER & MCPHERSON LAW FIRM

23                 2850 South Jones Boulevard, Suite 1
                 Las Vegas, Nevada 89146

24                 and
                 Annette W. Jarvis, Utah Bar No. 1649

25                 RAY QUINNEY & NEBEKER P.C.

26                 36 South State Street, Suite 1400
                 P.O. Box 45385

27                 Salt Lake City, Utah 84145-0385

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**Exhibit   H**

1   Linda Dakin-Grimm (admitted *pro hac vice*)
    Robert J. Moore (admitted *pro hac vice*)
2   Daniel M. Perry (admitted *pro hac vice*)
    MILBANK, TWEED, HADLEY & McCLOY, LLP
3   601 S. Figueroa Street, 30th Floor
    Los Angeles, CA 90035
4   Telephone No.: (213) 892-4000
    Facsimile No.: (213) 629-5063
5
    Peter C. Bernhard (Nevada Bar No. 0734)
6   Georganne W. Bradley (Nevada Bar No. 1105)
    Joseph P. Hardy (Nevada Bar No. 7370)
7   BULLIVANT HOUSER BAILEY PC
    3883 Howard Hughes Pkwy., Ste. 550
8   Las Vegas, NV 89169
    Facsimile No.: (702) 650-2995
9   E-Mail: peter.bernhard@bullivant.com;
            georganne.bradley@bullivant.com
10
    **Counsel for Compass Financial Partners LLC**
11  **and Compass USA SPE LLC**

12

13                  UNITED STATES DISTRICT COURT
                        DISTRICT OF NEVADA
14

15  | In re:                          | Case No. 2:07-CV-00892-RCJ-GWF |
    | USA COMMERCIAL MORTGAGE          |                                |
16  | COMPANY,                         | Bankruptcy Case No. BK-S-06-10725 LBR |
    |                    Debtor.       | [Chapter 11]                   |
17

18

19

20

21

22

23          **COMPASS'S OPPOSITION TO REQUEST FOR EMERGENCY RELIEF**

24

25

26

27

28

NY2:#4767591

1

**PRELIMINARY STATEMENT**

2
3
4
5
6
7
8
9
10
11
12

The LLCs' latest "Request for Emergency Relief" was knowingly and maliciously filed without any legitimate factual basis. It is but the latest in a series of filings that are outrageously false, and obviously intended to prejudice Compass in the eyes of the Court. These filings include the more than thirty "declarations" that the LLCs and Ms. Cangelosi filed in September—that are filled with inaccuracies, and the recent inflammatory and inappropriate "Emergency Request for a Gag Order," which was withdrawn as soon as Compass filed a detailed factual response and the Court set a hearing date. Counsel for the LLCs and Ms. Cangelosi label every action by Compass a "breach of fiduciary duty," with conscious disregard for Rule 11 and the actual facts. A clear pattern has developed in which papers are filed without any effort to investigate the facts or make inquiry of Compass, and the present "Emergency Motion" is no exception.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

The "Emergency Motion" is based on a single clerical error—which Bank of America admitted weeks ago *was its own*. Compass inadvertently cut two checks to the same Direct <u>Lender</u> from the *Clear Creek* loan payoff (a loan in which Compass negotiated a full payout for all Direct Lenders), which the Direct Lender cashed. Immediately upon learning of the mistake, Compass contacted the lender, who voluntarily returned the $57,058.93 to which she was not entitled. The result of this so-called "grievous injury" to lenders was a delay in the clearing of another Direct Lender's check <u>by</u> <u>less</u> <u>than</u> 24 <u>hours</u>—a delay Bank of America has attributed to its own "bank error." *<u>Counsel for the LLCs and for Ms. Cangelosi have known these</u>* *<u>facts for weeks.</u>* Direct Lender John O'Riordan's check did not "bounce," as alleged by counsel to the Cangelosi LLCs, nor were there ever insufficient funds to prevent the check from clearing. Compass acknowledges the serious nature of the allegations contained in the Cangelosi LLC's Motion, and responds to each such spurious allegation at length below. Compass requests that the Court admonish counsel for the LLCs and Ms. Cangelosi to refrain from their now established practice of filing so-called "emergency" motions like this one, that are knowingly filed without factual basis.[1]

28

---

[1] Compass takes particular offense at the Cangelosi LLC's allegation that Compass "continues to

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THE FACTS

**A.    Compass's Cash Management System**

Compass adheres to lawful and legitimate banking practices.  Compass's practices have not inflicted harm upon the Direct Lenders.  Upon succeeding USA Commercial Mortgage Company (together with its four debtor affiliates, the "<u>Debtors</u>") as loan servicer, Compass implemented a cash management structure that is entirely consistent with applicable law, standard practice in the servicing industry, the terms of its servicing agreements with the Direct Lenders, and which satisfies its financing arrangement with its secured lender/repurchase agreement counterparty, Silar Advisors L.P. ("<u>Silar</u>").  Specifically, there are three bank accounts that are maintained to hold payments received from borrowers: (i) a collections account, (ii) a maintenance account, and (iii) a disbursement account.  The maintenance of these three, separate bank accounts is critical and necessary for Compass to service the loans on a daily basis.

**1.    The Collections Account**

When payments on a loan become due from a borrower (or when a consensual discounted payoff is negotiated), borrowers are directed to remit payment to Compass's designated collections account (the "<u>Collection Account</u>").  The Collection Account is maintained for the sole purpose of receiving borrower payments, and is entitled the *Compass Collection Trust Account For The Benefit Of Direct Lenders – P and I.*[2]  In order to comply with obligations under Compass's repurchase agreement with Silar (the "<u>USA Repurchase Agreement</u>"), and in order for

serve as a roadblock to resolve these loans and the much needed income for the Direct Lenders.  Many have not received a penny of their much depended on income now for nineteen months."  (Mot. at 4.)  This astonishing statement could not be further from the truth.  As recent discovery has demonstrated, Ms. Cangelosi herself is responsible for the delay in the Direct Lenders' recovery of their investments.  A recent example is the case of direct lender Gale Gladstone-Katz, who was misled into joining Ms. Cangelosi's Gramercy LLC, and has been denied the return of her assignment (contrary to the direct testimony of Ms. Cangelosi as to how such requests would be handled).  Ms. Gladstone-Katz (an elderly single woman caring for a disabled child) has, as a result, been unable to liquidate her interest on the secondary market despite great personal hardship.  (Declaration of Gabriel Weaver ("<u>Weaver Decl.</u>"), Ex. A (LLC 7024).)  Compass is working to resolve the Gramercy loan, but cannot compel Ms. Cangelosi to return assignments to investors who have requested the return of their Direct Lender interests.

[2] The Collection Account is the account referred to as the "Direct Lender Remittance Account" in Judge Riegle's June 8, 2007 and August 1, 2007 Orders (together, the "<u>Bankruptcy Court Orders</u>").

1  Silar to perfect its security interest in its collateral (the amounts due Compass) in accordance with

2  Article 9 of the Uniform Commercial Code (the "UCC"), the Collection Account is nominally

3  controlled by Silar at Signature Bank. However, Compass is the only entity that directs the loan

4  proceeds due and owing to Direct Lenders in the Collection Account, in Compass's capacity as

5  the fiduciary.[3]  The Direct Lender funds remain in the Collection Account for one, two, or three

6  business days.[4]  And Compass does not deposit funds that are unrelated to the USA portfolio into

7  the Collection Account.[5]  Nor are the Direct Lender funds in the Collection Account used for any

8  purpose other than to be forwarded to the accounts set forth below.

9  　　　　　　　**2.　　The Maintenance Account**

10  　　　　　Shortly after they are received in the Collection Account, Direct Lender funds are

11  transferred to Compass's maintenance account (the "Maintenance Account").[6]  The Maintenance

12  Account is maintained for the sole purpose of holding proceeds received from borrowers in the

13  USA portfolio.  The Maintenance Account is held at Bank of America, a bank with which

14  Compass regularly does business.  The Maintenance Account is an interest-bearing account

15
16  [3] The relevant provision of Article 9 of the UCC, as adopted in Nevada as N.R.S. § 104.9104 "Control of deposit account," expressly provides that a secured party has control of a deposit account, sufficient to perfect its security interest, even if, as in the case of the Collection Account, the borrower (Compass) "retains the right to direct the disposition of funds from the deposit account." N.R.S. § 104.9104(2). Hence, Compass's establishment of the Collection Account in this manner (where the secured lender is the bank's customer, but the borrower retains the right to direct the proceeds) is consistent with applicable law and enables Compass to meet its obligations to the Direct Lenders and Silar.

17
18
19

20  [4] Of course, in accordance with the Preliminary Injunction and Order entered by this Court on November 6, 2007 (the "Preliminary Injunction Order") and the Bankruptcy Court Orders, all disputed funds remain held in the Collection Account and shall be distributed in accordance with paragraph 6 of the Preliminary Injunction Order.

21

22  [5] In order to pay debt service under the USA Repurchase Agreement, Compass permits Silar to retain monthly the portions of borrower payments attributable to "Purchased Assets" under the Asset Purchase Agreement with the Debtors (servicing fees, participation interests, default interest, late charges, etc.). After Ms. Cangelosi improperly instructed borrowers to cease making payments to Compass in May 2007, the amount of Purchased Assets in the Collections Account dwindled to the point where provisions were triggered under the USA Repurchase Agreement requiring Compass to make cash payments directly to Silar (the "Cash Calls"). Amidst the ensuing chaos, Compass accidentally deposited the funds necessary to satisfy the Cash Calls to Silar into the wrong account with Signature Bank (i.e., the Collections Account rather than a Silar operating account). The error was discovered and corrected, and Compass will not make any such deposits in the future. At no time did these deposits ever affect any funds that belonged to Direct Lenders.

23
24
25
26
27

28  [6] The undisputed portion of borrower payments due and owing to Compass remain in the Collection Account.

1  known as the *Compass Financial Partners LLC Business Interest Maximizer* account.  As with

2  the Collection Account, Compass is the only entity authorized to direct the disposition of Direct

3  Lender funds in the Maintenance Account, in Compass's capacity as the fiduciary.  Under no

4  circumstances are funds unrelated to the USA portfolio deposited into the Maintenance Account.

5  Nor are funds deposited in this account ever used for any purpose other than to be transferred to

6  the Disbursement Account (as defined below).  The Direct Lender funds remain in the

7  Maintenance Account until the end of the following month,[7] when they are transferred to the

8  Disbursement Account for distribution.

9              **3.**     **The Disbursement Account**

10          Distributions to Direct Lenders are made from Compass's disbursement account

11  (the "Disbursement Account").  The Disbursement Account is maintained for the sole purpose of

12  distributing proceeds received from borrowers in the USA portfolio.  The Disbursement Account

13  is held at Bank of America, and is a non-interest bearing account known as the *Compass*

14  *Financial Partners LLC Trust* account.  As with the Collection Account and the Maintenance

15  Account, Compass is the only entity with authority to direct the disposition of Direct Lender

16  funds in the Disbursement Account, in Compass's capacity as the fiduciary.  Under no

17  circumstances are funds unrelated to the USA portfolio deposited into the Disbursement Account.

18  Nor are funds in this account ever used for any purpose other than distribution.  Each Direct

19  Lender receives his distribution directly from the Disbursement Account.

20              **B.**     **The So-Called "Bounced Check"**

21          At Compass's direction, on July 11, 2007, the borrower on the loan commonly

22  known as "Clear Creek" remitted $3,923,771.65 to the Collection Account as payment in full of

23  all obligations due and owing under the Clear Creek loan.  (*See* Ex. B to the Declaration of

24  Lindsy Nicole Alleman in Support of Plaintiffs' Request For Emergency Relief (the "Alleman

25  Decl.").)  Consistent with Compass's cash management system, as set forth above, Compass

26  transferred the full amount of the Direct Lenders' funds (after the deduction of Compass's

27  

---

28  [7] As explained below, this practice complies with the Loan Servicing Agreements, and is
consistent with applicable law.

-5-

1    servicing fees) to the Maintenance Account on July 16, 2007, and then to the Disbursement

2    Account on August 31, 2007. (Alleman Decl. Exs. A, B).) On August 31, 2007, Compass mailed

3    Clear Creek distribution checks to all Direct Lenders. (*See, e.g.* Weaver Decl. Ex. B (Canepa

4    checks).)

5            Due to a clerical error, two checks were accidentally and inadvertently mailed to

6    Direct Lender Evelyn Canepa: one for $58,632.22 and one for $57,058.93. (*Id.*) The check for

7    $57,058.93 was issued in error—Ms. Canepa had no colorable claim to those funds. Ms. Canepa

8    cashed both of the checks from Compass on September 6, 2007. (*Id.*)

9            On September 26, 2007, Compass discovered that Ms. Canepa had received the

10   additional $57,058.93 from the Disbursement Account, and immediately contacted Bank of

11   America. After consulting the Bank and verifying what had occurred, Compass called Ms.

12   Canepa to explain the administrative error. Cliff Roca, Director of Investor Relations for

13   Compass, spoke with Ms. Canepa and requested she reimburse the funds to which she had no

14   claim. Ms. Canepa agreed. On October 6, 2007, Compass received a check from Ms. Canepa for

15   the full amount inadvertently disbursed. (Weaver Decl. Ex. C (Oct. 6, 2007 check from Evelyn

16   Canepa).)

17           As added protection, and after consultation with the Bank of America

18   representative, Compass nevertheless elected to deposit $60,000 of its own funds into the

19   Disbursement Account <u>as an additional protection</u> to cover any potential shortfall to Direct

20   Lenders while Compass sought reimbursement from Ms. Canepa.

21           On September 24, 2007, two days before Compass learned it had sent two checks

22   to Ms. Canepa, Direct Lender John O'Riordan attempted to deposit his check at Citibank. On

23   September 26, 2007, Citibank informed Mr. O'Riordan that it would delay availability of the

24   funds to him for two weeks. <u>Notwithstanding this advice, Mr. O'Riordan's check had cleared the</u>

25   <u>prior day, and his Citibank account was credited with the full amount of his distribution.</u> (Weaver

26   Decl. Ex. E (Bank of America Oct. 4, 2007 letter); Declaration of John E. O'Riordan at ¶ 6.)

27           Mr. O'Riordan received full payment from the Clear Creek distribution.

28   Nevertheless, more than one week after Mr. O'Riordan's funds cleared, counsel for the Cangelosi

1   LLCs <u>falsely</u> advised counsel for Compass on October 4, 2007 that Mr. O'Riordan's check from

2   the Clear Creek payoff had "bounced." (Weaver Decl. Ex. D (Herring Oct. 4, 2007 letter).) That

3   same day, Bank of America confirmed to Compass that the information in the September 26,

4   2007 letter from Citibank to Mr. O'Riordan (that his funds would be held) was "bank error," and

5   the "recent check #3272 in the amount of $115,434,18 <u>was paid by Bank of America</u> on

6   9/25/2007." (Weaver Decl. Ex. E (Bank of America Oct. 4, 2007 letter)) (Emphasis added.)

7         Hence, as with the balance of specious allegations contained in the Motion, the

8   situation with regard to Mr. O'Riordan's "bounced check" was not a "startling and injurious

9   wrongdoing" by Compass causing a "potentially devastating effect" on the Direct Lenders. (Mot.

10  at 2.) Nor did Mr. O'Riordan suffer a "grievous injury" as a result of his check failing to clear for

11  24 hours. (*Id.* at 9.) Rather, weeks after the events in question, counsel for the LLCs and Ms.

12  Cangelosi have knowingly misrepresented these events to the Court in an inflammatory

13  "emergency motion," plainly filed in order to prejudice Compass in the Court's eyes.

14        **C.    Compass's Actions Comply With Applicable Law**

15        The Cangelosi LLCs argue that Compass's practices described above violate the

16  law. The Cangelosi LLCs rely upon various provisions of Nev. Rev. Stat. ("<u>N.R.S.</u>") § 645B

17  (2006), N.R.S. § 645A, and Nev. Admin. Code ("<u>N.A.C.</u>") § 645B (2006). As set forth below,

18  Compass's actions are not inconsistent with such provisions. Nonetheless, as a threshold matter,

19  according to N.R.S. § 645B *itself*, such provisions do not apply to Compass, as Compass is a

20  foreign corporation not transacting business in Nevada.

21        **1.    <u>Compass is not subject to N.R.S. § 645B because it is not</u>**
22            **<u>transacting business in the State of Nevada</u>**

23        N.R.S. § 645B (improperly cited in the Motion as N.A.C. 645B 175(9)) does not

24  apply to Compass because Compass is an LLC organized under the laws of Delaware with its

25  principal place of business located in New York. Pursuant to N.R.S. § 86.5483(3), "[a] person

26  who is not transacting business in this State within the meaning of this section ***need not qualify***

27

28

1    *or comply* with any provision of this chapter, title 55 or 56 of N.R.S. or chapter 645A, 645B or

2    645E of N.R.S."[8]  N.R.S. § 86.5483(3).

3                As set forth above, Compass is not required to comply with N.R.S. § 645B

4    because it is not "transacting business" in Nevada as that term is set forth within the statute itself.

5    N.R.S. § 86.5483(1) specifically lists the following activities *that do not constitute* transacting

6    business in Nevada pursuant to N.R.S. § 86.5483(1):

7                    (a) Maintaining, defending or settling any proceeding;
                     (b) Holding meetings of the managers or members or carrying on other
8                    activities concerning internal company affairs;
                     (c) Maintaining accounts in banks or credit unions;
9                    …
                     (g) Creating or acquiring indebtedness, mortgages and security interests in
10                   real or personal property;
                     (h) Securing or collecting debts or enforcing mortgages and security
11                   interests in property securing the debts;
                     (i) Owning, without more, real or personal property;
12                   …
                     (m) Transacting business in interstate commerce.
13
14   N.R.S. § 86.5483(1).  Accordingly, Compass is not required to comply with any provision of

15   N.R.S. § 645B *according to the statute itself.*

16              **2.    There is no private right of action for violations of N.R.S. §**
                       **645B**
17

18              Even if N.R.S. § 645B *did* apply to Compass, the Cangelosi LLCs have no

19   standing to enforce its provisions.  As Cangelosi has herself previously admitted,[9] the Cangelosi

20   LLCs have no private right of action against Compass—or Silar, for that matter—for violations of

21   Chapter 645B.  No private citizen has the right to sue for a violation of any provision of N.R.S.

22   § 645B.  *See* N.R.S. § 645B.600 (providing that person alleging that another person violated

23   provision of Chapter 645B may file complaint with the "Commissioner"); *see also, e.g.,* N.R.S.

24

---

25   [8] N.R.S. § 86.5483(3) applies if the person "[m]aintains an office in this State for the transaction
     of business" or
26      "[s]olicits or accepts deposits in the State." (N.R.S. § 86.5483(3).)  Neither of these exceptions is
     applicable to Compass.
27
28   [9] *See* Bankr. Case No. 06-10725 Dkt. No. 2042 at p. 9 ("**there is no provision in Chapter 645B
     that provides for a private cause of action against lenders who receive payments on loans in
     default.**" (emphasis in original).)

1    § 645B.610 (outlining duties of Commissioner when complaint is filed) *and* N.R.S. §§ 645B.800,

2    645B.810 (vesting the Nevada Attorney General with jurisdiction over enforcement of Chapter

3    645); *Cf Mainor v. Nault,* 120 Nev. 750,768, 101 P.3d 308 (2004) (violation of professional rule

4    of responsibility governing attorney conduct does not create private right of action); *Sports Form,*

5    *Inc. v. Leroy's Horse & Sports Place,* 108 Nev. 37, 823 P.2d 901 (1992) (absent express language

6    to contrary, statutes governing gaming licensees precludes private cause of action); *Hinegardner*

7    *v. Marcor Resorts, L.P. V.* 108 Nev. 1091, 1095-96, 844 P.2d 800, 803 (1992) (absence of civil

8    liability provision in a penal statute means that legislature did not intend to impose civil liability

9    for violations of the statute); *Builders Ass'n v. City of Reno,* 108 Nev. 368, 370, 776 P.2d 1234,

10   1235 (1989) (if a statute expressly provides a remedy, courts should be cautious in reading other

11   remedies into the statute).

12           Even though Chapter 645B does not apply to Compass in its servicing of the

13   subject loans, Compass has nevertheless acted within the statute's parameters.  As demonstrated

14   below, Compass has at all times conducted its servicing activities in accordance with all

15   provisions of Chapter 645B.

16           **3.    Compass Maintains Control Over Direct Lenders' Money**

17           The Cangelosi LLCs assert that there is something illicit about the structure of

18   Compass's cash management system because the Collection Account is nominally controlled by

19   Compass's secured lender/repurchase agreement counterparty, Silar.  As an initial matter, Section

20   6 of the Loan Servicing Agreement expressly authorizes Compass to delegate certain duties to

21   third parties, provided that Compass remains responsible for all actions taken by such parties.

22   Specifically, Section 6 provides:

23           6. USA's Right to Delegate.  Notwithstanding anything contained herein, USA
24           may in its sole discretion delegate specific loan arranging and servicing
             obligations to credit bureaus, real estate tax service companies, real estate brokers
25           or agents, appraisers, attorneys, trustees, or others, provided that USA shall
             remain responsible for all action taken or not take by such companies, agents,
26           representatives, and other throughout the term of this Agreement.

27   (Second Declaration of Daniel Alpert in Support of Compass's Opposition to Request for

28   Emergency Motion ("Alpert Decl.") Ex. A (Loan Servicing Agreement § 6).)  Accordingly,

1    Silar's nominal control over the Collection Account is entirely consistent with the Direct Lenders'

2    contractual arrangement with Compass, and is therefore not violative of any applicable law.

3           The Cangelosi LLCs nonetheless argue that Compass's receipt of borrower

4    proceeds in a bank account nominally controlled by Silar somehow violates N.R.S.

5    § 645B.175(4)(a), which provides as follows:

6           Except as otherwise provided in this section, all money paid to a mortgage broker
       and his mortgage agents by a person in full or in partial payment of a loan secured
7       by a lien on real property, must:

8           (a) Be deposited in:

9           (1) An insured depository financial institution; *or*

          (2) An escrow account which is controlled by a person who is subject to
10         instructions regarding the account which are approved by the parties.

11   N.R.S. § 645B.175(4)(a) (emphasis added).  There is nothing in this statute that explicitly or

12   implicitly prohibits a payoff from being structured such that payoffs are received from the

13   borrower in the Collection Account nominally controlled by Silar, as all payments are deposited

14   in an insured financial institution in compliance with the requirements of N.R.S.

15   § 645B.175(4)(a).

16          Moreover, because Silar is a secured lender/repurchase agreement counterparty, it

17   must perfect its security interest in its collateral (*i.e.* Compass's "Purchased Assets")[10] in

18   accordance with the UCC.  In order to comply with this requirement, Silar must exercise such

19   "nominal" control over the funds.  The relevant provision of Article 9 of the UCC, as adopted in

20   Nevada as N.R.S. § 104.9104, provides:

21       **N.R.S. § 104.9104  Control of deposit account.**

22          1.  A secured party has control of a deposit account if:
              (a) The secured party is the bank with which the deposit account is
23       maintained;
              (b) The debtor, secured party and bank have agreed in an authenticated
24       record that the bank will comply with instructions originated by the secured party
          directing disposition of the funds in the deposit account without further consent
25       by the debtor; or

26   _____

27   [10] "Purchased Assets" is a defined term in the Confirmation and Sale Order and refers to, among
     other things, the servicing rights and attendant rights to accrued and default interest pursuant to
28   the governing loan servicing agreements, as well as the fractional share of beneficial interests
     which Compass acquired from USA Commercial Mortgage Company and the USA Capital First
     Trust Deed Fund, LLC.

     NY2:#4767591                           -10-

(c) *The secured party becomes the bank's customer with respect to the deposit account.*

2. A secured party that has satisfied subsection 1 has control, *even if the debtor retains the right to direct the disposition of funds from the deposit account.*

N.R.S. § 104.9104. (emphasis provided). Notably, the UCC expressly provides control to be sufficient, even if, as in the case of the Collection Account, the borrower (Compass) "retains the right to direct the disposition of funds from the deposit account." N.R.S. § 104.9104(2). Hence, Compass's establishment of the Collection Account in this manner (where the secured lender is the bank's customer, but the borrower retains the right to direct the proceeds) is consistent with applicable law and enables Compass to meet its obligations to both the Direct Lenders and Silar.

Furthermore, as set forth above, Compass is the only entity that directs the disposition of loan proceeds in the Collection Account, in Compass's capacity as the fiduciary. Of course, neither Compass nor Silar has any interest in the portion of the loan proceeds due and owing to the Direct Lenders (other than Compass). As is common in the asset-based lending industry, and as recognized by the UCC, payments to a servicer are routinely sent to a "lockbox account"—even one held by the servicer's lender. The mechanism created between Compass and Silar is entirely accepted in the industry. The Cangelosi LLCs have identified nothing pernicious or unusual about this arrangement.

### 4.    Compass Has Not Violated The Preliminary Injunction Order

The Cangelosi LLCs contend that the payoff deposits forwarded to the Collection Account violate paragraph 2 of the Preliminary Injunction and Order because the Order states that loans shall "continue to be paid directly to Compass." (Mot. at 10.) This argument completely ignores the context of the creation of that language and totally distorts its intent. Compass first moved for an injunction in May, 2007 against Cangelosi and her cohorts in response to the outrageous letters Cangelosi sent to borrowers in 50 of the loans on May 18, 2007 that directed borrowers *to pay her* instead of Compass (ultimately contributing to the finding that Cangelosi's actions were contemptuous). The language in paragraph 2 of the Preliminary Injunction and

1    Order, entered November 6, 2007, that loans shall "continue to be paid <u>directly to Compass</u>" is

2    unchanged from the Bankruptcy Court Orders entered by Judge Riegle in the June 2007 and

3    August 2007. (June 8, 2007 Order at p. 2, Dkt. No. 3927 in Case No. BK 06-10725 LBR; Aug. 1,

4    2007 Order at p. 4, Dkt. No. 4402 in Case No. BK 06-10725 LBR.) The intent of this language

5    (proposed by Compass, not Cangelosi) was to ensure that borrower funds were paid to Compass,

6    <u>not to Ms. Cangelosi.</u> The language did not relate to the mechanics of the Collection Account.

7    Moreover, it was well known at the time the Preliminary Injunction Order was entered that the

8    account borrowers were directed to continue to remit payments to was the very same Collection

9    Account identified in the Bankruptcy Court Orders. In fact, the Cangelosi LLCs have known that

10   the Collection Account was held nominally by Silar well before the Bankruptcy Court Orders

11   were entered; this is the purported basis for the Cangelosi LLC's claims against Silar in the this

12   proceeding.[11]

13            The Cangelosi LLC's wrongful mistruths that "Compass has refused to provide the

14   Direct Lenders with any information as to the calculation or amount of the compensation it has

15   taken or to which it claims it is entitled on the La Hacienda loan," or that Compass has failed to

16   comply with an Order of this Court requiring disclosure, are particularly outrageous. (Mot. at 7;

17   11.) Compass has provided to the Cangelosi LLCs <u>on no less than *four* occasions,</u> a detailed,

18   line-by-line accounting of the fees Compass is entitled to on the La Hacienda loan. This

19   information was provided ***directly to the Cangelosi LLC's counsel***, the receipt of which was

20   acknowledged by counsel on October 30, 2007. (Weaver Decl. Exs. F (Oct. 5, 2007 letter from

21   Linda Dakin-Grimm, Esq. to Mark Weibel, Esq) and G (Oct. 30, 2007 letter from Mark Weibel,

22   Esq. to Linda Dakin-Grimm, Esq.) In addition, Compass has fully complied with the requirement

23   contained in paragraph 9 of the Preliminary Injunction Order to provide a detailed a detailed line-

24   item accounting as of October 2, 2007 of all Compass fees due and owing on each loan.

25

---

26   [11] It is surprising that the Cangelosi LLCs now complain about the relationship between Compass
     and Silar and the dual management of their accounts. Cangelosi and her cohorts knew in March

27   2007 of the relationship between Compass and Silar. (*See* Declaration of Robert Bender in
     Support of Opposition to Emergency Motion of Compass Financial Partners LLC for Order

28   Pursuant to 11 USC §§ 105 and 1141 Enforcing Confirmation Order and for Civil Contempt
     Sanctions, Ex. C.) Cangelosi waited more than eight months to object to Silar's perfected
     security interest in the Collection Account, but has failed to identify anything wrong with that.

1   (Preliminary Injunction ¶ 9, Dkt. No. 199.)  Such accounting was timely filed by Compass on

2   November 15, 2007.  (Notice of Filing of Submission of Accounting Required by Section 9 of the

3   Preliminary Injunction and Order, Dkt. No. 216.)

### 5.   Compass Has Carefully and Appropriately Handled Funds Belonging To The Direct Lenders

6          The claims in the Motion that Compass has mishandled funds due and owing to

7   Direct Lenders in violation of N.R.S. § 645B.175(5)(a) is factually without merit.  As set forth

8   above, N.R.S. § 645B is inapplicable to the instant dispute.  Even assuming N.R.S. § 645B were

9   applicable, Compass's actions do not violate any provision of that statute.  As noted above,

10   borrower payoffs are directed to the Collection Account specifically maintained for the receipt of

11   funds from borrowers.  The fact that borrower payments consisting of both servicing fees and

12   Direct Lender funds are initially received in the same account is in no way inconsistent with

13   Nevada law.  In fact, N.R.S. § 645B.175(5)(a) expressly _permits_ the deduction of a servicer's fees

14   prior to the distribution of funds due to investors.  N.R.S. § 645B.175(5)(a).

15          Furthermore, the Supreme Court of Nevada has ruled that a real estate broker's

16   use of a trust account both to hold funds that were the sole property of her clients and to receive

17   _and then divide_ funds in which both the broker and client had an interest does not amount to

18   prohibited commingling.  _See Flanders v. State of Nevada, Department of Commercial Real_

19   _Estate Division_, 87 Nev. 303, 307 (Nev. 1971) ("Under a rule similar to our statute, the Supreme

20   Court of California has recognized that a 'trust account' may properly be used as a vehicle to

21   receive and divide funds in which a professional practitioner has an interest, and that

22   'commingling' does not result unless the practitioner fails to withdraw his share 'at the earliest

23   reasonable time.' . . . It appearing to us that appellant's 'trust account' might properly be used to

24   receive and divide funds in which both she and her clients were interested . . . her accustomed use

25   of her 'trust account' cannot serve as ground for disciplinary proceedings against her."); _see also_

26   _In Re Paxson Trust I_, 893 A.2d 99, 130 (Pa. Super. 2006) ("where a trustee has mingled trust

27   funds with his own, and afterwards takes sums from the common mass for his own use, it will be

28

1   presumed, so long as the mass is as large as the original trust funds, that the sum so taken was his

2   own, and not the trust funds.")

3       **6.    Compass Has Always Paid Direct Lenders In A Timely Manner**

4           Consistent with industry practice and the practice of Mesirow Financial Interim

5   Management, LLC ("Mesirow") before it (as Chief Restructuring Officers for the Debtors-in-

6   Possession), Compass remits payments to the Direct Lenders on the last day of the month

7   following resolution of a loan.  This practice is also consistent with the Nevada Administrative

8   Code.  *See* Nev. Admin. Code § 645A.050.[12]  In the Motion, the Cangelosi LLCs renew the

9   misguided complaint contained in the Declaration of Mr. Kenneth Zawacki submitted in

10  conjunction with the September 10, 2007 hearing that the Direct Lenders' failure to *receive*

11  distributions by the first of the month (September 1, 2007) somehow constitutes a breach of

12  Compass's alleged obligation to *remit* payment by the end of the month (August 31, 2007).

13          As Compass explained in its September 10, 2007 filing, the Clear Creek loan was

14  paid in full on July 11, 2007—a positive outcome for lenders—and, per standard practice,

15  Compass remitted payment in full to each of the Direct Lenders at the end of the following

16  month, on August 31, 2007.  (Compass's Opposition to Supplemental Reply at 10.)  Therefore, it

17  is unsurprising that Mr. Zawacki had not yet received his check on September 1, 2007, as it was

18  postmarked August 31, 2007.  The Cangelosi LLCs put forth no evidence—and indeed none

19  exists—that Mr. Zawacki has not received his check to date or that he did not receive it in early

20  September 2007.  Indeed, Mr. Zawacki cashed his portion of the Clear Creek payoff on

21  September 6, 2007.

22          As the Cangelosi LLCs admit in their Motion, a servicer is expressly permitted to

23  retain the proceeds of a loan secured by real property until the end of the following month by

24  application of the Nevada Administrative Code, a regulation the LLCs have argued is binding

25  upon Compass.  *See* Nev. Admin. Code § 645A.050.  (Mot. at 11.)  The Cangelosi LLC's

26

---

27  [12] N.A.C. § 645A.050 provides "[i]f an escrow agency performs services as a third party in the collection of payments in connection with a loan secured by real property . . . the escrow agency

28  must remit the payment to the person who is entitled to receive the payment not later than 30 days after the last day of the month in which the escrow agency collected the payment."  N.A.C. § 645A.050.

1    argument that Compass has committed a wrongful act by "fail[ing] to timely pay Direct Lenders"

2    in the Clear Creek loan is false. (*Id.*) Moreover, the Cangelosi LLCs' statement that this

3    somehow entails an illicit act of "earning, or seeking to earn, premium interest" is particularly

4    disingenuous and troubling given that Cangelosi, in her own LLC Agreements with Direct

5    Lenders, allowed L2L, the loan servicer (and her alter ego), to disburse the principal, interest and

6    legal recovery to the Direct Lenders within <u>40 days of receipt</u> of the funds from the borrower.

7    (*See* Weaver Decl. Ex. H (LLC 3796, Article 8 Distributions of Profits).) As frequently has been

8    the case, Cangelosi will adopt any position that is convenient to assert that Compass somehow

9    has acted improperly, while never bothering to apply with any consistency the same standards of

10    conduct to herself.

11          As the Cangelosi LLCs are no doubt aware, it is common in the non-institutional

12    commercial mortgage lending industry for a loan servicer to place the funds it receives from

13    borrowers into an interest-bearing account (such as the Maintenance Account) pending

14    disbursement to the beneficial lenders in the loan. As set forth in the Second Declaration of

15    Daniel Alpert filed contemporaneously herewith, commercial loan servicing agreements typically

16    either: (i) provide instructions for servicers to invest monies received by servicers for periodic

17    disbursement to the mortgagees for which they are servicing and remit any investment earnings

18    thereon to the mortgagees at the upon periodic disbursement dates; or (ii) do not provide such

19    investment instructions and/or specifically provide that any earnings on intra-period fund

20    balances are for the benefit of, and are to be retained by, the servicer. (Alpert Decl. ¶ 6.) If a

21    servicing agreement contains no specific provisions with respect to the use of any accounts or

22    monies held by the servicer for the benefit of mortgagees or other parties, the servicer is deemed

23    to have intra-periodic use of those funds and is entitled to retain earnings thereon. (*Id.*) It is

24    typical for a commercial mortgage loan servicer to negotiate to retain use of intra-period funds it

25    holds as a component of servicer's compensation and to proffer servicing agreements that are

26    either silent on the issue or specifically grant the servicer use of such funds. (*Id.*)

27

28

1          The Loan Servicing Agreements among Compass and the Direct Lenders do not

2    contain any provision requiring Compass, as servicer, to invest proceeds from a borrower pending

3    disbursement of those proceeds to the Direct Lenders. (*See* Alpert Decl. Exs. A and B (Loan

4    Servicing Agreements).)  Accordingly, such agreements are typically regarded as giving the

5    servicer use of such proceeds and the right to retain earnings thereon. (Alpert Decl. ¶ 7.)  Indeed,

6    this standard industry practice was promulgated by Mesirow on behalf of the Debtors, under the

7    jurisdiction of the Bankruptcy Court. (Weaver Decl. Ex. I (Mesirow Monthly Operating Report)

8    at 15, 16.)  The Cangelosi LLCs have failed to establish *any* evidence to suggest why Compass

9    should not be entitled to retain interest that accrues during this period (just as she intended to do

10   for L2L in usurping the rights of Compass).

11         Finally, the Cangelosi LLCs claim that Compass is improperly holding the La

12   Hacienda Direct Lender's funds "hostage" because, in light of continued confusion among Direct

13   Lenders about the role of the LLCs, Compass timely sought direction from this Court on where to

14   direct the funds.  This dispute between La Hacienda LLC and its members—in the middle of

15   which Compass has been caught—has been fully briefed and is currently pending before this

16   Court.  As Compass has <u>repeatedly</u> stated, Compass does not have any interest in the Direct

17   Lender funds, it is holding such funds <u>in an interest-bearing account</u>, and fully intends to disburse

18   all of the money in that account to the parties to whom the Court determines disbursal should be

19   made (including the interest that has accrued as to each party's entitlement).  Compass does not

20   intend to keep any of the interest accrued after the date that the dispute arose—namely October

21   31, 2007.  To suggest otherwise is irresponsible and dishonest of the Cangelosi LLCs and does a

22   disservice to the Direct Lenders the LLCs purport to represent.

23

24

25

26

27

28

NY2:#4767591                               -16-

1

**CONCLUSION**

2        For all the foregoing reasons, Compass respectfully requests that the Court deny

3   the Motion.

4

Dated:  December 2, 2007

5

6

7   _____
    Linda Dakin-Grimm (admitted *pro hac vice*)
8   Robert J. Moore (admitted *pro hac vice*)
    Daniel M. Perry (admitted *pro hac vice*)
9   MILBANK, TWEED, HADLEY & McCLOY, LLP
    601 S. Figueroa Street, 30th Floor
10  Los Angeles, CA 90035
    Telephone No.:  (213) 892-4000
11  Facsimile No.:  (213) 629-5063

12                  *-- and --*

13  Peter Bernhard (State Bar No. 734)
    Georganne W. Bradley (State Bar No. 1105)
14  BULLIVANT HOUSER BAILEY PC
    3883 Howard Hughes Pkwy., Ste. 550
15  Las Vegas, NV 89169
    peter.bernhard@bullivant.com
16  Telephone No.:  (702) 650-6565
    Facsimile No.:  (702) 650-2995

17  *Counsel for Compass Financial Partners LLC and
    Compass USA SPE LLC*

18

19

20

21

22

23

24

25

26

27

28