Scott A. Edelman (SE-5247)
Daniel M. Perry (DP-9966)
MILBANK, TWEED, HADLEY & McCLOY, LLP
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

*Counsel for Compass Financial Partners LLC and*
*Compass USA SPE LLC*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CCM PATHFINDER POMPANO BAY, LLC ) | Case No: 08 Civ. 5297 (JSR) |
| ) | |
| Plaintiff, ) | |
| ) | |
| -against- ) | **COMPASS'S MEMORANDUM OF LAW** |
| ) | **IN OPPOSITION TO PLAINTIFFS** |
| COMPASS FINANCIAL PARTNERS ) | **MOTION FOR REMAND** |
| LLC and COMPASS USA SPE LLC, ) | |
| ) | |
| Defendants. ) | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................ 5

ARGUMENT ................................................................................................ 10

I.    THE NEW YORK ACTIONS SHOULD BE TRANSFERRED SO THAT THE
      NEVADA DISTRICT COURT MAY CONSIDER THE MOTION TO REMAND ........ 10

II.   THE NEW YORK ACTIONS ARE AN IMPERMISSIBLE COLLATERAL ATTACK
      ON THE *IN REM* JURISDICTION OF THE NEVADA DISTRICT COURT ................ 11

III.  BANKRUPTCY SUBJECT MATTER JURISDICTION EXISTS OVER
      PLAINTIFFS' CLAIMS UNDER 28 U.S.C. § 1334(**b**) ...................................... 13

      A.    A Close Nexus Exists Between the New York Actions and the
            Bankruptcy Proceedings and Nevada District Court Litigation ...................... 14

      B.    The Bankruptcy Plan Provides for Retention of Bankruptcy
            Court Jurisdiction over Plaintiffs' Claims ......................................... 16

IV.   MANDATORY ABSTENTION DOES NOT APPLY HERE ........................................... 17

      A.    Plaintiffs Cannot "Timely Adjudicate" This Action in New York ................. 17

      B.    Plaintiffs' Claims Are Core Bankruptcy Matters As To Which
            Mandatory Abstention Does Not Apply .......................................... 19

V.    GOOD CAUSE DOES NOT EXIST TO REMAND THIS ACTION TO
      THE NEW YORK STATE COURT ................................................................ 21

CONCLUSION ................................................................................................ 25

## TABLE OF AUTHORITIES

CASES

*Ames Dept. Stores, Inc. v. TJX Co., Inc.*,
    190 B.R. 157 (S.D.N.Y. 1995)......................................................................... 13

*Blackacre Bridge Capitol LLC v. Korff (In re River Ctr. Holdings)*,
    288 B.R. 59 (Bankr. S.D.N.Y. 2003)............................................................... 22

*Bondi v. Grant Thornton Intern.*,
    322 B.R. 44 (S.D.N.Y. 2005)............................................................................ 17

*Central Va. Community College v.* Katz,
    546 U.S. 356 (2006).......................................................................................... 13

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*,
    No 03-7248, 2004 WL 224505 (S.D.N.Y. February 5, 2004)......................... 22

*Chicot County Drainage Dist. v. Baxter State Bank*,
    308 U.S. 371 (1940).......................................................................................... 12

*Consolidated Lewis Inv. Corp. v. First Nat. Bank of Jefferson Parish*,
    74 B.R. 648 (E.D. La. 1987)............................................................................. 11

*Drexel Burnham Lambert Group, Inc. v. Vigilant Insur. Co.*,
    130 B.R. 405 (S.D.N.Y. 1991).......................................................................... 22

*Harve Benard Ltd. v. Nathan Rothschild, K.I.D. Intern.*
    2003 WL 367859 at *6, (S.D.N.Y., Feb. 19, 2003)......................................... 13

*In re Adelphia Communications Corp.*,
    285 B.R. 127 (Bankr. S.D.N.Y. 2002)....................................................... 15, 24

*In re Best Products Co., Inc.*,
    68 F.3d 26 (2d. Cir. 1995)................................................................................ 19

*In re Casual Male Corp.*,
    317 B.R. 472 (Bankr. S.D.N.Y. 2004)............................................................. 22

*In re Global Crossing, Ltd. Securities Litigation*,
    311 B.R. 345 (S.D.N.Y. 2003).......................................................................... 18

*In re Ivy,*
   901 F.2d 7 (2d Cir. N.Y. 1990) ................................................................................ 10

*In re Kassover,*
   336 B.R. 74 (Bankr. S.D.N.Y. 2006) ......................................................................... 13

*In re Petrie, Retail, Inc.,*
   304 F.3d 223 (2d Cir. 2002) ................................................................................... 4, 20

*In re United States Lines,*
   197 F.3d 631 (2d Cir. 1999) ...................................................................................... 19

*In re WorldCom, Inc. Securities Litigation,*
   293 B.R. 308 (S.D.N.Y. 2003) ............................................................................ 17, 18

*Marquette Transp. Co. v. Trinity Marine Prods.,*
   No. 06-0826 c/w No. 06-827, 2006 U.S. Dist. LEXIS 60402 at * 26-27
   (E.D. La. Aug. 11, 2006) ........................................................................................... 11

*Master-Halco, Inc. v. D'Angelo,*
   351 B.R. 267 (D. Conn. 2006) ................................................................................... 15

*Mt. McKinley Ins. Co. v. Corning Inc.,*
   399 F.3d 436 (2d Cir. 2005) .......................................................................... 18, 19, 20

*Nemaizer v. Baker,*
   793 F.2d 58 (2d Cir. 1986) ........................................................................................ 12

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,*
   458 U.S. 50, 102 S.Ct. 2858 (1982) .......................................................................... 20

*Publicker Indus. Inc. v. U.S.,*
   980 F.2d 110 (2d Cir. 1992) ...................................................................................... 13

*Rahl v. Bande,*
   316 B.R. 127 (S.D.N.Y. 2004) ................................................................................... 25

*Renaissance Cosmetics, Inc. v. Development Specialists,*
   277 B.R. 5 (S.D.N.Y. 2002) .......................................................................... 18, 24, 25

*Stoll v. Gottlieb,*
   305 U.S. 165 (1938) .................................................................................................. 12

*Turner v. Ermiger (In re Turner)*
    724 F.2d 338 (2d Cir. 1983)..................................................................................... 13

STATUTES

28 U.S.C. § 1334................................................................................................... *passim*

28 U.S.C. § 1452......................................................................................................... 10, 21

28 U.S.C. § 157............................................................................................................... 7, 16

28 U.S.C. § 157(b)(3) ........................................................................................................ 11

## PRELIMINARY STATEMENT

The dispute at issue here has a complicated procedural history in the United States District Court for the District of Nevada ("Nevada District Court") and the Bankruptcy Court in that district. The complaints filed by Plaintiffs in state court in New York (the "New York Actions"), and the instant remand motions, are an effort to end-run litigation pending for well over a year in Nevada. The litigation in Nevada will resolve many of the very same issues placed in dispute by Plaintiffs here in New York.

Plaintiffs are affiliated vulture fund investors that purchased fractional interests in certain loans (at a substantial discount to their face amounts) originated by USA Commercial Mortgage Company ("USACM") and four of its affiliated companies.

USACM and its affiliates ("Debtors") had filed for bankruptcy in April 2006. At that time, the Debtors were servicing 155 different loans on behalf of 3600 different lenders (the "Direct Lenders"), many of whom were elderly and retired. Prior to the bankruptcy, USACM had raised funds to make loans to borrowers by selling fractional interests in the loans to Direct Lenders. USACM serviced the loans pursuant to individual Loan Servicing Agreements with each Direct Lender. The Loan Servicing Agreements, Deeds of Trust, and the Note underlying each Loan, collectively, defined the rights and obligations of USACM and the Direct Lenders under the loans.

In the course of the bankruptcy, numerous lenders (including predecessors-in-interest to Plaintiffs) filed proofs of claim asserting breach of contract and fiduciary duty claims against the Debtors. Those claims, which entail interpretation of the Loan Servicing Agreements, as well as the Deeds of Trust and the Notes underlying the Loans, continue to be litigated in the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court").

In the course of the bankruptcy case, defendants Compass Financial Partners LLC and Compass USA SPE LLC ("Compass") purchased, by means of an Asset Purchase Agreement that was approved by the Bankruptcy Court, all of the Debtors' rights with respect to the loans at issue; Compass thereby became the servicers of the loans. Pursuant to the order confirming the Debtor's chapter 11 plan and Asset Purchase Agreement (the "Confirmation Order" or "Sale Order"), the Bankruptcy Court retained exclusive jurisdiction to determine all matters related to the Asset Purchase Agreement, the Loan Servicing Agreements, and the other rights acquired by Compass in respect of the serviced loans.

Only weeks after confirmation of the Bankruptcy Plan, certain Direct Lenders began a campaign to terminate Compass as servicer of the loans. On May 21, 2007, limited liability companies (the "LLCs") with over 1000 Direct Lender members, including predecessors-in-interest to Plaintiff, filed suit in the Nevada District Court alleging, in the same fashion as Plaintiffs here, that Compass had breached its contractual and fiduciary duties to the Direct Lenders (the "Nevada Action"). On May 25, 2007, Compass filed an emergency motion in the Nevada Bankruptcy Court to enforce its contractual rights as servicer as protected by the Confirmation Order and embedded within the Bankruptcy Plan. The Nevada Bankruptcy Court deemed the emergency motion an adversary proceeding (the "Adversary Proceeding") and entered an injunction enjoining the attempted termination of Compass as servicer and prohibiting all Direct Lender members of the LLCs (including Pathfinder and its predecessors-in-interest) from interfering with Compass's rights as purchased from the Debtor's estate and protected by the Confirmation Order.

On August 6, 2007, the Nevada District Court removed the reference to the Nevada Bankruptcy Court in connection with the Adversary Proceeding and consolidated that case with

the District Court case and other litigation involving Compass and Direct Lenders concerning

Compass's servicing rights and obligations.  On November 6, 2007, the Nevada District Court

entered a broad injunction (the "November 6 Injunction") replacing the earlier injunction entered

by the Bankruptcy Court extending protection of Compass's servicing rights and providing

detailed instruction on the conduct of the loan servicing for all Direct Lenders (including

Plaintiffs) going forward.  Given the importance of maintaining a single forum for the

adjudication of thousands of parties' respective rights under each of the 52 loans, the Nevada

District Court expressly reserved *in rem* jurisdiction over all 52 loans, including the three loans

at issue in the New York Action.  The Nevada District court also expressly retained *in rem*

jurisdiction over the Loan Servicing Agreements with the Direct Lenders in each of those loans.

All Direct Lenders, including Plaintiffs, were provided notice and an opportunity to object to the

November 6 Injunction.  Plaintiffs did not object to the November 6 Injunction.

The Nevada Action, which has been pending for more than a year, will entail resolution

of the same questions of interpretation of the Loan Servicing Agreements, Notes, and Deeds of

Trust that are at issue in the New York Actions.  Should inconsistent judgments be rendered in

the two actions, Compass would be subject to inconsistent obligations as loan servicer with

respect to the very same loans.  Against this background, and as more fully explained below,

each of the alternative bases for Plaintiffs' remand motion is without basis.

First, Plaintiffs are wrong in contending that there is no jurisdiction over their claims

under 28 U.S.C. § 1334.  Plaintiffs' position flies in the face of the reservation of *in rem*

jurisdiction over the loans and Loan Servicing Agreements by the Nevada District Court.

Jurisdiction exists with respect to the New York Actions for at least the following reasons:

(a) resolution of Plaintiffs' claims will have a direct impact on the recovery of creditors in the

Bankruptcy Case; (b) Plaintiffs' claims and the issues raised therein are closely intertwined with thousands of other lender claims for breach of contract, breach of fiduciary duty and monies due under the Loan Servicing Agreements, that are now being adjudicated both in the Bankruptcy Court and the Nevada District Court; (c) Plaintiffs' claims are in breach of an injunction issued by the District Court; and (d) resolution of Plaintiffs' claims requires interpretation of the Confirmation Order and the Asset Purchase Agreement.

Second, mandatory abstention, pursuant to 28 U.S.C. § 1334(c)(2), is not appropriate in this case. Mandatory abstention is only appropriate in cases where a state court will be able to render a timely adjudication of the claims at issue. Here, the same claims are already the subject of litigation that has been proceeding for well over a year in the Nevada District Court. The overlapping motion practice and discovery that would ensue from the pendency of separate federal and state litigations would undermine any chance of timely adjudication in state court, particularly given that the federal litigation is well along, while the New York Actions have yet to leave the starting gate. As parties moving for mandatory abstention, Plaintiffs have the burden to establish that allowing the matter to proceed in state court would permit a timely resolution and would not complicate or slow down the resolution of the related proceedings pending in federal court. Plaintiffs cannot meet that burden in this case.

Mandatory abstention also would be improper because the claims at issue in this action are core bankruptcy claims for which mandatory abstention is never appropriate. As evidenced by the Second Circuit's decision in *In re Petrie, Retail, Inc.,* 304 F.3d 223 (2d Cir. 2002), where, as in this case, the issues in dispute are so closely intertwined with the Bankruptcy Case, a dispute like between two non-debtor parties that arose after confirmation of a Bankruptcy Plan will be considered a core proceeding.

Finally, this is not a case appropriate for an equitable remand or permissive abstention. As established in Compass's to transfer this action to the District of Nevada, judicial efficiency can only be served by resolving this dispute along with the disputes over the very same loans, Loan Servicing Agreements, and loan servicer that are pending in Nevada, as initially brought by certain of Plaintiffs' predecessors in interest. As demonstrated below, each of the factors appropriate for consideration in determining whether a matter should be the subject of an equitable remand or permissive abstention militate strongly against such an order in this case.

This case has a complicated procedural history, much of which is relevant to the determination of this remand motion. As discussed below, Defendants respectfully submit that if Defendants' motion to transfer is granted, it would be most efficient to have the Nevada District Court, which already has deep familiarity with the relevant procedural history, decide this remand motion once transfer has been effected.

## FACTUAL BACKGROUND

According to their Complaints, Plaintiffs acquired their interest in the three loans at issue in the New York Actions from 215 separate Direct Lenders. (*See* Declaration of Gabriel Weaver filed concurrently herewith ("Weaver Decl.") Exs. 1, 2, 3.) All (or nearly all) of those Direct Lenders were creditors of the Debtors. At least four (and likely more)[1] of the 215 Direct Lenders were members of the LLCs that sued Compass in the Nevada District Court in May 2007 seeking largely the same relief sought by Plaintiffs here. At least six of the 215 Direct Lenders were members of the Lenders Protection Group (the "LPG") that was a party to the Adversary Proceeding brought by Compass in the Bankruptcy Court and whose members were enjoined from taking certain action adverse to Compass under their Loan Servicing Agreements.

The Debtors filed bankruptcy cases in the Bankruptcy Court in Las Vegas, Nevada, on April 13, 2006, jointly administered case no. 06-10725 LBR (the "Bankruptcy Case"). As described in the Disclosure Statement accompanying Debtors' Bankruptcy Plan, for some time prior to filing for bankruptcy, Debtors (who were unaffiliated with Compass) operated a classic Ponzi scheme. (Weaver Decl. Ex. 4 (Disclosure Statement) at pp. 27-28.) As the loans began to go into default and borrowers stopped making payments, the Debtors used the proceeds of investments by some Direct Lenders to make monthly payments (of what was described by USACM as principal and interest) to other Direct Lenders. After the SEC began an investigation, the Debtors filed the Bankruptcy Cases and the Bankruptcy Court approved the appointment of a new management team of professional restructuring advisors. *Id.*

On December 7, 2006, the Debtors conducted an auction in the Bankruptcy Court for the servicing business. Compass was the successful bidder. The sale to Compass was incorporated into and became the basis of a chapter 11 plan for the Debtors (the "Bankruptcy Plan") (Weaver Decl. Ex. 5), which was approved by the Confirmation Order. (Weaver Decl. Ex. 6). The sale closed and the Bankruptcy Plan became effective, simultaneously, on February 16, 2007 (the "Closing Date"). The Bankruptcy Plan provided that the Bankruptcy Court shall, to the fullest extent permitted by law, retain exclusive jurisdiction to determine all matters related to the Asset Purchase Agreement, the Loan Servicing Agreements, and the other rights acquired by Compass in respect of the serviced loans.[2] The Bankruptcy Plan set up creditor trusts to liquidate the remaining assets and make distributions to creditors.

---

[1] There were likely more LLC members that were predecessors-in-interest to plaintiffs. But the LLCs did not disclose their members until November 2007—*i.e.*, after Plaintiffs acquired the bulk of their beneficial interests in the Loans at issue in the New York Actions.

[2] *See* Weaver Decl. Ex. 6 (Bankruptcy Plan) at Sections VIII.D.6. and VIII.D.7; *see also* Weaver Decl. Ex. 14, Findings of Fact and Conclusions of Law in Support of Order Confirming the Debtors' Third Amended Joint Bankruptcy Plan of Reorganization, entered on January 8, 2007 (the "Bankruptcy Court

During the Bankruptcy Case, the Direct Lenders, *including Plaintiffs' predecessors-in-interest*, filed more than 4,000 proofs of claim against the Debtors asserting, *inter alia*, breach of contract under the Loan Servicing Agreements, breach of fiduciary duty and related claims for monies due. The Bankruptcy Plan provided that Direct Lenders were entitled to a *pro rata* share of the assets of the creditors trusts if they could prove breach by USACM of the Loan Servicing Agreements or prove damages proximately caused by some act or failure to act by USACM in violation of a contractual or statutory duty or fraud. The adjudication of those claims for breach of the Loan Servicing Agreements, which entails interpretation of the Loan Servicing Agreements, remains the subject of ongoing litigation in the Bankruptcy Court.

Soon after the Closing Date of the sale of the servicing rights to Compass, Direct Lenders began to dispute Compass's right to be servicer, and also alleged breaches of the Loan Servicing Agreements by Compass. On May 21, 2007, the LLCs, *members of which included predecessors-in-interest to Plaintiff*, filed suit in the Nevada District Court in Reno against Compass alleging that Compass had breached its contractual and fiduciary duties to Direct Lenders under the Loan Servicing Agreements. (*See* Weaver Decl. Ex. 7, *3685 San Fernando Lenders LLC, et al. v. Compass USA SPE LLC, et al.,* Case No. 3:07-CV-241.) On May 25, 2007, Compass commenced the Adversary Proceeding in the Nevada Bankruptcy Court against the LPG and certain of the Direct Lenders to enjoin them from interfering with Compass's rights under the Bankruptcy Plan, the Asset Purchase Agreement, and the Loan Servicing Agreements.

On June 20, 2007, the Bankruptcy Court held a hearing and enjoined the LPG members, *which included predecessors-in-interest to Plaintiff*, from further interference. On July 2 and August 1, 2007, the Bankruptcy Court entered orders enjoining the Direct Lenders from further

---

Findings") at ¶ V. ("the Court's retention of jurisdiction as set forth in Article VIII Section D of the Plan is appropriate and comports with the parameters contained in 28 U.S.C. § 157.").

interference, holding that it had subject matter jurisdiction over the Adversary Proceeding, and

recommending that the reference to the Bankruptcy Court be withdrawn by the District Court.

(Weaver Decl. Exs. 8 at pp. 16-21 and 9 at pg. 2.)  In connection therewith, on July 9, 2007,

United States District Court Judge Edward C. Reed, Jr. in Reno (where the Nevada Action

originated), entered a Minute Order recommending the transfer of the Nevada Action to Judge

Jones of the District Court in Las Vegas.  The Minute Order provided that:

> It appears that this action [the Nevada Action] involves common questions of law or fact
> to other cases pending before Judge Robert C. Jones to wit: . . .  [citing to the
> Bankruptcy Case and four other lawsuits against the Debtors].  Pursuant to Fed. R. Civ.
> P. 42(a), it appears that it may be appropriate to consolidate this case [the Nevada Action]
> with the other said cases being heard by Judge Jones.  In accordance with General Order
> 2006-05, it appears to entail a substantial duplication of labor if the within action was
> heard by a different district judge other than Judge Jones.  IT IS THEREFORE,
> HEREBY ORDERED, subject to approval of Judge Jones, that the within action [the
> Nevada Action] is transferred to Judge Jones for all further proceedings.

On August 6, 2007, the Nevada District Court withdrew the reference to the Bankruptcy Court

with respect to the Adversary Proceeding against the LPG, and thereafter consolidated those

bankruptcy proceedings with the Nevada Action.  (Weaver Decl. Ex. 10.)

On November 6, 2007, after four days of hearings, the Nevada District Court entered its

own injunction order, superseding that of the Bankruptcy Court, and made the order applicable to

52 Loans named in Exhibit A to the order.  (Weaver Decl. Ex. 11.)  *Each of Plaintiffs' Loans,*

*Bay Pompano, Gramercy Court and Palm Harbor I are among the loans named on Exhibit A.*

The District Court, sitting (in part) as the Bankruptcy Court after having removed the reference

with respect to the Adversary Proceeding, asserted bankruptcy jurisdiction over the Loans and

the Loan Servicing Agreements at issue in the New York Actions.  The November 6 Order

provides at paragraph 15, that "[t]his court has and shall retain *in personam* jurisdiction over the

Plaintiff Lenders and Compass and *in rem* jurisdiction over the Loans and LSAs [Loan Servicing

Agreements] relating thereto, and the conveyance of title of collateral acquired in connection

therewith." (*Id.*) Notice and opportunity to object to this Order was provided to all Direct Lenders, including Plaintiff Pathfinder. (Weaver Decl. Ex. 12.)

The Nevada Action and the New York Actions involve disputes regarding the very same loans and Loan Servicing Agreements, and inevitably entail resolution of many of the same factual and legal issues. Both actions will require interpretation of the applicable Loan Servicing Agreements, and an adjudication of Defendants' rights and obligations under the Loan Servicing Agreements and the loans at issue. In the New York Actions, Plaintiffs seek a declaration that Compass is "obligated to pay the principal and interest due Plaintiff before paying itself late charges and default interest." (*See* June 26, 2008 Declaration of Gabriel Weaver, 08-cv-5297 Docket No. 14 ("June 26, 2008 Weaver Decl."), Ex. A (Bay Pompano Complaint) at pg. 19.) The Nevada Action plaintiffs seek a similar declaration, that payments are "first to be applied to accrued non-default rate interest and then to principal" prior to Compass receiving payment for late fees and default interest.[3] This priority of payment or "waterfall" issue, which is at the heart of both cases, has already been briefed and has been the subject of extensive discovery in the Nevada Action. Such an adjudication will be applicable not only to Plaintiffs, but to all of the other Direct Lenders on the loans at issue, many of whom are parties in interest (through their membership in the LLCs) to the Nevada Action, but not to the New York Actions.

---

[3] Each of the remedies sought by Plaintiffs in the New York Actions, and nearly all of Plaintiffs' allegations of wrongdoing by Compass, have already been raised as part of the Nevada Action. Both sets of Plaintiffs allege that Compass breached its obligations under Loan Servicing Agreements by failing to properly service the loans, and breached its fiduciary duty to the Direct Lenders in connection with its actions as loan servicer. In the New York Actions, Plaintiffs seek an accounting for each loan of "all Loan Payments, interests, late charges, penalties, and any other receipts or disbursements related to Loan." (June 26, 2008 Weaver Decl. Exs. A at ¶ 65; B at ¶ 67; and C at ¶67.) In connection with the Injunction Order entered by the Nevada District Court on November 6, 2007 at the request of Compass, Compass filed with the Court an accounting that contains information substantially identical to that sought by Plaintiffs in the New York actions.

## ARGUMENT

**I.     THE NEW YORK ACTIONS SHOULD BE TRANSFERRED SO THAT
        THE NEVADA DISTRICT COURT MAY CONSIDER THE MOTION TO
        REMAND**

This is a matter with an exceedingly complex procedural background.  The rights and

obligations at issue here were conveyed to Compass in the Bankruptcy Case and have been the

subject of litigation for over a year.  The Nevada District Court, through the November 6 Order

and subsequent rulings, has sought to ensure that the Loans are appropriately serviced.  In

addition, the Nevada District Court has sought to maintain a balance between the rights of

Compass (which paid over $50 million in the Bankruptcy to secure the servicing rights at issue

here) and the interests of the Direct Lenders (many of whom are elderly and whose interests in

the loans are part of their retirement funds).  It is the Nevada District Court that issued the Orders

raised in these motion papers.  And it is the Nevada District Court that has before it the vast

majority of the Direct Lenders.  While those Direct Lenders are parties to the same form Loan

Servicing Agreements and signatories to the same Notes as Plaintiff, their objectives in the

litigation with Compass are likely to be very different from those of the vulture fund Plaintiff

here.  Transfer here will ensure that the Court most familiar with the procedural background and

the disparate interests at play in the litigation will decide the abstention and remand issues.

As the Second Circuit has stated, there are "real economies" to be gained in transferring

related cases to a single court and, once transfer has taken place, "jurisdictional objections can be

heard and resolved by a single court and reviewed at the appellate level," which promotes

"consistency as well as economy."  *In re Ivy*, 901 F.2d 7, 9 (2d Cir. N.Y. 1990) (holding that the

Judicial Panel on Multi District Litigation has jurisdiction to transfer a case in which a

jurisdictional objection is pending.)  Where a district court is faced with both (i) a motion for

transfer of venue in an action that has been removed to it under 28 U.S.C. § 1452, and (ii) a

motion to remand or otherwise abstain, courts usually transfer the action to the "home" jurisdiction (*i.e.*, the court that is more familiar with the substantive and procedural issues) for determination of the abstention and remand issues. *See Consolidated Lewis Inv. Corp. v. First Nat. Bank of Jefferson Parish*, 74 B.R. 648, 651 (E.D. La. 1987) (transferring venue and holding that whether the case "should be remanded or abstention should be employed" must be determined by the transferee court).

Courts also typically transfer cases to the "home court" where, as here, the question of core versus non-core bankruptcy jurisdiction is at issue. 28 U.S.C. § 157(b)(3) provides in relevant part that "the bankruptcy judge . . . shall determine whether a proceeding is a core proceeding . . . or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). And Courts have found that it is the bankruptcy court that is in the best position to determine the motion to remand in connection with the jurisdictional issues raised by title 11 matters. *See Marquette Transp. Co. v. Trinity Marine Prods.*, No. 06-0826 c/w No. 06-827, 2006 U.S. Dist. LEXIS 60402 at * 26-27 (E.D. La. Aug. 11, 2006) (allowing transferee bankruptcy court to decide remand motion strongly promotes "the interest of justice and the efficient administration of the Bankruptcy Estate").

Here, because the disputes over the Loan Servicing Agreements are already before the Nevada District Court (acting upon a partial removal of the reference to the Bankruptcy Court), venue should be transferred to the Nevada District Court for determination of the core versus non-core issues and ultimately the abstention and remand motions.

## II.    THE NEW YORK ACTIONS ARE AN IMPERMISSIBLE COLLATERAL ATTACK ON THE *IN REM* JURISDICTION OF THE NEVADA DISTRICT COURT

In its Preliminary Injunction Order, dated November 6, 2007, the Nevada District Court held that it "has and shall retain *in personam* jurisdiction over the Plaintiff [Direct] Lenders and

-11-

Compass and *in rem* jurisdiction over the Loans and LSAs [Loan Servicing Agreements] relating thereto, and the conveyance of title of collateral acquired in connection therewith." (Weaver Decl. Ex. 11.)  Pursuant to paragraph 14 of the November 6 Order, the Order was served upon all Direct Lenders, each of whom was provided with an opportunity to object to any part of the Order (including the retention of jurisdiction contained in paragraph 15).  While certain Direct Lenders lodged objection, Plaintiffs (who continued to accumulate interests after the November 6 Order was entered) did not do so.  (Weaver Decl. Ex. 12 (Certificate of Mailing of November 6 Order).)

The New York Actions, and Pathfinder's motion to have the New York Actions remanded (or by abstention returned) to the New York Supreme Court *on the grounds of an absence of jurisdiction in the Nevada District Court*, are an impermissible collateral attack on the Nevada District Court's exercise of *in rem* jurisdiction over the loans and the LSAs that are the subject of the New York Actions.  *See Stoll v. Gottlieb*, 305 U.S. 165, 171-172 (1938) (a district court's exercise of jurisdiction, even if erroneous, is not subject to collateral attack).  The Nevada District Court has the authority to determine whether or not it has jurisdiction, and that determination, while eligible for appeal, is *res judicata* in a collateral action.  *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377 (1940).

The Nevada District Court had ample justification to determine that it has jurisdiction over the Loans and Loan Servicing Agreements at issue in the New York Action.  But even if that were not the case, a federal court's assumption of jurisdiction is subject to collateral attack only when there is a "total want of jurisdiction" and there is "no arguable basis" for jurisdiction. *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986).  As demonstrated below in connection in the discussion of subject matter jurisdiction, that is plainly not the case here.  The Nevada District

Court (through its assertion of *in rem* jurisdiction) properly assumed and exercised jurisdiction under 28 U.S.C. § 1334(b). *Central Va. Community College v.* Katz, 546 U.S. 356, 362 (2006) ("Bankruptcy jurisdiction, at its core, is *in rem*.") Both Plaintiffs and their predecessors-in-interest were on notice of that exercise of jurisdiction and failed to object or seek appellate relief. Plaintiffs' current effort to end run the Nevada District Court's jurisdiction is, therefore, improper and should be denied.

## III. BANKRUPTCY SUBJECT MATTER JURISDICTION EXISTS OVER PLAINTIFFS' CLAIMS UNDER 28 U.S.C. § 1334(B)

Contrary to Plaintiffs' argument, the confirmation of a chapter 11 plan does not divest a bankruptcy court of jurisdiction, particularly where, as here, not all assets have yet been distributed to creditors. As Judge Friendly explained, a civil proceeding between two non-debtor parties has a sufficient connection with a bankruptcy case and bankruptcy litigation so that subject matter jurisdiction is available under 28 U.S.C. § 1334 when (1) the outcome of such civil proceeding might have any conceivable effect on the bankrupt estate, or (2) the litigation has a significant connection with the bankruptcy case. *Turner v. Ermiger (In re Turner),* 724 F.2d 338, 341 (2d Cir. 1983). If either of the two prongs of the question is answered affirmatively, then the civil proceeding falls at least within the "related to," non-core jurisdiction of the district court and bankruptcy court under 28 U.S.C. § 1334.[4]

In *In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006), the Court explained the scope of post-confirmation jurisdiction as follows:

> a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements. First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed

---

[4] *See Publicker Indus. Inc. v. U.S.,* 980 F.2d 110, 114 (2d Cir. 1992); *Ames Dept. Stores, Inc. v. TJX Co., Inc.,* 190 B.R. 157, 160 (S.D.N.Y. 1995); *Harve Benard Ltd. v. Nathan Rothschild, K.I.D. Intern.,* No. 02-4033, 2003 WL 367859 at *6, (S.D.N.Y., Feb. 19, 2003).

plan and second, the plan must provide for the retention of jurisdiction over the dispute.

As established below, the requirements for jurisdiction are met here: (i) there is a "close nexus," between the New York Actions and the Bankruptcy Plan and related proceedings and (ii) the Bankruptcy Plan provided for retention of jurisdiction over the very subject matter at issue here.

### A.    A Close Nexus Exists Between the New York Actions and the Bankruptcy Proceedings and Nevada District Court Litigation

Plaintiffs' argument against bankruptcy-related jurisdiction ignores the close nexus between this action and the Bankruptcy Case. (Motion at 11.) *First*, resolution of Plaintiffs' claims will have a direct impact on how much money recovered by Compass from the Borrowers will be available to turn over to the creditors trusts created under the Bankruptcy Plan for distribution to unsecured creditors. As described in the Debtors' Plan Disclosure Statement, USACM collected from certain Direct Lenders approximately $40 million in funds that were, in turn, improperly paid to certain other Direct Lenders as "Prepaid Interest." USACM did this in order to induce the Direct Lenders receiving the Prepaid Interest to invest additional funds with USACM by giving the false impression that their existing investments were performing. (Weaver Decl. Ex. 4 at p. 28.) Paragraph 47 of the Sale and Confirmation Order requires that when Compass (as servicer) collects funds from a Borrower on behalf of a Direct Lender that received Prepaid Interest prior to the Bankruptcy, it must remit funds in an amount equal to the Prepaid Interest received by the Direct Lender (through Compass) to creditor trusts for distribution to unsecured creditors of the Debtors. As a result, resolution of the waterfall dispute at issue in the New York Actions could directly impact the amount of Prepaid Interest Compass will turn over to the creditor trusts. To the extent that Compass's view of the waterfall prevails, more money will be paid to Compass and less money paid to creditors of the Debtors. This by itself satisfies Judge Friendly's "any conceivable effect" test in *Turner*, and creates the sufficient

close nexus called for in *Kassover*. *See also Master-Halco, Inc. v. D'Angelo*, 351 B.R. 267, 270

(D. Conn. 2006) (civil proceeding where $625,000 is at issue passes "any conceivable impact"

test). *In re Adelphia Communications Corp.*, 285 B.R. 127, 140 (Bankr. S.D.N.Y. 2002) (civil

proceeding's several million dollar positive or negative impact on assets or liabilities of

bankruptcy estate passes "any conceivable impact" test for bankruptcy jurisdiction).

  <u>Second</u>, the New York Actions have a "significant connection" to the Bankruptcy Case

(*Turner's* alternative basis for bankruptcy jurisdiction) because resolution of the New York

Actions will require interpretation of provisions of the Sale and Confirmation and the Asset

Purchase Agreement approved by the Bankruptcy Court. Paragraph 14 of the Confirmation

Order prohibits Direct Lenders from attempting to subordinate Compass' right to fees under the

Loan Servicing Agreements. (Weaver Decl. Ex. 6 at ¶ 14.) Defendants will contend in this

action, however, that Plaintiffs' claims for relief in the New York Actions constitute just such an

attempt. Thus, the impact of Paragraph 14 of the Sale and Confirmation Order will be squarely

at issue. Likewise, Paragraph 7.3 of the Asset Purchase Agreement requires that Compass

collect monies from borrowers and pays sums to Direct Lenders according to the payment

scheme found in the Loan Servicing Agreements and related Notes, except as the Bankruptcy

Court may find otherwise. Defendants will contend that Plaintiffs' demands for relief in the New

York Actions attempt to revise the structure of the payment scheme found in the Loan Servicing

Agreements and related Notes, without seeking the requisite relief from the Bankruptcy Court, in

violation of Paragraph 7.3 of the Asset Purchase Agreement, thereby putting interpretation of

that document at issue in the case as well.

  <u>Third</u>, there is a close nexus between the New York Actions and the Bankruptcy Case

because Plaintiffs' predecessors-in-interest were creditors of the Debtors, many filed proofs of

claim in the Bankruptcy Case against the Debtors asserting breaches of the Loan Servicing

Agreements and breaches of duty, and those claims are now pending in the Bankruptcy Court.

These Actions will require interpretation of the very same Loan Servicing Agreements.

**B.    The Bankruptcy Plan Provides for Retention of Bankruptcy Court Jurisdiction over Plaintiffs' Claims**

Under *Kassover*, if there is a close nexus between the New York Actions and the

Bankruptcy Case, *and* the Bankruptcy Plan provides for retention of Bankruptcy Court

jurisdiction over the subject matter of the New York Actions, jurisdiction exists even if the

dispute is between two non-debtors after confirmation of the plan.  Here, Sections VIII.D.7 and

VIII.D.8. of the Bankruptcy Plan provide for continuing Bankruptcy Court jurisdiction, to the

fullest extent permitted by law, over "all matters relating to the Loan Servicing Agreements,"

and "effectuating performance of and payments under the provisions of the Plan."  Plaintiffs'

claims against Compass fall within "all matters relating to the Loan Servicing Agreements,"

given that the interpretation of the Loan Servicing Agreements is the central issue raised by the

New York Actions.  Likewise, as discussed above, determination of Plaintiffs' claims could

affect how much Compass will pay to the creditor trusts that were created under the Bankruptcy

Plan, and as such, the dispute falls within the language of the reserved items under the Plan for

that reason as well.  Similarly, the Sale and Confirmation Order explicitly stated that the

Bankruptcy Court retained jurisdiction to enforce and implement the terms of the Asset Purchase

Agreement.[5]  As discussed above, resolution of Plaintiffs' claims will require interpretation of

Section  7.3 of the Asset Purchase Agreement.

---

[5] Weaver Decl. Exs. 6 (Sale and Confirmation Order) at ¶ 23; and 12 (Bankruptcy Court Findings) at ¶ V ("the Court's retention of jurisdiction as set forth in Article VIII Section D of the Plan is appropriate and comports with the parameters contained in 28 U.S.C. § 157").

## IV.    MANDATORY ABSTENTION DOES NOT APPLY HERE

28 U.S.C. § 1334(c)(2) provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).  "A party seeking mandatory abstention must prove each of the following: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be 'timely adjudicated' in state court." *In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 331 (S.D.N.Y. 2003).  The burden is on the party seeking abstention to prove *each* element of the test, and the party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements.  *Id.*

### A.    Plaintiffs Cannot "Timely Adjudicate" This Action in New York

"As a condition for mandatory abstention, Section 1334(c)(2) requires that the matter at issue 'can be timely adjudicated, in a State forum of appropriate jurisdiction'"  *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 450 (2d Cir. 2005) (remanding to district court for determination of timely adjudication factor).  Where the party moving for abstention fails to show that allowing the matter to proceed in the state court would not complicate and slow down the resolution of related cases pending in another federal court, such party has failed to meet its timely adjudication burden under section 28 U.S.C. § 1334(c)(2).[6]

---

[6] *Bondi v. Grant Thornton Intern.*, 322 B.R. 44, 51 (S.D.N.Y. 2005) (plaintiff failed timely adjudication test for mandatory abstention where it could not show that adjudication in state court would not slow and complicate prior related proceedings in federal court); *In re WorldCom, Inc. Securities Litigation*, 293

As Judge Lynch wrote in *In re Global Crossing, Ltd. Securities Litigation*, 311 B.R. 345 (S.D.N.Y. 2003), Section 1334(c)(2)

> is intended to require federal courts to defer to the state courts to handle lawsuits which, although "related to" a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts. That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court. Far from promoting 'timely adjudicat[ion]' of plaintiffs' claims, to remand here would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this [federal] Court.

311 B.R. at 349.  In *Global Crossing*, Judge Lynch found that the removed state court lawsuit should not be remanded and was not subject to mandatory abstention, because, notwithstanding Plaintiffs' assertion that the removed action could be quickly adjudicated in state court, "the overlapping motion practice and discovery that would ensue from the pendency of separate federal and state litigations, would undermine any chance of timely adjudicat[ion] in state court." *Id.* at 348 (quoting from *In re WorldCom, Inc. Securities Litigation*, 293 B.R. at 331).

Plaintiffs cannot satisfy the "timely adjudication" test in this case.  On remand, the New York state court would find itself at the beginning of a complex proceeding running well behind another proceeding raising the same issues.  Resolution of the case in Nevada will determine Compass's rights and obligations under the same loans that are the subject of the New York Actions.  Moreover, resolution of the New York Actions in New York state court would require, among other things (i) coordination with the Nevada District Court on discovery and other matters, as well as (ii) resolution of complicated issues regarding which determinations in the Nevada District Court implicate collateral estoppel concerns for the New York state court and

---

B.R. 308, 331 (S.D.N.Y. 2003) (denying remand to avoid slowing the pace of overall litigation); *see also Renaissance Cosmetics, Inc. v. Development Specialists*, 277 B.R. 5 (S.D.N.Y. 2002) (reversed on other grounds) (denying remand where case is at "starting line" in New York state court but related proceeding

*vice versa.* These procedural complexities and delays can be avoided entirely by transferring the New York Actions to Nevada for coordination with the Nevada Action.

Separate and apart from the "timely adjudication" complications posed by the prospect of mirror-image litigations pending in Nevada and New York, Plaintiffs do not meet the "timely adjudication" requirement simply on the basis of the likely timetables of the action in New York as compared to Nevada. A case cannot be timely adjudicated in one forum where another court would have a head start of more than a year on adjudicating the same dispute.

Moreover, Plaintiffs ignore the complexity of this action in seeking to minimize the duration of the litigation were it to proceed in New York State Court. Plaintiffs argue that the "standard-and-goal" period for New York cases is 23 to 30 months, depending on the complexity of the case. (Remand Motion at 21, ¶ 9.) But as Judge Lynch noted in *Global Crossing,* the state court's standards are aspirational goals, and litigation involving accountings and extensive discovery could take much longer than in a more routine case. Indeed, Judge Lynch noted that the Civil Case Management Plan for the Southern District of New York called for cases to be ready for trial in six months, but often that goal is not met. 311 B.R. at 348-49.

### B. Plaintiffs' Claims Are Core Bankruptcy Matters As To Which Mandatory Abstention Does Not Apply

Mandatory abstention under 28 U.S.C. § 1334(c)(2) applies only if the civil proceeding in question is a non-core matter. *Mt. McKinley Ins.,* 399 F.3d at 447. "[T]he legislative history of [section 157] indicates that Congress intended that 'core proceedings' would be interpreted broadly." *In re Best Products Co., Inc.,* 68 F.3d 26, 31 (2d. Cir. 1995); *In re United States Lines,* 197 F.3d 631, 637 (2d Cir. 1999) (core proceedings should be given a broad interpretation close

---

in federal court is well advanced, even most efficient state court system could not reach finish line in timely fashion that would avoid interference with related proceeding in federal court).

to or congruent with constitutional limits set forth in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858 (1982), and *Marathon* is to be construed narrowly).

As already discussed in the subject matter jurisdiction section of this brief, Plaintiffs' state court claims are related to the Debtors' Bankruptcy Case for bankruptcy jurisdiction purposes. *Supra* at point III. The Second Circuit's decision in *In re Petrie, Retail, Inc.*, 304 F.3d 223 (2d Cir. 2002) ("*Petrie*") demonstrates that the instant dispute is a core proceeding as well, notwithstanding that the dispute is between two non-debtors.

In *Petrie*, in connection with confirmation of a chapter 11 plan, the bankruptcy court entered an order approving an asset purchase agreement and the sale of the debtors' assets to third-party purchaser. As was the case for Compass's purchase of the servicing rights from the USACM Debtors, (a) the chapter 11 plan in *Petrie* incorporated the terms of the sale order, and (b) the chapter 11 plan became effective when the sale closed. *Id.* at 226. Prior to the sale, one of the debtor's landlords filed a proof of claim alleging that the debtor was in breach of the lease. Soon after the sale, the landlord sued the purchaser for breach of the lease, and the purchaser then filed suit in the bankruptcy court to enforce the terms of the sale and plan confirmation orders. *Id.* at 227. The chapter 11 plan in *Petrie* contained an injunction against suing the purchaser, Marianne, for claims arising prior to the sale.

Based on this confluence of factors, the *Petrie* Court held that the dispute between the purchaser and the landlord was a core proceeding. *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 450 (2d Cir. 2005) described the holding in *Petrie* as follows:

> In *Petrie*, we held that core jurisdiction existed over a dispute between entities that had been involved in a reorganization proceeding (albeit not as debtors) over interpretation of the bankruptcy court's sale order. We held that the dispute "uniquely affected and was uniquely affected by core bankruptcy functions because the dispute between [the two parties] was based on rights established in the sale order, the plan consummation motion sought enforcement of a pre-existing injunction issued in the bankruptcy court's sale

order, and the dispute involved an issue already before the bankruptcy court as part of its
consideration of [one party's] claim against the estate.

*Id.* (citations omitted).  The same *Petrie* factors are present in the disputes at issue here.  <u>First</u>, as
in *Petrie*, Plaintiffs' predecessors-in-interest and Compass were involved in the Bankruptcy
Case.  Second, as in *Petrie*, resolutions of the New York Actions will require interpretation of
the Sale and Confirmation Order and the Asset Purchase Agreement approved by the Bankruptcy
Court.  Third, although the Loan Servicing Agreements were in existence prior to the Bankruptcy
Case (as was the contract in dispute in *Petrie*), as in *Petrie*, the Direct Lenders' rights against
Compass with respect to the Loan Servicing Agreements were established as part of the core
bankruptcy court function of approving the sale of the Debtors' property to Compass, as in
*Petrie*.  Fourth, as in *Petrie*, the disputes in the New York Actions over interpretation of the Loan
Servicing Agreements involve issues before the Bankruptcy Court with respect to the proofs of
claim filed by Plaintiffs' predecessors-in-interest.  Fifth, as the purchaser did in *Petrie*, Compass
filed a plan enforcement sanctions motion (the reference over which was withdrawn by the
Nevada District Court).  Finally, the *Petrie* court noted that it was a significant factor in its core
proceedings determination that resolution of the dispute could affect the amount received by the
creditor in the bankruptcy case.  So too, as shown in Section III.A above, the New York Actions
could have a direct impact on the recoveries of unsecured creditors.

## V.    GOOD CAUSE DOES NOT EXIST TO REMAND THIS ACTION TO THE NEW YORK STATE COURT

Title 28 Section 1452(b) provides that the federal district court to which a claim or cause
of action is removed may remand such claim or cause of action on any equitable ground.  28
U.S.C. § 1452(b).  Numerous courts in this district have applied a seven factor test for
determining whether to remand a proceeding back to the state courts, the so-called Drexel factors

that were first described in *Drexel Burnham Lambert Group, Inc. v. Vigilant Insur. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991). Those factors are: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntary removed defendants. As demonstrated below, in this case, application of the *Drexel* factors does not support a remand of this case to state court.

- *Efficient Administration of Bankruptcy Proceedings*

The existence of a pending interrelated proceeding in federal court militates strongly against remand on both efficiency and fairness grounds. Courts have recognized the inefficiencies inherent in having two separate courts deciding identical or overlapping issues involving the same parties.[7] Likewise, courts have noted the unfairness in putting a party in a position where it could find itself estopped based upon determinations in the other proceeding. *See Blackacre Bridge Capitol LLC v. Korff (In re River Ctr. Holdings)*, 288 B.R. 59, 69 (Bankr. S.D.N.Y. 2003) Each of these considerations weighs heavily against remand in this case.

To date, other than the New York Actions, all claims and suits requiring interpretation of the Loan Servicing Agreements are pending in the District of Nevada, either in the Bankruptcy Court or the Nevada District Court. In addition to more than year of motion practice with respect to substantive legal issues that are already pending in the Nevada District Court, extensive document discovery has been propounded regarding the Loan Servicing Agreement disputes. Plaintiffs' discovery in any remanded New York Supreme Court action will overlap

---

[7] *See In re Casual Male Corp.*, 317 B.R. 472 (Bankr. S.D.N.Y. 2004); *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, No 03-7248, 2004 WL 224505 (S.D.N.Y. February 5, 2004) (denying remand because removed case was related to suits pending in Delaware bankruptcy court where there are common issues of fact and law, and granting motion for transfer of venue).

substantially, if not totally, with the discovery in the Nevada District Court litigation. And in light of the fact that the Nevada District Court has entered an order exercising *in rem* jurisdiction over the very loans and Loan Servicing Agreements that are the subject of the New York Actions, and *in personam* jurisdiction over Plaintiffs' predecessors-in-interest, permitting these actions to proceed in New York Supreme Court would result in a procedural nightmare.

The Nevada District Court is already familiar with the extensive history, factual background and legal issues in the case that are relevant to Plaintiffs' claims, and has exercised jurisdiction over the parties, including Plaintiffs' predecessors-in-interest, and the Loan Servicing Agreements. Denial of remand and the grant of the transfer motion would avoid duplicative litigation, limiting the expense to the parties and conserving judicial resources, and would help avoid potentially inconsistent results. This factor strongly weighs against remand.

- *Predominance of State Law Issues*

State law issues do not predominate. As explained, *supra*, the New York Actions primarily relate to issues arising from Debtors' bankruptcy proceeding. To the extent that state law is at issue, it is primarily Nevada law. The Loan Servicing Agreement, the heart of this litigation, is governed by Nevada law, not New York law. (Weaver Decl. Ex. 14.) Because the state law issues are principally Nevada law issues, they are best determined by a court that is experienced with Nevada law, the Nevada District Court. This factor weighs against remand.

- *Difficulty or Unsettled Nature of Applicable State Law*

The plaintiffs in the Nevada District Court litigation and Plaintiffs herein raise several issues of contract interpretation and claims for breach of fiduciary duty, in both cases governed by Nevada law. In some respects the claims are novel, and the state law unsettled. Nevada, not New York, has a clear interest in the proper adjudication of these cases. This factor weighs in favor of transfer to the Nevada District Court, not remand.

- *Comity*

Comity "focuses on the state's interest in developing its law and applying its law to its citizens." *In re Adelphia Communications Corp.*, 285 B.R. 127 (Bankr. S.D.N.Y. 2002) (quoting *Renaissance Cosmetics, Inc. v. Development Specialists*, 277 B.R. 5 (S.D.N.Y. 2002). Here, even though Compass and Plaintiffs are allegedly citizens of New York (Plaintiff has its principal place of business in Connecticut), the New York courts have no interest in developing or applying their law because the litigation will be governed by Nevada, not New York law.

In contrast to New York having no policy interest in this litigation, Nevada has substantial interests. A substantial number of the original Direct Lenders were citizens of Nevada who availed themselves of Nevada state laws and regulations governing the sale of participations in the loans, and some of those state laws are alleged to be implicated in the consolidated litigation now pending in the Nevada District Court. Moreover, Nevada has an interest, as any state would, in consistent interpretation of its laws, which will be placed at risk if a New York trial court is given the opportunity to interpret the Loan Servicing Agreements while the Bankruptcy Court and the Nevada District Court are already in the process of doing so. The comity factor weighs against remand.

- *Degree of Relatedness to the Main Bankruptcy Case*

As discussed above in the sections on subject matter jurisdiction and mandatory abstention, there is a close nexus between Plaintiffs' suit and the Bankruptcy Case. *See Supra* at Point III. Thus, this factor weighs against remand.

- *Jury Trial Rights*

This factor is not relevant in this case. Compass is not asking for transfer of venue to the Bankruptcy Court where there may be constitutional limitations on the conduct of a jury trial. Rather, Compass has moved for transfer of venue to the Nevada District Court, where the

existing Plaintiffs have already demanded a jury. Since Plaintiffs' jury trial rights are not in jeopardy in Nevada Federal Court, this factor is not relevant to the remand determination.

- *Prejudice to Involuntary Removed Defendants*

This factor cannot support remand because all Defendants oppose remand and prefer the Nevada District Court. Moreover, there is no prejudice in this case to Plaintiffs, who have appeared in the Nevada District Court litigation, and have counsel based both in Las Vegas and Los Angeles. Accordingly, this factor does not support a remand.[8]

Not a single one of the *Drexel* factors supports remand in this matter, and, indeed, each of the factors supports denial of remand. The Court should deny the remand motion.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the motion for remand and abstention and transfer venue to the Nevada District Court, or, alternatively, transfer venue and allow the Nevada District Court to decide the abstention and remand issues.

Dated: July 14, 2008

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _[signature]_

Scott Edelman (SE 5247)
Daniel M. Perry (DP 6966)
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000
*Attorneys for Defendants Compass Financial Partners LLC and Compass USA SPE LLC*

---

[8] The factors to be considered by the district court when determining whether permissive abstention or equitable remand is appropriate are "virtually the same." *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004); *Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 17 (S.D.N.Y. 2002) (reversed on other grounds). For the reasons set forth above, permissive abstention, pursuant to 28 U.S.C. § 1334(c)(1), is inappropriate here.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CCM PATHFINDER POMPANO BAY, LLC, | ) ) | 08 Civ. 5297 (JSR) |
| Plaintiff, | ) ) ) | |
| -against- | ) ) | CERTIFICATE OF SERVICE |
| COMPASS FINANCIAL PARTNERS LLC and COMPASS USA SPE LLC, | ) ) ) | |
| Defendants. | ) ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2008, I caused a true and correct copy of

Compass's Opposition to Plaintiffs' Motion for Remand to be served by the Court's ECF

System upon the following:

> Betty M. Shumener
> Todd B. Marcus
> Robert J. Odson
> DLA Piper US LLP
> 1251 Avenue of the Americas
> New York, NY 10020
> (212) 335-4500

DATED:     July 14, 2008, 2008

By: _Mahn Weaver_