Scott A. Edelman (SE-5247)
Daniel M. Perry (DP-6966)
MILBANK, TWEED, HADLEY & McCLOY, LLP
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000

*Counsel for Compass Financial Partners LLC and
Compass USA SPE LLC*

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CCM PATHFINDER POMPANO BAY, LLC | Case No: 08 Civ. 5297 (JSR) |
| Plaintiff, | |
| -against- | **REPLY MEMORANDUM OF LAW IN SUPPORT OF COMPASS'S MOTION FOR TRANSFER OF VENUE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA** |
| COMPASS FINANCIAL PARTNERS LLC and COMPASS USA SPE LLC, | |
| Defendants. | |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I.   THE PROPOSED SETTLEMENT WEIGHS IN FAVOR OF
     VENUE TRANSFER ........................................................................................................... 3

II.  THE TRADITIONAL FACTORS SUPPORT VENUE TRANSFER ................................ 3

III. THE NEVADA DISTRICT COURT SHOULD INTERPRET ITS
     OWN ORDERS AND RESOLVE ANY JURISDICTIONAL DISPUTES ....................... 5

IV.  BANKRUPTCY SUBJECT MATTER JURISDICTION EXISTS
     OVER PLAINTIFFS' CLAIMS UNDER 28 U.S.C. § 1334(b) ........................................ 6

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Consolidated Lewis Inv. Corp. v. First Nat. Bank of Jefferson Parish,*
  74 B.R. 648 (E.D. La. 1987) .................................................................................... 6

*Factors Etc., Inc. v. Pro Arts, Inc.*
  579 F.2d 215 (2d Cir. 1978) ..................................................................................... 4

*In re Adelphia Communications Corp.,*
  285 B.R. 127 (Bankr. S.D.N.Y. 2002) ..................................................................... 7

*In re Cuyahoga Equipment Corp.,*
  980 F.2d 110 (2d Cir. 1992) ..................................................................................... 3

*In re Ivy,*
  901 F.2d 7 (2d Cir. 1990) ..................................................................................... 2, 6

*In re Kassover,*
  336 B.R. 74 (Bankr. S.D.N.Y. 2006) ....................................................................... 6

*In re Petrie, Retail, Inc.,*
  304 F.3d 223 (2d Cir. 2002) ................................................................................... 10

*Marquette Transp. Co. v. Trinity Marine Prods.,*
  No. 06-0826 c/w No. 06-827, 2006 U.S. Dist. LEXIS 60402 at * 26-27
  (E.D. La. Aug. 11, 2006) .......................................................................................... 6

*Master-Halco, Inc. v. D'Angelo,*
  351 B.R. 267 (D. Conn. 2006) ................................................................................. 7

*Northwest Airlines, Inc. v. Los Angeles (In re Northwest Airlines Corp.),*
  384 B.R. 51 (S.D.N.Y. 2008) ................................................................................. 10

*Orix Fin. Corp. v. NexBank, SSB,* 2008 U.S. Dist. LEXIS 54259, 3:08-CV-0550-B,
  (N.D. Tex. July 15, 2008) ........................................................................................ 6

*Thomas v. Lorch, Wedlo, Inc. (In re Wedlo, Inc.),*
  212 B.R. 678 (Bankr. M.D. Ala. 1996) .................................................................... 6

*Turner v. Ermiger (In re Turner),*
  724 F.2d 338 (2d Cir. 1983) .................................................................................. 6

*Turtur v. Rothschild Registry Int'l, Inc.,*
  26 F.3d 304 (2d Cir. 1994) .................................................................................... 5

*Vornado Realty Trust v. The Stop & Shop Supermarket Co., Inc. (In re Bradlees, Inc.,)*
  No. 04 Civ. 5500(HB), 2005 WL 106794
  (S.D.N.Y. Jan. 19, 2005) ....................................................................................... 8

*Zerman v. Ball,*
  735 F.2d 15 (2d Cir. 1984) .................................................................................... 5

## **STATUTES**

28 USC § 1334 ............................................................................................................ 6, 8, 9

28 U.S.C. § 1404(a) ......................................................................................................... 10

## **PRELIMINARY STATEMENT**

The District Court in Nevada (to which transfer is sought on this motion) has before it complex litigation that has been pending for over a year that involves many of the same parties, the same witnesses, the same legal documents, and the same factual and legal issues that are at issue in this action, which Plaintiffs seek to prosecute in New York state court. For obvious reasons, there is a strong policy favoring litigation of related claims in a single court so that pretrial discovery, motion practice and ultimate resolutions of disputes can be conducted with maximum efficiency, and so that inconsistent results in duplicative litigation can be avoided.

Compass[1] has shown that the relief sought in the Nevada Litigation by LLCs with over 1000 Direct Lender members, including predecessors in interest to Plaintiffs, is substantially similar to the relief sought by Plaintiffs in the New York Actions. While Plaintiffs try to characterize this litigation as a case about damages and the Nevada Actions as a case about termination of servicing rights, the fact is that both actions seek (as the primary form of relief) a determination of the "waterfall" issue, *i.e.*, whether or not the Direct Lenders are entitled to principal and interest before Compass, as servicer, is entitled to late fees and default interest.

Plaintiffs try to minimize the relevance of the litigation in Nevada to this transfer motion, arguing that the Nevada Action has been settled. While there is a class action settlement being negotiated, it has not been finalized, no settlement agreement has been signed, and it, therefore, remains to be seen whether and to what extent it will impact this action. Moreover, any such settlement will require court approval from the Nevada District Court, which will in turn require that Court to make factual and legal findings with respect to the merits of the dispute at issue in this case. In the likely event that Plaintiffs or other members of the putative class object to the proposed settlement, the settlement approval process will likely involve contested litigation over many of the same issues that will be the subject of litigation in this action.

---

[1] Compass respectfully refers the Court to its Memorandum of Law in Support of its Motion to Transfer Venue and its Memorandum of Law in Opposition to Plaintiff's Motion to Remand for the meaning of all defined terms not defined herein.

1

Plaintiffs' other principal response to Compass's transfer motion is to argue that there is no bankruptcy jurisdiction over their claims in Nevada. As established in Compass's response to Plaintiffs' remand motion, given the complicated procedural history in Nevada pertinent to those jurisdictional issues, it makes the most sense for this Court to transfer the action and to permit the Nevada District Court to determine the remand motion. That course of action is consistent with Second Circuit precedent recognizing the efficiency of having a transferee court determine remand issues in a circumstance like this one where the transferee court has extensive experience with the relevant factual and legal issues. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990).

Whether the issue is decided in Nevada or New York, Plaintiffs' lack of jurisdiction argument ignores a number of essential facts. *First*, resolution of the New York Actions will have a direct impact on how much money recovered by Compass will be available to the creditors trusts created under the Bankruptcy Plan. Plaintiffs claim that the Bankruptcy Case is essentially over and all assets have been distributed. But, in fact, no distributions have been made to unsecured creditors, and the determination of the "waterfall" issue could well impact the amount ultimately available for distribution. *Second*, the New York Actions have a significant connection to the Bankruptcy Case because Compass's defenses here rely in part on (a) an interpretation of provisions of the Confirmation Order and the Asset Purchase Agreement approved by the Bankruptcy Court and (b) enforcement of an injunction that was part of the Bankruptcy Plan (as to all of which the Plan provides for continuing Bankruptcy Court jurisdiction). Plaintiffs' response that the jurisdiction provided in the Confirmation Order only applies to efforts to terminate Compass as servicer is flatly contradicted by the plain language of the Confirmation Order and the Plan. *Finally*, the Nevada District Court has retained *in rem* jurisdiction over the Loans and Loan Servicing Agreements at issue in the New York Actions. Plaintiffs had notice of and an opportunity to object to this exercise of *in rem* jurisdiction. They failed to do so. And the New York Actions are an improper attempt to avoid the jurisdictional reach of the Nevada District Court.

## ARGUMENT

I.  **THE PROPOSED SETTLEMENT WEIGHS IN FAVOR OF VENUE TRANSFER**

Plaintiffs mistakenly suggest that the Nevada Litigation "recently settled," and that this fact weighs against transfer of venue. (Opposition of Plaintiffs to Motion Defendants' Motion for Order Transferring Venue to Nevada ("Pl. Opp. Br.") at 1.) Plaintiffs also suggest that the existence of the Nevada Litigation should be discounted because nothing has transpired in that litigation.

Plaintiffs are wrong on both counts. Compass has engaged in extensive mediation efforts and settlement negotiations with the plaintiffs in the Nevada Litigation. As a result of those negotiations, on June 25, 2008, the parties arrived at a preliminary agreement to settle the litigation. But the final terms are still the subject of negotiation, and no agreement has been signed. And as with any class action, the matter will not be "settled" until the Nevada District Court hears objections, determines that class treatment is appropriate under Rule 23, and finds that the proposed settlement is fair and equitable to the class. Thus, to the extent that Plaintiffs wish to oppose the settlement of the class action, and the resulting resolution of the "waterfall" issue that lies at the heart of their claims, Plaintiff will be required to appear before the Nevada District Court to interpose any objections to that settlement, which would include any arguments about the Nevada Court's jurisdiction or the fairness of the settlement to Plaintiffs. As a result, Plaintiffs will be compelled to argue the merits of their claims to the Nevada District Court to the extent that they wish to oppose the entry of the settlement. Compass will apprise the Court of any further developments in the settlement negotiations in advance of the August 11, 2008 hearing on this motion.

II. **THE TRADITIONAL FACTORS SUPPORT VENUE TRANSFER**

The general rule that two competing but related disputes brought in different forums should be consolidated in the court in which the first action was brought is well established in the Second Circuit, *see, e.g., In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 116 (2d Cir. 1992),

and applies with even greater force where substantially similar parties and claims are present in both courts. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978), *cert. den.* 440 U.S. 908 (1979). Here, the first action was filed by, among others, certain of Plaintiffs' predecessors in interest, in May 2007 in the Nevada District Court. The parties and claims in both the New York Actions and the Nevada Action are substantially similar and overlap. Plaintiffs contend that New York is the more convenient forum. (Pl. Opp. Br. at 2.) But, in fact, Compass (and certain of Plaintiffs' predecessors in interest) have been litigating the same issues in Nevada for over a year now. As affiliates of a sophisticated hedge fund who began purchasing Loan interests during the Bankruptcy Case, Plaintiffs surely must have expected that disputes arising out of their investment in the Loans would be litigated in Nevada. Indeed, the Loans and the Loan Servicing Agreements are all governed by Nevada law. Most importantly, the Adversary Proceeding and the Nevada Action were already pending when Plaintiffs acquired the bulk of their interests. (Declaration of Gabriel Weaver, filed concurrently herewith, Ex. 1.)

The Nevada Action will require determination of the meaning of the exact same Notes (there is a single Note for each of the Loans at issue) and form Loan Servicing Agreements at issue here.[2] Dueling litigation over the meaning and obligations stemming from those agreements raises the specter of inconsistent results—which would make servicing of these Loans (with disparate interpretations of the servicer's fiduciary duties) virtually impossible.

Plaintiffs contend that their tort claims also will be governed by New York law. (Pl. Opp. Br. at 20-21.) But Section 13 of the Loan Servicing Agreement provides that it "shall be construed in accordance with the laws of the State of Nevada, without regard to the conflict of laws or rules thereof, and the *obligations, rights and remedies* of the parties hereunder shall be determined in accordance with such laws." (Declaration of Gabriel Weaver In Support of Compass's Motion for Transfer of Venue, filed June 26, 2008 ("June 26 Weaver Decl."), Ex. E

---

[2] Plaintiffs acknowledge that the Loan Servicing Agreements are as form agreements with the same operative provisions applicable to all Direct Lenders. (*See, e.g.*, Pl. Opp. Br. at 4-6 (discussing form provisions of the "Loan Servicing Agreements").

4

(emphasis added).) Where, as here, the governing law provision is sufficiently broad to encompass the entire relationship between the contracting parties, then the choice of law provision also governs claims for tort arising incident to the contract.[3]

Plaintiffs contend that the "most critical witnesses" in the New York action are Compass's management team, all of whom either live or work in New York. (Pl. Opp. Br. at 22.) But Plaintiffs ignore the crucial fact that every member of Compass' management team is likely to be a key witness in the Nevada Litigation, if settlement is unsuccessful, or if litigation over the settlement requires the Nevada Court to reach determinations over contested factual questions. Venue transfer and consolidation of the New York Actions with the Nevada Action will avoid forcing Compass' management team to testify in multiple forums, on multiple occasions, regarding the same events. Moreover, other critical witnesses are likely to include: (i) Nevada-based employees of Compass's Nevada licensed subservicer that serviced the Loans from February through April of 2007; (ii) Nevada-based Direct Lenders that took steps to interfere with Compass's servicing of the loans at issue; and (iii) Nevada-based employees of USACM that negotiated the terms of the Notes and the Loan Servicing Agreements at issue.

Finally, Plaintiffs assert that the presence of physical evidence in New York "weighs heavily in favor of denying transfer." (Pl. Opp. Br. at 24.) But the use of the physical evidence, consisting almost entirely of email correspondence and electronically maintained loan files, in Nevada will not be burdensome. Indeed, this evidence has already been produced in connection with discovery in the Nevada Litigation.

### III. THE NEVADA DISTRICT COURT SHOULD INTERPRET ITS OWN ORDERS AND RESOLVE ANY JURISDICTIONAL DISPUTES

As set forth more fully in the Opposition to the Motion to Remand at pages 10-12, both the facts and the case law counsel in favor of allowing the Nevada District Court to interpret its

---

[3] *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994); *see also Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984) (great deference given to contract's designation of governing law if the state selected has sufficient contacts with the transaction and fundamental policies of New York law are not thereby violated).

own Orders and apply its judgment about the remand and abstention issues. In *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990), the Second Circuit noted that there are "real economies" to be gained in transferring related cases to a single court. *Id.* Once transfer has taken place, "jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level," a result that promotes "consistency as well as economy." *Id.* The weight of the authority is in accord with the Second Circuit's approach in *Ivy* where, as here, there are dueling motions to remand to state court and transfer to another district.[4] This Court should transfer venue and allow the Nevada District Court to determine the remand and abstention issues.

## IV. BANKRUPTCY SUBJECT MATTER JURISDICTION EXISTS OVER PLAINTIFFS' CLAIMS UNDER 28 U.S.C. § 1334(b)

In arguing that the federal courts lack jurisdiction under 28 U.S.C. § 1334, plaintiffs do not accurately characterize the relevant standard. Jurisdiction exists if a civil proceeding between two non-debtor parties might have "any conceivable effect" on a bankruptcy plan, or otherwise has a significant connection with a bankruptcy case. *Turner v. Ermiger*, 724 F.2d 338, 341 (2d Cir. 1983). As explained by one bankruptcy court in this district, when a civil proceeding affects the interpretation or administration of a bankruptcy plan, and the plan provides for the retention of jurisdiction over the subject matter of the dispute, bankruptcy jurisdiction exists over the civil proceeding. *In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006). As set forth in the Opposition to the Motion to Remand (at 14–18), this threshold is met here.

---

[4] *See Orix Fin. Corp. v. NexBank, SSB*, 2008 U.S. Dist. LEXIS 54259, 3:08-CV-0550-B, (N.D. Tex. July 15, 2008) (holding that the judge in the underlying bankruptcy case, with its "intimate familiarity with the bankruptcy proceedings, is in the best position to determine if remand or abstention is appropriate.") *Marquette Transp. Co. v. Trinity Marine Prods.*, No. 06-0826 c/w No. 06-827, 2006 U.S. Dist. LEXIS 60402 at * 26-27 (E.D. La. Aug. 11, 2006) (allowing transferee bankruptcy court to decide remand motion strongly promotes "the interest of justice and the efficient administration of the Bankruptcy Estate); *Consolidated Lewis Inv. Corp. v. First Nat. Bank of Jefferson Parish, 74 B.R. 648, 651 (E.D. La. 1987)* (transferring venue and holding that whether the case "should be remanded or abstention should be employed" must be determined by the transferee court); *Thomas v. Lorch, Wedlo, Inc. (In re Wedlo, Inc.)*, 212 B.R. 678, 679 (Bankr. M.D. Ala. 1996).

6

*First*, resolution of Plaintiffs' claims will have a direct impact on how much money recovered by Compass from the borrowers will be available to turn over to the creditors trusts created under the Bankruptcy Plan. USACM collected from certain Direct Lenders approximately $40 million in funds that were, in turn, improperly paid to certain other Direct Lenders as "Prepaid Interest." Paragraph 47 of the Confirmation Order requires that when Compass (as servicer) collects funds from a borrower on behalf of a Direct Lender that received Prepaid Interest, Compass must remit funds in an amount equal to the Prepaid Interest previously received by the Direct Lender to the creditor trusts for distribution to unsecured creditors. (June 26 Weaver Decl., Ex. F at ¶ 47.) Resolution of the waterfall dispute at issue in the New York Actions would directly impact the amount of Prepaid Interest Compass will turn over to the creditor trusts. If Compass is placed at the top of the waterfall, less money will be paid to the Direct Lenders and, as a result, to the creditor trusts in the case of a Direct Lender that received Prepaid Interest. Conversely, if Plaintiffs and similarly situated Direct Lenders are placed at the top of the waterfall, more money will be paid to the Direct Lenders and the creditor trusts. Resolution of the New York Actions will, therefore, have a direct impact on the administration of the Bankruptcy Plan and the recovery of unsecured creditors, which in and of itself is sufficient to confer bankruptcy jurisdiction under Section 1334.[5]

*Second*, distributions to the unsecured creditors await the resolution of thousands of proofs of claim filed by Direct Lenders alleging breach of the Loan Servicing Agreements by the Debtors. Some of these proofs of claim were filed by predecessors in interest to Plaintiffs and raise precisely the same issues raised in this litigation. For example, proofs of claim filed by assignors to Plaintiffs, Larry Apigian and Alan Simon, in January of 2007 (prior to the Confirmation Order) assert claims based on "breach of fiduciary duties [by the Debtor] that have resulted in the erosion of principal investments and the value of collateral based on triggering of

---

[5] *See e.g. Master-Halco, Inc. v. D'Angelo*, 351 B.R. 267, 270 (D. Conn. 2006) ($625,000 at issue passes "any conceivable impact" test). *In re Adelphia Communications Corp.*, 285 B.R. 127, 140 (Bankr. S.D.N.Y. 2002) (several million dollar positive or negative impact on assets or liabilities of bankruptcy estate passes "any conceivable impact" test for bankruptcy jurisdiction).

7

*default rate interest rates, late fees . . . ."* (Weaver Decl. Ex. 2 (emphasis added).) The fact that the same or similar claims (made under the same Loan Servicing Agreements and Notes at issue here) by predecessors in interest to Plaintiff are now at issue in the Bankruptcy Case provides the requisite jurisdictional link to the Bankruptcy under 28 U.S.C. § 1334.

*Third*, the New York Actions will require interpretation of provisions of the Confirmation Order and the Asset Purchase Agreement approved by the Bankruptcy Court, also indicia under *Kassover* of post-confirmation bankruptcy jurisdiction. Compass will contend that Plaintiffs' claims for relief in the New York Actions run afoul of Paragraph 14 of the Confirmation Order, which prohibits Direct Lenders from seeking to subordinate Compass' right to fees under the Loan Servicing Agreements, as well as Paragraph 7.3 of the Asset Purchase Agreement, which requires that Compass collect monies from borrowers and pays sums to Direct Lenders according to the payment scheme found in the Loan Servicing Agreements and related Notes, except as the Bankruptcy Court may find otherwise.[6]

Plaintiffs are wrong in arguing (at p. 17) that the retention of federal jurisdiction is limited to disputes involving efforts to terminate Compass as servicer. Paragraph 82 specifically contemplates bankruptcy jurisdiction over the interpretation and enforcement of the Loan Servicing Agreements, providing that Compass, the Direct Lenders and "all other affected parties" shall abide by any order of the Bankruptcy Court directing the "distribution of payments under the Loan Servicing Agreements." (*Id.*) This language is consistent with the Plan, which provides for bankruptcy jurisdiction over "all matters related to the Loan Servicing Agreements."[7] (Plan at 79.) The fact that the Nevada Bankruptcy Court also reserved for itself

---

[6] Plaintiffs' reliance on *Vornado Realty Trust v. The Stop & Shop Supermarket Co., Inc. (In re Bradlees, Inc.)*, No. 04 Civ. 5500(HB), 2005 WL 106794 (S.D.N.Y. Jan. 19, 2005) is misplaced. In that case, two non-debtors entered into a contract eight years before Bradlees filed for bankruptcy relief. The *Bradlees* bankruptcy court declined to assert jurisdiction over the contract dispute, holding that abstention to the state court was appropriate. Judge Baer affirmed the abstention analysis, noting that the contract dispute was a non-core matter. Here, however, Compass became a successor to USACM's rights under the Loan Servicing Agreements under the Confirmation and Sale Order. Moreover, the Bankruptcy Court expressly reserved jurisdiction over disputes relating to the Loan Servicing Agreements.

[7] The Confirmation Order specifically "approved and confirmed" the Plan, Confirmation Order ¶ 1, and provided that "each provision of the Plan is authorized and approved and shall have the same validity,

8

jurisdiction with respect to disputes arising from the exercise of a so-called "Surviving Section 3 Right" does not change or otherwise limit the broad grant of bankruptcy jurisdiction found elsewhere in the Plan and Confirmation Order. Paragraph 82 of the Confirmation Order provides, in relevant part:

> [T]o the extent the Bankruptcy Court has entered an order, including, but not limited to, this Confirmation Order, which interprets or enforces provisions of the Loan Servicing Agreements or direct the distribution of payments under the Loan Servicing Agreements or payments collected from Borrowers, Compass, the Lenders, and all other affected parties shall abide by the terms of such order(s). If, as between the provisions of the Loan Servicing Agreements and the order(s) of the Bankruptcy Court, it is not clear to Compass how the sums collected shall be distributed, then Compass shall hold the sums payable to the Lender until Compass either receives direction from the Lender and, as to items not constituting Commercial Mortgage Assets (as such term is defined in the Asset Purchase Agreement), the Sellers (or their successor or assignee under the Plan) regarding disbursement of interest, or is directed by an order from a court of competent jurisdiction.

(June 26 Weaver Decl., Ex. F at ¶ 82.) Thus, to the extent that there is a dispute over the allocation of collections, Compass may hold the funds until it receives direction from a court "of competent jurisdiction." As demonstrated above, pursuant to Section 1334, federal district courts are courts "of competent jurisdiction" for such a dispute. Nothing in Paragraph 82 or any other provision of the Confirmation Order suggests otherwise.

Plaintiffs erroneously claim that the Nevada District Court has only exercised jurisdiction in the Nevada Litigation based on diversity. (Pl. Opp. Br. at 17-18.) In fact, the Nevada District Court has broadly exercised *in rem* jurisdiction over all of the Loans and Loan Servicing Agreements at issue here. (*Infra* at 2.) Moreover, the Nevada District Court has exercised jurisdiction, under 28 U.S.C. § 1334, over similar litigation involving Compass and another vulture fund concerning the Loans in the USACM portfolio. On August 7, 2007, Compass sued Eagle Investment Partners, L.P., a vulture fund, and Vindrauga Corporation in the Nevada Bankruptcy Court asserting jurisdiction under, *inter alia*, 28 U.S.C. § 1334 and alleging interference with the servicing rights conveyed by the Confirmation Order. On August 16, 2007,

---

binding effect, and enforceability as every other provision of the Plan, whether or not mentioned in [the] Confirmation Order...," Confirmation Order ¶ 6.

9

the defendants moved to remove the reference, which Compass did not oppose. On January 9, 2008, the Nevada District Court assumed jurisdiction over the case and consolidated the dispute with the Nevada Action. (Case No. 2:07-cv-00892-RCJ-GWF, Docket Entry 289.)

Plaintiff's attempt to distinguish *In re Petrie, Retail, Inc.*, 304 F.3d 223 (2d Cir. 2002) also misses the mark. (Pl. Opp. Br. at 18-19.) In *Petrie*, the Second Circuit found bankruptcy jurisdiction over a dispute between two non-debtor parties, and went so far as to find that jurisdiction was core. All that is required for purposes of a motion to transfer under 28 U.S.C. § 1404(a) is non-core bankruptcy jurisdiction. *See Northwest Airlines, Inc. v. Los Angeles (In re Northwest Airlines Corp.)*, 384 B.R. 51, 60 (S.D.N.Y. 2008) (granting motion to transfer venue of non-core proceeding pursuant to 28 U.S.C. §1404(a).) That threshold is met here. Moreover, Plaintiffs' effort to distinguish *Petrie* ignores that (1) the Bankruptcy Plan here enjoined Direct Lenders from taking certain post-confirmation, post-sale acts, (2) both the Bankruptcy Court and the Nevada District Court have entered injunctions to protect Compass from certain post-confirmation Direct Lender actions, and (3) resolution of the New York Actions will require a determination of Compass's contentions that Plaintiffs' claims are barred by Paragraph 14 of the Confirmation Order and Paragraph 7.3 of the Asset Purchase Agreement.

## CONCLUSION

For the foregoing reasons, Compass respectfully requests that the Court enter an order transferring venue of the New York Actions to the United States District Court, District of Nevada.

Dated: July 21, 2008

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _____
Scott A. Edelman (SE 5247)
Daniel M. Perry (DP 6966)
1 Chase Manhattan Plaza
New York, NY 10005-1413
(212) 530-5000
*Attorneys for Defendants Compass Financial Partners LLC and Compass USA SPE LLC*

10