UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
CCM PATHFINDER POMPANO BAY, LLC,    :
          Plaintiff,    :
  -against-    :
COMPASS FINANCIAL PARTNERS LLC    :
and COMPASS USA SPE LLC,
          Defendant.    :
-------------------------------------
AND RELATED ACTIONS    :
------------------------------------- X

INDEX NO. 08 CIV 5258
INDEX NO. 08 CIV 5297
INDEX NO. 08 CIV 5298

**DECLARATION OF BETTY M. SHUMENER RE PLAINTIFFS' RESPONSE TO SUPPLEMENTAL REPLY OF COMPASS**

I, Betty M. Shumener, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney licensed to practice law in the State of New York and before this Court. I am a partner with DLA Piper US LLP, counsel of record for plaintiffs CCM Pathfinder Pompano Bay, LLC and CCM Pathfinder Gramercy, LLC ("Pathfinder"). I have personal knowledge of the facts set forth herein and if called and sworn as a witness, I could and would testify competently thereto.

2. On August 7, 2008, Pathfinder filed the Objection Based on Lack of Personal Jurisdiction and Violation of Due Process to Plaintiff's Emergency Motion ("Objection") with the Nevada District Court. A true and correct copy of said Objection (without exhibits) is attached hereto as Exhibit "A."

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 19th day of August 2008 in Los Angeles, California.

                                              /s/ Betty M. Shumener
                                                Betty M. Shumener

**EXHIBIT "A"**

1  Betty M. Shumener (California Bar No. 137220)
   DLA PIPER US LLP
2  550 South Hope Street, Suite 2300
   Los Angeles, CA 90071
3  Tel: 213.330.7700
   Fax: 213.330.7701
4  Betty.shumener@dlapiper.com

5  Joanna Kishner (Nevada Bar No. 5037)
   DLA PIPER US LLP
6  3960 Howard Hughes Parkway, Suite 400
   Las Vegas, NV 89169
7  Tel: 702.677.3900
   Fax: 702.737.1612
8  Joanna.kishner@dlapiper.com

9  Attorneys for Specially Appearing Third-Parties
   CCM PATHFINDER BAY POMPANO, LLC and
10 CCM PATHFINDER GRAMERCY, LLC

11
                    UNITED STATES DISTRICT COURT
12
                         DISTRICT OF NEVADA
13

14 In re:                                    Case No. 2:07-CV-892-RCJ-GWF-BASE
                                              and Case No. 3:07-CV-241-RCJ-GWF
15 USA COMMERCIAL MORTGAGE
   COMPANY,                                  **OBJECTION BASED ON LACK OF
16                                           PERSONAL JURISDICTION AND
           Debtor,                           VIOLATION OF DUE PROCESS TO
17                                           PLAINTIFF'S EMERGENCY
                                              MOTION FOR ORDER (1)
18                                           GRANTING LEAVE TO FILE THIRD
                                              AMENDED CLASS ACTION
19                                           COMPLAINT, (2) APPOINTING
                                              RECEIVER FOR CLASS MEMBER
20                                           LOAN INTERESTS, (3)
                                              PRELIMINARILY APPROVING
21                                           CLASS ACTION SETTLEMENT, (4)
                                              AUTHORIZING DISTRIBUTION OF
22                                           NOTICE OF CLASS SETTLEMENT,
                                              AND (5) SETTING SCHEDULE FOR
23                                           FINAL APPROVAL PROCESS;
                                              MEMORANDUM OF POINTS AND
24                                           AUTHORITIES**

25                                           **PRO HAC VICE APPLICATION
                                              PENDING**
26
                                             Date: August 11, 2008
27                                           Time: 11:00 a.m.

28

DLA PIPER US LLP
LOS ANGELES     WEST\21485041.4

## **TABLE OF CONTENTS**

**Page**

1. The Court Lacks Personal Jurisdiction Over The Pathfinder Lenders To Put Them Into Receivership ..................................................................................... 1

2. There is No Emergency ............................................................................................ 2

3. The Receiver Exceeded His Authority ..................................................................... 3

4. The Prerequisites For Putting The Lenders' Properties Into Receivership Cannot Be Met ........................................................................................................ 3

5. The Receiver and the LLCs Lack Standing ............................................................. 4

6. An Opt Out Opportunity is Required ....................................................................... 5

7. The Opt Out Opportunity Is Critical Where, As Here, The Proposed Settlement is Grossly Unfair ..................................................................................... 7

DLA PIPER US LLP
LOS ANGELES

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bauman v. Union Oil Co.*,
   557 F.2d 650 (9th Cir. 1977) .................................................................................... 7

*Brown v. Ticor Title Co.*,
   982 F.2d 386 (9th Cir. 1992) .................................................................................... 6

*Bullfrog Films, Inc. v. Wick*,
   847 F.2d 502 (9th Cir. 1988) .................................................................................... 5

*Clarke v. Advanced Private Networks, Inc.*,
   173 F.R.D. 521 (D. Nev. 1997) ................................................................................ 6

*DeGier v. McDonald's Corp.*,
   76 F.R.D. 125 (D.C. Cal. 1977) ............................................................................... 7

*Dukes v. Wal-Mart, Inc.*,
   509 F.3d 1168 (9th Cir. 2007) ("Rule 23(b)(2) ........................................................ 5

*Mintzer v. Arthur L. Wright & Co.*,
   263 F.2d 823 (3d Cir. 1959) ..................................................................................... 4

*PACCAR Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
   757 F.2d 1058 .......................................................................................................... 2

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................ 4, 6

*Piambino v. Bailey*,
   757 F,2d 1112 (11th Cir. 1985) ............................................................................... 4

*Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*,
   614 F. 2d 1247 (9th Cir. 1980) ................................................................................ 2

*U.S. v. Kias*,
   409 U.S. 434 (1973) ................................................................................................. 7

*Valley Forge Christian College v. Americans United for Separation of Church and State*,
   454 U.S. 464 (1982) ................................................................................................. 5

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................. 5

## STATUTES

28 U.S.C. § 23(b)(1) ........................................................................................................... 7

28 U.S.C. § 23(b)(2) ...................................................................................................... 6, 7

28 U.S.C. § 23(b)(3) ................................................................................................... 5, 6, 7

As specially appearing third parties who contest jurisdiction, CCM Pathfinder Bay Pompano, LLC (a lender who owns approximately 21% of the Bay Pompano Loan and 27% of the Palm Harbor Loan), and CCM Pathfinder Gramercy, LLC (a lender who owns approximately 20% of the Gramercy Court Loan), collectively **"Pathfinder Lenders,"** hereby object to Plaintiff's Emergency Motion for Order (1) Granting Leave to File Third Amended Class Action Complaint, (2) Appointing Receiver for Class Member Loan Interests, (3) Preliminarily Approving Class Action Settlement, (4) Authorizing Distribution of Notice of Class Settlement, and (5) Setting Schedule for Final Approval Process (**"Emergency Motion"**).

By the Emergency Motion, Thomas Grimmet (**"Receiver"**) asks the Court to (i) put all the lenders (who are innocent third parties) into his receivership estate against their wills and over their objections so that he can bring a class action in their name, (ii) allow the Receiver to deprive those lenders of the right to opt out of such class, (iii) force those lenders to pay Compass $34.5 million which may not be owed to Compass, and (iv) release all of those lenders' claims against Compass for a payment of $6 million to be shared among thousands of lenders, when the claims of the Pathfinder Lenders alone, which are being litigated in separate actions in New York, exceed $10 million. The Receiver's proposal is unfair and unlawful for the following reasons, among others.

1. **The Court Lacks Personal Jurisdiction Over The Pathfinder Lenders To Put Them Into Receivership.** The United States District Court for the District of Nevada lacks personal jurisdiction over the Pathfinder Lenders. The Pathfinder Lenders are New York residents who have conducted no business in Nevada. The Pathfinder Lenders are innocent third parties who filed and are litigating separate actions against Compass for breach of contract and breach of fiduciary duty in New York (where they and Compass reside, where the documents and witnesses are located and in their choice of forum). The Pathfinder Lenders did

-1-

not participate in litigation in Nevada, filed no claim in the bankruptcy case of USA Commercial Mortgage Company ("USA") and were not members of the limited liability companies ("LLCs") who filed this adversary proceeding. As such, this Court lacks personal jurisdiction over them. The holding of the Ninth Circuit in *PACCAR Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1063 and n.6 (1985), applies equally to the Pathfinder Lenders here:

> We have refused, for example to uphold personal jurisdiction over a foreign corporation, which contracted with a California corporation, when the record revealed that the defendant 'has not performed any act relating to the contract at issue by which it purposefully availed itself of the privilege of conducting business in California.' If we accepted the analysis in *Wyle*, CBK could be forced to defend a suit in California even though it had never committed an affirmative act in California. Such a result would deprive CBK of due process.
>
> …
>
> While it is true that California law would apply, that fact is of little consequence. The fact that a contract is governed by the law of a particular state does not establish that the parties have purposefully availed themselves of the privilege of conducting business in that state.

(quoting *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F. 2d 1247, 1254 (9th Cir. 1980).). The Pathfinder Lenders have not purposefully availed themselves of the privilege of conducting business in Nevada. Thus, the Court lacks jurisdiction to put them into receivership.

2.   **There is No Emergency**. Although the Receiver has deprived the lenders of an opportunity to conduct discovery to fully respond to his Emergency Motion, there is no emergency and the Receiver has made no showing of exigency. Yet on this shortened notice, the Receiver is proposing that the Court allow the Receiver to file a lawsuit in the name of lenders, deprive those lenders of the right to control their own property and ram a settlement down their throats which they believe is prejudicial and harmful to their interests, without giving the lenders the

opportunity to opt out of the action. Not only is there no exigency for this "Emergency Motion," there is no equity to justify it.

3. **The Receiver Exceeded His Authority.** The Amended Order Granting Motion to Appoint Receiver (**Exhibit "A" hereto**) provides, at paragraph 2, as follows:

> **Receiver cannot bind individual lenders in settlement** negotiations, but can voluntarily negotiate for their benefit, communicate settlement offers and make recommendations as he sees fit, to the lenders whether to accept or reject a proposal. (Emphasis added.)

The Receiver exceeded his authority by filing the Emergency Motion. In the Emergency Motion, the Receiver is attempting to compel lenders to participate in a class action against their will, deprive them of the right to opt out of the class, have their property placed in receivership and release their claims against Compass. The Receiver is not merely making recommendations. He is attempting to "bind individual lenders" to a settlement that many abhor as unreasonable and unfair.

4. **The Prerequisites For Putting The Lenders' Properties Into Receivership Cannot Be Met.** Before a receiver may be appointed to take possession of property owned by the Pathfinder Lenders (or any of the lenders), the Receiver must show that he or the LLCs have an interest in the property. When the LLCs returned to the lenders their interests in the loans, the LLCs no longer had any interest in any of the property at issue in this action. In fact, the LLCs never had any interest in the property owned by third party lenders who were not members of the LLCs. The Receiver fares no better, as he stands in the shoes of the LLCs. Absent a showing that the LLCs and the Receiver have some interest in the property (which showing cannot be made), the prerequisites for appointing a receiver over the Pathfinder Lenders' property (as is true of other similarly situated innocent lenders) violates fundamental rights of due process and constitutes an

-3-

"abuse of discretion". *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 825 (3d Cir. 1959); *Piambino v. Bailey*, 757 F,2d 1112, 1131 (11th Cir. 1985) ("This precedent holds that the receivership remedy they sought is available only to plaintiffs with an equitable interest in the property to be seized...."). The holding in *Mintzer* brings this issue into focus:

> Courts exercise their discretion for the appointment of receivers when the existence of grounds and conditions prerequisite for such relief are shown. **Because the remedy interferes with the defendant's property rights these grounds, in the absence of statute, require the existence of some legally recognized right held by the creditor in the debtor's property** amounting to more than a mere claim against the debtor. Here the plaintiffs assert such right to be in the nature of a trust. **If this assertion is not supportable, the appointment of the receiver was an abuse of discretion since it unquestionably interfered with defendant's right otherwise to completely control its own property**; before being divested of that incident of ownership defendant in the circumstances before us would otherwise be entitled to adjudication of a full trial of the dispute between it and plaintiffs. And the Seventh Amendment assures that such adjudication may be by jury trial if the issue is one which was triable at law.

*Id.* at 824-25 (emphasis added.).

Here, neither the Receiver nor the LLCs can lay claim to any interest in the loans or in the lenders' individual claims against Compass, and the lenders have done nothing to warrant forcing their property into receivership against their will. Yet that is precisely what the Receiver is proposing.

5.  **The Receiver and the LLCs Lack Standing.** Neither the LLCs nor the Receiver has standing to bring the Emergency Motion, as (a) no showing of exigency was made, (b) none of them has any interest in the loans, (c) none of them has any contractual relationship with Compass, and (d) principles of equity prohibit trampling on the rights of innocent lenders who do not wish to participate in the settlement proposed by the Receiver. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) ("Generally stated, federal standing requires an allegation of a

-4-

1  present or immediate injury in fact, where the party requesting standing has 'alleged
2  such a personal stake in the outcome of the controversy as to assure that concrete
3  adverseness which sharpens the presentation of issues."). No such present or
4  immediate injury in fact can be alleged by the LLCs or their Receiver. As the Ninth
5  Circuit held in *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 506 n.4 (9th Cir. 1988):

> At an "irreducible minimum", Article III standing requires that a plaintiff show (1) "that he personally has suffered some actual or threatened injury" as a result of defendant's conduct, (2) that the injury "fairly can be traced to the challenged action" and (3) that the injury "is likely to be redressed by a favorable decision."

10  (quoting *Valley Forge Christian College v. Americans United for Separation of*
11  *Church and State*, 454 U.S. 464, 472 (1982).) *See also Warth v. Seldin*, 422 U.S.
12  490 (1975). Neither the LLCs nor the Receiver "personally has suffered some
13  actual or threatened injury." *Id.* Accordingly, neither has standing to bring this
14  Emergency Motion or to file the proposed Third Amended Complaint.

16      6. **An Opt Out Opportunity Is Required.** There is no conceivable
17  reason to deprive the lenders of a meaningful voice in the process and of the right to
18  opt out of the proposed class. If the lenders who have been victimized by USA and
19  Compass wish to opt out of the class, they should be allowed to do so. After those
20  lenders who have elected to opt out of the proposed class are excluded from the
21  class, the Receiver and Compass can decide whether or not to proceed with their
22  settlement and the terms on which to do so. To ram down the lenders' throats a
23  settlement which they believe is harmful to them is neither equitable nor lawful for
24  the following reasons, among others:

26      a.    This action is predominantly for damages, not injunctive relief.
27  As such, the proposed class action should be brought under 28 U.S.C. § 26(b)(3),
28  not under 28 U.S.C. § 26(b)(1) or (2). *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168,

-5-

1  1186 (9th Cir. 2007) ("Rule 23(b)(2) is not appropriate for all classes and 'does not
2  extend to cases in which the appropriate relief relates exclusively or predominantly
3  to money damages."). Here, the primary relief sought is the recovery of money,
4  both for Compass as well as for the lenders. Even the so-called "waterfall" issue
5  concerns the money that each party is to receive and the order in which the parties
6  are to receive that money. As the relief sought is predominantly money, Rule
7  23(b)(3) governs. *Id.*

9        b.     Under Rule 23(b)(3), class members must be given the
10 opportunity to opt out of the class. *Shutts,* 472 U.S. at 812 ("[W]e hold that due
11 process requires at a minimum that an absent plaintiff be provided with an
12 opportunity to remove himself from the class by executing and returning an 'opt
13 out' or 'request for exclusion' form to the court."); *Brown v. Ticor Title Co.,* 982
14 F.2d 386 392 (9th Cir. 1992) ("In order to bind an absent plaintiff concerning a
15 claim for monetary damages, the court must provide minimal due process....
16 According to *Shutts,* minimal due process requires that 'an absent plaintiff be
17 provided with an opportunity to remove himself from the class.... Because Brown
18 had no opportunity to opt out of the MDL 633 litigation, we hold there would be a
19 violation of minimal due process if Brown's damage claims were held barred by *res
20 judicata.*"); *Clarke v. Advanced Private Networks, Inc.,* 173 F.R.D. 521, 522 (D.
21 Nev. 1997) ("In a class action in which unnamed plaintiff class members are not
22 permitted the opportunity to opt out, an unnamed plaintiff class member is not
23 bound by that portion of a settlement which purports to preclude further claims for
24 damages based on the same facts encompassed by the litigation.").

26       c.     Even if the Court were to allow the class action to proceed under
27 Rule 23(b)(2), rather than Rule 23(b)(3), the Court can and should exercise its
28 discretion to require notice to the lenders and an opportunity to opt out of the class.

1  Indeed, the law of the Ninth Circuit favors providing plaintiffs with the opportunity
2  to opt out even when the action falls under Rule 23(b)(1) or (2). *Bauman v. Union
3  Oil Co.*, 557 F.2d 650, 656 (9th Cir. 1977) ("[W]e do not believe that the order
4  [allowing an opt-out provision for a class action under Rule 23(b)(2)] will have the
5  damaging effect Bauman ascribes to it."). The Court stated the matter poignantly in
6  *DeGier v. McDonald's Corp.*, 76 F.R.D. 125, 127 (D.C. Cal. 1977):

> Furthermore, equal protection and due process requires the right to opt out of Rule 23(b)(2) classes.
>
> ...
>
> The Supreme Court has held that selective denials of access to trial court have violated the Equal Protection Clause. There can be no logical distinction between denial of access to a trial court and mandatory inclusion in a class action before a trial court. For whatever reason, a person has the right to bring or not bring his or her case to court. **A selective inclusion of a person by way of a class action cannot be permitted unless that person has first the option to exclude himself or herself from the class.** At least, if there is to be selective inclusion without the opportunity to exclude oneself, there must be a substantial justification. The court can find no such justification in the instant case.... Certainly a failure to give such an option to absent class members in this case would amount to a violation of the Equal Protection Clause and the Due Process Clause.

18  *Id.* at 127, *citing U. S. v. Kras,* 409 U.S. 434, 443-49 (1973) (emphasis added)
19  (citations omitted).
20    No less is true here.
21
22    7.  **The Opt Out Opportunity Is Critical Where, As Here, The
23  Proposed Settlement Is Grossly Unfair.** The proposed settlement is grossly
24  unjust and harmful to the very lenders it purports to protect.
25
26      a.  **The Receiver Had No Opportunity To Conduct Due
27  Diligence.** The Receiver did not undertake any of the due diligence necessary to
28  determine whether the proposed settlement is fair or reasonable. The Receiver

-7-

could not do so because he did not have access to the underlying loan documents and loan servicing agreements. In an email dated August 4, 2008, the Receiver stated: "One of the things we are going to ask for is to expand the receivership to include the beneficial interests in the loans. This would give the receiver authority to demand all information on each loan...." (**Exhibit "B" hereto**) Before recommending a settlement that requires the lenders to pay Compass $34.5 million and cap the lenders' contract and tort claims at $6 million, the Receiver should undertake that due diligence. Given the hundreds of millions of dollars at stake for the lenders, before reaching terms with Compass, the Receiver should examine the underlying loan documents for each of the loans, the properties securing those loans and the loan servicing agreements. The Receiver is attempting to put the cart before the horse. Without due diligence, the Receiver cannot possibly tell whether the proposed settlement is fair or reasonable. By this Emergency Motion, not only has the Receiver failed to undertake the necessary due diligence, he is depriving the lenders of the opportunity to do so.

      b.    **Compass Is Not Owed The Amounts Claimed.** The issues that are proposed to be "settled" concern the amount of late charges that Compass is entitled to receive, the amount of default interest that Compass is entitled to receive, and the conditions under which Compass is entitled to receive these amounts.

           (i)    Compass has assessed late charges on the entire amount owed under loans which have matured. However, some loan documents expressly prohibit Compass from assessing a late charge on the total amount owed on a loan when it matures, whereas other loan documents may allow Compass to do so. Nevertheless, Compass has assessed millions of dollars in late charges on the total amount owed on each loan at maturity, regardless of what the loan documents and loan servicing agreements state. Thus, for example, Section 8 of the promissory note governing the Bay Pompano Loan expressly prohibits Compass from imposing

-8-

a late charge on the total amount due at maturity, stating "Notwithstanding anything to the contrary contained in this Note, this five percent (5%) late charge ... will **not** apply to the total amount due under this Note if this Note is accelerated ... or not paid on the maturity date." Nevertheless, Compass charged over $964,676 in late charges on the total amount due at maturity under the Bay Pompano Loan, as compared to the $9,651 in late charges that Compass was actually allowed to charge under the loan documents and loan servicing agreements.[1]

       (ii)   Compass made similarly self-serving "errors" in its default interest calculation – compounding interest at the default rate when the loan documents allow only interest at the non-default rate to be compounded – resulting in millions of dollars in overcharges across many of the loans.

       (iii)   Similarly, many of the loan servicing agreements state that Compass may receive only late charges and default interest that Compass collects from the borrower. Nevertheless Compass has claimed millions of dollars in late charges and default interest that it never collected from any of the borrowers and, in some instances, never will collect from borrowers. As a result, those amounts are not owed to Compass at all.

       c.   **The Lenders' Claims Are Monetary Claims Worth Millions Of Dollars, Requiring The Right To Opt Out.** The lenders have tens of millions of dollars in claimed damages against Compass. Yet the proposed settlement would set aside a pool of only $6 million to be shared among thousands of lenders, while requiring all lenders to release all claims against Compass. The Pathfinder Lenders' claims against Compass alone exceed $10 million. The Pathfinder Lenders already have straightforward complaints pending against Compass in New

---

[1] As this is an Emergency Motion, the Pathfinder Lenders attempted to avoid deluging the Court with voluminous documents and pleadings. However, they are prepared to provide copies of the loan documents regarding their loans as well as copies of their complaints against Compass upon request by the Court.

-9-

York seeking damages for breach of contract and breach of fiduciary duty, and if given the opportunity to do so (as is their right), would opt out of the settlement proposed by the Receiver. The Pathfinder Lenders are not willing to settle for a tiny fraction of a $6 million pool to be shared with thousands of lenders so that each lender gets only a few pennies on the dollar. There is no reason to deprive the Pathfinder Lenders of their right to opt out of the class, their day in Court, their right to a jury trial or their right to possession and control of their own property.

        d.    **The Receiver Disregards The Lenders' Concerns.** The Receiver is already showing disdain for the very lenders on whose behalf he is to be acting. When individual lenders expressed their concerns about the proposed settlement to the Receiver, the Receiver dismissed their concerns out of hand, claiming in an email dated August 4, 2008 that: "After sitting through a number of conference calls with direct lenders, I became convinced that many of the direct lenders would actually opt out of anything and everything without considering the unintended consequences of their actions." **(Exhibit "B" hereto)** Frankly, the lenders are entitled to "opt out of anything and everything," and it is insulting for the Receiver to believe that his views should silence the views of concerned lenders who have been grappling with this matter much longer than the Receiver. The Receiver has been involved in this matter for a few weeks, whereas the lenders whom he is dismissing out of hand have been dealing with this matter for years. The Receiver is not in a position to conclude that he knows better than these lenders what is in their best interests or whether they would "opt out of anything and everything without considering the unintended consequences of their actions."

        In response to the concerns expressed by institutional investors whose opinions could not be dismissed in the same condescending manner, the Receiver resorts to name calling, calling them "vulture funds". Thus, in the August 4, 2008 email, the Receiver states that, "all of these 'vulture funds' are opposed to the

-10-

settlement." **(Exhibit "B" hereto)** First, these so-called "vulture funds" usually represent retirement trusts, pension funds and other worthy individuals, organizations and institutions. There is no reason to characterize or treat them as "vultures". Second, if sophisticated investors are opposed to the settlement, there is probably sound economic reason for them to do so. Such investment managers are not running on emotion and name-calling. At least as to their own loans, institutional investors like the Pathfinder Lenders have performed extensive due diligence on the loans in which they have invested as well as on the properties securing those loans, as that is their job. Rather than presuming that such investors are exercising sound business judgment, however, the Receiver decided to label them "vulture funds". Thus, when the Receiver is not dismissing individual lenders out of hand by characterizing them as contentious and unsophisticated, he is dismissing sophisticated lenders out of hand by characterizing them as "vulture funds".

     e.    **The Costs Of The Proposed Settlement To The Lenders Is Enormous, Yet They Cannot Opt Out.** The Receiver acknowledges that, in addition to the $34.5 million paid to Compass off the top, the lenders will be obligated to pay Receiver's fees and legal fees over and above loan servicing fees to a new loan servicer. As the Receiver noted in his August 4, 2008 email, "Yes, we will charge our fees on top of the new servicer fees – we don't work for free." **(Exhibit "B" hereto)** While the Receiver goes on to state that his fees will be "mitigated" by the fact that the new loan servicer will charge approximately 1.2% less than Compass in loan servicing fees, he tacks on at the end that the proposed new loan servicer will also charge a "3% fee when the loan gets resolved." Under the existing loan servicing agreements, Compass is not entitled to a "3% fee when the loan gets resolved." Accordingly, under the Receiver's proposed settlement, over and above the $34.5 million that the lenders must pay to Compass off the top

-11-

and the additional fees they must pay to the Receiver and his attorneys, the lenders will now have to pay the new loan servicer a servicing fee that exceeds Compass' loan servicing fees by at least 1.8%, plus the legal fees and costs for that loan servicer's attorneys. Concurrently, the Receiver is proposing to release all the lenders' claims against Compass for only $6 million. Frankly, if this is the proposed solution to the lenders' problems, the Court would be doing the lenders a great service by simply dismissing this adversary proceeding and allowing them to bring appropriate class actions or individual actions as they see fit.

Before forcing a settlement on thousands of lenders, many of whom want no part of it, the Court should order the Receiver to provide notice of the proposed settlement to all lenders and notify those lenders that they have the right to opt out of the class. When the Receiver has determined the number of lenders who have opted out of the class, Compass and the Receiver may then decide whether to proceed with seeking Court approval of the settlement as to those lenders who have not elected to opt out of the class. Under no circumstances should the lenders who have been victimized repeatedly be compelled to participate in a class action and class settlement which they regard as extremely harmful to their interests, while having their right to opt out of the class stripped from them.

Dated: August 6, 2008

DLA PIPER US LLP

By: /s/ Betty M. Shumener
BETTY M. SHUMENER
Attorneys for Specially Appearing Third-Parties CCM PATHFINDER POMPANO BAY, LLC and CCM PATHFINDER GRAMERCY, LLC

PRO HAC VICE APPLICATION PENDING

-12-

WEST\21485041.4

**CERTIFICATE OF SERVICE**

This certifies that, pursuant to Rule 5 of the FEDERAL RULES OF CIVIL PROCEDURE, on the 6th day of August, 2008, a true and correct copy of Objection Based on Lack of Personal Jurisdiction and Violation of Due Process to Plaintiff's Emergency Motion For Order (1) Granting Leave to File Third Amended Class Action Complaint, (2) Appointing Receiver For Class Member Loan Interests, (3) Preliminarily Approving Class Action Settlement, (4) Authorizing Distribution Of Notice Of Class Settlement, And (5) Setting Schedule For Final Approval Process; Memorandum Of Points And Authorities was served on all counsel of record via the Court's Electronic Case Filing system and to the following attorney of record by first class United States mail, postage prepaid:

Robert P. Cummins, Esq.
The Cummins Law Firm LLC
77 W. Wacker Dr., Suite 4800
Chicago, IL 60601

By: _____
     Janet Curley

-13-

WEST\21485041.4